## <u>EXHIBIT B</u>

**Declaration of Sean Harding**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
```
*In re*                                                     :    **Chapter 11**
                                                            :
**THE McCLATCHY COMPANY**, *et al.*,                        :    **Case No. 20-10418 (MEW)**
                                                            :
         **Debtors.**[1]                                    :    **(Jointly Administered)**
                                                            :
```
-------------------------------------------------------- x
```

**DECLARATION OF SEAN M. HARDING
IN SUPPORT OF DEBTORS' APPLICATION
FOR AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND
RETENTION OF FTI CONSULTING, INC. EFFECTIVE *NUNC PRO
TUNC* TO THE PETITION DATE, (II) APPROVING THE TERMS OF FTI'S
EMPLOYMENT AND RETENTION, (III) DESIGNATING SEAN M. HARDING AS
CHIEF RESTRUCTURING OFFICER, AND (IV) GRANTING RELATED RELIEF**

I, Sean M. Harding, declare as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its

wholly owned subsidiaries, agents, independent contractors, and employees, "**FTI**"). I submit

this declaration (this "**Declaration**") in support of the application (the "**Application**")[2] of the

Debtors for an order authorizing the Debtors' employment and retention of FTI *nunc pro tunc* to

the Petition Date and designating me as the Debtors' CRO effective as of February 23, 2020.

Except as otherwise noted, all facts herein are based on my personal knowledge, information

gathered from review of relevant documents, and information supplied by other FTI

professionals.  If FTI discovers any additional information bearing on the issues discussed herein

---

[1]    The last four digits of Debtor The McClatchy Company's tax identification number are 0478.  Due to the large
       number of debtor entities in these jointly administered chapter 11 cases, a complete list of the debtor entities
       and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such
       information may be obtained on the website of the Debtors' proposed claims and noticing agent at
       http://www.kccllc.net/McClatchy.  The location of the Debtors' service address for purposes of these chapter 11
       cases is: 2100 Q Street, Sacramento, California 95816.

[2]    Capitalized terms not defined herein have the meanings ascribed to them in the Application.

and in the Application, it will use reasonable efforts to file promptly a supplemental declaration as needed to disclose that information.

2.      FTI provides restructuring advisory services to debtors in chapter 11 cases and out-of-court restructurings.  FTI is an internationally recognized restructuring and turnaround firm, has a wealth of experience in providing financial advisory services, and enjoys an excellent reputation for the services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

3.      FTI's professionals have provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' Chapter 11 Cases.  Since its inception in 1982, FTI has provided restructuring services in numerous large cases such as: Sears Holdings Corp., RadioShack Corporation, SFX Entertainment, Chassix, Inc., Peabody Energy Corp., CIT Group, MF Global, Vertellus Specialties, Inc., Aéropostale, Inc., American Apparel, Inc., and Hastings Entertainment, Inc.

4.      On July 31, 2019, FTI was engaged to provide certain services to the Debtors pursuant to the Original Engagement Letter, a copy of which is attached hereto as Exhibit 1. Since that time, FTI has developed substantial knowledge about the Debtors' operations and financial condition by working closely with the Debtors' management and employees.  Such experience and institutional knowledge will be valuable to the Debtors in their efforts to reorganize.

## SCOPE OF SERVICES

5.      FTI has provided and will continue to provide such restructuring support services as FTI and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these Chapter 11 Cases (the "**Services**"), including but not limited to the following:

a.      confirming that the Company has a directors and officers liability insurance policy in accordance with Section 6 of the FTI Standard Terms and Conditions attached to the Engagement Letter as Exhibit A;

b.      providing the CRO to lead the Company's restructuring efforts;

c.      providing additional FTI employees to assist the CRO as necessary (the "**Hourly Temporary Staff**," and together with the CRO, the "**FTI Professionals**");

d.      preparing the Company's 13-week cash flow budget and debtor-in-possession cash flow budget;

e.      assisting management in managing and controlling cash disbursements;

f.      developing, with assistance of management, cash conservation measures and assisting with implementation of cash forecasting and reporting tools as requested;

g.      determining a solution for the highest and best recovery for stakeholders and recommending appropriate strategic alternatives;

h.      assisting with such other accounting and financial matters as requested by the Company and/or the board of directors that are not duplicative of services provided by other professionals;

i.      assisting in preparing required motions throughout the course of these Chapter 11 Cases;

j.      assisting in the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs;

k.      assisting in the preparation of the Company's monthly operating reports;

l.      assisting with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

m.      analyzing creditor claims by type, entity, and individual claim, including assisting with development of databases, as necessary, to track such claims;

n.      assisting the Company in planning communications strategies and tactics in connection with the Chapter 11 Cases and developing associated restructuring communications materials for all critical stakeholder audiences;

o.      building a restructuring microsite;

p.      assisting the Company in leak mitigation and media relations support in connection with the Chapter 11 Cases; and

q.      rendering such other general business consulting, contingency planning, bankruptcy services, or such other assistance as mutually agreed to between FTI and the Company.

### PROFESSIONAL COMPENSATION

6.      Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee Guidelines, and the Local Bankruptcy Rules, FTI will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by FTI in accordance with the procedures described in the Application.

7.      FTI's fees for professional services are based on the time incurred in providing the services, multiplied by FTI's customary hourly rates, which are the same for bankruptcy and non-bankruptcy matters of this type.  The customary hourly rates, subject to periodic adjustments, charged by FTI professionals anticipated to be assigned to the Chapter 11 Cases are as follows:

| Professional | Hourly Billing Rate |
| --- | --- |
| Senior Managing Directors (including the CRO) | $895 to $1,195 |
| Directors/Senior Directors/Managing Directors | $670 to $880 |
| Consultants/Senior Consultants | $355 to $640 |
| Administrative/Paraprofessionals | $145 to $275 |

8.      FTI has advised the Debtors that the hourly rates set forth above are subject to periodic increases in the normal course of the FTI's business, often due to the increased experience of a particular professional.  FTI will provide notice of any rate increases to the Debtors, the U.S. Trustee, the Creditors' Committee, and any official committee appointed in these cases.

9.      To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these Chapter 11 Cases.

### INDEMNIFICATION PROVISIONS

10.     As set forth in the Original Engagement Letter, the Debtors agreed to indemnify FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees, from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation), arising out of or relating to the Debtors' retention of FTI, except to the extent that any such claim, liability, damage, obligation, cost or expense resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons.  The indemnification provisions contained in sections 6.1 to 6.2 of the Standard Terms and Conditions attachment of the Engagement Letter (collectively, the "**Indemnification Provisions**") are customary and reasonable for financial advisory engagements, both in court and out-of-court.

11.     The Original Engagement Letter was effective postpetition from the Petition Date through February 22, 2020.  On February 23, 2020, FTI and the Debtors executed the Engagement Letter, which replaces and supersedes the Original Engagement Letter.  Therefore, I understand that the Indemnification Provisions only apply to indemnification claims that arose between the Petition Date and the effective date of the Engagement Letter.

12.     The Order provides that the Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and

directors under the corporate bylaws and applicable state law, along with insurance coverage

under the Debtors' director and officer insurance policy.

## DISPUTE RESOLUTION PROVISIONS

13.    The Debtors and FTI have agreed, in accordance with the terms of the

Engagement Letter and subject to the Court's approval of this Application, that the Bankruptcy

Court shall have exclusive jurisdiction in relation to any claim, dispute, or difference concerning

the Engagement Letter and any matter arising from it.  Further, FTI has agreed not to object to

any action being brought in the Bankruptcy Court, to claim that the action has been brought in an

inconvenient forum, or to claim that the Bankruptcy Court does not have jurisdiction.  Finally,

the Debtors and FTI have agreed not to demand a trial by jury in any action, proceeding, or

counterclaim arising out of or relating to the Services or any such other matter.

## DISINTERESTEDNESS AND ELIGIBILITY

14.    In connection with the preparation of this Declaration, FTI conducted a review of

its contacts with the Debtors, their affiliates, and certain entities holding large claims against or

interests in the Debtors that were made reasonably known to FTI.  A listing of the parties

reviewed is reflected on **Exhibit 4** to this Declaration.  FTI's review, completed under my

supervision, consisted of a query of the **Exhibit 4** parties within an internal computer database

containing names of individuals and entities that are present or recent former clients of FTI.  A

summary of such relationships that FTI identified during this process is set forth on **Exhibit 5** to

this Declaration.

15.    Based on the results of this review, FTI does not have a relationship with any of

the parties on **Exhibit 4** in matters related to these proceedings.  Further, FTI has not represented

and will not represent any parties other than the Debtors in these Chapter 11 Cases.  FTI has

provided and could reasonably be expected to continue to provide services unrelated to the

Debtors' cases for the various entities shown on **Exhibit 5**.  FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, or engineering and scientific investigation consulting services.  To the best of my knowledge, no services have been provided to these parties in interest which involve their rights in the Debtors' cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

16.     Prior to the Petition Date, FTI's Forensic Litigation & Consulting business segment was previously engaged by Ponderay Newsprint Company, a partially-owned, non-Debtor affiliate, to assist in litigation for damages claimed by a utility company.  This engagement is no longer active and was not related to the Debtors' Chapter 11 Cases.

17.     Upon review of its client database, FTI has learned that it is regularly retained by the administrative agent and/or other members of the Debtors' lending group (or law firms retained by the administrative agent or lending group members) in matters unrelated to this engagement.

18.     Further, as part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in the Debtors' Chapter 11 Cases.  Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases.  Based on our current knowledge of the professionals involved, and to the best of my

knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

19.     According to FTI's books and records, during the ninety (90) day period prior to the Petition Date, FTI received approximately $2.6 million from the Debtors for professional services performed and expenses incurred.  FTI's current estimate is that it has received unapplied advance payments from the Debtors in excess of prepetition billings in the amount of $128,000 (the "**Cash on Account**").

20.     The Debtors and FTI have agreed that any portion of the Cash on Account not used to compensate FTI for its prepetition services and expenses will be held and applied against its final postpetition bill and will not be placed in a separate account.  As of the Petition Date, FTI did not hold any claim against the Debtors, and any such claims are waived.

21.     FTI does not believe it is a "creditor" with respect to fees and expenses of any of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtors' stock.

22.     Accordingly, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors.  It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, FTI will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014.

23.     For all of the above reasons, the proposed retention is reasonable, customary, necessary, appropriate, and in the best interests of all parties in interest.

**WHEREFORE,** pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury

that the foregoing statements are true and correct to the best of my knowledge, information, and

belief.

Dated: New York, New York
        February 26, 2020

*/s/ Sean M. Harding*
Sean M. Harding
Senior Managing Director
FTI Consulting, Inc.

## <u>EXHIBIT 1</u>

**July 31, 2019 Engagement Letter**



Corporate Finance

PRIVATE & CONFIDENTIAL

July 31, 2019

Ms. Elaine Lintecum
Chief Financial Officer
The McClatchy Company
2100 Q Street
Sacramento, CA 95816

Re: <u>McClatchy Financial Advisor Engagement</u>

Dear Ms. Lintecum:

1. **Introduction**

   This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, The McClatchy Company] (the "Company"), to provide certain financial advisory and consulting services (the "Services") set out below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2. **Scope of Services**

   The Services, to be performed at your direction, are expected to include the following:

   - Assist the Company in developing restructuring alternatives;
   - Assist in the development of an integrated 3-statement model to address restructuring alternatives;
   - Assist in negotiations with the PBGC and other creditors;
   - Other financial advisory services mutually agreeable to the Company and FTI

   **Phase I of this engagement will consist of assisting the development of the integrated 3-statement model to address the restructuring alternatives. FTI anticipates that this will be approximately 3-4 weeks in duration.**

   The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

   The Services, as outlined above, are subject to change as mutually agreed between us.

   FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you

The McClatchy Company
July 31, 2019

and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees and Cash on Account**

Fees in connection with this Engagement will be based upon the time incurredproviding the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $895 - 1195 |
| Directors / Senior Directors / Managing Directors | 670 - 880 |
| Consultants/Senior Consultants | 355 - 640 |
| Administrative / Paraprofessionals | 145 - 275 |

Sean Harding and Ken Harding will be the overall engagement leaders on this project. Their hourly rate is $960. Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

The fees associated with Phase I of this engagement are estimated at $200,000 and FTI will not exceed this amount without obtaining approval from the Company. During Phase I and

The McClatchy Company
July 31, 2019

throughout the Engagement, FTI will provide regular updates to the Company regarding the amount of fees incurred on the Engagement.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $100,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

The McClatchy Company
July 31, 2019

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

4.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of

The McClatchy Company
July 31, 2019

engagement, undertakings, agreements, understandings, correspondence and other
communications, whether written or oral, regarding the Services.

5.    **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you,
we have undertaken a limited review of our records to determine FTI's professional
relationships with the Company, the administrative agent and secured lender.  As you may be
aware, FTI is regularly retained by the administrative agent and/or other members of your
lending group (or law firms retained by the administrative agent or lending group members).
However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or
additional relationships that we believe would preclude us from performing the Services.
However, as you know, we are a large consulting firm with numerous offices throughout the
United States.  We are regularly engaged by new clients, which may include one or more of
the Potentially Interested Parties.  The FTI professionals providing services hereunder will not
accept an engagement that directly conflicts with this Engagement without your prior written
consent.

6.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing
both the confirmation below and the attached Standard Terms and Conditions and returning a
copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please
do not hesitate to contact Sean M. Harding at 404-460-6258.

Yours faithfully,


FTI CONSULTING, INC.

By:    _____
Sean M. Harding
Senior Managing Director


Attachment – As stated

The McClatchy Company
July 31, 2019

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached
Standard Terms and Conditions.**

The McClatchy Company

By:

Ms. Elaine Lintecum
Chief Financial Officer

Date:  8/2/19

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with The McClatchy Company dated July 31, 2019.   The Engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.  Additional Services**

3.1  **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

**4.  Confidentiality**

4.1  **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1  is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2  is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3  is or has been independently developed by the recipient.

4.2  **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3  **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4  **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5  **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6  If this Engagement involves the processing of personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the Data Protection Schedule attached hereto as Schedule B shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of Schedule B, the terms of Schedule B shall prevail in relation to the processing of such personal data. If such personal data is processed in connection with this Engagement, the Company shall notify FTI in writing before any personal data is disclosed to FTI.

**5.  Termination**

5.1  **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2  **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.  Indemnification, Liability Limitation, and Other Matters**

6.1  **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2  **Limitation of liability** - You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7.     Governing Law, Jurisdiction and WAIVER OF JURY TRIAL**

7.1  **Governing Law** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York (, without giving effect to the choice of law provisions thereof.

7.2  Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3  **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

The McClatchy Company

By: _____

Ms. Elaine Lintecum
Chief Financial Officer

Date: _____8/2/19_____

**<u>SCHEDULE A</u>**

**STANDARD RELEASE LETTER**

**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting, Inc.

Dear Mr./Ms. _____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting, Inc. ("FTI") has performed certain procedures to assist Client in connection with the _____. We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**. **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report. **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report. Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By:    _____
            (Name of Company official

Title:    _____

Date:    _____

**SCHEDULE B**

## FTI CONSULTING DATA PROTECTION SCHEDULE

This Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**").

1.    Definitions

1.1    In this Schedule, unless otherwise defined herein, all defined terms shall have the meaning set out in the Contract.

1.2    In this Schedule, the following terms shall have the meanings set out below:

      1.2.1    "Data Protection Laws" means applicable legislation protecting the personal data of natural persons and governing the processing of that data, including in particular the GDPR and any national legislation which supplements the GDPR, together with binding guidance and codes of practice issued from time to time by relevant supervisory authorities;

      1.2.2    "GDPR" means the General Data Protection Regulation (EU) 2016/679;

      1.2.3    "Personal Data", "Process", "Controller", "Processor", "Data Subject", "Supervisory Authority" and "Personal Data Breach" shall have the meanings given to them in the Data Protection Laws; and

      1.2.4    "Standard Contractual Clauses" means the standard contractual clauses for the transfer of personal data to controllers established in third countries which do not ensure an adequate level of protection as set out in Commission Decision C(2004)5721, as updated, amended, replaced or superseded  from time to time by the European Commission

2.    Controller Terms

2.1    FTI and the Client will each act as separate and individual Controllers in relation to any Personal Data (including, without limitation, Personal Data relating to any of the Client's workers, FTI's workers, any litigation or arbitration opponent or customer or vendor or transaction partner) Processed by the Client or FTI to deliver the services set out under the Contract.

2.2    FTI and the Client will each comply with its own respective obligations under the Data Protection Laws in relation to their Processing of Personal Data under the Contract. In particular, the Client will ensure that any disclosures of Personal Data to FTI are lawful, and, in each case where necessary under the Data Protection Laws, the Client has notified and secured the consent of the relevant Data Subjects.

2.3    FTI may appoint Processors as required to deliver the services, who will process the Personal Data on FTI's behalf and at FTI's direction. Further, FTI may disclose Personal Data to other Controllers where necessary to deliver the services (including, but without limitation, law firms, accountants, other third party experts and any member of the FTI Group), or pursuant to a legally binding written request, an

order or request of a court of competent jurisdiction or any governmental or regulatory authority or where disclosure is required by applicable law or regulation.

2.4    The Client acknowledges and agrees that FTI is located outside of the European Economic Area, and that certain Processors or Controllers engaged by FTI under paragraph 2.3 may also be located outside of the European Economic Area. In respect of onward transfers by FTI to other Controllers or Processors, FTI will take steps in accordance with the Data Protection Laws to ensure an adequate level of protection for the Personal Data Processed by such Processors or Controllers. In particular, the Client acknowledges that FTI may transfer Personal Data to FTI Consulting, Inc. in reliance upon its certification under the EU - US Privacy Shield scheme.

2.5    The Client acknowledges that FTI's email records are replicated onto a Microsoft 365 Cloud system in the United States of America and the Client hereby consents that any Personal Data that is provided to FTI by email will be replicated accordingly. To the extent that the Client wishes to transmit certain information or data to FTI and the Client objects to that data being replicated in accordance with this paragraph, the Client will use a communication or transmission method other than e-mail or will use an alternative e-mail system.

## <u>EXHIBIT 2</u>

**November 8, 2019 Engagement Letter Amendment**



Sean M. Harding
FTI Consulting, Inc.
1201 W. Peachtree St.
Atlanta, GA 30309
404.460.6258
Sean.harding@FTIConsulting.com

PRIVATE & CONFIDENTIAL

November 8, 2019

Ms. Elaine Lintecum
Chief Financial Officer
The McClatchy Company
2100 Q Street
Sacramento, CA 95816

Re: <u>McClatchy Financial Advisor Engagement</u>

Dear Mr. Robins:

This letter serves to amend certain terms of the engagement letter dated July 31, 2019 (the "Engagement Contract") under which FTI Consulting, Inc. ("FTI"), has been retained by you, The McClatchy Company (the "Company"), to provide certain financial advisory and consulting services (the "Services").

The Scope of Services is modified to add the following:

- Assist the Company in its preparation of a potential Chapter 11 Bankruptcy filing to include working with counsel in providing due diligence items pertaining to the Bankruptcy;
- Assist the Compnay in its preparation of its Statement of Financial Affairs and Statement of Assets and Liabilities;
- Assist the Company in the preparation of the Company's Monthly Operating Reports;
- Evaluation of D&O insurance policies; and
- Other contingency planning services as mutually agreed to between FTI and the Company

All other terms and conditions of the Engagement Contract remain in full force and effect.

Please acknowledge your acceptance of the amended terms of the Engagement Contract by signing both the confirmation below and returning a copy of each to us at the above address.

If you have any questions regarding this letter, please do not hesitate to contact Sean Harding at
404.460.6258.


Yours faithfully,

FTI CONSULTING, INC.


By: _____
    Sean M. Harding
    Senior Managing Director

Confirmation of Terms of Engagement

**We agree to amend the engagement of FTI Consulting, Inc. up the terms set forth herein.**

The McClatchy Company

By:    _R Elaine Lance_

Ms. Elaine Lintecum
Chief Financial Officer

Date:    _11 / 8 / 19_

## EXHIBIT 3

**February 23, 2020 Engagement Letter**



Sean M. Harding
FTI Consulting, Inc.
1201 W. Peachtree St.
Atlanta, GA 30309
404.460.6258
Sean.harding@FTIConsulting.com

CONFIDENTIAL

February 23, 2020

Mr. Craig Forman
Chief Executive Officer
The McClatchy Company
2100 Q Street
Sacramento, CA 95816

**Re: The McClatchy Company**

Dear Mr. Forman:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between The McClatchy Company (the "Client" or "Company") and FTI Consulting, Inc. ("FTI") concerning the Client's engagement of FTI to provide certain temporary employees to the Client as described in Exhibit B (the "Services"). This Agreement is effective on [Date] (the "Effective Date"). The FTI Standard Terms and Conditions attached hereto as Exhibit "A" are also incorporated herein and forms part of this Agreement.

1.    **Temporary Officers, Hourly Temporary Employees and Services**

FTI will provide Sean M. Harding to serve as the Client's Chief Restructuring Officer (the "CRO" or "Temporary Officer") reporting to the Board of Directors ("Board") in connection with the Engagement. The Temporary Officer, as well as any additional Hourly Temporary Staff, (as defined below), shall have such duties as the Chief Executive Officer ("CEO") may from time to time determine, and shall at all times report to and be subject to supervision by the Board. Without limiting the foregoing, the Temporary Officer, as well as any Hourly Temporary Staff, shall work with other senior management of the Client, and other professionals, to provide the Services.

In addition to providing the Temporary Officers, FTI may also provide the Client with additional staff (the "Hourly Temporary Staff" and, together with the Temporary Officer, the "FTI Professionals"), subject to the terms and conditions of this Agreement. The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals reasonably satisfactory to the Board and/or Committee, as required, who shall also become Hourly Temporary Staff for purposes hereof. The initial schedule of Hourly Temporary Staff is set out on Exhibit "C". FTI will keep the CEO reasonably informed as to FTI's staffing and will not add additional Hourly Temporary Staff to the assignment without first consulting with the Client.

If our retention is approved by the Bankruptcy Court, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will

20-10419-mew    Doc 116-2    Filed 02/26/20    Entered 02/26/20 18:28:15    Exhibit B
Declaration of Sean Harding    Pg 2 of 27

1

coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

The engagement of FTI to perform the Services shall be subject to the approval of the Bankruptcy Court and shall be substantially as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court. Client agrees, at Client's expense, to file an application (the "Application") to employ FTI as crisis and turnaround manager *nunc pro tunc* to the Effective Date pursuant to § 363 of the Bankruptcy Code. The Client agrees to file all required applications, including the Application, for the employment or retention of FTI at the earliest practical time.

The Services do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Client at Client's expense; or (ii) investment banking, including valuation or securities analysis, including advising any party or representation of the Client on the purchase, sale or exchange of securities or representation of the Client in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Client to provide any investment banking or broker-dealer services. The Client agrees to supply office space, and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

2.     **Compensation to FTI**

Fees in connection with this Engagement will be based upon the time incurredproviding the Services, multiplied by our standard hourly rates, summarized as follows:

|  | United States Per Hour (USD) |
|---|---|
| Senior Managing Directors | $920 – 1,295 |
| Directors / Senior Directors / Managing Directors | 690 –   905 |
| Consultants/Senior Consultants | 370 –   660 |
| Administrative / Paraprofessionals | 150 –   280 |

Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Further, if FTI and/or any of its emloyees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

**Cash on Account:**

FTI will transfer the funds held on account pursuant to the Engagement Contract dated July 31, 2019, the First Addendum dated November 8, 2019, and the Second Addendum dated December 30, 2019, betewen the Company and FTI, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and 20-10418-mew  Doc 116-2  Filed 02/26/20  Entered 02/26/20 16:25:16  Exhibit B
Declaration of Sean Harding  Pg 32 of 50 costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

After the Company's entities became a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements.

Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) shall be held by us and applied against the final fee application filed and approved by the court.

Additional Provisions Regarding Fees:

a) FTI may stop work or terminate the Agreement immediately upon the giving of written notice to the Client (i) if payments are not made in accordance with this Agreement, (ii) if the Application is not approved by the Bankruptcy Court, (iii) if the Chapter 11 case is dismissed or converted to a Chapter 7 proceeding, or (iv) if a Chapter 11 Trustee or other responsible person is appointed.

b) If, and only if, local Bankruptcy rules or the order approving the Application so require, FTI shall file with and serve on creditors entitled to notice thereof, a statement of staffing, professional services, compensation or expenses, on a quarterly basis, or as the Bankruptcy Court or rules may direct, and creditors and other parties in interest shall have an opportunity to object thereto and request a hearing thereon. (ii) In the event that FTI is employed post-petition as a "professional person" pursuant to § 327 of the Bankruptcy Code, Bankruptcy Court approval will generally be required to pay FTI's fees and expenses for Post-petition Services. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Client agrees that in this situation it will, at the Client's expense, request the Bankruptcy Court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the Bankruptcy Court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our Engagement.

c) Any unpaid post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Client understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Client shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless administrative claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

d) Client agrees that FTI is not an employee of the Client and the FTI employees and independent FTI contractors who perform the Services are not employees of the Client, and they shall <u>not</u> receive a W-2 from the Client for any fees earned under this engagement, and such fees are not subject to any form of withholding by the Client. The Client shall provide FTI a standard form 1099 on request for fees earned under this Engagement.

e) Copies of Invoices shall be sent by facsimile or email as follows:

<u>To the Client at</u>:
The McClatchy Company
2100 Q Street
Sacramento, CA 95816

<u>Attention</u>: Craig Forman

**Additional Provisions Regarding Fees:**
If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

## 3.  Availability of Information

In connection with FTI's activities on the Client's behalf, the Client agrees (i) to furnish FTI with all information and data concerning the business and operations of the Client which FTI reasonably requests, and (ii) to provide FTI with reasonable access to the Client's officers, directors, partners, employees, retained consultants, independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this agreement.

## 4.  Notices

Notices under this Agreement to the Client shall be provided as set forth in paragraph 2(e).

Notices to FTI shall be to:
1201 West Peachtree St. Suite 500
Atlanta, GA 30309
Attn: Sean M. Harding
Phone: 404-460-6258
Fax: 404-460-6230
Email: sean.harding@fticonsulting.com

Notices shall be provided by (a) fax and email, (b) hand delivery, or (c) overnight delivery. If provided by fax and email or hand delivery, they shall be deemed effective the date given. If provided by overnight delivery, they shall be deemed effective on the date of actual receipt.

20-10418-mew   Doc 116-2   Filed 02/26/20   Entered 02/26/20 18:28:15   Exhibit B
Declaration of Sean Harding   regarding   Pg 35 of 60

## 5.  Miscellaneous

This Agreement: represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns; may be executed by facsimile (followed by originals sent via regular mail), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same

instrument; and may not be waived, modified or amended unless in writing and signed by a representative of the Client and FTI. The provisions of this Agreement shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof.

Based on our understanding of the parties involved in this matter, we have compiled a list of interested parties (the "Potentially Interested Parties") and have undertaken a limited review of our records to determine FTI's professional relationships with the Company and such Potentially Interested Parties. From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

If this letter correctly sets forth our understanding, please so acknowledge by signing below and returning a signed copy of this letter to us.

Very truly yours,

FTI CONSULTING, INC.

By: _____

Name: Sean M. Harding
Title: Senior Managing Director


ACCEPTED AND AGREED this 23rd day of February 2020

On behalf of The McClatchy Company

By: _____

    Name: CLAIG FORMAN
    Title: CEO

Date: _____

# EXHIBIT A

# FTI CONSULTING, INC.

# STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with the McClatchy Company dated as of February 23, 2020 (the "Engagement Letter"). The Engagement Letter and these Standard Terms and Conditions annexed thereto (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1.  **Reports and Advice**

1.1  **Use and purpose of advice and reports**— Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2.  **Information and Assistance**

2.1  **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2  **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3  **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4  **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

20-10418-mew   Doc 116-2   Filed 02/26/20   Entered 02/26/20 18:29:18   Exhibit 2-5
Declaration of Sean Harding   together with Exhibits 1-5   Pg 38 of 60

3. **Additional Services**

3.1 **Responsibility for other parties**— You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract (including section 2 of the Engagement Letter with respect to the retention of certain agents and independent contractors), we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

4. **Confidentiality**

4.1 **Restrictions on confidential information**— All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient (without the use of confidential information).

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that we shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies; *provided*, that we shall keep such materials confidential in accordance with the terms of this Engagement Contract.

5. **Termination**

5.1 **Termination of Engagement with notice**— Termination of Engagement with notice –This Agreement is terminable by the Client or by FTI at any time upon the giving of thirty (30) days written notice. Upon such termination by the Client (the "Termination Date"), FTI shall cease work and the Client shall have no further obligation for fees and expenses of FTI arising or incurred after the Termination Date, provided, however, that, notwithstanding any termination by the Client or by FTI in the circumstances described in

paragraph (a) under "Additional Provisions Regarding Fees" in the Engagement Letter,

a) The Client shall reimburse FTI for its out-of-pocket expenses (the "Termination Expenses") incurred in connection with commitments made by FTI prior to the Termination Date with respect to advance travel arrangements reasonably incurred, to the extent FTI is unable to obtain refunds of such expenses. FTI shall provide the Client with reasonable documentation to substantiate all Termination Expenses for which payment is requested; and

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6. **Indemnification, Insurance and Liability Limitation**

6.1 **Indemnification** – The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

Subject to any limitation post-petition required by the Bankruptcy Court, the Client agrees to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Client, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Application shall include the assumption by the Client of FTI's right to indemnification in respect of its actions under this Agreement prior to the Petition Date. The Indemnified Party shall promptly forward to the Client all written notifications and other matter communications regarding any claim that could trigger the Client's indemnification obligations under this Section 6. If the Client so elects or is requested by an Indemnified Party, the Client will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Client, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Client, or if the Client fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Client will pay the reasonable fees and disbursements of such counsel; provided, however, that the Client will not be required to pay the

fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Client assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Client further agrees that the Client will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Client has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Client's indemnification obligations under this Section 6 without the written consent of the Client, which shall not unreasonably be withheld or delayed or conditioned. The Client will not be liable for any settlement of any action, claim, suit or proceeding affected without the Client's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Client or if there be a final judgment for the plaintiff, the Client agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

6.2    **Insurance** –In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party.. The Client agrees to use commercially reasonable best efforts to (i) include Sean Harding serving as CRO and any other FTI personnel who assume officer or director positions with the Client or who perform Services hereunder, FTI and its agents, employees, officers, subcontractors, directors, joint venture partners and members, as insureds under the Client's directors and officers insurance; and (ii) unless it is unable to

do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Client has the right to or is otherwise able to purchase) covering the period of FTI's service. In connection with this engagement Client represents to FTI that Client hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Client, threatened (nor is Client aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Client; and (iii) Client has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Client responsibility or liability under such laws and regulations.

6.3  **Limitation of liability** – You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

7.  **Governing Law, Jurisdiction and WAIVER OF JURY TRIAL** — The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The Bankruptcy Court having jurisdiction over the Client's Bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

**Confirmation of Standard Terms and Conditions**

Subject to the terms and conditions of the Engagement Letter, we agree that FTI Consulting, Inc. is engaged upon the terms set forth in these Standard Terms and Conditions as outlined above.

**On behalf of The McClatchy Company**

20-10418-mew  Doc 116-2  Filed 02/26/20  Declaration of Sean Harding  together with Exhibits 1-5  Pg 42 of 60

By: _____

Name:  Craig Forman

Title:  CEO

Date: _____

# EXHIBIT B

## SCOPE OF SERVICES

The Services, to be performed at your direction, are expected to include the following:

1. **Chief Restructuring Officer**
   1.1 Subject to FTI's internal approval from its risk management team, confirmation that the Company has a Directors and Officers Liability insurance policy in accordance with Section 6 of the FTI Standard Terms and Conditions attached in Exhibit "A", and a copy of the signed Board of Directors' resolution (or similar document) as official confirmation of the appointment, FTI will Serve as the Company's Chief Restructuring Officer ("CRO") to lead the Company's restructuring efforts, reporting directly to the Board of Directors;
   1.2 Sean Harding will serve in the CRO role. In his capacity as CRO, Mr. Harding will be granted the right to attend and participate (but not vote) in the meetings of the Board of Directors of the Company as an observer (such role referred to as "Board Observer"). Mr. Harding will be assisted by additional FTI employees, as necessary ("Hourly Temporary Staff");

2. **Cash Management and Projections**
   2.1 Preparation of the Company's 13-week cash flow budget and Debtor-in-Posession cash flow budget;
   2.2 Assist management in managing and controlling cash disbursements;
   2.3 Develop with assistance of management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested;

3. **Situational Assessment** – assess current situation and determine solution for highest and best recovery and recommend appropriate strategic alternative;

4. **Other** – assist with such other accounting and financial matters as requested by the Company and/or the Board of Directors and not duplicative of services provided by other professionals;

5. In consultation with the Chief Executive Officer and/or the Chief Financial Officer, and subject to the Board's approval, the authority and corporate authority to: (a) open and close bank accounts for the Company, (b) transfer funds of the Company, (c) cause the Company to pursue, settle or compromise any litigation, controversy or other dispute involving the Company, (d) cause the Company to borrow funds and to pledge any of its assets in order to pay the working capital needs of the Company, (e) cause the Company to exercise the Company's rights under the Company's agreements and other agreements in favor of the Company, and (f) cause the Company to take any other action which the CRO, in good faith, determines to be necessary, prudent or appropriate under the circumstances;

20-10419-mew   Doc 116-2   Filed 02/26/20   Entered 02/26/20 16:26:47   Declaration of Sean Harding  together with Exhibits 1-5   Pg 43 of 60

6. Assist the Company in its preparations of any required motions throughout the course of a potential Chapter 11 Bankruptcy filing;

7. Assist the Compnay in its preparation of its Statement of Financial Affairs and Statement of Assets and Liabilities;

8. Assist the Company in the preparation of the Company's Monthly Operating Reports;

9. Assist the Company with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

10. Analyzing creditor claims by type, entity and individual claim, including assisting with development of databases, as necessary, to track such claims in a potential Chapter 11 Bankruptcy filing;

11. Assist the Company in planning communications strategies and tactics in preparation for a potential Chapter 11 Bankruptcy filing;

12. Develop associated restructuring communications materials for all critical stakeholder audiences;

13. Build a restructuring microsite;

14. Assist the Company in leak mitigation and media relations support leading up to and surrounding a potential Chapter 11 filing; and,

15. Other general business consulting, contingency planning, Bankruptcy services, or such other assistance as mutually agreed to between FTI and the Company.

# EXHIBIT C

## INITIAL SCHEDULE OF HOURLY TEMPORARY STAFF

| Staff | Level | Hourly Rate |
|---|---|---|
| Louis Colasuonno | Senior Advisor I | $925 |
| Spencer Ante | Managing Director | $760 |
| Rachel Chesley | Managing Director | $760 |
| Keith Colton Jr | Director | $725 |
| Michael Yoshimura | Director | $725 |
| Jonathan Sperry | Director I | $550 |
| Justin Schwartz | Director | $500 |
| Eric Brown | Senior Consultant | $630 |
| Matthew Gleason | Senior Consultant I | $450 |
| Hampton Kicklighter | Consultant | $370 |
| Katharine Rosenthal | Consultant I | $350 |
| Sabrina Negron Christianson | Consultant I | $350 |
| Jacqueline Napolitano | Consultant I | $350 |

20-10418-mew   Doc 116-2   Filed 02/26/20   Entered 02/26/20 18:28:15   Exhibit B:
Declaration of Sean Harding   together with Exhibits 1-5   Pg 45 of 60

## EXHIBIT 4

**Listing of Parties in Interest Reviewed for Current Relationships**

**Exhibit 4**

<u>**Listing of Parties in Interest Reviewed for Current Relationships**</u>

<u>**Debtor Entities**</u>

The McClatchy Company
Cypress Media, Inc.

Aboard Publishing, Inc.
Bellingham Herald Publishing, LLC
Belton Publishing Co, Inc.
Biscayne Bay Publishing, Inc.
The Bradenton Herald, Inc.
Cass County Publishing Co.
The Charlotte Observer Publishing Company
Columbus Ledger-Enquirer, Inc.
Cypress Media, LLC
East Coast Newspapers, Inc.
El Dorado Newspapers
Gulf Publishing Company, Inc.
Herald Custom Publishing of Mexico, S.de R.L. de C.V.
HLB Newspapers, Inc.
Idaho Statesman Publishing, LLC
Keltatim Publishing Co., Inc.
Keynoter Publishing Company, Inc.
Lee's Summit Journal, Inc.
Lexington H-L Services, Inc.
Macon Telegraph Publishing Company
Mail Advertising Corp.
McClatchy Big Valley, Inc.
McClatchy Interactive LLC
McClatchy Interactive West
McClatchy International Inc.
McClatchy Investment Company
McClatchy Management Services, Inc.
McClatchy News Services, Inc.
McClatchy Newspapers, Inc.
McClatchy Property, Inc.
McClatchy Resources, Inc.
McClatchy Shared Services, Inc.
McClatchy U.S.A., Inc.
Miami Herald Media Company
N & O Holdings, Inc.
The News and Observer Publishing Co.
Newsprint Ventures, Inc.
Nittany Printing and Publishing Co.
Nor-Tex Publishing, Inc.
Olympian Publishing, LLC
Olympic-Cascade Publishing, Inc.
Pacific Northwest Publishing Company, Inc.

Quad County Publishing, Inc.
San Luis Obispo Tribune, LLC
Star-Telegram Inc.
The State Media Company
The Sun Publishing Company, Inc.
Tacoma News, Inc.
Tribune Newsprint Company
Tru Measure, LLC
Wichita Eagle and Beacon Publishing Company, Inc.
Wingate Paper Company

### Non-Debtor Affiliates and Minority-Owned Affiliates

Camero Parent LLC
The Herald Charities, Inc.
The McClatchy Company Foundation
NextGen, LLC
Oak Street Redevelopment Corporation
The Observer Charities, Inc.
Partnership in Education, Inc.
Ponderay Newsprint Company
Seattle Times Company
Star-Telegram Charities, Inc.
The Sun News Educational Foundation, Inc.
TKG Internet Holdings II, LLC
Topix, LLC

### Current Directors and Officers

Ballantine, Elizabeth
Barnes, Leroy
Berg, Tony
Dowis, Dan
Farr, Peter
Forman, Craig
Glines, Sara
Haimer, Darren
Joshi, Anjali
Lintecum, Elaine
Mahone, Rodney
Maloney Evangelisti, Molly

Manuel, Scott
McClatchy Maloney, Brown
McClatchy, Kevin
McClatchy, William B.
McConkey, Billie
Mitchell, Theodore
Ostler, Clyde
Pergam, Andrew
Roberts, Kristin
Thomas, Maria
Wortel, Gary

## Former Directors and Officers

Borton, Sara
Burke, Sean
Caulkins, Ann
Friday, Rufus
Geiger, Terry
Grieve, Tim
Hendricks, Chris
Leithauser, Debra
Nussbaum, Kim

Ravindran, Vijay
Santostefano, Janet
Segal, Jeanne
Shepherd, Stephanie
Villoch, Alexandra
Wall, Shannon
Zeeck, David
Zieman, Mark

## Restructuring Professionals and Special Counsel to the Debtors

Evercore, Inc.
FTI Consulting, Inc.
Groom Law Group, Chartered
Kurtzman Carson Consultants LLC
Skadden, Arps, Slate, Meagher & Flom LLP
Togut, Segal & Segal LLP

## Professionals Used in Last Three Years

Allied Law Group
Armstrong Law Firm
ATRS Consulting Inc.
Baker Barwick Ravenel and Bender
Ballard Spahr LLP
Barkin Law Group LLP
Bower Law Associates, PLLC
Brooks Pierce
Brown Rudnick
Bruce A. Owdom
Bryant Miller Olive P.A.
Bussian Law Firm, PLLC
Cannata, Otoole, Fickes & Olson LLP
Carl F. Muller, Attorney at Law
Carlton Fields PA
CliftonLarsonAllen LLP
Cobalt LLP
Cotten Schmidt & Abbott, LLP
CPT Group, Inc.
CT Corporation System
Davis & Harman LLP
Davis Wright Tremaine LLP
Delbello Donnellan Weingarten Wise
Deloitte & Touche LLP
Diepenbrock Elkin Gleason LLP
DLA Piper LLP US

Donald M Craven PC
Dowling Aaron Incorporated
Dowling, Aaron & Keeler, Inc.
Downey Brand Attorney LLP
Emmet, Marvin & Martin LLP
Eric Feig Entertainment & Media Law
Ernst & Young LLP
Essex Richards Attorneys at Law
Exequity LLP
Felderstein Fitzgerald Willoughby Pascuz
Fleeson Gooing Coulson & Kitch LLC
Fox Rothschild LLP
Gibson, Dunn & Crutcher LLP
Givens Purlsey LLP
Gladstone Place Partners LLC
Gordon Thomas Honeywell
Greenberg Traurig LLP
Gunderson Dettmer
Hagwood Adelman Tipton, PC
Haynes & Boone LLP
Hogan Lovells LLP
Holland & Hart LLP
Holland & Knight
Hopkins & Carley
Hull Barrett Pc
Jassy Vick Carolan LLP

Jay Allen Eisen Law Corporation
Jessica Jones Holcombe
John P Fleck
Jones Day
Jones Walker LLP
JP Morgan Chase Bank, N.A.
Katzke & Morgenbesser
Keller Rohrback LLP
Kilpatrick Townsend & Stockton, LLP
Lathrop Gage Law Offices
Law Offices of Stephen J. Burns
Law Offices of William C. Hahesy
LDiscovery TX, LLC
Lee Hecht Harrison LLC
Lee Litigation Group, PLLC
Levine Sullivan Koch & Schultz  LLP
Lewis Brisbois Bisgaard & Smith LLP
Lewis Rice LLC
Manko, Gold, Katcher & Fox LLP
Maxwell E Kantsch
Mayer Brown LLP
McGuire Woods LLP
Mercer USA Inc
Miller Griffin and Marks
Milstein Law Group
Morningstar Law Group
Morris  Nichols  Arsht & Tunnell LLP
Neville Richards & Wuller
Noble Financial Capital Markets
O'Melveny & Myers LLP

Orrick Herrington & Sutcliffe LLP
Paul Weiss Rifkind Wharton Garrison LLP
Pendergrass Law Firm, PLLC
Perkins Coie
Peterson Bernard
Polsinelli PC
Porzio Bromberg & Newman, PC
Ram & Olson LLP
Rawle & Henderson LLP
Reed Smith LLP
Rettig Forgette Iller Bower LLP
Richards, Layton & Finger, P.A.
Rocaton Investment Advisors LLC
Ronald B Cox Attorney at Law
RSM US LLP
Shullman-Fugate PLLC
Steven Marc Soloman
Stevens Martin Vaughn & Tadych PLLC
Stoll Keenon Ogden PLLC
Summit Tax Consulting Inc.
The Meyers Law Firm LLC
Thomas & Locicero
Towers Watson
White & Case LLP
Wilson Sonsini Goodrich & Rosati
Wise Carter Child & Caraway
Wolf & Sultan
Wolfson Law Firm
Wyrick Robbins Yates & Ponton
Young Clement Rivers, LLP

**Parties to Litigation**

Blythe, Anne
Bowers, Eric
Carroll, Terra
Chastain, Clay
Ferro, Shelly
Guo, Wengui
Nunes, Devin
Rodeiro, Manuel
Sandoval, Hernando
Storm, Robert
Vibe-Ener, Johanna Maria
Williams, Dennis
Yang, Cindy

**Parties to Litigation - Counsel**

Biss, Stevin
Callahan & Blaine
Carroll, Terra
Dement Askew, LLP
Everett, Gaskins, Hancock LLP
Georgeson and Belardinelli
Goldenberg Heller & Antognoli, P.C.
Law Office of Eddy O. Marban
Law Offices of Bram Gechtman, PA
McConnell, Wagnor, Sykes & Stacey
Murray, Gilmur R
Palm Beach Law Offices
Ross & Voytas, LLC
Seiler Epstein Ziegler & Applegate, LLP
Silverio & Hall P.A.

**Top 30 Creditors**

Adobe Systems, Inc
Adswerve, Inc
Alorica Inc
Andrew Distribution Inc
Bank of New York Mellon
Brightcove Inc
Bulkley Dunton Publishing Group
Dallas Morning News
Datamatics Technologies
Dow Jones And Co Inc
Endava Inc
Facebook Inc
Gannett Supply Corporation
Google Inc
Infosys Bpo
Jobvite Inc
Johnson Controls
Linkedin Corporation
Pension Benefit Guaranty Corporation
Pruitt, Gary
Ryder Integrated Logistics
Simpli Fi Holdings Inc
Site Impact Llc
Socialflow Inc
Solo Printing Inc
Solutions Through Software Inc
Times News
Tribune Direct
Usa Today
Wipro Limited

**Equity Holders of Greater Than 5%**

Bestinver Gestion SA SGIIC
Bluestone Financial Ltd. / Spanish Broadcasting
Chatham Asset Management LLC
Cobas Asset Management SGIIC SA
Leon Cooperman
McClatchy, Charles K.
McClatchy, James B.
Maloney Stiles, Sue
Maloney Evangelisti, Molly


**ABL Lender**

Wells Fargo Bank, N.A.


**First Lien Noteholders of Greater Than 5%**

Bank of New York Mellon
Barclays PLC
Barclays Capital Inc.
Brigade Capital Management, LP
Chatham Asset Management, LLC
Goldman Sachs & Co, LLC
Goldman Sachs Bank USA
JPMorgan Chase Bank NA
J.P. Morgan Securities LLC
US Bank NA


**Second and Third Lien Noteholders of Greater Than 5%**

Chatham Asset Management, LLC


**Unsecured Noteholders of Greater Than 5%**

Bank of New York Mellon
BofA Securities, Inc.
Charles Schwab & Co., Inc.
JPMorgan Chase Bank NA
J.P. Morgan Securities LLC
Merrill Lynch, Pierce, Fenner & Smith Incorporated
PNC Bank, NA
Wells Fargo Bank, NA
Wells Fargo Clearing Services, LLC

**Indentured Trustees**

The Bank of New York Mellon
Bank of Oklahoma


**Underwriters of Securities**

Credit Suisse Group AG
J.P. Morgan Securities LLC


**Other Major Negotiating and Contract Counterparties**

Choate, Hall & Stewart LLP
Citizens Bank, N.A.
Ducera Partners LLC
Encina Business Credit, LLC
Encina Business Credit SPV, LLC
GLC Advisors & Co., LLC
Jefferies LLC
Kramer Levin Naftalis & Frankel LLP
Morgan, Lewis & Bockius LLP
Paul Weiss Rifkind Wharton Garrison LLP
Reed Smith LLP
TD Bank, N.A.


**Major Lease Counterparties**

1235 Glenhaven Court LLC
7D Development at Herald Building, LLC
920 Warehouse Complex, Inc.
BCC Puyallup, LLC
Benjamin Evans Law Firm LLC
Berry Avenue, Inc., John Jackson, Jr., John Jackson, Sr., Donald Ekstrom, Joanne Latona, Francine
    Jackson dba 8200 Berry Associates
Betty Meyers
Bird Wingate, LLC
Blake Real Estate, Inc.
Bloch Keene LLC
BPMP Investments, LLC
C & L Properties
Caltronics Business Systems
Canon Solutions America, Inc.
Cherry Street Properties, LLC
Chiquita Brands L.L.C.
Church of the Resurrection -- United Methodist
City of Fresno
City of Sacramento
Clarke Investments, LP

Cluster Group LP
COECO Financial Services
Collegian, Inc.
D.J. Harrison Holdings, LLC
Dave Deison, CPA
David M. Smith
Digital Office Systems, Inc.
Echo Locum Tenens, Inc.
Edna Valley Office Building, LLC
Escallier-Kaljian, LLC
Everbank Commercial Finance, Inc.
Fiduciary Properties, Inc.
First U.S. Community Credit Union, a California Chartered Credit Union
FJM Sunrise Associates SPE, LLC
Ford Motor Credit Company, LLC
Gale Force Sports and Entertainment, LLC
Global Aeroleasing
GPA-I, LP
GreatAmerica Financial Services Corporation
GreatAmerica Leasing Corporation
Guess Road Station, Inc.
Haggen Talbot Co Limited Partnership
Highwoods Realty Limited Partnership
Hofmann Holdings, LP
ICC Owner, LLC
Ice-Masters, Inc.
JMVZ Enterprises, LLC
Karbank Holdings LLC
Kessinger/Hunter & Company, LC
La Mirage Kiffmann LLC
Lampton Realty Co.
LEAF Capital Funding, LLC
Legacy Properties
MailFinance, Inc.
Meece Rentals
Melbourne Distribution Center, LLC
Miller Enterprises of Manatee, Inc.
Minnix Ltd.
MPM Properties, LLC
NE Building, L.L.C.
Neopost
Nolabari, Inc.
Olive Drive West
OlivePark Professional Center LLC
Orlin C Munns
Paul & Susan R. Minck
Penske Logistics LLC
Penske Truck Leasing Co., L.P.
Principal Real Estate Investors
Quincey E. Cargile
Ralph L. Stancil and Louise N. Stancil

Randy Mosteller
Republic Services
Richard Gerbi
River Mill, LLC
Robert DiNapoli, Trustee and Karin DiNapoli, Trustee
Rock Hill City Plaza, LLC
Ronald E. Toomajian and Gloria E. Toomajian Declaration of Trust dated June 25, 2003
Ryder Truck Rentals, Inc.
RYLB FW Properties LP
SCG Perimeter Woods, LLC
Seagis CPK 1 LLC
Senn Profit Sharing and Agent for Lyon Trust
Shops at Nottingham Plaza, LLC
Sideline Properties II, LLC
South Forest Investors, LLC
Southern Commercial Properties, LLC
Spartina 449, LLC
State of Washington, Department of Enterprise Services
State Street Leasing, LLC
Sundance Commercial LLC
Sundance Investments, L.L.L.P.
Texas Investments, LP
The Graham Companies
The Miles Foundation, Inc.
Timber Soma 925 L Street LP
TimePayment Corp.
Times Publishing Company
TMB Real Estate Investments, LLC
Trivest Properties, LLC
Ultrex
Urban Olympia 6 LLC
US Bank
W & B Properties
W. Kenan Rand, Jr.
WaterLogic
West Pak Equipment Co.
Westcore Northgate LP
WNS Global Services, Inc.
Xerox


**<u>Surety Bond Broker and Providers</u>**

Marsh LLC
Hartford Fire Insurance Company
Western Surety Company
The Ohio Casualty Insurance Company

**Lienholders**

Bank of New York Mellon
The Bank of New York Mellon Trust Company
Leaf Capital Funding, LLC
Tri-Lift NC, Inc.
U.S. Bank Equipment Finance
Wells Fargo, N.A.

**Major Advertising Customers**

Big 5 Sporting Goods Corporation
CVS Health Corporation
Dillard's, Inc.
Dollar General Corporation
Hobby Lobby Stores, Inc.
J. C. Penney Corporation, Inc.
Kohl's Corporation
Macy's, Inc.
Menard, Inc.
Michaels Stores, Inc.
News America Marketing
Rite Aid Corporation
Rooms To Go
Staples, Inc.
Total Wine & More
Target Corporation
Ulta Beauty, Inc.
Valassis Communications, Inc.
Walgreen Company
Walmart, Inc.

**Major Vendors**

A Marketing Resource, LLC
Ad2Pro Media Solutions Private Limited
Adobe Systems, Inc
AdPerfect Dynamic Advertising Solutions Ltd.
AdSwerve, Inc
Aetna Inc
After College Inc.
AGFA Corporation
Alorica, Inc.
Andrew Distribution Inc.
Andrews McMeel Syndication
Biscayne Marketing, Inc.
Blue Waters Marketing
CCI Europe
CDW Direct, LLC

Centro Media, Inc.
Columbian Publishing Co
Courier Journal Inc.
The Dallas Morning News
Doodad Printing, LLC
Dow Jones and Co Inc
Endava Inc.
Facebook Inc.
Flint Group North America Corporation
Fujifilm North America Corp
Gannett Supply Corporation
Gatehouse Media GA Holdings Inc.
Global Ad Distribution LLC
Google Inc.
Handbill Printers LP

Herald Tribune Media Group
JTS Direct LLC
Kencorp Ent, LLC
Marsh USA Inc
Masergy Communications Inc.
McBride & Fillner Ent, LLC
Mobile Circulation Group
MPP Global Solutions Inc
OSG Billing Services
Penske Logistics LLC

Professional Courier & Newspaper Distribution Inc.
Riley Sales & Marketing
Ryder Integrated Logistics, Inc.
Simpli Fi Holdings Inc.
Solo Printing Inc
Solutions Through Software Inc
Sun Life Assurance Company
South Florida Sun Sentinel
Times News Media Group
Wipro Limited

**Insurers**

ACE American Insurance Company
Beazley Insurance Company, Inc.
Columbia Casualty Company (CNA)
Continental Insurance Co. (CNA)
Federal Insurance Co.
Fireman's Fund Insurance Co.
FM Global
Great American Insurance Co.
Liberty Mutual
Lloyd's Underwriters
Member Companies of Global Aerospace
Mutual Insurance Company Limited
National Union Fire Insurance Company of Pittsburgh, PA (AIG)
Old Republic Insurance Co
Principia (Lloyd's) / Argo Re Ltd. (Bermuda)
QBE Insurance Corporation
Safety National Casualty Corporation
The Charter Oak Fire Insurance Co (Travelers)
The Travelers Indemnity Company of America
Travelers Property Casualty Company of America
US Specialty Insurance Co.
Wright National Flood Insurance Co.
XL Specialty Insurance Co.
Zurich American Insurance Co.

**Letters of Credit Beneficiaries**

OWS CS V SPV, LLC
The Travelers Indemnity Company
State of Alaska

11

**Employee Unions**

Graphic Communications Conference, International Brotherhood of Teamsters, Local 493M
The Lexington Newspaper Guild, Communications Workers of America Local 33229
Pacific Media Workers Guild Local 39521

**Bankruptcy Judges for SDNY**

Chief Justice Cecelia G Morris
Judge Stuart M Bernstein
Judge Shelley C. Chapman
Judge Robert D. Drain
Judge James L. Garrity Jr.
Judge Martin Glenn
Judge Robert E Grossman
Judge Sean H. Lane
Judge Mary Kay Vyskocil
Judge Michael E. Wiles

**US Trustees for SDNY**

Allen, Joseph
Black, Christine
Harrington, William K.
Leonhard, Alicia
Penpraze, Lisa
Riffkin, Linda
Schmitt, Kathleen
Van Baalen, Guy A

## EXHIBIT 5

## Parties in Interest Noted for Court Disclosure

### Relationships in Matter Related to These Proceedings

None

### Relationships in Unrelated Matter

ACE American Insurance Company
Adobe Systems, Inc
Aetna Inc
Akamai Technologies Inc
Alorica, Inc.
Ballard Spahr LLP
Bank of New York Mellon
Barclays Capital Inc
Barclays PLC
Barnes, Leroy
Brigade Capital Management, LP
Brightcove Inc
Brown Rudnick
Canon Solutions America, Inc.
Carlton Fields PA
Charles Schwab & Co., Inc.
Choate, Hall & Stewart LLP
Citizens Bank, N.A.
Columbia Casualty Company (CNA)
Credit Suisse Group AG
CVS Health Corporation
Dallas Morning News
Davis Wright Tremaine LLP
Deloitte & Touche LLP
DLA Piper LLP US
Dollar General Corporation
Dow Jones And Co Inc
Ernst & Young LLP
Evercore, Inc.
Facebook Inc
Federal Insurance Co.
Fox Rothschild LLP
Gibson, Dunn & Crutcher LLP
Goldman Sachs & Co, LLC
Goldman Sachs Bank USA
Google Inc
Greenberg Traurig LLP
Gunderson Dettmer

Haynes & Boone LLP
Hogan Lovells LLP
Holland & Hart LLP
Holland & Knight
J.P. Morgan Securities LLC
Jefferies LLC
Johnson Controls
Jones Day
Jones Walker LLP
JP Morgan Chase Bank, N.A.
Keller Rohrback LLP
Kilpatrick Townsend & Stockton, LLP
Kramer Levin Naftalis & Frankel LLP
Lewis Brisbois Bisgaard & Smith LLP
Lewis Rice LLC
Liberty Mutual
LinkedIn Corporation
Manko, Gold, Katcher & Fox LLP
Mayer Brown LLP
McGuire Woods LLP
Merrill Lynch, Pierce, Fenner & Smith
    Incorporated
Morgan, Lewis & Bockius LLP
Morris Nichols Arsht & Tunnell LLP
National Union Fire Insurance Company of
    Pittsburgh, PA (AIG)
Neopost
NextGen, LLC
O'Melveny & Myers LLP
Orrick Herrington & Sutcliffe LLP
Paul Weiss Rifkind Wharton Garrison
Pension Benefit Guaranty Corporation
Penske Truck Leasing Co., L.P.
Perkins Coie
PNC Bank, NA
Polsinelli PC
Ponderay Newsprint Company
Reed Smith LLP

| | |
|---|---|
| Republic Services | US Bank NA |
| Richards, Layton & Finger, P.A. | Walgreen Company |
| Rite Aid Corporation | Walmart, Inc. |
| Salesforce.Com | Wells Fargo Bank, N.A |
| Skadden, Arps, Slate, Meagher & Flom LLP | Wells Fargo, N.A. |
| Staples, Inc. | Western Surety Company |
| Target Corporation | White & Case LLP |
| TD Bank, N.A. | Wilson Sonsini Goodrich & Rosati |
| The Bank of New York Mellon Trust Company | Xerox |
| The Travelers Indemnity Company of America | XL Specialty Insurance Co. |
| Times Publishing Company | Zurich American Insurance Co. |