**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| -------------------------------------------------------- | x | |
| *In re* | : | **Chapter 11** |
| | : | |
| **THE McCLATCHY COMPANY**, *et al.*, | : | **Case No. 20-10418 (MEW)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| -------------------------------------------------------- | x | **Ref. Docket Nos. 11, 12, 13 & 64** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND (B)
ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS, (III)
MODIFYING THE AUTOMATIC STAY AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of The McClatchy Company ("**Parent**"), McClatchy

Newspapers, Inc. ("**Lead Borrower**"), and the various other Debtors who are "Loan Parties" as

defined in that certain DIP Credit Agreement (as defined below), each as a debtor and debtor in

possession (collectively, the "**Debtors**")[3] in the Debtors' chapter 11 cases (collectively, the

"**Chapter 11 Cases**") for entry of an interim order and a final order (the "**Final Order**") pursuant

to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of

---

[1]    The last four digits of Debtor The McClatchy Company's tax identification number are 0478.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/McClatchy.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 2100 Q Street, Sacramento, California 95816.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined therein, the DIP Loan Documents (as defined below).

[3]    All of the Debtors shall be obligors under the DIP Credit Agreement, except for the following entities: El Dorado Newspapers; Herald Custom Publishing of Mexico, S. de R.L. de C.V.; McClatchy Big Valley, Inc.; McClatchy International Inc.; McClatchy News Services, Inc.; McClatchy Property, Inc.; McClatchy Resources, Inc.; McClatchy Shared Services, Inc.; N & O Holdings, Inc.; Newsprint Ventures, Inc.; Tribune Newsprint Company; Tru Measure, LLC; and Wingate Paper Company.  For the avoidance of doubt, for all purposes of this Final Order, the term "Debtors" shall not include any entities that are not "Loan Parties" as defined in the DIP Credit Agreement or the Prepetition Credit Documents (as defined below).

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"):

(i)      authorizing, under sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtors to obtain secured, superpriority postpetition loans, advances and other financial accommodations (the "**DIP Facility**" and the loans thereunder, the "**DIP Loans**"), on a final basis, pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among (a) the Parent, (b) the Lead Borrower, (c) the other Borrowers party thereto from time to time, (d) Encina Business Credit, LLC, as administrative agent (in such capacity herein, the "**DIP Agent**") for its own benefit and the benefit of the Lender Group, and (e) the Lenders from time to time party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"; the DIP Agent, the DIP Lenders and the other members of the Lender Group under the DIP Loan Documents (as defined below) are collectively referred to herein as the "**DIP Credit Parties**"), attached as **Exhibit 2** to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 64] (the "**Interim Order**");

(ii)      authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including, without limitation, security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)      until the Termination Declaration Date (as defined herein), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility and this Final Order, authorizing the Debtors, to request extensions of credit and borrow under the DIP Facility up to an aggregate principal amount of $50,000,000 at any one time outstanding (the "**DIP Financing**");

(iv)      granting allowed superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and any Successor Cases (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents (collectively, and including all "Obligations" as described in the DIP Credit Agreement, including, without limitation, all obligations with respect to Letters of Credit deemed issued under the

DIP Credit Agreement, respectively, and, together, the "**DIP Obligations**"), subject to the priorities set forth herein;

(v)     authorizing the Debtors to use "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to Bankruptcy Code section 361 and 363 and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined below);

(vi)     granting to the DIP Agent, for the benefit of the DIP Credit Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the priorities set forth herein;

(vii)     authorizing and directing the Debtors to pay the principal, interest, fees, costs, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, unused line fees, closing fees, administrative fees, any additional fees set forth in the DIP Loan Documents, the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Credit Parties;

(viii)     authorizing and directing the Debtors, upon entry of the Interim Order and as set forth herein, to satisfy the Prepetition ABL Obligations (as defined herein) and to cash collateralize (x) the Postpetition Letters of Credit (as defined herein), (y) any Bank Products (as defined herein) continuing after the Prepetition ABL Payoff Date (as defined herein) that are provided by a Prepetition ABL Secured Lender to any Debtor and (z) any Prepetition ABL Reimbursement and Indemnity Obligation (as defined herein) (the remaining Prepetition ABL Obligations described in clauses (x), (y) and (z) above, the "**Remaining Prepetition ABL Obligations**"), in each case on or before the Prepetition ABL Payoff Date (as defined herein), converting the Surviving Letters of Credit (as defined herein) into post-petition Letters of Credit (such outstanding letters of credit, the "**Postpetition Letters of Credit**"), and granting the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Secured Lenders providing the Postpetition Letters of Credit and Bank Products (as defined in the Prepetition ABL Credit Agreement) automatically, perfected superpriority security interests in and liens on the ABL Carve-Out Collateral (as defined herein) on the terms set forth herein;

(ix)     authorizing the Debtors to provide adequate protection to the Prepetition Secured Creditors (as defined herein) for any Diminution in Value (as defined below) of their respective interests in the Prepetition Collateral (including Cash Collateral), which adequate protection shall include certain adequate protection liens, claims and payments described herein;

(x)     approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral as set forth herein;

(xi)     waiving any applicable stay and provisions for immediate effectiveness of this Final Order;

(xii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(xiii)   granting related relief.

The Court having considered the Motion, the *Declaration of Sean M. Harding in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 23], including the Motion and the exhibits attached thereto, the *Declaration of Sean M. Harding in Support of the Motion* [Docket No. 13] and the *Declaration of Bo S. Yi in Support of the Motion*, [Docket No. 12], the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion on February 14, 2020 (the "**Interim Hearing**") and at the final hearing held on the Motion (the "**Final Hearing**"); and the Court having entered its Interim Order providing for approval of the Motion on an interim basis as set forth therein; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, Local Bankruptcy Rule 4001-2 and the Interim Order; and the Final Hearing to consider the final relief requested in the Motion having been held and concluded on March [25], 2020; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the final relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW: [4]

A.    *Petition Date*.  On February 13, 2020 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") commencing the Chapter 11 Cases.

B.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012, over these proceedings, and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion and granted in this Final Order are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Bankruptcy Rule 4001-2.

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      _Committee Formation_.  On February 26, 2020, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors, in the Chapter 11 Cases of the Debtors and their affiliated debtors and debtors-in-possession pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

E.      _Prepetition Secured Credit Facilities._  Without prejudice to the rights of the parties-in-interest as set forth in paragraphs 31 and 43 herein, as of the Petition Date, the Debtors were party to the following credit facilities:

(i)      _Prepetition ABL Obligations_.  The Parent, Lead Borrower, certain of the other Debtors (collectively, the "**Prepetition ABL Obligors**"), Wells Fargo Bank, National Association, as administrative agent (in such capacity herein, the "**Prepetition ABL Agent**") for its own benefit and the benefit of the "Lender Group" (as defined therein) and the "Bank Product Providers" (as defined therein), and the Lenders from time to time party thereto (the "**Prepetition ABL Lenders**," and together with the Prepetition ABL Agent and the other members of the "Lender Group" and the "Bank Product Providers" under the Prepetition ABL Credit Documents, collectively, the "**Prepetition ABL Secured Lenders**") are party to that certain Credit Agreement dated as of July 16, 2018 (as amended, modified and supplemented from time to time, the "**Prepetition ABL Credit Agreement**," and together with all related documents, guaranties and agreements and the Prepetition ABL Payoff Letter (as defined herein), collectively, the "**Prepetition ABL Credit Documents**").  Pursuant to the Prepetition ABL Credit Documents, the Prepetition ABL Secured Lenders provided revolving credit, certain banking products and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Obligors.  Under the Prepetition ABL Credit Documents, the Prepetition ABL Secured Lenders provided the Prepetition ABL Obligors with, among other things up to $65,000,000 in Revolver

Commitments (as defined in the Prepetition ABL Credit Agreement), and up to $35,000,000 in Pledged Cash Letter of Credit Commitments (as defined in the Prepetition ABL Credit Agreement).  As of the Petition Date, there were no outstanding Revolving Loans under the Prepetition ABL Credit Agreement, however, there were issued and outstanding Pledged Cash Letters of Credit (as defined in the Prepetition ABL Credit Agreement) in the face amount of $26,650,000 (the "**Surviving Letters of Credit**") and other outstanding Obligations under the Prepetition ABL Credit Documents, including, without limitation, reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition ABL Obligors' obligations pursuant to, or secured by, the Prepetition ABL Credit Documents (collectively, the "**Prepetition ABL Obligations**").  The Prepetition ABL Obligations are secured by (a) first priority security interests in and liens on the ABL Priority Collateral (as defined in the ABL Intercreditor Agreement (as defined below)), and (b) second priority security interests in and liens on the Notes Priority Collateral (as defined in the ABL Intercreditor Agreement) (the liens and security interest in clauses (a) and (b), the "**Prepetition ABL Liens**").

(ii)    *Prepetition First Lien Secured Notes Obligations*.  The Parent, as issuer ("**First Lien Notes Issuer**"), and certain of the Debtors as guarantors (collectively with the First Lien Notes Issuer, the "**First Lien Notes Obligors**") and The Bank of New York Mellon Trust Company, N.A. as trustee and notes collateral agent (collectively in such capacities, the "**First**

Lien Notes Trustee**") entered into that certain Indenture dated as of July 16, 2018 (the "**First Lien Notes Indenture**") pursuant to which the First Lien Notes Issuer issued certain 9.000% senior secured notes due 2026 (the "**First Lien Notes**," and together with the First Lien Notes Indenture and all related documents, guaranties, and agreements, collectively, the "**First Lien Notes Documents**").  As of the Petition Date, the First Lien Notes Obligors were obligated under the First Lien Notes Documents to the Holders (as defined in the First Lien Notes Indenture) (the Holders together with the First Lien Notes Trustee collectively referred to herein as the "**First Lien Notes Creditors**") in the approximate outstanding principal amount of $262.9 million, plus all interest accrued and accruing at the rates set forth in the First Lien Notes Documents, costs, fees and any other amounts owing (of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable) to the First Lien Notes Creditors under the First Lien Notes Documents ("**First Lien Notes Obligations**").  The First Lien Notes Creditors have asserted that the First Lien Notes Obligations are secured by (a) first priority security interests in and liens on the Notes Priority Collateral and (b) second priority security interests in and liens on the ABL Priority Collateral (the collateral referenced in clauses (a) and (b), the "**Prepetition First Lien Notes Collateral**" and, the liens and security interests in clauses (a) and (b), the "**Prepetition First Lien Notes Liens**").

(iii)    *Prepetition Second Lien Term Loan Agreement Obligations.*  The Parent, as borrower, and certain of the other Debtors as guarantors (collectively, the "**Second Lien Term Loan Obligors**"), The Bank of New York Mellon Trust Company, N.A, as administrative agent and collateral agent (collectively in such capacities, the "**Second Lien Term Loan Agent**") for its own benefit and the lenders, and the lenders from time to time party thereto (collectively with the Second Lien Term Loan Agent, the "**Second Lien Term Loan Creditors**") are party to that certain

Second Lien Term Loan Credit Agreement dated as of July 16, 2018 (as amended, modified and supplemented from time to time, the "**Second Lien Term Loan Credit Agreement**," and together with all related documents, guaranties and agreements, the "**Second Lien Term Loan Documents**" and the term loan facility thereunder, the "**Second Lien Term Loan Facility**").  As of the Petition Date, the Second Lien Term Loan Obligors were obligated under the Second Lien Term Loan Credit Agreement to the Second Lien Term Creditors in the approximate outstanding principal amount of $157.1 million, plus all interest accrued and accruing at the rates set forth in the Second Lien Term Loan Documents, costs, fees and any other amounts owing (of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable) to the Second Lien Term Loan Creditors under the Second Lien Term Loan Documents (the "**Second Lien Term Loan Obligations**").  The Second Lien Term Loan Creditors have asserted that, the Second Lien Term Loan Obligations are secured by third priority security interests in and liens on all the Debtors' assets, subject to certain exclusions set forth in the Second Lien Term Loan Documents (such collateral, the "**Second Lien Term Loan Collateral**" and, the liens on and security interests in such Prepetition Second Lien Term Loan Collateral, the "**Prepetition Second Lien Term Loan Liens**").

(iv)    *Prepetition Third Lien Notes Obligations*.  The Parent, as issuer, ("**Third Lien Notes Issuer**") and certain of the Debtors as guarantors (collectively with the Third Lien Notes Issuer, the "**Third Lien Notes Obligors**," and together with the Prepetition ABL Obligors, the First Lien Notes Obligors, and the Second Lien Term Loan Obligors, the "**Prepetition Obligors**") and The Bank of New York Mellon Trust Company, N.A. as trustee and notes collateral agent (collectively in such capacities, the "**Third Lien Notes Trustee**" and together with the Prepetition ABL Agent, the First Lien Notes Trustee and the Second Lien Term Loan Agent,

the "**Prepetition Agents**") entered into that certain Indenture dated as of December 18, 2018 (the

"**Third Lien Notes Indenture**") pursuant to which the Third Lien Notes Issuer issued certain

6.875% senior secured notes due 2031 (the "**Third Lien Notes**" and together with the Third Lien

Notes Indenture and all related documents, guaranties, and agreements, the "**Third Lien Notes**

**Documents**" and, collectively, with the Prepetition ABL Credit Documents, the First Lien Notes

Documents, and the Second Lien Term Loan Documents, the "**Prepetition Credit Documents**").

As of the Petition Date, the Third Lien Notes Obligors were obligated under the Third Lien Notes

Documents to the Holders (as defined in the Third Lien Notes Indenture) (the Holders, together

with the Third Lien Notes Trustee, collectively referred to herein as the "**Third Lien Notes**

**Creditors**" and together with the Prepetition ABL Secured Lenders, the First Lien Notes Creditors,

and the Second Lien Term Loan Creditors, the "**Prepetition Secured Creditors**") in the

approximate outstanding principal amount of $268.4 million, plus all interest accrued and accruing

at the rates set forth in the Third Lien Notes Documents, costs, fees and any other amounts owing

(of whatever nature, whether or not contingent, whenever arising, accrued, accruing, due, owing,

or chargeable) to the Third Lien Notes Creditors under the Third Lien Notes Documents ("**Third**

**Lien Notes Obligations**" and together with the Prepetition ABL Obligations, the First Lien Notes

Obligations, and the Second Lien Term Loan Obligations, the "**Prepetition Secured**

**Obligations**").   The Third Lien Notes Creditors have asserted that the Third Lien Notes

Obligations are secured by fourth priority security interests in and liens on all of the Debtors'

assets, subject to certain exclusions set forth in the Third Lien Notes Documents (such collateral,

the "**Prepetition Third Lien Notes Collateral**" and, the liens on and security interests in such

Prepetition Third Lien Notes Collateral, the "**Prepetition Third Lien Notes Liens**").[5]

---

[5]    The Prepetition ABL Collateral, the Prepetition First Lien Notes Collateral, the Prepetition Second Lien Term
Loan Collateral, and the Prepetition Third Lien Notes Collateral are collectively referred to herein as the

(v)      *Intercreditor Agreements*.  Pursuant to that certain ABL Notes Intercreditor Agreement dated as of July 16, 2018 (as amended, modified and supplemented from time to time, the "**ABL Intercreditor Agreement**"), by and between the Prepetition ABL Agent and the First Lien Notes Trustee, the Prepetition ABL Agent and the First Lien Notes Trustee have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority, and positions of the Prepetition ABL Secured Lenders and First Lien Notes Creditors with respect to the Prepetition Collateral.   Pursuant to that certain Intercreditor Agreement dated as of July 16, 2018 (as amended, modified and supplemented from time to time, the "**Junior Lien Intercreditor Agreement**," and together with the ABL Intercreditor Agreement, the "**Intercreditor Agreements**"), by and between the Prepetition ABL Agent, the First Lien Notes Trustee, and Second Lien Term Loan Agent, the Prepetition ABL Agent, the First Lien Notes Trustee and the Second Lien Term Loan Agent have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority and positions of the Prepetition Secured Creditors with respect to the Prepetition Collateral.  Pursuant to that certain Permitted Junior Exchange Notes Joinder Agreement dated as of December 18, 2018, the Third Lien Notes Trustee became party to the Junior Lien Intercreditor Agreement.   The Intercreditor Agreements are "subordination agreements" within the meaning of section 510(a) of the Bankruptcy Code.  The DIP Credit Agreement shall constitute a "Refinancing" (as such term is defined in the applicable Intercreditor Agreement).  As a result thereof, the DIP Credit Parties' interests in the Prepetition Collateral and DIP Collateral shall be the same as the Prepetition ABL Agent prior to such Refinancing and shall be governed by the Intercreditor Agreements unless

---

"**Prepetition Collateral**".  The Prepetition ABL Liens, the Prepetition First Lien Notes Liens, the Prepetition Second Lien Term Loan Liens and the Prepetition Third Lien Notes Liens are collectively referred to herein as the "**Prepetition Liens**".

otherwise expressly provided by this Final Order.  The Intercreditor Agreements are, in each case, binding and enforceable against the Prepetition Secured Creditors in accordance with their terms.

(vi)  *Cash Collateral*.  Under the terms of the agreements that govern the foregoing financings, all of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors.

(vii)  *No Control*.  None of the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Creditors, including (i) the managed funds and accounts of Chatham Asset Management, LLC in their respective capacities as Prepetition Secured Creditors (the "**Chatham Parties**"), and (ii) the managed funds and accounts of Brigade Capital Management in their respective capacities as First Lien Notes Creditors (the "**Brigade Parties**" and together with the Chatham Parties, the "**Supporting Creditors**"), controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, the DIP Facility, the DIP Loan Documents.

F.    *Findings Regarding the Postpetition Financing*.

(i)  *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to: (a) enter into, and access and use the liquidity provided under, the DIP Facility on the terms described herein and in the DIP Loan Documents and (b) use Cash Collateral on the terms described herein to administer their cases and fund operations.

(ii)     *Priming of Certain Prepetition Liens; Consent to Use of Cash Collateral*. The priming of certain of the Prepetition Liens on certain of the Prepetition Collateral by the DIP Liens, as contemplated by the DIP Facility and to the extent set forth in this Final Order, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  For the avoidance of doubt, the DIP Liens shall not prime, and shall instead be subject and subordinate in all respects to, (i) the Prepetition First Lien Notes Liens on the Notes Priority Collateral and (ii) the ABL Priority Liens (all Prepetition Liens held by the Prepetition Secured Creditors other than those described in clauses (i) and (ii), the "**Primed Liens**").  With respect to the Primed Liens, the Prepetition Secured Creditors have either consented, or are deemed to consent, to priming by the DIP Liens, to the Debtors' use of Cash Collateral, and to the subordination of the Primed Liens to the DIP Carve-Out (up to the DIP Carve-Out Cap) on the terms and conditions set forth in this Final Order.  The Prepetition Secured Creditors are each entitled to receive adequate protection of their interests, as more fully described below.

(iii)     *Immediate Need for Postpetition Financing and Use of Cash Collateral*. The Debtors' immediate need to use Cash Collateral and to obtain credit pursuant to the DIP Facility as provided for herein is necessary and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral.  Without the ability to access the DIP Facility or Cash Collateral, the Debtors, their estates, their creditors, their equity holders, and the possibility for a successful

reorganization would suffer immediate and irreparable harm. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*. Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Credit Parties on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors made inquiries of third parties seeking alternative funding proposals and no viable offers of financing were obtained. Financing on a postpetition basis is not otherwise available under sections 364(c)(1), 364(c)(2) and 364(c)(3) without granting the DIP Agent, for the benefit of the DIP Credit Parties, (x) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities and to the extent set forth herein, (y) superpriority claims and priming liens, and (z) the other protections set forth in this Final Order, and without incurring the Adequate Protection Superpriority Claims and Adequate Protection Liens described herein.

(v)    *Adequacy of the Approved Budget*. As set forth in the DIP Loan Documents, the Debtors have prepared and delivered to the DIP Credit Parties and the Supporting Creditors a

budget, a copy of which is annexed as Exhibit B to the Motion (as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Final Order, the "**Approved Budget**").[6] The Approved Budget has been thoroughly reviewed by the Debtors, their management, and their advisors. The Debtors, their management, and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during the period covered by the Approved Budget were developed using reasonable assumptions, and based on those assumptions, the Debtors believe there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered by the Approved Budget. As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Credit Parties require, and the Debtors have agreed, that proceeds of the DIP Facility and the Cash Collateral shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and this Final Order and in accordance with the Approved Budget for (i) postpetition ongoing debtor-in-possession working capital expenditures, operating expenses, and other general corporate purposes, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Chapter 11 Cases, including, without limitation, professional fees, (iv) adequate protection payments to the Prepetition Secured Creditors as set forth herein, (v) satisfying outstanding Prepetition ABL Obligations and funding the ABL Pledged L/C Account, the Bank Product Cash Collateral and the Prepetition ABL Indemnity Reserve pursuant to the Prepetition ABL Payoff Letter (each as defined below), and (vi) as otherwise permitted under the DIP Loan Documents, as applicable.

(vi)    *Certain Conditions to DIP Facilities.* The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things:  (a) the Debtors obtaining Court

---

[6]    For the avoidance of doubt, the Approved Budget is one of the DIP Loan Documents.

approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Credit Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Final Order; (b) the provision of adequate protection, as set forth herein, of the Prepetition Secured Creditors' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (c) the DIP Credit Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject to the priorities described in **Exhibit 1** annexed hereto, superpriority perfected security interests in and liens upon the DIP Collateral (as defined below).

       G.     *ABL Payments*.  Contemporaneously with the closing of the DIP Credit Agreement, commitments under the Prepetition ABL Credit Documents will be terminated, Surviving Letters of Credit shall continue in place and all obligations under and in connection with such Surviving Letters of Credit will be deemed to and shall convert into Postpetition Letters of Credit and be secured by (a) the "Pledged Cash" in the "Pledged L/C Account" (as each such term is defined in the Prepetition ABL Credit Agreement), which account shall be subject to the exclusive access and control of the Prepetition ABL Agent and subject to control agreements in favor of the Prepetition ABL Agent, and (b) the Additional Pledged Cash in the Additional Pledged L/C Account (each as defined below).  The Debtors shall deposit cash in an amount equal to (x) 2% of the face amount of the Postpetition Letters of Credit, *plus* (y) $117,220.00 for early withdrawal fees in respect of Eligible CDs (as defined in the Prepetition ABL Credit Agreement) (the amounts set forth in the foregoing clauses (x) and (y), collectively, the "**Additional Pledged Cash**," and, together with the Pledged Cash, the "**Pledged L/C Cash Collateral**") into an account maintained at Wells Fargo Bank, NA (the "**Additional Pledged L/C Account**," and together with the Pledged

L/C Account, the "**ABL Pledged L/C Account**"), which account shall be subject to the exclusive

access and control of the Prepetition ABL Agent and subject to a control agreement in favor of the

Prepetition ABL Agent.  The Debtors will also deposit $6,125,000 (the "**Bank Product Cash**

**Collateral**") to fully collateralize obligations under the Bank Products continuing after the

Prepetition ABL Payoff Date, whether incurred prepetition or postpetition, which will be held in

an account with Wells Fargo Bank, NA and subject to the exclusive access and control of the

Prepetition ABL Agent and subject to a control agreement in favor of the Prepetition ABL Agent,

for the benefit of the Bank Product Providers (as defined in the Prepetition ABL Credit

Agreement), for so long as the Bank Product Providers provide Bank Products under the

Prepetition ABL Credit Agreement.  Finally, as additional protection for the Prepetition ABL

Secured Lenders, the Debtors will fund a Prepetition ABL Indemnity Reserve to collateralize any

Prepetition ABL Reimbursement and Indemnity Obligations (as defined below) under the

Prepetition ABL Credit Documents.  All other Prepetition ABL Obligations, including all

Revolving Loans and related interest, fees, and expenses, were satisfied upon the Prepetition ABL

Payoff Date in accordance with the Prepetition ABL Payoff Letter (as defined herein).  The

Debtors are seeking authorization to (i) pay any letter of credit fees with respect to the Postpetition

Letters of Credit,[7] and (ii) to provide cash collateral to secure the Remaining Prepetition ABL

Obligations during these Chapter 11 Cases by funding the Pledged L/C Cash Collateral, the Bank

Product Cash Collateral, and the Prepetition ABL Indemnity Reserve (collectively, the "**ABL**

**Carve-Out Collateral**") as set forth herein and during the Chapter 11 Cases.  No liens granted

under the Interim Order or this Final Order, including, but not limited to, the DIP Liens and the

---

[7]    For the avoidance of doubt, the Prepetition ABL Secured Lenders shall have no obligation to amend, renew or
extend any Postpetition Letters of Credit.

Adequate Protection Liens (as defined below), shall extend or have recourse to the ABL Carve-Out Collateral until the Remaining Prepetition ABL Obligations are satisfied in full; *provided* that upon the satisfaction in full of the Remaining Prepetition ABL Obligations in accordance with the Prepetition ABL Payoff Letter and this Final Order, the ABL Carve-Out Collateral shall immediately and automatically become DIP Collateral that is ABL Priority Collateral and the DIP Liens and Adequate Protection Liens shall attach to such ABL Carve-Out Collateral without further action by the Debtors, DIP Agent, or Prepetition Secured Creditors or the need for further approval of the Court. The ABL Priority Liens (as defined herein) or the ABL Carve-Out Collateral shall not be subject or subordinate to the DIP Carve-Out.

H.    *First Lien Notes, Second Lien Term Loans, and Third Lien Notes Adequate Protection*. The First Lien Notes Creditors, Second Lien Term Loan Creditors, and the Third Lien Notes Creditors (collectively, the "**Remaining Prepetition Secured Creditors**") are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code and as set forth in paragraph 13 of this Final Order to the extent of any post-petition diminution in the value of their respective interests in the Prepetition Collateral resulting from the (a) provisions of the Interim Order and this Final Order granting the DIP Liens, (b) use of the Cash Collateral, (c) use, sale, or lease of the Prepetition Collateral, and/or (d) the imposition of the automatic stay under the Bankruptcy Code (a "**Diminution in Value**"). The terms of the adequate protection being provided in this Final Order reflect the Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the Prepetition Collateral, including the Cash Collateral; *provided* that, nothing in this Final Order or the DIP Documents shall (x) be construed as the affirmative consent by the Remaining Prepetition Secured Creditors for the use of Cash Collateral other than on the terms set forth in this Final Order and in the context of the DIP

Financing authorized by this Final Order to the extent such consent has been or will be given, (y) to be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Creditors, subject to any applicable provisions of the Intercreditor Agreements, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Creditors; *provided further* that, nothing in this Final Order shall prohibit or restrict the Debtors from seeking alternative postpetition debtor-in-possession financing subject to payment in full of the DIP Obligations or to use Cash Collateral on terms and conditions different from those contained in this Final Order subject to the rights of the DIP Lenders, the DIP Agent, and the Prepetition Secured Creditors to object thereto which rights shall be subject to the Intercreditor Agreements, to the extent applicable.  As adequate protection, the Remaining Prepetition Secured Creditors shall receive, subject to the Intercreditor Agreements and the priorities set forth in **Exhibit 1** hereto, among other things, the Adequate Protection Liens (as defined herein) to secure the applicable Prepetition Secured Obligations, the Adequate Protection Superpriority Claims (as defined herein) with respect to the applicable Prepetition Secured Obligations, and the Adequate Protection Payments (as defined herein).

I.    *Sections 506(c) and 552(b).*  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral that as a material inducement to the DIP Credit Parties' agreement to provide the DIP Facility and the Prepetition Secured Creditors' consent to the use of Cash Collateral, and in exchange for (a) the DIP Credit Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Credit Parties' and the Prepetition Secured Creditors' agreement to subordinate the Primed Liens and the DIP Liens, respectively, to the DIP Carve-Out (up to the DIP Carve-Out Cap), and (c) the consensual

use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan

Documents, and the terms of this Final Order, each of the DIP Credit Parties and the Prepetition

Secured Creditors are entitled to receive (x) a waiver of any equities of the case exceptions or

claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar

equitable relief as set forth below, and (y) a waiver of the provisions of section 506(c) of the

Bankruptcy Code, in each case, subject to the terms set forth in paragraphs 34 and 36 of this Final

Order.

> J.      *Good Faith of the DIP Credit Parties*.

(i)      *Willingness to Provide Financing*.   Each of the DIP Credit Parties has

indicated a willingness to provide financing to the Debtors subject to: (a) the entry by this Court

of this Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and

the DIP Loan Documents and satisfaction of the Prepetition ABL Obligations and termination of

the Prepetition ABL Credit Agreement as contemplated by the Interim Order, this Final Order and

the Prepetition ABL Payoff Letter; and (c) entry of findings by this Court that such financing is

essential to the Debtors' estates, that each of the DIP Credit Parties is extending credit to the

Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Credit Parties'

claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant

to the Interim Order, this Final Order and the DIP Loan Documents will have the protections

provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent

reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or

any other order, which findings were deemed effective on a final basis upon entry of the Interim

Order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of this Final Order, the DIP Loan Documents, the extension of credit and the fees paid and to be paid thereunder (a) are fair, reasonable, and the best available to the Debtors under the circumstances, (b) reflect the Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties, and (c) are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Credit Parties.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, and extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and each of the DIP Credit Parties is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

K.    <u>*Good Cause*</u>.  Good cause has been shown for the entry of this Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to the Debtors' businesses and on-going operations, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility is fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors and the DIP Credit Parties.

L.    _Notice_.  Notice of the Final Hearing and the emergency relief requested in the

Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand

delivery in accordance with the Interim Order.  The Debtors have made reasonable efforts to afford

the best notice possible under the circumstances and such notice is good and sufficient to permit

the relief set forth in this Final Order, and no other or further notice is or shall be required.

M.    _Immediate Entry_.  Good and sufficient cause exists for immediate entry of this Final

Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the

Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    Motion Granted; DIP Financing Approved.  The Motion is granted on a final basis,

the DIP Financing is authorized and approved on a final basis, and the use of Cash Collateral on a

final basis is authorized, in each case subject to the terms and conditions set forth in this Final

Order.[8]

2.    Objections Overruled.  All objections to the DIP Financing and/or entry of this

Final Order to the extent not withdrawn or resolved are hereby overruled on the merits.

**DIP Facility Authorization**

3.    Authorization of the DIP Financing and DIP Loan Documents.  The Debtors are

expressly and immediately authorized and empowered (a) to execute and deliver the DIP Loan

Documents, (b) to incur and to perform the DIP Obligations in accordance with, and subject to,

the terms of this Final Order and the DIP Loan Documents (including the Approved Budget), (c)

---

[8]    For the avoidance of doubt, nothing in this Final Order shall be deemed an approval by the Bankruptcy Court of
the proposed terms and conditions of the "Exit Financing" set forth in the DIP Credit Agreement.

to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Loan Documents, and (d) to satisfy the Prepetition ABL Obligations and fully collateralize any Remaining Prepetition ABL Obligations under the Prepetition ABL Credit Documents, and deliver all instruments and documents that may be necessary or required by the creation and perfection of all liens granted to the Prepetition ABL Agent on behalf of the Prepetition ABL Secured Lenders to secure the Remaining Prepetition ABL Obligations.  The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment fees, closing fees, administrative fees, unused line fees, any additional fees and other amounts set forth in the DIP Loan Documents, and the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys, advisers, accountants, and other consultants, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below.  All collections and proceeds, of "ABL Priority Collateral" (as defined below), whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with the terms of the DIP Loan Documents.  The Debtors are also hereby authorized, without need to obtain further Court approval, to (i) make the Adequate Protection Payments (as defined below); and (ii) pay any interest, fees, expenses and other amounts as such become due for any Remaining Prepetition ABL Obligations as set forth in the Prepetition ABL Credit

Documents, to provide cash collateral to secure the Remaining Prepetition ABL Obligations and pay the reasonable and documented fees and disbursements of the Prepetition ABL Agent's and the other Prepetition ABL Secured Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided in the Prepetition ABL Credit Documents.

4.    <u>Authorization to Borrow</u>.  Until the Termination Declaration Date (as defined in paragraph 23(d) below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility and this Final Order, the Debtors are hereby authorized to request extensions of credit and borrow under the DIP Facility up to an aggregate principal amount of $50,000,000 at any one time outstanding.  No other corporate authority is required for the Debtors to execute and deliver the DIP Loan Documents, perform their obligations thereunder or request any extension of credit under the DIP Facility as set forth herein.

5.    <u>DIP Obligations</u>.  The DIP Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, "**<u>Successor Cases</u>**").  Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Credit Parties under the DIP Loan Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan

Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim (except as to the review of invoices in accordance with paragraph 26 below).

6.      <u>Postpetition Liens and Collateral</u>.

(a)     Effective immediately upon the entry of the Interim Order, except with respect to clauses (xvii) and (xviii) below, which shall only be effective upon entry of this Final Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Debtors were or are authorized to grant, as applicable, and did or do hereby grant, as applicable, to the DIP Agent (for the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following (the "**DIP Collateral**"):[9]

(i)      all Accounts;

(ii)     all Goods, including, without limitation, Equipment, Inventory and Fixtures;

(iii)    all Documents, Instruments and Chattel Paper;

(iv)     all Letters of Credit and Letter-of-Credit Rights (other than the Postpetition Letters of Credit);

---

[9]      All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(v)      all Securities Collateral;

(vi)     all Investment Property;

(vii)    all Intellectual Property Collateral;

(viii)   all Commercial Tort Claims;

(ix)     all General Intangibles (including, without limitation, all Payment Intangibles);

(x)      all Deposit Accounts;

(xi)     all Supporting Obligations;

(xii)    all money, cash or cash equivalents;

(xiii)   all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)    all proceeds of leases of real property;[10]

(xv)     all owned real property;

(xvi)    all proceeds of claims or causes of action that the Debtors may be entitled to assert under section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof;

(xvii)   all proceeds, recoveries and settlements (the "**Bankruptcy Recoveries**") of claims or causes of action that the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 or

---

[10]   For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

section 724(a) of the Bankruptcy Code, other than those arising under section 549 of the Bankruptcy Code (the "**Avoidance Actions**");

(xviii)  the Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xix)  to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xx)  all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xxi)  to the extent not otherwise covered by clause (i) through (xx) above, all other personal property of each Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing.  DIP Collateral that is of a type that would be ABL Priority Collateral (as defined the ABL Intercreditor Agreement) and Bankruptcy Recoveries other than Net Proceeds of Notes Priority Bankruptcy Recoveries (as defined below) and the proceeds and products thereof shall, in each case, constitute "**ABL Priority Collateral**," and DIP Collateral that is of a type that would be Notes Priority Collateral (as defined in the ABL Intercreditor Agreement), and Bankruptcy Recoveries with respect to prepetition transfers of any Notes Priority Collateral net of any costs, fees, and expenses, incurred in connection with such Bankruptcy Recoveries (the "**Net Proceeds of Notes Priority Bankruptcy Recoveries**"), and the proceeds and products thereof and shall, in

each case, constitute "**Notes Priority Collateral**." Notwithstanding anything to the contrary in

this Final Order (x) the DIP Agent shall not apply any proceeds of Bankruptcy Recoveries to the

DIP Obligations until such time as the substantially all the Accounts and Inventory of the Debtors

have been liquidated; and (y) the DIP Liens shall not extend to, and the term DIP Collateral shall

not include, (1) any "Excluded Property" as that term is defined in the DIP Loan Documents or (2)

any ABL Carve-Out Collateral until such time as the Remaining Prepetition ABL Obligations are

satisfied in full; *provided* that upon the satisfaction in full of the Remaining Prepetition ABL

Obligations in accordance with this Final Order and the Prepetition ABL Payoff Letter, the ABL

Carve-Out Collateral shall become DIP Collateral that is ABL Priority Collateral.

(xxii)   The Prepetition ABL Agent shall be granted and the Debtors do hereby

grant to the Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL Secured

Lenders to the extent provided under the Prepetition ABL Credit Documents with respect to the

Remaining Prepetition ABL Obligations (including the Postpetition Letters of Credit and Bank

Products)) continuing valid, binding, enforceable, non-avoidable, and automatically and properly

perfected postpetition security interests in and first priority liens on the ABL Carve-Out Collateral

(such security interests and liens, the "**ABL Priority Liens**").

(b)      Effective upon the entry of the Interim Order, other than the ABL Carve-

Out Collateral (including, but not limited to, any blocked account agreements or control

agreements in respect thereof), all existing blocked account agreements, deposit account control

agreements, securities account control agreements, credit card acknowledgements, credit card

agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee

agreements, carrier agency agreements, customs broker agency agreements, subordination

agreements (including, without limitation, any intercompany subordination agreements), and

freight forwarder agreements entered into or in connection with Prepetition ABL Credit Documents in each case were deemed to be and are delivered in connection with the DIP Facility, constitute DIP Loan Documents and remain in full force and effect without any further action by the Debtors (except to the extent that the DIP Agent and the Debtors agree that such documents shall be terminated), the DIP Agent or any other person, and in each case the DIP Agent was deemed to be and is a party thereto, any and all references in any such agreements or documents referred to in clause (ii) above to the "Credit Agreement" were thereafter deemed to and do mean and refer to the DIP Credit Agreement, and any and all references in any such agreements or documents referred to in clause (ii) above to the "Loan Documents" were thereafter deemed to and do mean and refer to the DIP Loan Documents, as amended, modified, supplemented or restated and in effect from time to time.

7.    <u>DIP Lien Priority in DIP Collateral</u>.

(a)    *DIP Liens*.    The DIP Lien on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interest and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or applicable law; <u>provided</u>, <u>however</u>, that the DIP Liens on (i) the ABL Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to (A) the DIP Carve-Out up to the DIP Carve-Out Cap and (B) any liens or security interests as of the Petition Date that were valid, binding, enforceable, properly perfected, and non-avoidable, held by parties other than the Prepetition Secured Creditors (the "**Prepetition Permitted Liens**"); and (ii) the Notes Priority Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to (A)

the Prepetition Permitted Liens, (B) the Prepetition First Lien Notes Liens, (C) the First Lien Notes AP Liens, and (D) the DIP Carve-Out up to the DIP Carve-Out Cap; and (iii) any other assets of the Debtors except "Excluded Property" (as defined in the DIP Credit Agreement) shall be subject to (A) the DIP Carve-Out and (B) to the extent such collateral is of a type that would be Notes Priority Collateral, the First Lien Notes AP Liens, in each case as such priorities are set forth in **Exhibit 1** attached hereto.

(b)    Other than as set forth herein, the DIP Liens, the DIP Superpriority Claim, the DIP Carve-Out, the ABL Priority Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases or any claim for reclamation or return (whether asserted pursuant to section 546(c) of the Bankruptcy Code or otherwise), and shall be valid and enforceable against the Debtors, their estates, any trustee, or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to challenge under sections 510, 549, 550, or 551 of the Bankruptcy Code.

(c)    *Continuing Effect of Intercreditor Agreements.*    Except as otherwise expressly set out herein: (i) the DIP Agent, the DIP Lenders, First Lien Notes Trustee, Second Lien Term Loan Agent, Third Lien Notes Trustee, and the Prepetition Secured Creditors shall be bound by the terms and conditions set forth in the Intercreditor Agreements, including with respect to the Prepetition Collateral and the DIP Collateral; (ii) nothing contained in this Final Order shall

be deemed to abrogate or limit the respective rights, claims and obligations of each of the DIP Agent, the DIP Lenders, First Lien Notes Trustee, Second Lien Term Loan Agent, Third Lien Notes Trustee, and the Remaining Prepetition Secured Creditors under the Intercreditor Agreements; and (z) the Intercreditor Agreements shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Lenders, First Lien Notes Trustee, Second Lien Term Loan Agent, Third Lien Notes Trustee, and the Remaining Prepetition Secured Creditors with respect to the Prepetition Collateral and the DIP Collateral in the Chapter 11 Cases. All loans, borrowings and advances made by the DIP Agent and/or DIP Lenders pursuant to and under, and proceeds of, the DIP Facility and all other DIP Obligations outstanding thereunder shall be deemed to be ABL Obligations under the ABL Intercreditor Agreement and First Lien Obligations under the Junior Lien Intercreditor Agreement. The DIP Agent shall be deemed to be the successor to the Prepetition ABL Agent under the terms of the Intercreditor Agreements and shall have all of the rights, remedies and obligations accorded to the "ABL Collateral Agent" under the ABL Intercreditor Agreement and "ABL Agent" under the Junior Lien Intercreditor Agreement.[11]

8.    <u>DIP Superpriority Claim</u>.

(a)    *DIP Agent Superpriority Claim.* Subject to **<u>Exhibit 1</u>** and the DIP Carve-Out (up to the DIP Carve-Out Cap), on account of all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the DIP Loan Documents, or otherwise, the DIP Agent (for

---

[11] Notwithstanding anything in this Final Order or the DIP Loan Documents to the contrary, the DIP Agent (and its successors or assigns) shall not consent to any increase in the DIP Carve-Out or the DIP Carve-Out Cap, or any alternative carve-out in connection with a DIP Financing (as defined in the ABL Intercreditor Agreement), without the consent of the holders of 66.67% of the First Lien Notes (pursuant to the terms of the First Lien Notes Indenture), such consent not to be unreasonably withheld, conditioned, or delayed; *provided* that the foregoing shall not bind any lender or agent party to a refinancing of the DIP Facility; *provided further* that the First Lien Notes Creditors reserve all rights, including under the Intercreditor Agreement, with respect to any lender or agent party to such a refinancing.

the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) is hereby granted, pursuant to sections 364(c)(1), 503 and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations. Subject to paragraph 8(b) of this Final Order, the DIP Superpriority Claim shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, other than the ABL Carve-Out Collateral until such time as the Remaining Prepetition ABL Obligations are satisfied in full in accordance with this Final Order and the Prepetition ABL Payoff Letter.

(b)     *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, the Bankruptcy Recoveries, subject only to (i) the payment in full in cash of the DIP Obligations, (ii) the DIP Carve-Out (up to the DIP Carve-Out Cap), (iii) with respect to the ABL Carve-Out Collateral, satisfaction of the Remaining Prepetition ABL Obligations in full in accordance with this Final Order and the Prepetition Payoff Letter, (iv) to the extent paid from identifiable proceeds of the Notes Priority Collateral, the First Lien Notes Obligations, and (v) to the extent paid from identifiable proceeds of the assets subject to any Prepetition Permitted Liens, amounts secured by such Prepetition Permitted Liens.

9.      No Obligation to Extend Credit.  No DIP Credit Party shall have any obligation to make any loan or advance or issue any letter of credit under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with the DIP Loan Documents by the DIP Agent.

10.     Use of DIP Facility Proceeds.  From and after the date hereof, the Debtors shall use advances of credit under the DIP Facility only for the purposes and in the amounts specifically set forth in this Final Order and the DIP Loan Documents, including as contemplated in the Approved Budget, and solely for: (a) postpetition ongoing debtor-in-possession working capital expenditures, operating expenses, and other general corporate purposes, (b) certain transaction fees and expenses, (c) payment of costs of administration of the Chapter 11 Cases, including, without limitation, professional fees, (d) adequate protection payments to the Prepetition Secured Creditors as set forth herein, and (e) as otherwise permitted under the DIP Loan Documents, as applicable.

11.     Refinancing of Prepetition ABL Obligations.

(a)     The satisfaction of Prepetition ABL Obligations outstanding as of the Petition Date in connection with the Debtors' entry into the DIP Facility is approved.  The Debtors were authorized and directed upon entry of the Interim Order, which authorization and direction are deemed ratified on a final basis pursuant to this Final Order, to (a) execute and deliver the Prepetition ABL Payoff Letter and (b) use proceeds of the DIP Financing to (i) pay in full in cash outstanding Prepetition ABL Obligations, including all principal, interest, fees and expenses due and chargeable under the Prepetition ABL Credit Documents through the date of payment; (ii) cash collateralize obligations under Bank Products continuing after the Prepetition ABL Payoff Date in an amount equal to the Bank Product Cash Collateral, (iii) cash collateralize the

Postpetition Letters of Credit in an amount equal to the Pledged L/C Cash Collateral, (iv) fund for

the benefit of the Prepetition ABL Agent and the other Prepetition ABL Secured Lenders, the

amount of $300,000 (the "**Prepetition ABL Indemnity Reserve**") into a non-interest bearing

account maintained with and held by the Prepetition ABL Agent to secure the Prepetition ABL

Reimbursement and Indemnity Obligations; and (v) pay such other reasonable amounts in respect

of or related to the Prepetition ABL Credit Documents, as more fully set out in the Prepetition

ABL Payoff Letter.  The amounts in clauses (i)-(v) of this paragraph 11 shall be referred to in this

Final Order as, collectively, the "**Prepetition ABL Payoff Amount**," and the date of the payment

of the Prepetition ABL Payoff Amount shall be referred to as the "**Prepetition ABL Payoff Date**."

The Prepetition ABL Agent delivered to the Debtors a letter (including any documents related

thereto, the "**Prepetition ABL Payoff Letter**") which set forth the calculation of the Prepetition

ABL Payoff Amount.  For the avoidance of doubt, nothing in this Final Order shall discharge or

otherwise impair the Prepetition ABL Reimbursement and Indemnity Obligations, which shall

survive the repayment of the Prepetition ABL Obligations and the termination of any

"Commitments" (as defined in the Prepetition ABL Credit Agreement).

(b)    Funds remaining in the Prepetition ABL Indemnity Reserve shall be

released to the Debtors (and to the extent the DIP Obligations remain outstanding shall become

DIP Collateral) (x) upon the indefeasible repayment in full in cash of all Prepetition ABL

Obligations (including the Remaining Prepetition ABL Obligations) in accordance with the

Prepetition ABL Payoff Letter and satisfaction of all prepetition and postpetition obligations

between the Debtors and the Prepetition ABL Secured Lenders, and (y) upon the earlier of (a)

receipt by the Prepetition ABL Agent of releases from the Debtors (including any party acting on

behalf of any of the Debtors or their estates, if applicable) in form and substance satisfactory to

the Prepetition ABL Agent, (b) the Challenge Deadline (as defined below) if there has been no

Challenge (as defined below) of the Prepetition ABL Obligations on or prior to the Challenge

Deadline, or (c) satisfaction of terms otherwise satisfactory to the Prepetition ABL Agent.

(c)     The Debtors are authorized to continue to use the commercial card program

under the WellsOne Commercial Card Agreement, dated on or around May 3, 2019 (as amended,

restated, supplemented or otherwise modified from time to time, the "**Card Agreement**"), between

the Debtors and Wells Fargo Bank, N.A. ("**Wells Fargo**") subject to the terms and conditions

thereof and hereof.  Wells Fargo is authorized to make advances from time to time to the Debtors

with a maximum exposure at any time up to $5 million.  All prepetition charges and fees are

authorized and required to be paid.  Wells Fargo may rely on the representations of the Debtors

with respect to their use of the commercial card program pursuant to the Card Agreement, and

Wells Fargo shall not have any liability to any party for relying on such representations by the

Debtors and as provided for herein.  Wells Fargo shall continue to have a valid and perfected non-

avoidable first-priority lien and security interest in the Bank Product Cash Collateral pursuant to

Bankruptcy Code section 364(d)(1) with respect to the indebtedness owed by Debtors to Wells

Fargo in respect of the Card Agreement.  Such lien shall not be primed by any lien granted to any

post-petition lender or other person.

**Authorization to Use Cash Collateral**

12.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this

Final Order and the DIP Loan Documents, and in compliance with the Approved Budget, the

Debtors are authorized to use Cash Collateral until the Termination Declaration Date (as defined

in paragraph 23(d) below), provided that the Prepetition Secured Creditors are granted the

Adequate Protection Superpriority Claims, Adequate Protection Liens, Adequate Protection

Payments, and other forms of adequate protection set forth herein; provided, however, that during

the Remedies Notice Period (as defined in paragraph 23(d) below) the Debtors may use Cash Collateral to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent (such agreement not to be unreasonably withheld), in each case in accordance with the terms and provisions of the Approved Budget. Notwithstanding the foregoing, upon the occurrence of the Termination Declaration Date, the Debtors may use Cash Collateral to meet ordinary course payroll (excluding severance) and payroll taxes in accordance with the terms and provisions of the Approved Budget. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order and the DIP Loan Documents and in accordance with the Approved Budget.

**Adequate Protection Provisions**

13.    Adequate Protection Liens; Adequate Protection Payments; Access to Records. As adequate protection against a Diminution in Value of Prepetition Secured Creditors' respective security interests in the Prepetition Collateral (including Cash Collateral) during the pendency of the Chapter 11 Cases, the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)    *Creation of Adequate Protection Liens.* To the extent of any Diminution in Value of the interest of the Prepetition Secured Creditors' in the Prepetition Collateral during the Chapter 11 Cases in each case of the subparagraphs of this paragraph 13(a), each of the Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL Secured Lenders), the First Lien Notes Trustee (for the benefit of itself and the other First Lien Notes Creditors), the Second Lien Term Loan Agent (for the benefit of itself and the other Second Lien Term Loan Creditors),

and the Third Lien Notes Trustee (for the benefit of itself and the other Third Lien Notes Creditors) is hereby granted, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral and any other assets (including the proceeds of such assets), of the Debtors except (a) "Excluded Property" as defined in the DIP Credit Agreement or (b) with respect to a particular Prepetition Secured Creditor, any Bankruptcy Recoveries from any Avoidance Actions that are brought with respect to the liens or claims held by or on behalf of such Prepetition Secured Creditor (the "**Adequate Protection Liens**").

(i)    The Adequate Protection Liens granted to the Prepetition ABL Agent (the "**ABL AP Liens**") shall secure the Remaining Prepetition ABL Obligations and shall be subject to and subordinate to (A) the DIP Carve-Out (up to the DIP Carve-Out Cap), (B) the DIP Liens, (C) the Prepetition Permitted Liens, (D) solely with respect to the Notes Priority Collateral, the Prepetition First Lien Notes Liens and the First Lien Notes AP Liens (as defined below), but shall be senior to (X) solely with respect to the ABL Priority Collateral, the Prepetition First Lien Notes Liens and the First Lien Notes AP Liens (as defined below), (Y) the Prepetition Second Lien Term Loan Liens and the Second Lien Term Loan AP Liens (as defined below) , and (Z) the Prepetition Third Lien Notes Liens and the Third Lien Notes AP Liens (as defined below).

(ii)    The Adequate Protection Liens granted to the First Lien Notes Trustee (the "**First Lien Notes AP Liens**") shall secure the First Lien Notes Obligations and shall be subject to and subordinate to (A) the Prepetition Permitted Liens, (B) the ABL Priority Liens, (C) solely with respect to the ABL Priority Collateral, the DIP Carve-Out (up to the DIP Carve-Out Cap), the DIP Liens, and the ABL AP Liens, but shall be senior to (X) solely with respect to the Notes

Priority Collateral, the DIP Carve-Out, the DIP Liens, and the ABL AP Liens, (Y) the Prepetition

Second Lien Term Loan Liens and the Adequate Protection Liens granted to the Second Lien Term

Loan Agent to secure the Second Lien Term Loan Obligations (the "**Second Lien Term Loan AP**

**Liens**"), and (Z) the Prepetition Third Lien Notes Liens and Adequate Protection Liens granted to

the Third Lien Notes Trustee to secure the Third Lien Notes Obligations (the "**Third Lien Notes**

**AP Liens**").

       (iii)    The Second Lien Term Loan AP Liens shall secure the Second Lien Term

Loan Obligations and shall be subject to and subordinate to the (A) the DIP Carve-Out (up to the

DIP Carve-Out Cap), (B) the Prepetition Permitted Liens, (C) the DIP Liens, (D) the ABL Priority

Liens, (E) the ABL AP Liens, (F) the Prepetition First Lien Notes Liens, and (G) the First Lien

Notes AP Liens, but senior to the (X) Prepetition Third Lien Notes Liens and (Y) Third Lien Notes

AP Liens.

       (iv)    The Third Lien Notes AP Liens shall secure the Third Lien Notes

Obligations and shall be subject to and subordinate to the (A) the DIP Carve-Out (up to the DIP

Carve-Out Cap), (B) the Prepetition Permitted Liens, (C) the DIP Liens, (D) the ABL Priority

Liens, (E) the ABL AP Liens, (F) the Prepetition First Lien Notes Liens, (G) the First Lien Notes

AP Liens, (H) the Prepetition Second Lien Term Loan Liens, and (I) the Second Lien Term Loan

AP Liens.

       (v)    The Adequate Protection Liens shall be (A) deemed to be valid, binding,

non-avoidable, enforceable and fully perfected as of the Petition Date, (B) in all instances, subject

to the Intercreditor Agreements, and (C) in each case, for the avoidance of doubt, have the priorities

set forth in **Exhibit 1** hereto.  Other than as set forth herein, until the indefeasible payment in full

in cash of the Prepetition Secured Obligations, the Adequate Protection Liens shall not be made

subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The Adequate Protection Liens shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550. No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Adequate Protection Liens.

(b)     *Adequate Protection Payments*.

(i)     The Prepetition Secured Creditors shall receive additional adequate protection against a Diminution in Value in the form of the following: (A) in the case of the First Lien Notes Creditors, (1) during the pendency of the Chapter 11 Cases, payment of all accrued and unpaid interest on a monthly basis, which interest shall accrue at the non-default rate as provided in the applicable First Lien Notes Documents and (2) payment or reimbursement in cash by the Debtors of all reasonable and documented fees, costs, expenses and charges of (x) Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**"), as counsel to the Chatham Parties, Ducera Partners LLC, as financial advisor to the Chatham Parties (upon the terms of the engagement letter in place as of February 13, 2020), and Quinn Emanuel Urquhart Oliver & Hedges LLP ("**Quinn Emanuel**"), as litigation counsel to the Chatham Parties (provided that Quinn Emanuel shall not bill the estate for services that are duplicative of services performed by Paul Weiss), and subject to the approval of the Debtors (such approval not to be unreasonably withheld, conditioned, or delayed) and the Court, such other advisors or professionals as may be

retained by or on behalf of the Chatham Parties, (y) Kramer Levin Naftalis & Frankel LLP, as

counsel to the Brigade Parties, GLC Advisors & Co., as financial advisor to the Brigade Parties

(upon the terms of the engagement letter in place as of February 13, 2020), and subject to the

approval of the Debtors (such approval not to be unreasonably withheld, conditioned, or delayed)

and the Court, such other advisors or professionals as may be retained by or on behalf of the

Brigade Parties, (z) the Bank of New York Mellon Trust Company, N.A. as the First Lien Notes

Trustee, including the fees and expenses of Emmet, Marvin & Martin, LLP as counsel thereto

(such professionals, the "**First Lien AP Professionals**" and such fees and expenses, collectively,

the "**First Lien AP Professional Fees and Expenses**"), incurred and/or accrued in connection

with the Debtors and/or the Chapter 11 Cases, whether accrued pre-petition or post-petition, all

without further notice, motion or application to, order of, or hearing before, this Court; and (B) in

the case of the Prepetition ABL Secured Lenders, payment of  any contingent indemnification,

reimbursement or similar surviving obligations arising under the Prepetition ABL Credit

Agreement or any other Prepetition ABL Credit Document, and any fees and expenses for

attorneys and other professionals related thereto, whether accrued prepetition or postpetition, all

without further notice, motion, or application to, or order of, or hearing before, this Court,

including without limitation, the fees and expenses of Morgan, Lewis & Bockius LLP, as counsel

to the Prepetition ABL Agent (the "**ABL AP Professionals,**" and together with the First Lien AP

Professionals, the "**Adequate Protection Professionals,**" and such fees and expenses, the "**ABL

AP Professional Fees and Expenses**," and together with the First Lien AP Professional Fees and

Expenses, the "**Adequate Protection Professional Fees and Expenses,**" and the amounts

described in (B) of this paragraph, collectively, the "**Prepetition ABL Reimbursement and

Indemnity Obligations**," and payments contemplated by clauses (A) and (B) of this paragraph,

collectively, the "**Adequate Protection Payments**").  The Prepetition ABL Agent may, but shall not be required to, apply amounts in the Prepetition ABL Indemnity Reserve against the ABL AP Professional Fees and Expenses as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court. The Debtors are expressly and immediately authorized and empowered to make the Adequate Protection Payments provided for by this Final Order.

(ii)     *Adequate Protection Professional Fees and Expenses.*  With respect to Adequate Protection Professional Fees and Expenses incurred postpetition, such Adequate Protection Professionals shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to the Debtors, the U.S. Trustee, and the Committee, except as reasonably requested to confirm no duplication of efforts, with a copy of such invoices delivered simultaneously to the DIP Agent.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay such fees and expenses in full.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The Adequate Protection Professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).  Payments of any amounts set forth in this paragraph may be subject to recharacterization, avoidance, subordination, or disgorgement.

(c)      *Adequate Protection Superpriority Claims*.

(i)      *Superpriority Claims of the Prepetition ABL Agent, First Lien Notes Trustee, Second Lien Term Loan Agent, and Third Lien Notes Trustee*.  As further adequate protection of the interests of (A) the Prepetition ABL Agent and the other Prepetition ABL Secured Lenders with respect to the Prepetition ABL Obligations, (B) the First Lien Notes Trustee and the other First Lien Notes Creditors with respect to the First Lien Notes Obligations, (C) the Second Lien Term Loan Agent and the other Second Lien Term Loan Creditors with respect to the Second Lien Term Loan Obligations, and (D) the Third Lien Notes Trustee and the other Third Lien Notes Creditors with respect to the Third Lien Notes Obligations, each of Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL Secured Lenders), the First Lien Notes Trustee (for the benefit of itself and the other First Lien Notes Creditors), the Second Lien Term Loan Agent (for the benefit of itself and the other Second Lien Term Loan Creditors), and the Third Lien Notes Trustee (for the benefit of itself and the other Third Lien Notes Creditors) is hereby granted an allowed administrative claim against the Debtors' estates under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates as provided for by section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition ABL Agent's, First Lien Notes Trustee's, the Second Lien Term Loan Agent's, and the Third Lien Notes Trustee's respective interests in the Prepetition Collateral.

(ii)      *Priority of Adequate Protection Superpriority Claims*.  The Adequate Protection Superpriority Claim granted to: (A) the Prepetition ABL Agent and the First Lien Notes Trustee shall each be senior in all respects to the Adequate Protection Superpriority Claim granted

42

to (1) the Second Lien Term Loan Agent, and (2) the Third Lien Notes Trustee; and (B) the Second Lien Term Loan Agent shall be senior in all respects to the Adequate Protection Superpriority Claim granted to the Third Lien Notes Trustee.  The Adequate Protection Superpriority Claims granted to each of the Prepetition ABL Agent, First Lien Notes Trustee (other than with respect to the Notes Priority Collateral and prior unencumbered assets of the type that would be Notes Priority Collateral), the Second Lien Term Loan Agent, and the Third Lien Notes Trustee shall be junior in all respects to the DIP Carve-Out (up to the DIP Carve-Out Cap) and DIP Superpriority Claim, but shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Adequate Protection Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors, subject to the priorities set forth in **Exhibit 1**; *provided*, however that the Adequate Protection Superpriority Claims of any party other than Prepetition ABL Agent shall not be payable from or have recourse to the ABL Carve-Out Collateral until such collateral becomes DIP Collateral in accordance with this Final Order and the Prepetition ABL Payoff Letter; *provided further*, the Adequate Protection Superpriority Claims of a Prepetition Secured Creditor shall not be payable from or have recourse to any Bankruptcy Recoveries from any Avoidance Actions that are brought with respect to the liens or claims held by or on behalf of such Prepetition Secured Creditor.

(d)      *Reporting*.  The Debtors shall timely provide the Prepetition Agents , the Prepetition Secured Creditors and the Committee with copies of all financial and other written reporting provided to the DIP Credit Parties pursuant to the DIP Loan Documents substantially simultaneously with such delivery to the DIP Credit Parties.

(e)      *Reservations of Rights*.[12]  Subject only to the DIP Carve-Out (up to the DIP Carve-Out Cap) described in paragraph 30 hereof (other than with respect to the ABL Carve-Out Collateral), and subject to the Intercreditor Agreements, nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in this Final Order is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Creditors' in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Nothing contained in this Final Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Remaining Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection. Notwithstanding anything contained in this Final Order, all parties' rights are reserved with respect to recharacterization or allocation of any Adequate Protection Payments provided for in this Final Order with respect to any allowed secured claims of any parties receiving such Adequate Protection Payments.  Notwithstanding anything contained in this Final Order, the First Lien Creditors' rights are reserved to seek (and any other parties' rights are reserved to object to or contest) payment of postpetition interest at the default rate of interest (as provided in the applicable First Lien Notes Documents).

---

[12] Court's addition regarding ability to fashion remedy re A/P addressed in paragraph on Challenges (¶ 43).

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14. *Amendments*. Subject to the terms and conditions of the DIP Loan Documents, the DIP Loan Documents may from time to time be amended, modified or supplemented in non-material or ministerial respects (a "**Non-Material Amendment**") by the parties thereto and the DIP Credit Parties may waive any provisions in the DIP Loan Documents, in each case without further approval of the Court; provided, that (a) (i) any such Non-Material Amendment has been consented to by the DIP Agent and the Debtors in writing and (ii) counsel to the Committee shall receive a copy of such Non-Material Amendment, and (b) solely with respect to any amendment, modification or supplement that is either material or not ministerial (a "**Material DIP Amendment**"), such Material DIP Amendment shall be filed with the Court, and the Debtors shall provide prior written notice of such Material DIP Amendment to (A) counsel to the DIP Agents, (B) counsel to the Supporting Creditors, (C) counsel to the Prepetition Agents, (D) counsel to the Committee, (E) the U.S. Trustee, and (F) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (the "**Amendment Notice Parties**"); provided, further, that the Debtors and the DIP Agent may file such Material DIP Amendment under notice of presentment with the Court for Court approval on seven (7) days' notice (the "**Notice of Presentment**") and that, if no objections to the approval of such Material DIP Amendments are timely filed and received by the deadline set forth in such Notice of Presentment, the order granting the relief requested in the Notice of Presentment may be entered without further notice or opportunity to be heard. Additionally, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court (x) from the applicable DIP Credit Parties and (y) from the applicable Prepetition Secured Creditors for any amendment, modification, supplement, or waiver that materially adversely affects Prepetition Collateral, ABL Carve-Out Collateral, Adequate Protection Payments, or the priorities set forth in

**Exhibit 1**.  Any amendment that extends the Termination Date to a later date shall be considered a Non-Material Amendment.  Any amendment, modification, or supplement to the DIP Loan Documents shall be filed by the Debtors within three (3) days of such amendment, modification, or supplement becomes effective, or if not timely filed by the Debtors, the DIP Agent within three (3) days after the last day for the Debtors to file such amendment, modification, or supplement.

15.    Approved Budget.  The Debtors shall consult with the Supporting Creditors and the Committee regarding any modification to, or amendment or update of, the Approved Budget.  The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance reasonably satisfactory to and approved by (a) the DIP Agent in its Permitted Discretion (as defined in the DIP Credit Agreement) and (b) solely to the extent that a restructuring support agreement with the Supporting Creditors is in full force and effect, the Supporting Creditors in their reasonable discretion; provided that any modification to the Committee professionals' fee line item in the initial Approved Budget, or updated budget shall require the prior written consent of the Committee.

16.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation to permit: (a) the Debtors to grant the DIP Liens, the ABL Priority Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) the Debtors to incur all liabilities and obligations to the DIP Agent as contemplated under the DIP Loan Documents; (c) the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Secured Lenders, to administer the Postpetition Letters of Credit and the Remaining Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Credit Documents (including drawing on the ABL Pledged L/C

Account, the Bank Product Cash Collateral account, or any other reserve account provided to the

Prepetition ABL Agent hereunder, without the need for any further order of the Court); and (d) the

Debtors to pay, and the DIP Credit Parties and Prepetition Secured Creditors to retain and apply,

all amounts referred to, required under, and in accordance with the terms of this Final Order and

the DIP Loan Documents.

17.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    The Interim Order and this Final Order shall be sufficient and conclusive

evidence of the priority, perfection, and validity of the DIP Liens, the ABL Priority Liens, the

Adequate Protection Liens, and the other security interests granted therein or herein, effective as

of the Petition Date, without any further act and without regard to any other federal, state, or local

requirements or law requiring notice, filing, registration, recording, or possession of the DIP

Collateral or the ABL Carve-Out Collateral (as applicable), or other act to validate or perfect such

security interest or lien, including, without limitation, control agreements with any financial

institution(s) party to a control agreement or other depository account consisting of DIP Collateral

or ABL Carve-Out Collateral, as applicable, or requirement to register liens on any certificates of

title (a "**Perfection Act**").  Notwithstanding the foregoing, if any DIP Agent or Prepetition Agents,

as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate

any Perfection Act, then such DIP Agent or Prepetition Agent, as applicable, is authorized to

perform such act, and the Debtors are authorized and directed to perform such act to the extent

necessary or required by the DIP Loan Documents or the Prepetition ABL Payoff Letter, which

act or acts shall be deemed to have been accomplished as of the date and time of entry of the

Interim Order notwithstanding the date and time actually accomplished, and, in such event, the

subject filing or recording office is authorized to accept, file, or record any document in regard to

such act in accordance with applicable law. The DIP Agent or Prepetition Agents, as applicable, may choose to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law. Should any DIP Agent or Prepetition Agent, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted by the Interim Order and herein by virtue of the entry of the Interim Order and this Final Order. In connection herewith, the DIP Agent, the Debtors, and Wells Fargo Bank, National Association ("**Wells Fargo**"), as depository bank, intend to enter into deposit account control agreements. Wells Fargo may, without further order of this Court, take or refrain from taking any action permitted under such deposit control agreement and implement changes to the deposit account control agreement in the ordinary course of business pursuant to the terms of such control agreement, including, without limitation, termination of such control agreement.

(b)    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by the Interim Order and this Final Order (including the DIP Liens, the ABL Priority Liens, and the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law; provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Final Order, to

the extent that any DIP Agent or Prepetition Agent, as applicable, has filed Uniform Commercial

Code financing statements, mortgages, deeds of trust, or other security or perfection documents

under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens

and security interests granted and confirmed by this Final Order without further action by the

applicable DIP Agent or Prepetition Agent.

18.    <u>Application of Proceeds of DIP Collateral</u>.  Subject to the DIP Carve-Out (up to the

DIP Carve-Out Cap) and the limitations set forth in the Intercreditor Agreements, the priority rights

of the holders of the Prepetition Permitted Liens in particular DIP Collateral, and the rights of the

Prepetition ABL Agent and the Prepetition ABL Secured Lenders to the ABL Carve-Out

Collateral: (a) the proceeds of ABL Priority Collateral shall be applied as follows: *first*, to payment

of fees, costs and expenses payable and reimbursable by the Debtors under the DIP Credit

Agreement and the other DIP Loan Documents; *second*, to payment in full of all DIP Obligations

(other than those DIP Obligations arising from undrawn outstanding Letters of Credit) in

accordance with the DIP Loan Documents; *third*, to cash collateralize Letters of Credit in

accordance with the DIP Loan Documents; *fourth*, upon indefeasible payment in full in cash of the

DIP Obligations including the cash collateralization of any such obligations to the extent permitted

under the DIP Loan Documents, to payment of the First Lien Notes Obligations in accordance

with the terms of the First Lien Notes Documents (and adequate protection, including the Adequate

Protection Payments, with respect thereto); *fifth*, upon payment in full in cash of the First Lien

Notes Obligations (and adequate protection, including the Adequate Protection Payments, with

respect thereto), to the payment of the Second Lien Term Loan Obligations; *sixth*, upon payment

in full in cash of the Second Lien Term Loan Obligations, to the payment of the Third Lien Notes

Obligations; and *seventh*, upon payment in full of the Third Lien Notes Obligations, to the Debtors'

operating account, or for the account of and paid to whoever may be lawfully entitled thereto; and (b) the proceeds of Notes Priority Collateral shall be applied as follows: *first*, to payment of fees, costs and expenses, including, without limitation, of the First Lien Notes Creditors, payable and reimbursable by the Debtors under the First Lien Notes Documents, and any other Adequate Protection Payments owed to the First Lien Notes Creditors; *second*, to payment in full of all First Lien Notes Obligations in accordance with the First Lien Notes Documents; *third*, upon the indefeasible payment in full in cash of the First Lien Notes Obligations, to payment in full of all DIP Obligations (other than those DIP Obligations arising from undrawn outstanding Letters of Credit) in accordance with the DIP Loan Documents; *fourth*, upon payment in full in cash of the DIP Obligations including the cash collateralization of any such obligations to the extent permitted under the DIP Loan Documents, to payment of the Second Lien Term Loan Obligations in accordance with the terms of the Second Lien Term Loan Documents; *fifth*, upon payment in full in cash of the Second Lien Term Loan Obligations, to the payment of the Third Lien Notes Obligations; and *sixth*, upon payment in full in cash of the Third Lien Notes Obligations, to the Debtors' operating account, or for the account of and paid to whoever may be lawfully entitled thereto. The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations, the Adequate Protection Payments required under this Final Order, and obligations authorized by an order of the Court (which may include, without limitation, obligations secured by Prepetition Permitted Liens and the ABL Priority Liens).

19.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed

in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full in cash of all DIP Obligations, and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18 herein.

20.    <u>Maintenance of DIP Collateral and Prepetition Collateral</u>.  Until the indefeasible payment in full in cash of all Prepetition Secured Obligations and all DIP Obligations and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtors shall (a) insure the Prepetition Collateral and the DIP Collateral as required under the DIP Facility and the Prepetition Credit Documents, and (b) maintain the cash management system in effect as of the Petition Date or as otherwise agreed to by the DIP Agent. For the avoidance of doubt, if the Company opens any new accounts, the DIP Liens and Adequate Protection Liens shall apply to any such new accounts with the priorities set forth in **<u>Exhibit 1</u>**.

21.    <u>Termination Declaration Date</u>.  On the Termination Declaration Date (as defined below), (i) all DIP Obligations shall be immediately due and payable, (ii) all commitments to extend credit under the DIP Facility will terminate, and (iii) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined in paragraph 23(d) below), the Debtors may use Cash Collateral solely as set forth in paragraph 12 herein.

22.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit Agreement shall constitute an event of default under this Final Order (each, an "**Event of Default**"); <u>provided</u>, <u>however</u>, notwithstanding any term to the contrary in subsections (a), (b), (e),

(g), (i) or (j) of section 8.4 of the DIP Credit Agreement, the mere filing of a motion or an application seeking a specific form of relief shall not constitute an Event of Default unless and until an Order is entered that grants such relief.

23.    Rights and Remedies Upon Event of Default.

(a)    *DIP Facility Termination.*  Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its sole discretion (or at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent ("**Reservation of Rights**").

(b)    Upon the issuance of a Reservation of Rights: (i) all or any portion of the Commitments of the DIP Credit Parties to make loans or otherwise extend credit may be suspended or terminated in accordance with the DIP Loan Documents; (ii) all DIP Obligations may be deemed immediately due and payable in accordance with the DIP Loan Documents; (iii) after expiration of the Remedies Notices Period (as defined below), the DIP Agent and the DIP Lenders may exercise all other rights and remedies available to them under the DIP Credit Agreement; and (iv) after expiration of the Remedies Notice Period, any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent, provided, that during the Remedies Notice Period, the Debtors may use Cash Collateral solely as set forth in paragraph 12 herein.

(c)    With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the DIP Credit Parties may exercise all rights and remedies available to them under the DIP Loan Documents or applicable law against the DIP Collateral in

each case subject to the applicable Intercreditor Agreements, and without limiting the foregoing, the DIP Credit Parties may, subject to the Remedies Notice Period, (i) enter onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral in accordance with paragraph 24 herein; and/or (ii) exercise any rights and remedies provided under the DIP Loan Documents or at law or equity, including, without limitation, all remedies provided under the Bankruptcy Code and pursuant to this Final Order.

(d)    *Notice of Termination.*  Any Termination Declaration shall be given by electronic mail to the Debtors, counsel to the Debtors, counsel to the Prepetition Agents, counsel to the Supporting Creditors, counsel to the Committee and the U.S. Trustee (the date such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall cease, on the Termination Declaration Date, except as provided in paragraphs 12 and this paragraph 23 of this Final Order.  Any automatic stay otherwise applicable to the DIP Credit Parties is hereby modified so that seven (7) days after the Termination Declaration Date (the "**Remedies Notice Period**") the DIP Credit Parties shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents, any applicable Intercreditor Agreements, and this Final Order, and shall be permitted to satisfy the DIP Liens and the DIP Superpriority Claims, subject only to the DIP Carve-Out (up to the DIP Carve-Out Cap), the ABL Priority Liens, the Prepetition Permitted Liens, and, solely with respect to the Notes Priority Collateral, the Prepetition First Lien Notes Liens and the First Lien Notes AP Liens. During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court.  Unless the Court during the Remedies Notice Period orders otherwise, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without

further notice or order, and the DIP Credit Parties shall be permitted to exercise all remedies set

forth herein, in the DIP Credit Agreement, the DIP Loan Documents, and as otherwise available

at law against the DIP Collateral, without further order of or application or motion to the Court,

and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code,

or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any

other rights and remedies granted to the DIP Agent with respect thereto pursuant to the DIP Credit

Agreement, the other DIP Loan Documents or this Final Order.

24.     <u>Access to Leased Premises</u>.  The DIP Agent's, exercise of its remedies pursuant to

paragraph 23 shall be subject to: (i) any agreement in writing between the DIP Agent or Prepetition

Agents, and any applicable landlord, (ii) pre-existing rights of the DIP Agent or Prepetition Agents,

and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable

landlord, or (iv) further order of the Court following notice and a hearing.

25.     <u>Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay
of this Final Order</u>.  The DIP Credit Parties and Prepetition Secured Creditors have acted in good

faith in connection with the Interim Order and this Final Order and their reliance on the Interim

Order and this Final Order is in good faith.  Based on the findings set forth in this Final Order and

the record made during the Interim Hearing and the Final Hearing, and in accordance with section

364(e) and section 363(m) of the Bankruptcy Code, in the event any or all of the provisions of this

Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this

Court, or any other court, the DIP Credit Parties and Prepetition Secured Creditors are entitled, on

a final basis, to the protections provided in section 364(e) of the Bankruptcy Code.  Any such

reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any

advances previously made or made hereunder, or lien, claim or priority authorized or created by

the Interim Order or hereby, provided that the Interim Order and this Final Order were not stayed

by court order after due notice had been given to the DIP Agent, the Prepetition ABL Agent, the

First Lien Notes Trustee, the Second Lien Term Loan Agent, and the Third Lien Notes Trustee at

the time the advances were made or the liens, claims or priorities were authorized and/or created.

Any liens or claims granted to the DIP Credit Parties and Prepetition Secured Creditors under the

Interim Order or hereunder arising prior to the effective date of any such reversal, modification,

amendment or vacatur of this Final Order shall be governed in all respects by the original

provisions of this Final Order, including, without limitation, entitlement to all rights, remedies,

privileges and benefits granted herein, provided, that the Interim Order and this Final Order were

not stayed by court order after due notice had been given to the DIP Agent, the Prepetition ABL

Agent, the First Lien Notes Trustee, the Second Lien Term Loan Agent, and the Third Lien Notes

Trustee at the time the advances were made or the liens, claims or priorities were authorized and/or

created.

26.    DIP and Other Expenses.  The Debtors are authorized and directed to pay all

reasonable and documented out-of-pocket costs and expenses (and the DIP Agent is authorized to

make advances or charges against the loan account to pay such costs and expenses of the DIP

Credit Parties) of the DIP Credit Parties in connection with the DIP Facility (including, without

limitation, costs and expenses incurred prior to the Petition Date), as provided in the DIP Loan

Documents.  Payment of all such costs and expenses shall not be subject to allowance by the Court

and professionals for the DIP Credit Parties shall not be required to comply with the U.S. Trustee

fee guidelines.  The professionals for the DIP Credit Parties shall deliver an invoice in summary

form (which shall not be required to include time entry detail and may be redacted for privileged

information) to the Debtors, the U.S. Trustee, and the Committee.  If no written objection is

received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay such fees and expenses in full.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The DIP Credit Parties' professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).

27.    Indemnification.

(a)    *Generally*.  The Debtors shall indemnify and hold harmless the DIP Agent and each other DIP Credit Party, and each of their respective heirs, predecessors, successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, members, managers, attorneys, advisors, professionals and agents, past, present and future, and their respective heirs, predecessors, successors and assigns, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Chapter 11 Cases, any plan, or any action or inaction by the Debtors; provided, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses,

claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party. The indemnity includes indemnification for the DIP Agent's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, each of the DIP Agent and each other DIP Credit Party shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable and documented fees and expenses of such counsel.

28.     <u>Proofs of Claim</u>. Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to the DIP Credit Parties or the Prepetition Secured Creditors. None of the DIP Credit Parties or the Prepetition Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of this Final Order relating to the DIP Obligations, the DIP Superpriority Claims, the ABL Priority Claims, the Adequate Protection Superpriority Claims, and the Prepetition Secured Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Chapter 11 Cases.

29.     <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Credit Parties under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the Prepetition Agents, the Committee and the Supporting Creditors reasonable access to the Debtors' premises and their books and records in accordance with (as and to the extent applicable) the DIP Loan Documents and the Prepetition Credit Documents (as applicable) and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably

20-10418-mew    Doc 233    Filed 03/26/20    Entered 03/26/20 16:19:44    Main Document
Pg 58 of 77

requested.  In addition, the Debtors authorize FTI Consulting, Inc., Evercore Group L.L.C., and

Skadden, Arps, Slate, Meagher & Flom LLP (the "**Debtor Advisors**") to provide to the DIP Agent,

the Prepetition Agents, the Committee and the Supporting Creditors, all such information as may

be reasonably requested with respect to the business, results of operations and financial condition

of any Debtor; <u>provided</u>, that such Debtor Advisors shall not be required to provide information

that is in "draft" or "work product" form or that is subject to any privilege.

30.    DIP Carve-Out.

(a)    *DIP Carve-Out*.  As used in this Final Order, the "**DIP Carve-Out**" means,

collectively, the sum of:  all allowed administrative expenses pursuant to (i) 28 U.S.C. § 1930(a)(6)

and 31 U.S.C. § 3717 for fees payable to the Office of the United States Trustee, as determined by

agreement of the U.S. Trustee or by final order of the Court ("**U.S. Trustee Fees**"), and (ii) 28

U.S.C. § 156(c) for fees required to be paid to the Clerk of the Court; (iii) all reasonable and

documented fees and expenses of up to $25,000 incurred by a trustee under section 726(b) of the

Bankruptcy Code; (iv) all unpaid fees and expenses allowed at any time by the Court, whether by

interim order, procedural order, or otherwise (the "**Allowed Professional Fees**"), and incurred by

professionals retained by the Debtors and the Committee in accordance with an order of the Court

(which order has not been reversed, vacated or stayed) under sections 327(a) or 1103(a) of the

Bankruptcy Code, (collectively the "**Case Professionals**"), incurred at any time prior to the

delivery of a Carve-Out Trigger Notice (as defined below); and (v) Allowed Professional Fees of

Case Professionals incurred after the delivery of a Carve-Out Trigger Notice to the extent allowed

at any time, whether by interim order, procedural order, or otherwise.  For purposes of the

foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other

electronic means) by the DIP Agent to the Debtors, the Prepetition Agents, the Supporting

Creditors, the Committee and the U.S. Trustee, which notice may be delivered only following the occurrence and during the continuation of an Event of Default. The DIP Credit Parties' obligations to fund the DIP Carve-Out in accordance with this paragraph 30(a) shall be limited to the DIP Carve-Out Cap (as defined herein) and shall terminate upon the payment in full, in cash, of the DIP Obligations. For the avoidance of doubt, the DIP Agent shall at all times maintain, as part of the Reserves (as defined in the DIP Credit Agreement), a reserve in an amount not less than the sum of (x) the then current amounts described in (a)(i), (a)(ii), and (a)(iii) of this paragraph 30, it being understood that the amount of $75,000 shall be reserved and deemed sufficient for amounts owing thereunder, and (a)(iv) of this paragraph 30, limited to an amount not to exceed the balance of any Reported Fee Accruals (as defined in the DIP Credit Agreement) reported to the DIP Agent prior to delivery of a Carve-Out Trigger Notice less any Allowed Professional Fees that have been paid to the applicable Case Professionals prior to delivery of a Carve-Out Trigger Notice, whether by interim order, procedural order, or otherwise; and (y) on account of Allowed Professional Fees of Case Professionals incurred after the delivery of a Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, (A) $500,000 for the DIP Credit Parties' claims and liens; and (B) an additional $500,000, for an aggregate amount of $1,000,000, for the Prepetition Secured Creditors' claims and liens (the sum of (x) and, as applicable, (y)(A) and/or (y)(B), the "**DIP Carve-Out Cap**"). Notwithstanding anything in this Final Order or the DIP Loan Documents to the contrary, the DIP Agent shall not consent to any increase in the DIP Carve-Out or the DIP Carve-Out Cap, or any alternative carve-out in connection with a DIP Financing (as defined in the ABL Intercreditor Agreement), without the consent of the holders of 66.67% of the First Lien Notes (pursuant to the terms of the First Lien Notes Indenture), such consent not to be unreasonably withheld, conditioned, or delayed; *provided*

that the foregoing shall not bind any lender or agent party to a refinancing of the DIP Facility; *provided further* that the First Lien Notes Creditors reserve all rights, including under the Intercreditor Agreement, with respect to any lender or agent party to such a refinancing. Notwithstanding anything in this Final Order or the DIP Loan Documents to the contrary, to the extent any liens or claims are subordinated to the DIP Carve-Out, they shall be subordinate to the DIP Carve-Out solely up to the amount of the applicable DIP Carve-Out Cap.

          (b)     *Carve Out Reserve.* On the date on which a Carve Out Trigger Notice is given, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the DIP Carve-Out (up to the DIP Carve-Out Cap). The Debtors shall deposit and hold such amounts in a segregated account in trust to pay all then unpaid Allowed Professional Fees of the Case Professionals (subject to the DIP Carve-Out Cap) prior to any and all other claims (the "**Carve Out Reserves**"). Notwithstanding anything contained herein to the contrary, following delivery of a Carve Out Trigger Notice, the DIP Credit Parties and the Prepetition Secured Creditors shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Credit Parties in accordance with the DIP Loan Documents, subject to the Intercreditor Agreements and this Final Order. Further, notwithstanding the foregoing, the requirement of the DIP Credit Parties to fund the portion of the Carve Out Reserve on account of Allowed Professional Fees of Case Professionals incurred after the delivery of a Carve-Out Trigger Notice and the limitations with respect to the DIP Credit Parties sweeping or foreclosing on cash set forth above until the Carve Out Reserve is funded shall be limited to the amount of $500,000. Further, notwithstanding

anything contained herein or in the DIP Loan Documents to the contrary, (i) the failure of the

Carve Out Reserves to satisfy in full the Allowed Professional Fees of Case Professionals shall not

affect the priority of the DIP Carve-Out, (ii) nothing contained in the Interim Order, this Final

Order, the DIP Loan Documents or the Prepetition Credit Documents (including the Approved

Budget (or any other budget), the DIP Carve-Out, the DIP Carve-Out Cap, the Carve Out Reserves,

or any of the foregoing), (x) shall in any way prohibit, impair, limit the incurrence or allowance

of, or serve as a cap on the amount of, the fees and expenses of the Case Professionals (which

includes, for the avoidance of doubt, the fees and expenses of the Committee's professionals), or

(y) otherwise prohibit, limit or impair the ability of the Committee's professionals to (1) assert

administrative expense claims on account of such fees and expenses against each each of the

Debtors and their affiliated debtors and debtors-in-possession, or (2) to be compensated during the

pendency of the Chapter 11 Cases (subject to any interim compensation procedures order entered

by the Court) with any advances or borrowings made under or pursuant to, or proceeds of, the DIP

Facility.

> (c)    *No Direct Obligation to Pay Professional Fees*.  Other than funding the DIP

Carve-Out Cap as and when required in paragraph 30(a), none of the DIP Credit Parties shall be

responsible for the funding, direct payment or reimbursement of any fees or disbursements of any

Case Professionals incurred in connection with the Cases or any Successor Cases.  Nothing in this

Final Order or otherwise shall be construed to obligate the DIP Credit Parties or the Prepetition

Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case

Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or

reimbursement.  Nothing in this Final Order or otherwise shall be construed to increase the DIP

Carve-Out Cap if actual fees, disbursements, costs and expenses incurred of any Case Professional

are higher in fact than the estimated fees and disbursements reflected in the Approved Budget. Notwithstanding anything to the contrary contained in this Final Order, the Approved Budget or the DIP Loan Documents, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be responsible for funding any "success", "restructuring", "transaction" or similar fee payable to the Debtors' investment banker or financial advisor, and in no event shall any such amounts be paid out of the DIP Carve-Out other than after the repayment in full in cash of the DIP Obligations in connection with or as a result of a transaction pursuant to section 363 of the Bankruptcy Code and as limited by the DIP Carve-Out Cap.  At any time there are any outstanding DIP Obligations, following the Termination Declaration Date, Allowed Professional Fees of any Case Professional shall be paid solely from the DIP Carve-Out and any retainer, as applicable.

(d)     *Payment of DIP Carve-Out*.  The funding of the DIP Carve-Out (up to the DIP Carve-Out Cap) shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

31.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve-Out.  The DIP Facility, the DIP Collateral, the Cash Collateral, the Prepetition Collateral, and the DIP Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, investigation, motion or other litigation of any type (i) adverse to or against the interests of the DIP Credit Parties, the Prepetition Agents or the Prepetition Secured Creditors, or their rights and remedies under the DIP Loan Documents, the Interim Order or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors, the Committee or any other person in connection with the assertion of or joinder in any claim, counterclaim, action,

proceeding, application, motion, objection, defense or other contested matter, the purpose of

which is to seek, or the result of which would be to obtain, any order, judgment, determination,

declaration or similar relief adverse to or against the interests of the DIP Credit Parties or the

Prepetition Secured Creditors or their rights and remedies under the DIP Loan Documents,

(ii) invalidating, investigating, setting aside, avoiding, subordinating or otherwise challenging, in

whole or in part, any DIP Obligations or the Prepetition Secured Obligations, (iii) for monetary,

injunctive or other affirmative relief against the DIP Credit Parties or the Prepetition Secured

Creditors, or their respective collateral, (iv) preventing, hindering or otherwise delaying the

exercise by the DIP Credit Parties or the Prepetition Secured Creditors of any rights and

remedies under the Interim Order or this Final Order, the DIP Loan Documents, or applicable

law, or the enforcement or realization (whether by foreclosure or further order of the Court or

otherwise) by the DIP Agent upon any of the DIP Collateral, or by the Prepetition Agents, as

applicable, with respect to the Prepetition Collateral, except as provided for in the Interim Order

or this Final Order, (v) asserting that the value of the Prepetition Collateral is less than the

Prepetition Secured Obligations, (vi) to pursue any litigation against any DIP Credit Party, the

Prepetition Agents or any other Prepetition Secured Creditor, or (vii) investigating or asserting

claims or potential causes of action related to, or arising out of, the incurrence of the Prepetition

Secured Obligations, as it may relate to any party including, but not limited to, the Debtors or

their affiliates; (b) to make any distribution under a plan of reorganization in any Chapter 11

Case; (c) to make any payment in settlement of any claim, action or proceeding, before any

court, arbitrator or other governmental body to the extent not expressly permitted under the DIP

Loan Documents; (d) to pay any fees or similar amounts to any person who has proposed or may

propose to purchase interests in any of the Debtors; (e) objecting to, contesting, or interfering

with, in any way, the DIP Credit Parties' enforcement or realization upon any of the DIP

Collateral once an Event of Default has occurred, except as provided for in the Interim Order or

this Final Order; (f) using or seeking to use Cash Collateral while the DIP Obligations remain

outstanding in a manner inconsistent with the Approved Budget; (g) using or seeking to use any

insurance proceeds constituting DIP Collateral without the consent of the DIP Agent, as

applicable; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the

ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to,

investigating, or challenging in any way the DIP Liens, Prepetition Liens, or claims or interests

held by or on behalf of the DIP Credit Parties or the Prepetition Secured Creditors; (j) asserting,

commencing or prosecuting any claims or causes of action whatsoever, including, without

limitation, any actions under chapter 5 of the Bankruptcy Code or any other avoidance actions

under the Bankruptcy Code, against the DIP Credit Parties or the Prepetition Secured Creditors;

or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the

validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the

Prepetition Secured Obligations, the DIP Liens, the Prepetition Liens or any other rights or

interests of the DIP Credit Parties or the Prepetition Secured Creditors; *provided* that the

foregoing limitations shall not encompass any Challenge (as defined below) to the Prepetition

Secured Obligations conducted by the Case Professionals by the Challenge Deadline (as defined

below); *provided*, *further* that the aggregate amount of costs, fees, and expenses incurred in

connection with the investigation in connection with any such Challenge by (x) the Committee's

Case Professionals shall not exceed $750,000 (the "Committee Investigation Budget"), it being

understood and agreed that the costs, fees, and expenses incurred by Committee's Case

Professionals in responding to information requests, document demands or other discovery or

similar requests from third parties in connection with any such Challenge[13] shall not be subject to

the Investigation Budget (as defined below) and (y) the Debtors' Case Professionals shall not

exceed $250,000 (the "Debtor Investigation Budget," and together with the Committee

Investigation Budget, the "Investigation Budget"), it being understood and agreed that the costs,

fees, and expenses incurred by the Debtors' Case Professionals in responding to information

requests, document demands, or other discovery or similar requests in connection with any such

Challenge shall not be subject to the Investigation Budget; *provided*, *further*, that

notwithstanding the foregoing, the Case Professionals may assert administrative expense claims

for any fees and expenses incurred, including, but not limited to, fees and expenses incurred by

the Case Professionals in excess of the Investigation Budget.

32.     Payment of Compensation.  Nothing herein shall be construed as consent to the

allowance of any professional fees or expenses of any Case Professionals or shall affect the right

of the DIP Credit Parties or the Prepetition Secured Creditors to object to the allowance and

payment of such fees and expenses.

33.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

34.     Section 506(c) Claims.  No costs or expenses of administration which have been or

may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against

the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition

Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise; *provided*,

---

[13]     For the avoidance of doubt, this only applies to responses by the Committee (and not its individual members) to requests for information made to the Committee (and not its individual members).

*however*, that the foregoing shall not apply to any Prepetition Secured Creditor (other than the Prepetition ABL Secured Lenders) or Prepetition Collateral, to the extent such creditor or collateral is the subject of a successful Challenge.

35.     No Marshaling/Applications of Proceeds.  None of the DIP Credit Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral; *provided*, *however*, that the foregoing shall not apply to any Prepetition Secured Creditor (other than the Prepetition ABL Secured Lenders) or Prepetition Collateral, to the extent such creditor or collateral is the subject of a successful Challenge.

36.     Section 552(b).  The DIP Agent and the other DIP Credit Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Credit Parties or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the DIP Collateral or Prepetition Collateral; *provided*, *however*, that the foregoing shall not apply to any Prepetition Secured Creditor (other than the Prepetition ABL Secured Lenders) or Prepetition Collateral, to the extent such creditor or collateral is the subject of a successful Challenge.

37.     Limits on Lender Liability.  Nothing in this Final Order, any of the DIP Loan Documents, or any other documents relate thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases. The DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall not, solely by

reason of having made loans under the DIP Facility or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Loan Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Creditors of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors. Notwithstanding anything to the contrary in this paragraph 36, this paragraph 36 shall not apply to any Prepetition Secured Creditor for any prepetition activities of any of the Debtors to the extent such creditor is the subject of a successful Challenge.

38.    Joint and Several Liability.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

39.    No Superior Rights of Reclamation.  Based on the findings and rulings herein concerning the integrated nature of the DIP Facility and the Prepetition ABL Credit Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens or the ABL Priority Liens.

40.    Discharge Waiver.  The DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the ABL Priority Liens, and the obligations of the Debtors with respect to adequate

protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash and all Postpetition Letters of Credit cancelled (or otherwise terminated) by the Prepetition ABL Agent, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Secured Parties or the Prepetition Secured Creditors, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations, all Obligations under the Prepetition ABL Credit Documents, and Adequate Protection Superpriority Claims.

41.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Credit Parties' or the Prepetition Secured Creditors' right (subject to the Intercreditor Agreements) to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Credit Parties or the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for

use of Cash Collateral subject to the Intercreditor Agreements, (v) object to any sale of assets subject to the Intercreditor Agreements, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Credit Parties and the Prepetition Secured Creditors are preserved.

42.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Credit Parties to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Credit Parties.

43.    <u>Challenge Period</u>.  Subject only to the terms of this paragraph 43, the grant of adequate protection payments, liens or claims to the Prepetition Secured Creditors and the statements contained in paragraph E hereof shall be without prejudice to the rights of the Committee to seek to recharacterize, disgorge, disallow or assert any other Challenge with respect to all or a portion of the Prepetition Secured Creditors' claims in respect of the Prepetition Credit Documents, pursue any claims or seek appropriate remedies against the Prepetition Secured Creditors in connection with the Prepetition Credit Documents or avoid, subordinate or assert any other Challenge with respect to any or all of the security interests or liens in the Prepetition Collateral or in any other asset or property of Debtors in which the Prepetition Secured Creditors claim an interest, including any claim, action, or proceeding brought against the Prepetition Secured Creditors in accordance with this paragraph 43 that requires the Prepetition Secured Creditors to give up adequate protection liens and superpriority claims, to disgorge adequate protection interest payments received or accruals credited, or to disgorge as repaid pursuant to this Final Order as a result of any of the Prepetition Secured Creditors' claims against Debtors or liens

upon and security interests in the assets and properties of Debtors (including the Prepetition

Collateral) being invalidated, avoided, subordinated, impaired or compromised in any way, either

by an order of the Court (or other court of competent jurisdiction) or by settlement.  Any party,

including the Committee, must commence, as appropriate, a contested matter or adversary

proceeding raising any objection, claim, defense, suit, or other challenge (each, a "**Challenge**")

with respect to any claim, security interest, or any other rights of the Prepetition Secured Creditors

under the applicable Prepetition Credit Documents, including in the nature of a setoff,

counterclaim, or defense on or before the earlier of (i) the date of entry of an order confirming a

plan of reorganization, (ii) the date of entry of an order approving the sale of all or substantially

all of the Debtors' assets, or (iii) the date that is ninety (90) days from the date of entry of this

Final Order (the earliest to occur of clauses (i), (ii), and (iii), as applicable, the "**Challenge**

**Deadline**"), as such applicable date may be extended in writing from time to time in the sole

discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Credit Documents),

the First Lien Notes Trustee (with respect to the First Lien Notes Documents), the Second Lien

Term Loan Agent (with respect to the Second Lien Term Loan Documents), and the Third Lien

Notes Trustee (with respect to the Third Lien Notes Documents), or by this Court for good cause

shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge

Deadline.  Notwithstanding anything contained herein to the contrary, the Challenge Deadline will

be tolled for the Committee if it formally moves for an order of this Court conferring such standing

or authority (the "**Standing Motion**") prior to the initial Challenge Deadline from the date the

Committee so moves until such time as standing is granted or denied pursuant to an order of the

Court with regard to such Standing Motion; provided that the Challenge Deadline will only be

tolled (a) if such motion attaches a proposed complaint identifying the specific Challenges that the

Committee proposes to assert and the defendants against whom such Challenges are proposed to be asserted and (b) will only be tolled with respect to such Challenges and defendants specifically identified therein.

44.    <u>Binding Effect of Final Order</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the stipulations, terms and provisions of this Final Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case, and the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case shall be forever barred, estopped and enjoined from pursuing a Challenge or otherwise contesting the DIP Obligations and Prepetition Secured Obligations unless, and solely to the extent that, (a) the Committee or a party in interest has commenced a Challenge by the Challenge Deadline, and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Nothing in this Final Order shall be construed as limiting the power of the Court to annul or modify any Adequate Protection Lien or Adequate Protection Superiority Claim, or to require a return of or

recharacterization of any Adequate Protection Payment, in the event that any such Challenge or avoidance shall be successful.

45.    Any order dismissing one or more of the Chapter 11 Cases or Successor Cases under section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Liens, ABL Priority Liens, Prepetition Liens and Adequate Protection Liens shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations, Remaining Prepetition ABL Obligations, Prepetition Secured Obligations and/or Adequate Protection Superpriority Claims (as applicable) are indefeasibly paid and satisfied in full and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, DIP Liens, DIP Carve-Out, ABL Priority Liens, Adequate Protection Superpriority Claims, Adequate Protection Liens and the Prepetition Liens and the Intercreditor Agreements.

46.    No Modification of Final Order.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent and the Supporting Creditors (i) any reversal, modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or

superior to the DIP Superpriority Claim or the Adequate Protection Superpriority Claims, other than the DIP Carve-Out; (b) any order, other than this Final Order, allowing use of Cash Collateral resulting from DIP Collateral (except as may be provided by further order of the Court); and (c) except as set forth in this Final Order, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, the ABL Priority Liens or, subject to further order of this Court, the Prepetition Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent and the Supporting Creditors (and with respect to the Prepetition ABL Obligations and the Remaining Prepetition ABL Obligations, the prior written consent of the Prepetition ABL Agent) and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent, the Prepetition ABL Agent, or the Supporting Creditors, as applicable.

47.    _Final Order Controls_.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

48.    _Survival_.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Final Order, including, without limitation, the claims, liens, security interests and other protections granted to the DIP Credit Parties and Prepetition Secured Creditors pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding

the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until (i) all DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated, (ii) all Prepetition Secured Obligations have been indefeasibly paid in full in cash, and (iii) all Postpetition Letters of Credit have been cancelled or otherwise terminated.  The terms and provisions in this Final Order concerning indemnification of the DIP Credit Parties shall continue in the Chapter 11 Cases and in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

49.    <u>Notice of Entry of Final Order</u>.  On or before [•], 2020, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of this Final Order upon the notice parties required to be served under Local Bankruptcy Rule 4001-2 who do not receive electronic notice of the entry of this Final Order pursuant to Local Bankruptcy Rule 4001-2.

50.    <u>Treatment of Proceeds from Sale of Texas Assets</u>.  Notwithstanding any provisions of the Interim Order or any final orders pertaining to post-petition financing, use of cash collateral, the sale of the debtors' assets, or any agreements validated by any such orders, the liens currently held by the Local Texas Tax Authorities (Tarrant County, Harris County, Lewisville ISD, Northwest ISD and Roanoke) or which shall arise during the course of this case pursuant to applicable non-bankruptcy law on DIP Collateral, shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Final Order.

51.    <u>Dow Jones & Company</u>.  Reference is made to those certain Master Services Agreements, as amended, entered into between Dow Jones & Company, Inc. and certain of the

Debtors, collectively, the "MSAs".  The Debtors and DIP Credit Parties each acknowledge and agree that none of the Debtors have title to or ownership interest in (i) Dow Jones' newsprint stored or otherwise held by the Debtors at a Service Location(as defined in the MSAs; (ii) Publication Content (as defined in Section 9.1 of each of the MSAs); (iii) Dow Jones Intellectual Property Rights (as defined in Section 9.1 of each of the MSAs); or (iv) the Color Equipment (as defined in Section 4.5 of certain of the MSAs) and related documentation.

52.    <u>DIP Credit Agreement Amendments.</u> The DIP Credit Agreement shall be amended by (a) replacing Schedule 5.23 thereof in its entirety with Schedule 5.23 annexed to this Final Order, and (b) deleting the terms "Prepetition Obligations" and "Prepetition Liens" from Sections 6.19(c) and (d).

53.    <u>*Nunc Pro Tunc* Effect of this Final Order</u>.  This Final Order shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry thereof.

54.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.


Dated: March 26, 2020
        New York, NY

<u>**s/Michael E. Wiles**</u>
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**Lien and Claim Priority**

| Order of Priority | ABL Carve-Out Collateral | ABL Priority Collateral (whether in existence on the Petition Date or thereafter arising) | Notes Priority Collateral (whether in existence on the Petition Date or thereafter arising) | DIP Collateral that Consists of Prior Unencumbered Assets |
|---|---|---|---|---|
| 1st | Remaining Prepetition ABL Obligations | DIP Carve-Out (up to the DIP Carve-Out Cap) | First Lien Notes Obligations (and adequate protection with respect thereto) | DIP Carve-Out (up to the DIP Carve-Out Cap) with respect to collateral that is of the type of ABL Priority Collateral<br><br>Adequate Protection for First Lien Notes Obligations with respect to collateral that is of the type that would be Notes Priority Collateral |
| 2nd | After the Postpetition Letters of Credit have been cancelled or otherwise terminated and the Remaining Prepetition Obligations satisfied in full in accordance with the Final Order and the Prepetition ABL Payoff Letter, DIP Carve-Out (up to the DIP Carve-Out Cap) | DIP Facility | DIP Carve-Out (up to the DIP Carve-Out Cap) | DIP Facility with respect to collateral that is of the type of ABL Priority Collateral<br><br>DIP Carve-Out (up to the DIP Carve-Out Cap) with respect to collateral that is of the type of Notes Priority Collateral |
| 3rd | DIP Facility | Remaining Prepetition ABL Obligations (and adequate protection with respect thereto) | DIP Facility | Adequate Protection for Remaining Prepetition ABL Obligations with respect to |

| | | | | Collateral that is of the type of ABL Priority Collateral<br><br>DIP Facility with respect to collateral that is of a type that is Notes Priority Collateral |
|---|---|---|---|---|
| **4th** | First Lien Notes Obligations (and adequate protection with respect thereto) | First Lien Notes Obligations (and adequate protection with respect thereto) | Remaining Prepetition ABL Obligations (and adequate protection with respect thereto) | Adequate Protection for First Lien Notes Obligations with respect to collateral that is of the type that would be ABL Priority Collateral<br><br>Adequate Protection for Remaining Prepetition ABL Obligations with respect to Collateral that is of the type of Notes Priority Collateral |
| **5th** | Second Lien Term Loan Obligations (and adequate protection with respect thereto) | Second Lien Term Loan Obligations (and adequate protection with respect thereto) | Second Lien Term Loan Obligations (and adequate protection with respect thereto) | Adequate Protection for Second Lien Term Loan Obligations |
| **6th** | Third Lien Notes Obligations (and adequate protection with respect thereto) | Third Lien Notes Obligations (and adequate protection with respect thereto) | Third Lien Notes Obligations (and adequate protection with respect thereto) | Adequate Protection for Third Lien Notes Obligations |