**Presentment Date: May 18, 2020 at 12:00 p.m. (ET)**
**Objection Deadline: May 11, 2020 at 4:00 p.m. (ET)**
**Hearing (only if objections are filed): May 19, 2020 at 11:00 a.m. (ET)**

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Frank A. Merola
Erez E. Gilad
Samantha Martin
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

*In re:*                     :

                          :      **Chapter 11**

                          :

**THE McCLATCHY COMPANY,** *et al.,*    :      **Case No. 20-10418 (MEW)**

                          :

            Debtors.[1]         :      **(Jointly Administered)**

                          :

------------------------------------------------------------ x

**NOTICE OF PRESENTMENT OF MOTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER**
**(I) CLARIFYING ITS DISCLOSURE OBLIGATIONS, (II) APPROVING PROTOCOL**
**FOR PROVIDING ACCESS TO INFORMATION TO UNSECURED CREDITORS**
**AND (III) RETAINING KURTZMAN CARSON CONSULTANTS LLC AS**
**INFORMATION AGENT, *NUNC PRO TUNC* TO APRIL 6, 2020**

     **PLEASE TAKE NOTICE** that the undersigned will present the proposed order attached

to the annexed *Motion of the Official Committee of Unsecured Creditors for Entry of an Order*

*(I) Clarifying Its Disclosure Obligations, (II) Approving Protocol for Providing Access to*

*Information to Unsecured Creditors and (III) Retaining Kurtzman Carson Consultants LLC as*

---

[1] The last four digits of Debtor The McClatchy Company's tax identification number are 0478. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www kccllc net/McClatchy. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 2100 Q Street, Sacramento, California 95816.

*Information Agent, Nunc Pro Tunc to April 6, 2020* (the "Motion") to the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), for signature on **May 18, 2020 at 12:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the relief requested in the annexed Motion: (i) must be made in writing; (ii) shall state with particularity the grounds therefor; (iii) shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (iv) must be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, on a CD-ROM, preferably in Portable Document Format (PDF) or any other Windows-based word processing format; and (v) served upon the undersigned so as to be actually received no later than **May 11, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"). The ECF docket number to which the filing relates shall be included in the upper right hand corner of the caption of all responses or objections.

**PLEASE TAKE FURTHER NOTICE** that if no responses or objections are received by the Objection Deadline, the proposed order may be approved without further notice or a hearing. If an objection has been timely filed, a hearing on the Application will be held at the Bankruptcy Court on **May 19, 2020 at 11:00 a.m. (prevailing Eastern Time)**. The moving and objecting parties are required to attend the hearing on the matter, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

Dated:      May 4, 2020
            New York, New York

                                    **STROOCK & STROOCK & LAVAN LLP**

                                    /s/ Kristopher M. Hansen
                                    Kristopher M. Hansen
                                    Frank A. Merola
                                    Erez E. Gilad
                                    Samantha Martin
                                    180 Maiden Lane
                                    New York, NY 10038
                                    Telephone: (212) 806-5400
                                    Facsimile: (212) 806-6006

                                    *Counsel for the Official*
                                    *Committee of Unsecured Creditors*

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Frank A. Merola
Erez E. Gilad
Samantha Martin
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

*In re:*                                                     :
                                                             :        **Chapter 11**
                                                             :
**THE McCLATCHY COMPANY, *et al.*,**                         :        **Case No. 20-10418 (MEW)**
                                                             :
            **Debtors.[1]**                                  :        **(Jointly Administered)**
                                                             :
------------------------------------------------------------ x


**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER (I) CLARIFYING ITS DISCLOSURE OBLIGATIONS,
(II) APPROVING PROTOCOL FOR PROVIDING ACCESS TO INFORMATION
TO UNSECURED CREDITORS AND (III) RETAINING KURTZMAN
CARSON CONSULTANTS LLC AS INFORMATION AGENT,
*NUNC PRO TUNC* TO APRIL 6, 2020**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases  (the "Chapter 11 Cases") of the above-captioned debtors-in-possession (the

"Debtors") submits this motion (the "Motion"), pursuant to sections 105(a), 107(b)(1),

1102(b)(3), and 1103(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as

---

[1]    The last four digits of Debtor The McClatchy Company's tax identification number are 0478. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/McClatchy. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 2100 Q Street, Sacramento, California 95816.

amended, the "<u>Bankruptcy Code</u>") and rule 9018 of the Federal Rules of Bankruptcy Procedure

(as amended, the "<u>Bankruptcy Rules</u>") for entry of an order, substantially in the form of

**<u>Exhibit A</u>** attached hereto, (i) clarifying the Committee's disclosure obligations to the Debtors'

unsecured creditors; (ii) approving the Creditor Information Protocol (as defined below); and

authorizing the Committee to employ and retain Kurtzman Carson Consultants LLC ("<u>KCC</u>") as

information agent (the "<u>Information Agent</u>") in connection therewith. In support of the Motion,

the Committee respectfully represents as follows:

<u>**BACKGROUND**</u>

1.      The Debtors commenced these cases on February 13, 2020 (the

"<u>Petition Date</u>"). The Debtors continue to operate their businesses and manage their assets and

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been

made in these Chapter 11 Cases.

2.      On February 26, 2020, the Office of the United States Trustee for Region

2, for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the Committee, which

currently is comprised of the following entities: (i) Dow Jones & Company, Inc.; (ii) Lorianne E.

Sawin; (iii) P. Anthony Ridder; (iv) Pension Benefit Guaranty Corporation; (v) The News Guild-

CWA; (vi) Wilmington Savings Fund Society, FSB, as Indenture Trustee for the 2027 and 2029

Debentures; and (vii) Wipro Limited.

3.      On March 25, 2020, the Committee selected KCC to serve as the

Committee's information agent in connection with these Chapter 11 Cases, subject to this

Court's approval.

## JURISDICTION

4.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.     The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 107(b)(1), 1102(b)(3), and 1103(c) and Bankruptcy Rule 9018.

## RELIEF REQUESTED

6.     Pursuant to section 1102(b)(3) of the Bankruptcy Code, an official committee must "provide access to information for creditors who (i) hold claims of the kind represented by that committee; and (ii) are not appointed to the committee." 11 U.S.C. § 1102 (b)(3)(A).  However, the statute specifies neither how an official committee should comply with this obligation nor the nature and scope of the information it must provide to creditors.

7.     Moreover, section 1102(b)(3) provides no guidance regarding whether, or to what extent, an official committee is obligated to disseminate confidential, proprietary or otherwise non-public information to which it necessarily becomes privy in pursuing its statutory duty to investigate "the acts, conduct, assets, liabilities, and financial information of the debtors, the operation of the debtors' business and desirability of the continuance of such business."  11 U.S.C. § 1103(c)(2).  Thus, the lack of clarity in section 1102(b)(3) of the Bankruptcy Code raises significant issues regarding the interplay between an official committee's disclosure obligations and its confidentiality commitments.

8.     The Committee has executed bylaws containing confidentiality provisions, pursuant to which the Committee and the Debtors agree that non-public information concerning the Debtors that is provided by the Debtors or its professionals to the Committee and its representatives will be kept confidential (the "Confidentiality Provisions").    Under the

-3-

Confidentiality Provisions, the Committee and its representatives are prohibited from sharing non-public, confidential or privileged information obtained from the Debtors or its professionals with third parties. Additionally, as a party to the mediation ordered by this Court, the Committee and its representatives are prohibited from disclosing certain information obtained in connection with the mediation to any mediation non-party. *See Order Establishing Terms for Plan Mediation* [Docket No. 107] (the "Mediation Order").

        9.      Accordingly, by this Motion, the Committee seeks entry of an order: (i) approving the Creditor Information Protocol; (ii) finding that, by complying with the Creditor Information Protocol, the Committee, its members and, in each case, their respective agents, representatives, affiliates, partners, employees, officers, directors, managers, members, counsel, and financial and other advisors (collectively, the "Committee Parties") will be in compliance with section 1102(b)(3) of the Bankruptcy Code; and (iii) confirming that section 1102(b)(3)(A) of the Bankruptcy Code does not authorize or require the Committee (except as set forth in the Creditor Information Protocol) to provide access for any creditor to (a) any confidential, proprietary, and/or other non-public information (whether oral, written or in any electronic or physical medium) received or held by the Committee Parties concerning the Debtors or these Chapter 11 Cases, the Committee, any other matter related or relevant to these Chapter 11 Cases, the formulation of one or more chapter 11 plans, or any adversary proceeding, contested matter or other litigation in these Chapter 11 Cases, whether provided (voluntarily or involuntarily) by or on behalf of the Debtors or by any third party or prepared by or for the Committee, (b) any confidential information covered by the Confidentiality Provisions, (c) any information the disclosure of which would otherwise violate the Committee's bylaws, (d) any information deemed to be "Mediation Materials," as defined by the Mediation Order, or (e) any other

-4-

information if the effect of disclosure would constitute a general or subject matter waiver of the attorney-client, work-product, or any other privilege possessed by the Committee (collectively, the "Confidential Information").

10.    In addition, the Committee respectfully requests that the Court enter an order authorizing the Committee to (a) retain KCC as Information Agent pursuant to the terms of the agreement for services, a copy of which is annexed as **Exhibit B** hereto (the "Services Agreement"), *nunc pro tunc* to April 6, 2020, and (b) reimburse KCC for its services in accordance with the terms of the Services Agreement (as defined below).

**A.    Creditor Information Protocol**

11.    To balance the need to maintain the confidentiality of the Confidential Information with the right of the Debtors' unsecured creditors to receive information regarding these Chapter 11 Cases, the Committee proposes to establish the following protocol (the "Creditor Information Protocol"):

A.    The Committee will establish and, until the earliest to occur of dissolution of the Committee, dismissal or conversion of these Chapter 11 Cases, and a further order of the Court, maintain a website (the "Committee Website") that will provide, without limitation:

i.    general information concerning the Debtors and significant parties in interest in these cases, the case docket, and access to filings;

ii.    contact information for the Debtors, the Debtors' counsel, the Committee's counsel, and any information hotlines that may be established;

iii.    the date, if set by the Court, by which unsecured creditors must file proofs of claim;

iv.    the voting deadline with respect to any chapter 11 plan filed in these cases;

v.    a calendar of upcoming significant events in these cases;

vi.    access to the claims docket established by the Debtors' claims and noticing agent;

   vii.  the Debtors' monthly operating reports;

   viii.  press releases (if any) issued by the Committee or the Debtors;

   ix.  a forum to submit questions, comments and requests for access to additional information;

   x.  responses to questions, comments and requests for access to information (to the extent provided by the Committee, in the exercise of its reasonable discretion); and

   xi.  links to other relevant websites (e.g., the Debtors' corporate website and the website of the U.S. Trustee's Office).

B.  <u>E-Mail Address</u>. The Committee will also establish and maintain an electronic mail address for creditors to submit questions and comments.

C.  <u>Privileged and Confidential Information</u>. The Committee shall not be required to disseminate to any entity (all references to "entity" herein shall be as defined in section 101(15) of the Bankruptcy Code, "<u>Entity</u>") without further order of the Court, Confidential Information.  In addition, the Committee shall not be required to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

D.  <u>Information Obtained Through Discovery</u>. Any information received (formally or informally) by the Committee Parties from any Entity in connection with an examination pursuant to Bankruptcy Rule 2004 or in connection with any formal or informal discovery in any contested matter, adversary proceeding, or other litigation shall not be governed by any order entered with respect to this Motion but, rather, by any order governing such discovery.  Nothing herein shall obligate the Committee to provide any information the Committee obtains from third parties.

E.  <u>Creditor Information Requests</u>. If a creditor (the "<u>Requesting Creditor</u>") submits a written request to the Committee (the "<u>Information Request</u>") for the Committee to disclose information pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (the "<u>Response</u>"), including providing access to the information requested or the reasons the Information Request cannot be complied with.  If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information that need not be disclosed (i) pursuant to the terms of this Order or otherwise under section 1102(b)(3)(A) of the Bankruptcy Code, (ii) because such disclosure is prohibited under applicable law, (iii) because such information was obtained by the Committee pursuant to an agreement to maintain it as confidential, or (iv) that the

Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion shall be served and a hearing on such motion shall be noticed and scheduled.

F.    <u>Release of Confidential Information of Third Parties</u>. If the Information Request implicates Confidential Information of the Debtors (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee may demand (the "<u>Demand</u>") for the benefit of the Debtors' creditors: (i) if the Confidential Information is information of the Debtors, by submitting a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors, stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, and the Debtors may schedule a hearing with the Court seeking a ruling with respect to the Demand and (ii) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity objects to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, such Entity, and the Debtors, may schedule a hearing with the Court seeking a ruling with respect to the Demand. To the extent, however, the Committee has agreed to receive certain information pursuant to a written confidentiality agreement, and the terms of such confidentiality agreement are more restrictive than this paragraph, the terms of the confidentiality agreement shall govern.

12.    The foregoing procedures are necessary, narrowly-tailored rules designed

to protect the interests of the Debtors, the Committee, and affected creditors.

## B.    <u>Retention of Information Agent</u>

13.    KCC's retention as Information Agent is appropriate and necessary to

assist the Committee in complying with its obligations under the Bankruptcy Code and to assist

in the effective administration of the Chapter 11 Cases while minimizing the expense of such

functions. Specifically, KCC will, among other things:

(a)    Establish and maintain the Committee Website and provide associated technology and communications services to facilitate the Committee's communications with

the Debtors' unsecured creditors; and

(b)     Prepare and serve required notices and pleadings on behalf of the Committee in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any case management order entered in these Chapter 11 Cases in the form and manner directed by the Committee and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the Committee and/or the Court may deem necessary or appropriate.

14.     The Committee proposes that KCC will be compensated by the Debtors' estates for its information and noticing services rendered on behalf of the Committee in these Chapter 11 Cases in accordance with the provisions of the Services Agreement. The Committee conducted a competitive bidding process, and ultimately determined that KCC's proposed pricing schedule was fair and reasonable and the best option available to the Committee in light of the Committee's needs.  Moreover, the Committee believes that by retaining the same noticing agent as the Debtors, there will be economies of scale in connection with the services provided.

15.     KCC's rate structure in connection with these Chapter 11 Cases is set forth in the Services Agreement annexed hereto as **Exhibit B**, and the Committee understands that such rates are the same as those agreed between KCC and the Debtors [Dkt. No. 71].  The Committee respectfully requests that the fees and expenses incurred by KCC pursuant to the Services Agreement be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business, in accordance with the terms and conditions of the Services Agreement and the pricing schedule set forth therein, without further application to or order of the Court.

16.     KCC has informed the Committee that, as of the date of this Motion and to the best of KCC's knowledge: (a) KCC does not have an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (b) neither KCC nor any employee of KCC (i) is a creditor, equity security holder or an insider of the Debtors or (ii)

is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the KCC personnel expected to provide services to the Committee in the Chapter 11 Cases is related or connected to any United States Bankruptcy Judge for the Southern District of New York, the United States Trustee, or any person employed by the Office of the United States Trustee. KCC has submitted a declaration in connection with its retention by the Debtors in these Chapter 11 Cases. See *Declaration of Evan Gershbein in Support of the Debtors' Application for Entry of Order Appointing Kurtzman Carson Consultants LLC as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date* [Dkt. No. 9]. KCC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered, KCC will supplement its disclosure to the Court.

## BASIS FOR RELIEF REQUESTED

### A.    The Creditor Information Protocol Is Necessary and Appropriate

17.    As discussed above, section 1102(b)(3) of the Bankruptcy Code, while imposing certain disclosure obligations on the Committee, neither specifies how the Committee should comply with such obligations, nor clarifies the nature and extent of the information the Committee must disclose to the Debtors' unsecured creditors. The Committee respectfully submits that section 1102(b)(3) of the Bankruptcy Code is unclear and ambiguous. *See In re Refco Inc.*, 336 B.R. 187, 190 (Bankr. S.D.N.Y. 2006). The legislative history of section 1102 does not provide any further guidance and merely reiterates the statutory text. *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("[Section 1102(b)(3),] requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments from these creditors and, pursuant to court order, make additional reports and disclosures available to them.").

20-10418-mew    Doc 411    Filed 05/04/20    Entered 05/04/20 20:08:12    Main Document
Pg 13 of 36

18.     This lack of clarity raises significant issues for the Committee regarding compliance with its statutory duties, while also honoring its commitment to protect the Confidential Information.  Indeed, section 1102(b)(3) of the Bankruptcy Code could be read as (i) requiring the Committee to disclose all information requested by the Committee's constituency, irrespective of applicable state and federal securities laws, as well as its non-disclosure obligations (*see In re Refco Inc.*, 336 B.R. at 190 (stating that a broad reading arguably "impose[s] an obligation contrary to other applicable laws and the Committee's fiduciary duties and hamper[s] the Committee's performance under section 1103 of the Bankruptcy Code."), and (ii) impacting the attorney-client and work-product privileges between the Committee and its counsel and other agents.  *See Refco*, 336 B.R. at 197 (noting that "one should proceed cautiously concerning the disclosure of information that could reasonably have the effect of waiving the attorney-client or other privilege . . . notwithstanding Bankruptcy Code section 1102(b)(3).") (citing *Marcus v. Parker* (*In re Subpoena Duces Tecum*), 978 F.2d 1159, 1161 (9th Cir. 1992)).

19.     Without the requested clarification, the Committee may be hampered in its statutory duties if the Debtors are hesitant to share Confidential Information—precisely the information the Committee requires to carry out its fiduciary obligations—for fear that the shared information may be disseminated to the members of the public.  Moreover, without the requested relief, the Committee may be deterred from conducting its own independent investigations out of concern that its findings may have to be disseminated to inappropriate parties.  These concerns could impede the Committee's efforts to maximize value ultimately available to unsecured creditors.

20.     The Bankruptcy Code also requires a creditors' committee to "solicit and receive comments" from unsecured creditors (11 U.S.C. § 1102(b)(3)(B)), but does not establish a method for fulfilling such obligation.   The Committee submits that its proposal to invite unsecured creditors to comment on matters related to these Chapter 11 Cases on the Committee Website and make an electronic mail address available to them provides a cost-effective and efficient method for the Committee to satisfy its obligation under section 1102(b)(3)(B) of the Bankruptcy Code.

21.     The Court is empowered, under sections 105 and 107(b)(1) of the Bankruptcy Code to clarify the Committee's obligations. Under section 105(a), the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).   The Committee believes that the relief requested herein is necessary for the Committee to fulfill its statutory duties as contemplated by section 1103(c) of the Bankruptcy Code.

22.     Further, section 107(b)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to trade secret or confidential research, development, or commercial information." 11 U.S.C. 107(b)(1).[1] The language of section 107(b)(1) is mandatory, not permissive.  *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) ("[I]f the information fits any of the specified categories, the court is required to protect a requesting interested party and has no discretion to deny the application."). As a result, the Committee respectfully submits that section

---

[1]     Section 107(b)(1) of the Bankruptcy Code is further supported by Bankruptcy Rule 9018, which states, in relevant part that "on motion or on its own initiative, with or without notice, the court may make any order which justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018.

107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018 empower the Court to protect the Committee by restricting the dissemination of the Confidential Information.

23.    The relief sought by the Committee is not only for the benefit of the Debtors and the Committee, but for the benefit of all constituents in that it ensures the proper functioning of the chapter 11 process.  Further, the Committee needs the benefit of the relief sought in this Motion to ensure that it does not breach the Confidentiality Provisions in its bylaws or the Mediation Order.  A creditors' committee cannot be put in a position of either violating the statute or breaching a confidentiality agreement and thereby subjecting itself to suit by the Debtors and potentially other parties.

24.    Finally, the risk to the Committee of having to provide its constituency with access to Confidential Information creates obvious and serious problems.  If the Committee believes that there could be a risk that privileged information would need to be turned over to such creditors, the entire purpose of such privilege would be eviscerated.  Both the Debtors and the Committee would likely be unable to obtain the independent and unfettered advice and consultation that such privileges are designed to foster.  Indeed, unless it is made clear that the risk of dissemination of the Confidential Information, does not exist, the estate representation structure envisioned by the Bankruptcy Code would become dysfunctional.

25.    Indeed, various courts in this and other circuits have granted relief similar to that requested herein. *See, e.g., In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (Bankr. S.D.N.Y. Jan. 17, 2019) [Docket No. 309]; *In re Sears Holdings Corp.*, No. 18- 23538 (Bankr. S.D.N.Y. Dec. 10, 2018) [Docket No. 1108]; *In re Nine West Holdings, Inc.*, No. 18-10947 (Bankr. S.D.N.Y. June 5, 2018) [Docket No. 353]; *In re BCBG Max Azria Global Holdings, LLC,* No. 17-10466 (Bankr. S.D.N.Y. April 5, 2017) [Docket No. 277]; *In re Avaya*

*Inc.,* No. 17-10089 (Bankr. S.D.N.Y. March 16, 2017) [Docket No. 249]; *In re AOG Entm't,*
*Inc.,* No. 16-11090 (Bankr. S.D.N.Y. June 30, 2016) [Docket No. 188]; *In re SunEdison, Inc.,*
No. 16-10992 (Bankr. S.D.N.Y. June 8, 2016) [Docket No. 507]; *In re Sabine Oil & Gas Corp.,*
No. 15-11835 (Bankr. S.D.N.Y. Sept. 10, 2015) [Docket No. 321]; *In re Sanchez Energy Corp.,*
*et al,* Case No. 19-34508 (Bankr. S.D. Tex. Nov. 11, 2019) [Docket No. 590]; *In re Aceto Corp.,*
*et al.*, Case No. 19-13448 (Bankr. D. N.J. May 20, 2019) [Docket No. 559]; *In re iHeartMedia,*
*Inc.*, Case No. 18-31274 (Bankr. S.D. Tex. May 15, 2018) [Docket No. 728]; *Cobalt*
*International Energy, et al.*, Case No. 17-36709 (Bankr. S.D. Tex. Jan 11, 2018) [Docket No.
372]; *In re FirstEnergy Solutions Corp.*, Case No. 18-50757 (Bankr. N.D. Ohio June 12, 2018);
[Docket No. 728].

**B.      Retention of KCC as Information Agent is Appropriate**

26.     The Committee believes that KCC possesses extensive skills and
experience in the areas necessary to provide these services to the Committee, and the retention of
KCC as the Committee's Information Agent will be beneficial to the Debtors' estates.  KCC is a
bankruptcy administrator that specializes in providing chapter 11 administrative services
including noticing, claims processing, balloting, and other related services critical to the effective
administration of chapter 11 cases. Indeed, KCC has developed efficient and cost-effective
methods to properly handle the voluminous mailings associated with noticing procedures in large
chapter 11 cases.  In addition, in the normal course of its business, KCC is often called upon to
create websites for the purpose of providing access to information to creditors.

27.     KCC has substantial experience in matters of this size and complexity.
Notably, KCC has performed these services for official creditors' committees in cases such as *In*
*re Purdue Pharma L.P., et al.*, No. 19-23649 (Bankr. S.D.N.Y. Sept. 15, 2019); *In re*

*FirstEnergy Solutions, Inc.*, Case No. 18-50757 (Bankr. N.D. Ohio Jun. 12, 2018); and *In re Westinghouse Electric Co. LLC*, No. 17-10751 (Bankr. S.D.N.Y. Mar. 29, 2017), and for debtors in cases such as *In re Windstream Holdings, Inc., et al.*, No. 19-22312 (Bankr. S.D.N.Y. Feb. 25, 2019); *In re Waypoint Leasing Holdings Ltd.*, No. 18-13648 (SMB) (Bankr. S.D.N.Y. Nov. 27, 2018); and *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. May 25, 2017).

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  May 4, 2020
New York, New York

**STROOCK & STROOCK & LAVAN LLP**

/s/ Kristopher M. Hansen
Kristopher M. Hansen
Frank A. Merola
Erez E. Gilad
Samantha Martin
180 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel for the Official*
*Committee of Unsecured Creditors*

## **Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re:                                                    :
                                                          :        **Chapter 11**
                                                          :
**THE McCLATCHY COMPANY, *et al.*,**                      :        **Case No. 20-10418 (MEW)**
                                                          :
Debtors.[1]                                               :        **(Jointly Administered)**
                                                          :
------------------------------------------------------------- x

**ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) CLARIFYING DISCLOSURE OBLIGATIONS, (II) APPROVING PROTOCOL FOR PROVIDING ACCESS TO INFORMATION TO UNSECURED CREDITORS AND (III) RETAINING KURTZMAN CARSON CONSULTANTS LLC AS INFORMATION AGENT *NUNC PRO TUNC* TO APRIL 6, 2020**

Upon the *Motion of The Official Committee of Unsecured Creditors for Entry of an Order (I) Clarifying its Disclosure Obligations, (II) Approving Protocol for Providing Access to Information to Unsecured Creditors, and (III) Retaining Kurtzman Carson Consultants LLC as Information Agent, Nunc Pro Tunc to April 6, 2020* (the "Motion")[2]; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that notice of the Motion was reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon all of the proceedings had before this Court and

---

[1] The last four digits of Debtor The McClatchy Company's tax identification number are 0478. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/McClatchy. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 2100 Q Street, Sacramento, California 95816.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

      1.     The Relief requested in the Motion is granted as set forth herein.

      2.     Subject to paragraphs 4 through 10 hereof, in full satisfaction of the Committee's obligations to provide access to information for the Debtors' unsecured creditors in accordance with section 1102(b)(3)(A) and (B) of the Bankruptcy Code, the Committee shall establish the following protocol (the "Creditor Information Protocol"):

      A.     The Committee will establish and, until the earliest to occur of dissolution of the Committee, dismissal or conversion of these Chapter 11 Cases, and a further order of the Court, maintain a website (the "Committee Website") that will provide, without limitation:

         i.     general information concerning the Debtors and significant parties in interest in these cases, the case docket, and access to filings;

         ii.     contact information for the Debtors, the Debtors' counsel, the Committee's counsel, and any information hotlines that may be established;

         iii.     the date, if set by the Court, by which unsecured creditors must file proofs of claim;

         iv.     the voting deadline with respect to any chapter 11 plan filed in these cases;

         v.     a calendar of upcoming significant events in these cases;

         vi.     access to the claims docket established by the Debtors' claims and noticing agent;

         vii.     the Debtors' monthly operating reports;

         viii.     press releases (if any) issued by the Committee or the Debtors;

         ix.     a forum to submit questions, comments and requests for access to additional information;

        x.      responses to questions, comments and requests for access to information (to the extent provided by the Committee, in the exercise of its reasonable discretion); and

        xi.     links to other relevant websites (e.g., the Debtors' corporate website and the website of the U.S. Trustee's Office).

B.      <u>E-Mail Address</u>. The Committee will also establish and maintain an electronic mail address for creditors to submit questions and comments.

C.      <u>Privileged and Confidential Information</u>. The Committee shall not be required to disseminate to any entity (all references to "entity" herein shall be as defined in section 101(15) of the Bankruptcy Code, "<u>Entity</u>") without further order of the Court, Confidential Information. In addition, the Committee shall not be required to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

D.      <u>Information Obtained Through Discovery</u>. Any information received (formally or informally) by the Committee Parties from any Entity in connection with an examination pursuant to Bankruptcy Rule 2004 or in connection with any formal or informal discovery in any contested matter, adversary proceeding, or other litigation shall not be governed by this Order but, rather, by any order governing such discovery. Nothing herein shall obligate the Committee to provide any information the Committee obtains from third parties.

E.      <u>Creditor Information Requests</u>. If a creditor (the "<u>Requesting Creditor</u>") submits a written request to the Committee (the "<u>Information Request</u>") for the Committee to disclose information pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (the "<u>Response</u>"), including providing access to the information requested or the reasons the Information Request cannot be complied with. If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information that need not be disclosed (i) pursuant to the terms of this Order or otherwise under section 1102(b)(3)(A) of the Bankruptcy Code, (ii) because such disclosure is prohibited under applicable law, (iii) because such information was obtained by the Committee pursuant to an agreement to maintain it as confidential, or (iv) that the

Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion shall be served and a hearing on such motion shall be noticed and scheduled.

F.    <u>Release of Confidential Information of Third Parties</u>. If the Information Request implicates Confidential Information of the Debtors (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee may demand (the "<u>Demand</u>") for the benefit of the Debtors' creditors: (i) if the Confidential Information is information of the Debtors, by submitting a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors, stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, and the Debtors may schedule a hearing with the Court seeking a ruling with respect to the Demand and (ii) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity objects to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, such Entity, and the Debtors, may schedule a hearing with the Court seeking a ruling with respect to the Demand. To the extent, however, the Committee has agreed to receive certain information pursuant to a written confidentiality agreement, and the terms of such confidentiality agreement are more restrictive than this paragraph, the terms of the confidentiality agreement shall govern.

3.    The Committee Parties shall be deemed to be in compliance with sections 1102(b)(3) and 1103(c) of the Bankruptcy Code by implementing the Creditor Information Protocol.

4.    The Committee Parties shall not be required to disseminate to any creditor or any creditor's representative: (a) without further order of the Court, any Confidential

Information; or (b) any other information if the effect of such disclosure would constitute a general or subject matter waiver of the attorney-client, work-product, or other applicable privilege possessed by the Committee.

5.      Any documents, information or other materials designated by the Debtors as confidential shall be treated as "Confidential Information" for purposes of this Order; provided, however, that nothing in this Order affects or shall be deemed to affect the Committee's ability to dispute any designation of information as "Confidential Information."

6.      The Committee's counsel is hereby authorized, in its reasonable discretion, to communicate with the Debtors' general unsecured creditors and/or respond to their information requests, submitted by email or otherwise, on behalf of the Committee. Notwithstanding any possible construction of section 1102(b)(3) of the Bankruptcy Code to the contrary, the Committee, its individual members, and its counsel and other advisors shall not be required or obligated to disseminate any Confidential Information.

7.      The Committee shall not have or incur any liability to any entity for acts taken or omitted to be taken with respect to its obligations under section 1102(b)(3) of the Bankruptcy Code as along as the Committee and its professionals have acted in compliance with the procedures set forth herein and any confidentiality agreement; provided, however, that the foregoing shall not preclude the right of any creditor to move the Court for an order requiring production of other or additional information, to the extent available.

8.      Nothing in this Order requires the Committee to provide access to information or solicit comments from any entity or person that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

9.      For the avoidance of doubt, nothing in this Order shall affect the obligations of the Committee Parties under any agreements with the Debtors or other parties addressing the confidentiality or handling of any information, including the confidentiality section of the Committee's bylaws, whether such agreements are entered into before or after the entry of this Order.

10.     The Committee is authorized to employ and retain Kurtzman Carson Consultants LLC ("KCC") as its Information Agent, subject to the terms of the Services Agreement and the terms and conditions set forth herein, effective as of April 6, 2020.

11.     KCC is authorized to establish and maintain the Committee Website and provide technology and communications-related services.

12.     KCC is authorized to prepare and serve required notices and pleadings on behalf of the Committee in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Committee and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the Committee and/or the Court may deem necessary or appropriate.

13.     The Debtors are authorized and directed to compensate KCC on a monthly basis in accordance with the terms and conditions of the Services Agreement and as set forth herein. Upon KCC's submission to the Debtors, the Committee and the Office of the U.S. Trustee (the "Notice Parties") of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith, the Notice Parties a shall have ten (10) days to provide KCC and the other Notice Parties written notice of any objection to KCC's monthly invoices. If an objection is raised to an invoice, the Debtors will remit KCC only the undisputed portion of the invoice and, if applicable, will pay the remainder to KCC upon

-21-

resolution of the dispute. All objections that are not resolved by the parties shall be preserved and presented to the Court by the objecting party at the next interim or final fee application hearing to be heard by the Court. The fees and expenses KCC incurs in the performance of its services shall be treated as an administrative expense of the Debtors' Chapter 11 Cases; provided, however, that to the extent that any of KCC's fees and expenses are disallowed by this Court, KCC shall not be entitled to an administrative expense for such disallowed fees and expenses.

14.    The Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

15.    Any inconsistency between the Motion, the Services Agreement and the Order shall be controlled by the Order.

16.    This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this Order.

Date: May ___, 2020

_____
Honorable Michael E. Wiles
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**KCC Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 6th day of April, 2020, between the Official Committee of Unsecured Creditors (together with its members, agents and representatives, the "Committee") appointed in the chapter 11 cases (the "Cases") of The McClatchy Company, et al. (the "Debtors"), and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

<u>Terms and Conditions</u>

I.      SERVICES

A.      KCC agrees to provide the Committee with technology and other services in connection with the Committee's involvement in the Cases, including the establishment and maintenance of a creditor website.

B.      KCC may upon request provide a communications plan including but not limited to preparation of communications materials, dissemination of information and a call center staffed by KCC.

C.      KCC agrees to provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court (the "Bankruptcy Court") and as requested by the Committee and/or the Bankruptcy Court.

D.      The Committee agrees and understands that KCC shall not provide the Committee with any legal advice.

E.              KCC understands and agrees that all terms, conditions and obligations contained herein are subject in all respects to applicable Bankruptcy Court orders, including, without limitation, any order approving the retention of KCC as Committee information agent (collectively, "Court Orders").

II.     PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Committee agrees to use reasonable efforts to cause the Debtors to pay KCC for its services, expenses and supplies at the rates or prices outlined in the pricing schedule provided to the Committee and the Debtors (the "KCC Fee Structure") and in accordance with applicable Bankruptcy Rules, applicable Local Rules, any applicable guidelines established by the Office of the United States Trustee and any further Court Orders regarding professional services performed and expenses (including expenses related to transportation, lodging, meals, publications, postage and other third-party charges) incurred.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Committee and will provide notice of such rates in accordance with applicable rules, guidelines and Court Orders.



# KCC AGREEMENT FOR SERVICES

B.      KCC agrees to charge and the Committee agrees to use reasonable efforts to cause the Debtors to pay expenses incurred by KCC related to transportation, lodging, meals, publications, postage and other third-party charges, in addition to the hourly consulting fees and any other fees set forth in the KCC Fee Structure.

C.      KCC agrees to submit its invoice to the Committee and the Debtors monthly. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment prior to the performance of services.  In the case of a dispute in the invoice amount, the Committee, the Debtors, or the Office of the United States Trustee shall give KCC written notice within ten (10) days of receipt of the invoice. The undisputed portion of the invoice amount is due and payable in the normal course.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

D.      As full compensation for the services to be provided by KCC and in conjunction with the Committee's reasonable efforts to cause the Debtors to pay KCC for its services, the Committee agrees to file an application with the Bankruptcy Court to require the Debtors to pay KCC its fees and expenses as outlined in the KCC Fee Structure through submission by KCC to the Committee and the Debtors of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith and without the need of KCC to file formal fee applications.

E.      For the avoidance of doubt, under no circumstances shall any of the compensation or expense reimbursement obligations be an obligation of, or paid by, the Committee or any of its members or professionals.

III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Committee agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Committee further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed during the course of its Agreement with KCC shall be the exclusive property of KCC.

C.      Furthermore, upon the Committee's request, KCC shall immediately deliver to the Committee, at the Committee's sole expense, any or all of the non-proprietary data and records held by KCC pursuant to this Agreement, in the form requested by the Committee.

IV.     CONFIDENTIALITY

2



# KCC AGREEMENT FOR SERVICES

KCC, on behalf of itself and its employees, agrees to keep confidential all records and other information with respect to the Committee.  The Committee, on behalf of itself and its employees, agrees to keep all proprietary, non-public information with respect to KCC's system, procedures and software confidential.  However, if either party is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

V.      SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party upon thirty (30) days' written notice to the other party, or for Cause (as defined herein), in which event no notice shall be required.  The term "Cause" means an act or omission to act by KCC performed with either gross negligence or willful misconduct that causes, or an act or omission with the intent to cause, harm to the Committee's efforts in the Cases.  The term "Cause" also means failure of the Debtors to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of any retainer held by KCC where KCC has a reasonable fear of non-payment.

B.      KCC shall be entitled to an administrative expense claim for all fees and expenses outstanding at the time of termination.

C.      In the event that this contract is terminated, regardless of the reason for such termination; KCC shall cooperate with the Committee to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer (collectively, "Wind-Down Services").  The Committee agrees to use reasonable efforts to cause the Debtors to pay for all of KCC's fees and expenses outstanding at the time of termination as well as fees and expenses incurred in the performance of Wind-Down Services at KCC's then existing prices for such services.

VI.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to the Committee.  Therefore, KCC reserves the right to make changes in its operating procedures, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Committee, so long as any such changes do not materially interfere with ongoing services provided to the Committee.

VII.    INDEPENDENT CONTRACTORS

The Committee and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.



# KCC AGREEMENT FOR SERVICES

VIII.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Except as provided herein, KCC's liability to the Committee or any person claiming through or under the Committee for any losses, claims, damages, judgments, liabilities and/or expenses (including reasonable counsel fees and expenses) (collectively, "Losses"), even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Committee for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Committee or any person claiming through or under the Committee for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Committee and actually paid to KCC for the services contemplated under the Agreement, provided, however, that this limitation shall not apply during any chapter 11 case in which the Company is a debtor.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement, except to the extent caused by KCC's gross negligence or willful misconduct.

B.    The Committee is responsible for the accuracy of the programs, data and information it or any representative of the Committee submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Committee.  The Committee agrees to initiate and maintain backup files that would allow the Committee to regenerate or duplicate all programs and data submitted by the Committee to KCC.

C.    The Committee agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

IX.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.



# KCC AGREEMENT FOR SERVICES

X.        NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245
Attn:  Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133

The Official Committee of Unsecured Creditors of The McClatchy Company, et al.
c/o Frank Merola, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East, 18th Floor
Los Angeles, CA 90067
Tel: 310-556-5802

The Official Committee of Unsecured Creditors of The McClatchy Company, et al.
c/o Erez Gilad, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XI.        APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XII.        ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement.  The Committee represents that it has the authority to enter into this Agreement, and this Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This



## KCC AGREEMENT FOR SERVICES

Agreement may be modified only by a written instrument duly executed by an authorized representative of the Committee and an officer of KCC.

XIII.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XIV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly-owned subsidiary or affiliate of KCC.

XV.    VENUE

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any state or federal court of competent jurisdiction located in New York County, State of New York, to whose jurisdiction the parties irrevocably submit.

XVI.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, Court costs, and all other related expenses, which may be set by the Court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.



# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC


By: */s/ Evan Gershbein*_____

BY: Evan Gershbein
TITLE: EVP, Corporate Restructuring Services


THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE McCLATCHY COMPANY, *et al.*

Wilmington Savings Fund Society, FSB,
solely in its capacity as a Chair of the Official
Committee of Unsecured Creditors of The McClatchy
Company, *et al*.

By:    */s/ Patrick J. Healy*_____
            Name: Patrick J. Healy
            Title: Senior Vice President and Director of
            Global Bankruptcy, Debt and Agency Services

7



# FEE STRUCTURE

## Consulting Services & Rates[1]

| Position | Hourly Rate |
|---|---|
| *Analyst* | *$27 - $45* |

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| *Technology/Programming Consultant* | *$31.50 - $85.50* |
|---|---|

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| *Consultant/Senior Consultant/Senior Managing Consultant* | *$58.50 - $189* |
|---|---|

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over seven years of experience.

The Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's SMCs average over twelve years of experience and are generally former practitioners.

| *Securities/Solicitation Consultant[2]* | *$184.50* |
|---|---|

The Securities Director/Solicitation Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.  In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| *Securities Director/Solicitation Lead* | *$193.50* |
|---|---|

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| *Weekend, holidays and overtime* | *Waived* |
|---|---|

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] Certain events and technology development fees may be applicable.



## FEE STRUCTURE

### Printing Services & Noticing Services

| | |
|---|---|
| Printing | $0.09 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[3] |
| Fax noticing | $0.08 per page |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper and legal notice publishing | Quote prior to publishing |

### Claims Administration & Management Expenses

| | |
|---|---|
| License fee and data storage | $0.10 per creditor per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to KCC CaseView (secure, password protected) | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

### KCC eServices

| | |
|---|---|
| Case website set up & hosting | Waived |
| Automated updates of case docket and claims register | Waived |
| Online claims filing (ePOC) | Waived |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.10 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

---

[3] A set-up fee for email services larger than 100 parties may apply. This set-up fee varies depending on the total number of parties.



FEE STRUCTURE

### Call Center Support Services

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

### Disbursements

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |