SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Shana A. Elberg
Bram A. Strochlic
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Kyle J. Ortiz
Amy Oden
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

– and –

Van C. Durrer, II
Destiny N. Almogue (admitted *pro hac vice*)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Fax: (213) 687-5600

– and –

Jennifer Madden (admitted *pro hac vice*)
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Fax: (650) 470-4570

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
*In re*                                                    :    **Chapter 11**
                                                           :
**THE McCLATCHY COMPANY,** *et al.*,                       :    **Case No. 20-10418 (MEW)**
                                                           :
**Debtors.**[1]                                            :    **(Jointly Administered)**
                                                           :
---------------------------------------------------------- x    **Related Docket No. 647**

**DEBTORS' OBJECTION TO EMERGENCY MOTION OF ALDEN GLOBAL CAPITAL, LLC AND ITS AFFILIATES SEEKING AN ORDER OF THE COURT PRECLUDING THE CREDIT BIDDING OF CERTAIN SECURED CLAIMS PURSUANT TO 11 U.S.C. §§ 105 AND 363(K)**

---

[1] The last four digits of Debtor The McClatchy Company's tax identification number are 0478. Due to the large number of debtor entities in these jointly administered chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/McClatchy. The location of the Debtors' service address for purposes of these chapter 11 cases is: 2100 Q Street, Sacramento, California 95816.

i

The McClatchy Company and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**," or the "**Company**"), hereby submit this objection (this "**Objection**") to the *Emergency Motion of Alden Global Capital, LLC and its Affiliates Seeking an Order of the Court Precluding the Credit Bidding of Certain Secured Claims Pursuant to 11 U.S.C. §§ 105 and 363(k)* [ECF No. 647] (the "**Motion**")[1] filed by Alden Global Capital, LLC ("**Alden**").  The Debtors, by and through their undersigned counsel, respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      It is very rare for a bankruptcy court to limit section 363(k) credit bid rights in advance of a sale hearing, and this Court is well-equipped to address any such issues at an ultimate sale hearing.  As the Debtors have advised all bidders, the Debtors will ascribe the most value in any bid to cash and lesser values to other forms of consideration whether they are in the form of credit bids, real estate, proposed seller financing, tax refunds, litigation claims, or the like.

2.      As the Debtors acknowledged regarding Alden's *Ex Parte Motion to Schedule an Expedited Hearing and Shorten the Notice Period With Respect to the Emergency Motion of Alden Global Capital, LLC and Its Affiliates Seeking an Order of the Court Precluding the Credit Bidding of Certain Secured Claims Pursuant to 11 U.S.C. §§105 and 363(k)* [Docket No. 646], the Debtors are willing to accommodate and have accommodated more time for Alden with respect to the following issues: providing additional information regarding allegedly unencumbered assets, how the Debtors value non-cash forms of consideration proposed to

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Motion.

1

support a bid, the impact of the assumption or rejection of certain contracts and other non-economic terms of the bids.

3. To the extent that Alden seeks to limit the ability of the 1L Notes to be the subject of a credit bid, the Motion is a waste of the Court's and the parties' time. Likewise, the Debtors do not ascribe little if any value to claims of equitable subordination regarding the 1L Notes. To the extent that Alden seeks to litigate challenges to the subsidiary guarantees of the 2L Loans and 3L Notes, the Court has already ruled that such matters are held under advisement pending the sale hearing already scheduled for July 24, 2020. Alden has made no allegation that the ability of any credit bid of the 2L Loans or 3L Notes would chill its bid, so there is not a ripe dispute there until it does so. However, that is precisely what the auction process is designed to reveal. The Debtors propose that they be permitted to proceed to the Auction without further delay, subject to the additional time and transparency that the Debtors already committed before the Motion was filed.

## ARGUMENT

### I. Alden Does Not Have Standing to Challenge the Credit Bid

4. As a gating matter, Alden does not have standing to bring the Motion. Alden may be a potential bidder in the Debtors' Auction, but is not a party in interest in the Debtors chapter 11 cases. *See, e.g., In re Karpe*, 84 B.R. 926, 929-31 (Bankr. M.D. Pa. 1988) (rejecting unsuccessful bidder's Motion for Hearing on a Higher Bid because bidder was not creditor with interest in res of the estate and the bidder's desire to purchase assets was not within the zone of interests protect by statutes related to bankruptcy sales); *Kabro Assocs., LLC v. Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) (unsuccessful bidders whose only losses are speculative profits that might have been made usually lack standing to challenge court's approval of sale transaction, but also stating that "rule denying standing to unsuccessful bidders is not

absolute"); *Austin Assocs. v. William H. Howison (In re Murphy)*, 288 B.R. 1, 4 (D. Me. 2002) ("As a general rule, a prospective purchaser of assets from a bankruptcy estate is not within the zone of interests intended to be protected by the Bankruptcy Code and, therefore, does not typically have standing to challenge a sale of the assets to another party."); *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 531 (3d Cir. 1999) (stating that generally, disappointed prospective purchasers do not have standing to appeal).

### II.    Limiting The Prepetition Secured Creditors' Right to Credit Bid Is Premature

5.    Without a legitimate explanation as to its delay, Alden has taken no steps to preclude the Prepetition Secured Parties' right to credit bid their debt until the eve of the Auction.  A credit bid was announced as early as April 16, 2020, was contemplated in the Bidding Procedures[2] and the Committee filed its standing motion seeking standing to challenge the Prepetition Secured Creditors' liens on June 22, 2020.[3]  At the July 6, 2020 hearing where the Court delivered its initial ruling on the Committee's Standing Motion, the Court asked whether there was *any reason* why the Court needed to make a decision prior to learning the successful bidder on July 15.  *See* Jul. 6 Hrg. Tr. 61:23-25.  Yet, Alden did not speak up until July 7, 2020. Alden claims that its delay was because it was not informed that it was a "Qualified Bidder" permitted to participate in the Auction until July 7, 2020, Motion ¶4, but Alden knew that under the Bidding Procedures it would not be informed of its status until after the Debtors had a chance to review its Final Bid (as defined in the Bidding Procedures) and that the Debtors only needed

---

[2]    Bidding Procedures Order [Docket No. 432] at ¶ 7

[3]    *See* Motion of Official Committee of Unsecured Creditors for (I) Leave, Standing and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of Debtors' Estates and (II) Exclusive Settlement Authority [ECF No. 546] (the "**Standing Motion**").

to inform parties of their status 24 hours in advance of an Auction. Bidding Procedures, pp. 11-12.

6.   It is premature for the Court to limit the Prepetition Secured Creditors' right to credit bid their prepetition secured debt at this juncture. Modifying or denying a secured creditor's right to bid at the sale of its collateral is an extraordinary remedy. *See In re Aéropostale, Inc.*, 555 B.R. 369, 415 (Bankr. S.D.N.Y. 2016) (quoting *In re RML Dev., Inc.*, 528 B.R. 150, 156 (Bankr. W.D. Tenn. 2014)). On the rare occasion when courts have denied a secured creditor's right to credit bid, the cases "often feature conduct that also directly impacts the estate or the bidding process." *Id.* For example, a court denied a right to credit bid where a secured creditor failed to disclose its acquisition sponsorship by a third party who had acted prepetition with the intent to force the debtor out of business through the misuse of confidential information. *See In re Aloha Airlines, Inc.*, 2009 WL 1371950 (Bankr. D. Haw. May 14, 2009).

7.   Here, there has been no allegation that the Prepetition Secured Parties have engaged in such inequitable conduct in the sale process and Alden does not make such an allegation now. There are no allegations of collusion, undisclosed agreements, or other actions that might distort the sale process.

8.   Moreover, allegations that bidding will be chilled by the Prepetition Secured Parties' ability to credit bid alone are insufficient to justify a limit on a credit bid. *Aéropostale* at 417. Alden does not even allege that a credit bid of the 2L Loans or 3L Notes would chill its participation in the Auction. To the contrary, Alden is in fact interested in participating in the Auction and has clearly signaled its intention to do so. Furthermore, all potential bidders have

had notice of the Prepetition Secured Parties' credit bid since at least April 16, 2020,[4] *see* Motion ⁋ 8 (citing May 21, 2020 as the relevant date), which neither deterred multiple parties from participating in the sale process nor making Qualified Bids (as defined in the Bidding Procedures). Accordingly, there is no dispute ripe for decision at this juncture. The Auction itself is designed to let these issues play out.

9. Indeed, the Court deferred its ruling on the Committee's Standing Motion for precisely this reason. The Court noted that "we are in the middle of a sale process, and until we have further clarity as to where that process is going, we just do not know what values we are fighting over[.]" Jul. 6 Hr'g. Tr. 59:5-8. Accordingly, the Court determined that it would be better to see the outcome of the sale process before authorizing any litigation to be filed. *Id.* 59:21-23.

10. Contrary to Alden's assertion otherwise, the Debtors did not state an intention to permit the prepetition secured lenders to credit bid the 2L Loans and 3L Notes. Rather, the Debtors stated, as they have to all interested parties, that the Debtors would evaluate such a bid at the time it occurred and would apply a discount to any such bid based on this Court's initial ruling. And that is precisely what the Debtors are prepared to do—to consider the highest and best offers of all participating bidders and to make a decision as to which bid is the highest or otherwise best in light of the facts and circumstances, including value, the form of consideration, and the Court's ruling.

---

[4] The Debtors announced the proposed credit bid on April 16. *See* Press Release, The McClatchy Company, McClatchy Announces Update in Chapter 11 Case (Apr. 16, 2020) (announcing non-binding term sheet submitted by two senior lenders "to acquire the Company in a credit-bid of the Company's first-lien debt of $263 million, plus new money consideration of $30 million, the assumption or refinancing of the Company's ABL revolver and the assumption of substantially all amounts owed to the Company's go-forward trade vendors."). The Debtors are unaware of the May 21, 2020 reference, but Alden acknowledges it knew of the credit bid at least as of that date.

**III.    The Debtors Have Accommodated a Sufficient Delay**

11.    Further delay is unwarranted under the circumstances. Despite numerous attempts to follow up with Alden in advance of the Debtors' Auction initially scheduled for July 8, 2020 at 10:00 a.m. (prevailing Eastern Time), Alden waited until the eve of the initially scheduled Auction to request that the Debtors provide additional information regarding allegedly unencumbered assets, how the Debtors were valuing non-cash forms of consideration proposed to support a bid, and certain other terms of the bids.

12.    Nevertheless, the Debtors are first and foremost interested in maximizing the value of any sale transaction for the benefit of their estates and their stakeholders. To that end, the Debtors believe that going forward with a competitive Auction will facilitate that goal. Accordingly, the Debtors determined to postpone the Auction initially to July 8, 2020 in order to provide Alden with additional information, and sufficient time to review and analyze that information.

13.    Although the Debtors did not respond to Alden's letter with a written response, responded through its investment banker in multiple attempts, the Debtors committed to providing Alden with additional information, and in fact did so in advance of the Auction. Despite the Debtors' efforts to respond to Alden's last-minute requests, Alden filed its emergency Motion and sought to further delay the Auction. The Debtors met with Alden on July 8, 2020 to discuss how the Debtors were valuing certain aspects of bids, and have continued to provide further information to Alden regarding bid valuation. In addition, in the interest of transparency, the Debtors have worked to reconcile Alden's understanding of the allegedly unencumbered assets and ascribe values thereto as well as other elements of Alden's bid. The Debtors have accommodated as much of a delay as was prudent under the circumstances, and

even accommodated a shortened-notice hearing on Alden's Motion.  For now, the Auction should proceed so that the Debtors can maximize the value from the estates.

## CONCLUSION

14. The Debtors request that they be permitted to proceed to the Auction without additinal delay.

Dated: New York, New York
July 9, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Shana A. Elberg
Bram A. Strochlic
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Van C. Durrer, II
Destiny N. Almogue (admitted *pro hac vice*)
300 S. Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Fax: (213) 687-5600

– and –

Jennifer Madden (admitted *pro hac vice*)
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Fax: (650) 470-4570

– and –

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Kyle J. Ortiz
Amy Oden
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Counsel to Debtors and Debtors in Possession*