1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  THE MCCLATCHY COMPANY, et al.,          Main Case No.

8          Debtors.                        20-10418-mew

9

10  - - - - - - - - - - - - - - - - - - - - -x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, New York

15

16                  August 3, 2020

17                  2:00 PM

18

19

20

21  B E F O R E:

22  HON. MICHAEL E. WILES

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Status Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Sharona Shapiro

21    eScribers, LLC

22    352 Seventh Avenue, Suite #604

23    New York, NY 10001

24    (973)406-2250

25    operations@escribers.net

1

2  A P P E A R A N C E S (TELEPHONICALLY):

3  TOGUT, SEGAL & SEGAL LLP

4         Attorneys for Debtors

5         One Penn Plaza,   Suite 3335

6         New York, NY 10119

7

8  BY:   ALBERT TOGUT, ESQ.

9         KYLE J. ORTIZ, ESQ.

10

11

12  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13         Attorneys for Debtors

14         300 South Grand Avenue

15         Los Angeles, CA 90071

16

17  BY:   VAN C. DURRER, II, ESQ.

18

19

20  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

21         Attorneys for Debtors

22         525 University Avenue

23         Palo Alto, California 94301

24

25  BY:   JENNIFER MADDEN, ESQ.

1

2 KRAMER LEVIN NAFTALIS & FRANKEL LLP

3      Attorneys for Brigade Capital Management

4      1177 Avenue of the Americas

5      New York, NY 10036

6

7 BY:   DOUGLAS MANNAL, ESQ.

8

9

10 QUINN EMANUEL URQUHART & SULLIVAN, LLP

11      Attorneys for Chatham Asset Management LLC

12      52 Madison Avenue

13      New York, NY 10010

14

15 BY:   JAMES TECCE, ESQ.

16

17

18 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

19      Attorneys for Chatham Asset Management

20      1285 Avenue of the Americas

21      New York, NY 10019

22

23 BY:   ANDREW ROSENBERG, ESQ.

24      JOHN WEBER, ESQ.

25

1

2  EMMET, MARVIN & MARTIN LLP

3       Attorneys for BNY Mellon

4       120 Broadway

5       New York, NY 10271

6

7  BY:   THOMAS PITTA, ESQ.

8

9

10  STROOCK & STROOCK & LAVAN LLP

11       Attorneys for Official Committee of Unsecured Creditors

12       180 Maiden Lane

13       New York, NY 10038

14

15  BY:   ISAAC SASSON, ESQ.

16       KRISTOPHER HANSEN, ESQ.

17       DANIEL FLIMAN, ESQ.

18       GILAD EREZ, ESQ.

19

20

21

22

23

24

25

```
1

2   DEPARTMENT OF JUSTICE

3        Attorneys for United States Trustee

4        201 Varick Street

5        New York, NY 10014

6

7   BY:   BENJAMIN HIGGINS, ESQ.

8

9

10  ALSO PRESENT (TELEPHONICALLY):

11       SEAN HARDING, FTI Consulting

12       JONATHAN KNEE, Evercore

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1                   P R O C E E D I N G S

 2          THE COURT:  Hello, everybody.

 3          MR. HANSEN:  Good afternoon, Your Honor.

 4          MR. DURRER:  Good afternoon.

 5          THE COURT:  Is everybody ready to proceed?

 6          MR. DURRER:  The debtors are, Your Honor.

 7          MR. HANSEN:  The committee is as well, Your Honor.

 8          THE COURT:  Okay.  Why don't you go ahead?

 9          MR. HANSEN:  Van, did you want to start, or do you

10  want me to go?

11          MR. DURRER:  Yeah, I'll go ahead and start, Kris.

12  That's perfect, and then you can fill in.

13          Judge, this is Van Durrer, Skadden, Arps, Slate,

14  Meagher & Flom, on behalf of the debtors.

15          We appreciate the Court being so prompt with giving us

16  an evidentiary procedures order and being so accommodating with

17  respect to some last minute time shifting and allowing us to

18  give you this, sort of, status update.

19          The good news is it was all very worthwhile.  Peace in

20  the valley has broken out with respect to not only the debtors'

21  proposed sale transaction, which is set for a hearing tomorrow

22  afternoon, now at 3 p.m. Eastern, but also with respect to a

23  Chapter 11 plan.

24          In the coming hours, hopefully as soon as possible,

25  we're going to present Your Honor with a revised form of sale

1  order, asset purchase agreements, and then two additional

2  documents.  One or two of the attachments to the asset purchase

3  agreement will pave the way for an administratively solvent

4  case.  And then the settlement terms that Chatham and the

5  unsecured creditors' committee and the debtors have worked out

6  with respect to a Chapter 11 plan will also take the form of a

7  stipulation that we'll file with Your Honor.  It sort of links

8  to the asset purchase agreement to ensure that the economics

9  that Chatham and the unsecured creditors have agreed, in

10  connection with a plan, aren't lost in the shuffle as the sale

11  transaction proceeds, because I think the sale transaction is

12  obviously going to be on a slightly faster track than the plan.

13         However, that said, we don't intend for any grass to

14  grow under our fee with respect to the plan.  I think we want

15  to promptly get that on file.  And I think what we would

16  propose, and we wanted to sort of get some reaction, and Mr.

17  Hansen can speak to this as well, we had solicited a plan pre-

18  petition, and that plan contemplated that unsecured creditors

19  would not be solicited but would be deemed to reject the plan.

20         That is, in large part, the same case with respect to

21  the new plan that's been agreed to.  I think the only voter

22  with respect to that plan would be Chatham.  And so, while we

23  do intend to provide supplemental information to creditors

24  about that plan, it would not be our aim to have, sort of, a

25  bifurcated disclosure statement phase followed by a

1    confirmation phase.  We would at least look to either skip the

2    solicitation page or at least collapse it with confirmation.

3    And the primary goal, Your Honor, is to save money, because we

4    do have a very tight budget to get an administratively solvent

5    case.  We don't want to waste money on things that are, under

6    the circumstances, unnecessary.

7            So that's my update.  Kris, do you want to pick it up

8    from there and add your color and thoughts?

9            MR. HANSEN:  Sure.  Thanks, Van.  I appreciate it.

10   Your Honor, again, it's Kris Hansen with Stroock & Stroock &

11   Lavan, on behalf of the official committee.

12           So Your Honor, I don't want to be too duplicative, but

13   I did want to give you a bit of a flavor for how we arrived at

14   our settlement and give you a bit of a feel for what the terms

15   look like and so that you can judge Mr. Durrer's request, which

16   we support as well, from a solicitation perspective, in its

17   proper light.

18           What's interesting about the settlement is everybody

19   worked tirelessly to get there, and everybody winds up getting,

20   effectively, what they want, so to speak.  And as any

21   settlement, no one's happy, but everybody recognizes that this

22   was the best of all of our options.

23           Chatham and Brigade, with their purchasing entity, in

24   essence, get the debtors' support for their sale as well as the

25   committee's support for that sale.  The debtors get a plan with

1  all of us having worked hard to come up with a schedule that,

2  at least at the moment, seems to ensure administrative

3  solvency, to the best of the many financial professionals that

4  represent all the different parties' estimates.  And those

5  include budgetary caps for certain periods of time that have

6  already been incurred in connection with the case and getting

7  to our anticipated conclusion date.  And those caps are self-

8  imposed, in the sense that we've all agreed to them, and we

9  will work within them, and candidly, if we go outside of them,

10  that's at our risk.

11       And then for the creditors' committee, you know, for

12  general unsecured creditors, we've negotiated basically the

13  creation of a creditor trust into which certain baskets of

14  fairly valuable currency, from our perspective, would get

15  placed.  And that includes some cash, that includes the

16  continuing claims against directors and officers, and it

17  includes entitlement to a significant portion of any tax

18  refunds that the debtors/buyer, and all the rest of us, working

19  together, are able to achieve, which we do think are quite

20  material.

21       And then obviously, in connection with all of this,

22  releases get granted.  But those releases have some snapback

23  provisions for failure to support the plan and getting a plan

24  done.  The right way to do this, candidly, if we had the luxury

25  of time, and if we had the luxury of unlimited expenses, would

1   be for all of us to work hard, through some type of

2   restructuring support agreement that we would all enter into

3   and then be bound to go going forward.  But Mr. Durrer's point

4   is a hundred percent true here; this settlement, in large

5   measure, in terms of getting to the administrative solvency,

6   was born by people stretching in a lot of ways to put these

7   budgetary caps in place and agree that certain fees would be

8   limited, and as a result of that, to take extra time to work

9   through all of this stuff just starts to compound that problem.

10          So what we have worked on together and what we are

11   hoping to finish off today with additional signature lines is,

12   in essence, a stipulation that would take the place of any type

13   of a much longer form RSA.  And ideally, we would have that

14   stip presented as part of the sale order tomorrow that Your

15   Honor could approve in the context of the sale order.

16          The reason we ask that is because the settlement stip

17   modifies certain terms of the purchase agreement, and they may

18   actually not be in the purchase agreement, and it also dictates

19   the terms, at a high level, of what we need in the plan going

20   forward.  And again, this is high level, so it doesn't include

21   the treatment for every single class and the changes, subject

22   to everybody's approval, and all of the rest of the bells and

23   whistles.  It's a bit of an RSA -- a huge bit of an RSA-light,

24   if you would, from a way to handle it.  But again, from all of

25   our perspective's, using the mediation and the mediator's

1    approval, we feel like we're all working in good faith.

2    Everyone here is a professional, and we want to make sure that

3    this gets done as quickly as possible.

4           Ideally, you could approve all of this in some 9019

5    format, in connection with the sale order tomorrow, or

6    alternatively, so order the stip, but that's something that we

7    feel is necessary to get everybody to continue to move forward

8    and get the docs, from a plan perspective, done and in front of

9    Your Honor with a minimum amount of dispute between the parties

10   and also allow the sale to move to its closing with a minimal

11   amount of dispute between the parties.

12          And not lost on anybody, of course, is the rocky road

13   that the operations side of the company has had, to this point

14   in time, and the smoothness or approving these types of

15   arrangements that we have amongst each other is also a good

16   message to send to employees and to customers and readers of

17   all of the debtors' newspapers.  And this way we hope to help

18   stabilize the business, as we move from here to exit, and

19   obviously in pretty troubled times.

20          So I know that that's a lot to push at Your Honor, but

21   I know you're aware of it, because you used to be on our side

22   of the bar, of how tough a very large multi-party settlement is

23   to arrive at, especially when you're in a challenged

24   environment and you're trying to cut corners in terms of

25   dollars.

THE MCCLATCHY COMPANY                                              13

1          So the committee's perspective is that we also agree

2   that, if there's a way to expedite the plan process that we

3   should do that, because not only will it shorten the time from

4   here to the effective date, which will guarantee less expenses,

5   it will also allow us to save money in connection with an

6   expensive solicitation process.  We certainly wouldn't cut

7   corners in terms of notice, to the extent you approve it, and

8   how that notice would be given, but it does save money in terms

9   of solicitation.

10         So I don't have anything else, Your Honor.  You'll see

11  the more defined terms when we get the information to you, but

12  if you had questions for me about the specifics, in terms of

13  dollar amount, regarding all these various buckets that I

14  described for the committee's recovery, I'd be happy to take

15  you through them.

16         THE COURT:  So I assume you'll pay administrative and

17  priority expenses, and then there are certain assets that'll be

18  set aside for unsecured creditors.  And from what you're

19  saying, it sounds like Chatham is making some agreement as to

20  whether its second and third liens will or will not share in

21  that, or to what extent they would share.

22         MR. HANSEN:  That's correct, Your Honor.  That's

23  exactly right.  So in essence, under the settlement, the second

24  and third lien claims would not share at all in the unsecured

25  creditor assets, and the nonsecured creditor assets are largely

THE MCCLATCHY COMPANY                                      14

1   made up of the claims under the D&O policy, and then

2   entitlement to seventy-seven-and-a-half percent of the amount

3   of the tax refund, and then also some upfront cash with which

4   to pursue those claims.  And if they get settled before the

5   pursuit of them starts in earnest, to also distribute the cash

6   as a bit of dollars up front and first dollars off the tax

7   return that comes in later, which is the way that we solved a

8   number of gaps here.

9           And to satisfy administrative and priority claims we

10  all had to, in essence, stretch.  So you have professionals

11  stretching, both in terms of discounts and in terms of caps and

12  the like.  And you had the buyers stretch as well, in terms of

13  additional consideration.  And that consideration is really

14  more -- it doesn't change the overall facial price.  Really

15  what it does is it changes the mechanics in how certain dollars

16  are left behind in the estate because, as you can imagine,

17  buying an operating company has a lot of adjustments, in terms

18  of dollars that come in and dollars that go out, because

19  there's a lot of dollars in the system.  And we also have a

20  DIP.  So in essence, CAM stretched by putting more cash into

21  the pool.  The professionals stretched, the trust stretched,

22  and we all managed to close the gap on the administrative hole

23  to get it to the point where we had administrative claims and

24  priority claims projected to be paid in full.

25          And you're right that those other buckets of assets go

THE MCCLATCHY COMPANY                                        15

1  into a creditor trust, and then the second and third lien

2  claims, and first lien -- I don't think there will be any

3  deficiency first lien claims, given that they were credited,

4  but they all do not share in that pool.

5           THE COURT:  And I take it this would resolve all the

6  many causes of action you were seeking permission to pursue?

7           MR. HANSEN:  Some.  With respect to the actions

8  against Chatham, yes.

9           THE COURT:  Right.

10          MR. HANSEN:  With respect to actions regarding the

11 directors and officers and other parties that may or may not

12 have aided and abetted in any potential breaches of fiduciary

13 duty there, they would obviously not receive a release.  The

14 hope is that we can find a way to settle those claims out

15 before the effective date, but if we can't, those would be

16 assigned over to the trust on the effective date.

17          And so with respect to the order that was hopefully

18 forthcoming on the STN motion, we would, in essence, hold that

19 in abeyance and have the plan handle the transfer of the

20 authority to pursue those claims.  And you'll see, under the

21 settlement stipulation that we're agreeing to, the debtors and

22 the committee both agree that neither of us could settle any of

23 those claims, without the consent of the other, between now and

24 the time we get to the effective date on the plan.

25          THE COURT:  And what about the claims that had to do

1  with whether certain liens of the first lienholders were

2  perfected or reached certain assets?  Would there be a

3  settlement of those two?

4         MR. HANSEN:  There is, yes, that's wrapped up in our

5  approval, in essence, of the credit bid associated with the

6  sale.  So the credit bid comes in, and those claims are

7  extinguished, so as a result of consenting to the sale, in

8  essence, those claims go away as well.

9         THE COURT:  And then help me, what is that you each

10 would like to do, in terms of the plan process, to expedite it?

11        MR. HANSEN:  Yeah, so I think the way we were thinking

12 about it is that we would allow the second lien claims,

13 effectively, in the amount of a dollar, and then -- which are

14 held by Chatham, and Chatham could then vote those claims in

15 favor of the plan, and we would not -- and that would, in

16 essence, create your impaired consenting class, in terms of

17 approval of the plan.  And then we would not solicit votes from

18 the general unsecured creditor class.  We would deem them to

19 reject the plan.

20        And obviously they would still get all the proper

21 notice, but they would be deemed to reject, and we would go to

22 confirmation, on a cramdown basis, and we would basically

23 collapse the times for just basically solicitation of the plan

24 and just try to move ourselves through a combined disclosure

25 statement confirmation hearing at one time.  And that would

1  help save both time and money associated with the extensive

2  solicitation process of quite a large body of unsecured

3  creditors.

4       THE COURT:  To the extent that you're settling all of

5  those many claims that you wanted to pursue, you would have to

6  have a motion and some explanation in case anybody wished to

7  object to that, right?

8       MR. HANSEN:  Yeah, that was another question that we

9  wanted to talk to Your Honor about.  So yes, I think the idea

10 is that we would be settling those claims largely through a

11 combination of your approval of the sale, so the entry of your

12 sale order tomorrow, and then entry of the confirmation order

13 because we're all a little worried about enforceability of

14 those settlement terms because we're split between two orders

15 and there's a time gap between the two events.

16      That's why we were hoping to sign this settlement

17 stip, if you will, and then ask Your Honor to approve the

18 settlement stipulation as enforceable among the parties, either

19 as part of the sale order tomorrow or pursuant to some so-

20 ordering process.

21      We were hopeful to avoid a motion on a 9019 basis on a

22 standalone, again, just because we're trying to avoid

23 additional expense.  But we can understand, obviously, if Your

24 Honor wants us to go that route as well.

25      THE COURT:  Yeah, I guess it depends on what exactly

1  I'm making a final disposition of in this proposed stipulation.

2  I can understand your desire to minimize notice and expense,

3  but people do deserve some prior notice instead of just having

4  me do it by surprise, right?

5          MR. HANSEN:  Yeah, I think --

6          MR. DURRER:  Yeah, this is Van Durrer.

7          MR. HANSEN:  Go ahead.

8          MR. DURRER:  Yeah, I think a lot of this is going

9  to -- yeah, thank you.  I think a lot of this is going to

10 happen under the plan, Your Honor, but obviously the buyer

11 wants to know that the buyer moves on with the assets at a

12 closing under the sale order.  And that's very routine.

13         And no one has objected on the basis of -- well, no

14 one else, I should say, has raised any issues with respect to

15 the sale process in that regard.  The only actor that was

16 raising those issues was the unsecured creditors' committee,

17 and the unsecured creditors' committee is satisfied with the

18 overall economics.

19         And that's why the committee wants at least approval

20 of the terms, as between the parties, to be put in the plan

21 tomorrow.  But I wouldn't think of it as a pre-approval of the

22 plan.  I would just think that the committee wants to be able

23 to enforce that.  Brigade and Chatham have said they will

24 support this plan, if and when it's filed, if and when it's

25 solicited.

THE MCCLATCHY COMPANY                                                    19

1              Is that fair, Kris, how you think about it?

2              MR. HANSEN:  It is.  And I think it's important for

3    everybody, right, like you get our support of the plan terms

4    and CAM and the buyer get our support of the sale, we get to

5    know, from a committee perspective, that everything that

6    everybody's agreed on in that doc is enforceable.  So that's

7    right.

8              THE COURT:  And the only part of the settlement then

9    that would be final tomorrow -- everybody would commit to

10   support it, I understand, but the actual claims being released

11   would be the claims about how far the first lien is extended,

12   is that it?

13             MR. HANSEN:  Yeah, I guess, on a final basis, like,

14   we've agreed -- you remember the way that the sale works, in

15   essence, is that it purchases the claims.  The buyer purchases

16   certain of those claims and then they subsequently release

17   them.  I think we're fine with that regarding the 1L, 2L, 3L

18   with respect to Chatham, but the way you'll see in the

19   settlement is that we have kind of a snapback which is, if they

20   don't support confirmation of the plan, then that release,

21   effectively, is kind of taken back.  So it kind of works in a

22   final way under the sale order, but it has a clawback provision

23   which essentially can get pulled back in in the context of a

24   plan.  So that's a component of it.

25             I recognize that it's not crystal clear, Judge, and

1  that it is something that's being thrown at you among another

2  pile of terms.  But that was important because I think, for

3  Chatham, it wants to know that when it gets its sale order

4  entered it can effectively get its release at that time,

5  subject to its good behavior under the rest of the terms of our

6  agreement.

7        MR. DURRER:  In addition, Your Honor -- this is Van

8  Durrer -- Your Honor might be thinking, in part, about some of

9  the unencumbered assets.  The sales terms include fifty million

10  dollars of cash, approximately, on top of the first lien debt.

11  And we're prepared to make a presentation tomorrow, if it's

12  important to Your Honor, about how the debtors view that cash

13  relative to those unencumbered assets.

14        THE COURT:  All right.  So as to the claims against

15  Chatham, the claims that didn't just challenge the second and

16  third liens, but the claims that sought money damages, Chatham,

17  in effect, would be buying those, and those would be disposed

18  of tomorrow; is that the proposal?

19        MR. HANSEN:  Yes, that's correct.

20        MR. DURRER:  Yes, Your Honor.

21        MR. HANSEN:  Yep, they'd be purchasing those.  Those

22  would be disposed of subject to this snapback, if you will,

23  again, for -- I guess the way to think about it is a

24  traditional restructuring support agreement would have a party

25  support a plan and not oppose it and not support any other

1   plan.  And that's, in essence, the structure that we've

2   employed here which is, under the sale order, they receive

3   their release of those claims in the mechanic, which is that

4   they're purchased and then done away with, but that in the

5   event that they don't honor those agreements to support the

6   plan, not oppose the plan and not support any other plan, then

7   the release would come back to life.  Effectively, the release

8   would be invalidated and the claims would come back to life,

9   which is how we kind of came up with the construct to ensure

10  that we get where we need to be.  No one expects that to

11  happen, but it is a critical piece for Chatham in terms of

12  getting the sale approved tomorrow.

13          THE COURT:  And in terms of the settlement that would

14  be embodied in the plan, can you just explain it in the plan

15  that you have, in effect, a combined plan and disclosure

16  statement?

17          MR. HANSEN:  Yeah, we absolutely --

18          MR. DURRER:  That's fine, Your Honor.

19          MR. HANSEN:  Yeah, we can.

20          MR. DURRER:  Yeah, we would envision, to keep it

21  simple, Your Honor, sort of a supplement to what's already out

22  there that would articulate exactly what Your Honor's looking

23  for or what Your Honor just suggested.

24          THE COURT:  What is already out there?  I know that

25  you sought voting early in the case, but I never looked at what

1    you did because it never came in front of me.  So I'm not --

2            MR. HANSEN:  Yeah, so the original plan contemplated a

3    sale of the company to Chatham.  And then there was going to be

4    the -- the new capital structure would have included new debt

5    to replace the existing first lien, second lien debt.  That's

6    largely still the case.  There was a separate classification

7    for the PBGC.  That will all now be collapsed.  There'll be one

8    pool of general unsecured creditors.  They will be deemed to

9    reject and get the consideration that will be enumerated in the

10   plan supplement.

11           It used to be stock, cash, and a note for the PBGC.

12   Now it'll consist of D&O claim proceeds, some cash, and then a

13   large chunk of the anticipated tax refund.  And then there'll

14   be that second lien class that will vote for a dollar to be our

15   impaired accepting class.  So it's relatively straightforward.

16   Because of the sale transaction, the first lien debt will all

17   be gone.  They'll follow through with the sale.  So it's much

18   more simplified.

19           THE COURT:  Well, I may have other questions when I

20   see it, but the one thing that occurs to me is that if we're

21   essentially incorporating a settlement, there has to be, either

22   in the plan or somewhere, some explanation of what it is that's

23   being settled and why everybody thinks that that's the best

24   interest of everybody because, even if people aren't voting,

25   they still have a right to object to the settlement.

1           MR. HANSEN:  Of course.  And the good news, Your

2   Honor, is we've had quite a bit of ink spilled, through the STN

3   motion process, on that topic, but we can definitely

4   encapsulate that into a disclosure so that people have an

5   understanding of what's being settled and the reasons why.

6           THE COURT:  And what timing would you be looking to

7   try to accomplish in terms of a plan?

8           MR. HANSEN:  Assuming Your Honor approves the sale

9   tomorrow, the sale is designed to close the first week of

10  September.  So it's too much to ask to have this all approved

11  at our next omnibus hearing on August 26th.  So we would aim to

12  have something filed in the coming weeks, with a hearing date

13  sometime in the mid to late September, and then we would look

14  to close, as soon thereafter as possible, on a plan effective

15  date.

16          THE COURT:  All right.  Have you resolved your other

17  objections to the sale, or are they still going forward?

18          MR. HANSEN:  I believe that the Texas Counties --

19  there's three or four counties that are owed approximately

20  fifty or sixty thousand dollars.  I think that that's going

21  forward, Your Honor, and I think there's a handful of cure

22  objections, I believe the majority of which have been resolved,

23  but I think there's still some language floating around on

24  those.  But I believe that that's the sum and substance of

25  what's still going forward tomorrow.

THE MCCLATCHY COMPANY                                                24

1           THE COURT:  All right.  Thank you for the report.

2    Congratulations on resolving most of your differences.

3           MR. MANNAL:  Your Honor, this is Doug Mannal from

4    Kramer Levin.  May I be heard?

5           THE COURT:  Of course.

6           MR. MANNAL:  Your Honor, again, for the record, Doug

7    Mannal, Kramer Levin, on behalf of Brigade.

8           Your Honor, I think we're just a turn behind the

9    documents, and hopefully we'll see the most recent version of

10   the documents.  I think we had a few comments.  While we have a

11   business understanding, I'm not sure it's reflected in the

12   documents.  But we hope to see those in short order and sign

13   off on them, and we are pleased that the parties have come to a

14   resolution here.  That's all, Your Honor.

15          THE COURT:  All right.  Very good.  Anything else for

16   today then?

17          MR. HANSEN:  No.

18          MR. DURRER:  No, Your Honor.

19          MR. HANSEN:  Thank you very much for making the time

20   today.

21          MR. DURRER:  Yes.  We will chat again in just over

22   twenty-four hours.

23          THE COURT:  Thank you for agreeing to change the time

24   tomorrow.  I needed to change it for personal reasons.

25          MR. DURRER:  No worries, Your Honor.  I hope it's

THE MCCLATCHY COMPANY                                          25

1    nothing troubling, but thank you.

2            THE COURT:  Thanks.  All right.  We'll speak tomorrow.

3            MR. HANSEN:  Thank you, Your Honor.

4            MR. MANNAL:  Thank you, Your Honor.

5            THE COURT:  Thank you.

6            MR. DURRER:  Thank you.

7        (Whereupon these proceedings were concluded at 2:28 PM)

1

2                    C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _Sharona Shapiro_

8

9    _____

10   Sharona Shapiro (CET-492)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  August 4, 2020

18

19

20

21

22

23

24

25

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 3, 2020

**A**

abetted (1)
15:12
abeyance (1)
15:19
able (2)
10:19;18:22
absolutely (1)
21:17
accepting (1)
22:15
accommodating (1)
7:16
accomplish (1)
23:7
achieve (1)
10:19
action (1)
15:6
actions (2)
15:7,10
actor (1)
18:15
actual (1)
19:10
actually (1)
11:18
add (1)
9:8
addition (1)
20:7
additional (4)
8:1;11:11;14:13;
17:23
adjustments (1)
14:17
administrative (6)
10:2;11:5;13:16;
14:9,22,23
administratively (2)
8:3;9:4
afternoon (3)
7:3,4,22
again (7)
9:10;11:20,24;
17:22;20:23;24:6,21
against (3)
10:16;15:8;20:14
agree (3)
11:7;13:1;15:22
agreed (5)
8:9,21;10:8;19:6,
14
agreeing (2)
15:21;24:23
agreement (8)
8:3,8;11:2,17,18;
13:19;20:6,24
agreements (2)
8:1;21:5
ahead (3)

**7:8,11;18:7**
aided (1)
15:12
aim (2)
8:24;23:11
allow (3)
12:10;13:5;16:12
allowing (1)
7:17
alternatively (1)
12:6
Americas (2)
4:4,20
among (2)
17:18;20:1
amongst (1)
12:15
amount (5)
12:9,11;13:13;
14:2;16:13
ANDREW (1)
4:23
anticipated (2)
10:7;22:13
appreciate (2)
7:15;9:9
approval (6)
11:22;12:1;16:5,
17;17:11;18:19
approve (4)
11:15;12:4;13:7;
17:17
approved (2)
21:12;23:10
approves (1)
23:8
approving (1)
12:14
approximately (2)
20:10;23:19
around (1)
23:23
Arps (1)
7:13
arrangements (1)
12:15
arrive (1)
12:23
arrived (1)
9:13
articulate (1)
21:22
aside (1)
13:18
Asset (5)
4:11,19;8:1,2,8
assets (8)
13:17,25,25;
14:25;16:2;18:11;
20:9,13
assigned (1)
15:16
associated (2)

**16:5;17:1**
assume (1)
13:16
Assuming (1)
23:8
attachments (1)
8:2
Attorneys (6)
4:3,11,19;5:3,11;
6:3
August (1)
23:11
authority (1)
15:20
Avenue (3)
4:4,12,20
avoid (2)
17:21,22
aware (1)
12:21
away (2)
16:8;21:4

**B**

back (4)
19:21,23;21:7,8
bar (1)
12:22
basically (3)
10:12;16:22,23
basis (4)
16:22;17:21;
18:13;19:13
baskets (1)
10:13
behalf (3)
7:14;9:11;24:7
behavior (1)
20:5
behind (2)
14:16;24:8
bells (1)
11:22
BENJAMIN (1)
6:7
best (3)
9:22;10:3;22:23
bid (2)
16:5,6
bifurcated (1)
8:25
bit (6)
9:13,14;11:23,23;
14:6;23:2
BNY (1)
5:3
body (1)
17:2
born (1)
11:6
both (3)
14:11;15:22;17:1

bound (1)
11:3
breaches (1)
15:12
Brigade (4)
4:3;9:23;18:23;
24:7
Broadway (1)
5:4
broken (1)
7:20
buckets (2)
13:13;14:25
budget (1)
9:4
budgetary (2)
10:5;11:7
business (2)
12:18;24:11
buyer (4)
18:10,11;19:4,15
buyers (1)
14:12
buying (2)
14:17;20:17

**C**

CAM (2)
14:20;19:4
came (2)
21:9;22:1
can (12)
7:12;8:17;9:15;
14:16;15:14;17:23;
18:2;19:23;20:4;
21:14,19;23:3
candidly (2)
10:9,24
Capital (2)
4:3;22:4
caps (4)
10:5,7;11:7;14:11
case (7)
8:4,20;9:5;10:6;
17:6;21:25;22:6
cash (8)
10:15;14:3,5,20;
20:10,12;22:11,12
causes (1)
15:6
certain (9)
10:5,13;11:7,17;
13:17;14:15;16:1,2;
19:16
certainly (1)
13:6
challenge (1)
20:15
challenged (1)
12:23
change (3)
14:14;24:23,24

changes (2)
11:21;14:15
Chapter (2)
7:23;8:6
chat (1)
24:21
Chatham (17)
4:11,19;8:4,9,22;
9:23;13:19;15:8;
16:14,14;14;18:23;
19:18;20:3,15,16;
21:11;22:3
chunk (1)
22:13
circumstances (1)
9:6
claim (1)
22:12
claims (28)
10:16;13:24;14:1,
4,9,23,24;15:2,3,14,
20,23,25;16:6,8,12,
14;17:5,10;19:10,11,
15,16;20:14,15,16;
21:3,8
class (5)
11:21;16:16,18;
22:14,15
classification (1)
22:6
clawback (1)
19:22
clear (1)
19:25
close (3)
14:22;23:9,14
closing (2)
12:10;18:12
collapse (2)
9:2;16:23
collapsed (1)
22:7
color (1)
9:8
combination (1)
17:11
combined (2)
16:24;21:15
coming (2)
7:24;23:12
comments (1)
24:10
commit (1)
19:9
Committee (11)
5:11;7:7;8:5;9:11;
10:11;15:22;18:16,
17,19,22;19:5
committee's (3)
9:25;13:1,14
company (3)
12:13;14:17;22:3
component (1)

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 3, 2020

19:24
**compound (1)**
11:9
**concluded (1)**
25:7
**conclusion (1)**
10:7
**confirmation (6)**
9:1,2;16:22,25;
17:12;19:20
**Congratulations (1)**
24:2
**connection (5)**
8:10;10:6,21;12:5;
13:5
**consent (1)**
15:23
**consenting (2)**
16:7,16
**consideration (3)**
14:13,13;22:9
**consist (1)**
22:12
**construct (1)**
21:9
**Consulting (1)**
6:11
**contemplated (2)**
8:18;22:2
**context (2)**
11:15;19:23
**continue (1)**
12:7
**continuing (1)**
10:16
**corners (2)**
12:24;13:7
**Counties (2)**
23:18,19
**course (3)**
12:12;23:1;24:5
**COURT (24)**
7:2,5,8,15;13:16;
15:5,9,25;16:9;17:4,
25;19:8;20:14;
21:13,24;22:19;23:6,
16;24:1,5,15,23;
25:2,5
**cramdown (1)**
16:22
**create (1)**
16:16
**creation (1)**
10:13
**credit (2)**
16:5,6
**credited (1)**
15:3
**creditor (5)**
10:13;13:25,25;
15:1;16:18
**Creditors (8)**
5:11;8:9,18,23;

10:12;13:18;17:3;
22:8
**creditors' (4)**
8:5;10:11;18:16,
17
**critical (1)**
21:11
**crystal (1)**
19:25
**cure (1)**
23:21
**currency (1)**
10:14
**customers (1)**
12:16
**cut (1)**
12:24;13:6

**D**

**D&O (2)**
14:1;22:12
**damages (1)**
20:16
**DANIEL (1)**
5:17
**date (7)**
10:7;13:4;15:15,
16,24;23:12,15
**debt (4)**
20:10;22:4,5,16
**debtors (6)**
7:6,14;8:5;9:25;
15:21;20:12
**debtors' (3)**
7:20;9:24;12:17
**debtors/buyer (1)**
10:18
**deem (1)**
16:18
**deemed (3)**
8:19;16:21;22:8
**deficiency (1)**
15:3
**defined (1)**
13:11
**definitely (1)**
23:3
**DEPARTMENT (1)**
6:2
**depends (1)**
17:25
**described (1)**
13:14
**deserve (1)**
18:3
**designed (1)**
23:9
**desire (1)**
18:2
**dictates (1)**
11:18
**differences (1)**

24:2
**different (1)**
10:4
**DIP (1)**
14:20
**directors (2)**
10:16;15:11
**disclosure (4)**
8:25;16:24;21:15;
23:4
**discounts (1)**
14:11
**disposed (2)**
20:17,22
**disposition (1)**
18:1
**dispute (2)**
12:9,11
**distribute (1)**
14:5
**doc (1)**
19:6
**docs (1)**
12:8
**documents (4)**
8:2;24:9,10,12
**dollar (3)**
13:13;16:13;22:14
**dollars (9)**
12:25;14:6,6,15,
18,18,19;20:10;
23:20
**done (4)**
10:24;12:3,8;21:4
**Doug (2)**
24:3,6
**DOUGLAS (1)**
4:7
**duplicative (1)**
9:12
**DURRER (16)**
7:4,6,11,13;18:6,6,
8;20:7,8,20;21:18,
20;24:18,21,25;25:6
**Durrer's (2)**
9:15;11:3
**duty (1)**
15:13

**E**

**early (1)**
21:25
**earnest (1)**
14:5
**Eastern (1)**
7:22
**economics (2)**
8:8;18:18
**effect (2)**
20:17;21:15
**effective (5)**
13:4;15:15,16,24;

23:14
**effectively (5)**
9:20;16:13;19:21;
20:4;21:7
**either (3)**
9:1;17:18;22:21
**else (3)**
13:10;18:14;24:15
**EMANUEL (1)**
4:10
**embodied (1)**
21:14
**EMMET (1)**
5:2
**employed (1)**
21:2
**employees (1)**
12:16
**encapsulate (1)**
23:4
**enforce (1)**
18:23
**enforceability (1)**
17:13
**enforceable (2)**
17:18;19:6
**ensure (1)**
8:8;10:2;21:9
**enter (1)**
11:2
**entered (1)**
20:4
**entitlement (2)**
10:17;14:2
**entity (1)**
9:23
**entry (2)**
17:11,12
**enumerated (1)**
22:9
**environment (1)**
12:24
**envision (1)**
21:20
**EREZ (1)**
5:18
**especially (1)**
12:23
**ESQ (10)**
4:7,15,23,24;5:7,
15,16,17,18;6:7
**essence (11)**
9:24;11:12;13:23;
14:10,20;15:18;16:5,
8,16;19:15;21:1
**essentially (2)**
19:23;22:21
**estate (1)**
14:16
**estimates (1)**
10:4
**even (1)**
22:24

**event (1)**
21:5
**events (1)**
17:15
**Evercore (1)**
6:12
**everybody (10)**
7:2,5;9:18,19,21;
12:7;19:3,9;22:23,24
**everybody's (2)**
11:22;19:6
**Everyone (1)**
12:2
**evidentiary (1)**
7:16
**exactly (3)**
13:23;17:25;21:22
**existing (1)**
22:5
**exit (1)**
12:18
**expects (1)**
21:10
**expedite (2)**
13:2;16:10
**expense (2)**
17:23;18:2
**expenses (3)**
10:25;13:4,17
**expensive (1)**
13:6
**explain (1)**
21:14
**explanation (2)**
17:6;22:22
**extended (1)**
19:11
**extensive (1)**
17:1
**extent (3)**
13:7,21;17:4
**extinguished (1)**
16:7
**extra (1)**
11:8

**F**

**facial (1)**
14:14
**failure (1)**
10:23
**fair (1)**
19:1
**fairly (1)**
10:14
**faith (1)**
12:1
**far (1)**
19:11
**faster (1)**
8:12
**favor (1)**

16:15
fee (1)
8:14
feel (3)
9:14;12:1,7
fees (1)
11:7
few (1)
24:10
fiduciary (1)
15:12
fifty (2)
20:9;23:20
file (2)
8:7,15
filed (2)
18:24;23:12
fill (1)
7:12
final (4)
18:1;19:9,13,22
financial (1)
10:3
find (1)
15:14
fine (2)
19:17;21:18
finish (1)
11:11
first (9)
14:6;15:2,3;16:1;
19:11;20:10;22:5,
16;23:9
flavor (1)
9:13
FLIMAN (1)
5:17
floating (1)
23:23
Flom (1)
7:14
follow (1)
22:17
followed (1)
8:25
form (3)
7:25;8:6;11:13
format (1)
12:5
forthcoming (1)
15:18
forward (6)
11:3,20;12:7;
23:17,21,25
four (1)
23:19
FRANKEL (1)
4:2
front (3)
12:8;14:6;22:1
FTI (1)
6:11
full (1)

14:24

**G**

gap (2)
14:22;17:15
gaps (1)
14:8
GARRISON (1)
4:18
general (3)
10:12;16:18;22:8
gets (2)
12:3;20:3
GILAD (1)
5:18
given (2)
13:8;15:3
giving (1)
7:15
goal (1)
9:3
Good (8)
7:3,4,19;12:1,15;
20:5;23:1;24:15
granted (1)
10:22
grass (1)
8:13
grow (1)
8:14
guarantee (1)
13:4
guess (3)
17:25;19:13;20:23

**H**

handful (1)
23:21
handle (2)
11:24;15:19
HANSEN (28)
5:16;7:3,7,9;8:17;
9:9,10;13:22;15:7,
10;16:4,11;17:8;
18:5,7;19:2,13;
20:19,21;21:17,19;
22:2;23:1,8,18;
24:17,19;25:3
happen (2)
18:10;21:11
happy (2)
9:21;13:14
hard (2)
10:1;11:1
HARDING (1)
6:11
heard (1)
24:4
hearing (4)
7:21;16:25;23:11,
12

held (1)
16:14
Hello (1)
7:2
help (3)
12:17;16:9;17:1
HIGGINS (1)
6:7
high (2)
11:19,20
hold (1)
15:18
hole (1)
14:22
Honor (36)
7:3,6,7,25;8:7;9:3,
10,12;11:15;12:9,20;
13:10,22;17:9,17,24;
18:10;20:7,8,12,20;
21:5,18,21,23;23:2,
8,21;24:3,6,8,14,18,
25;25:3,4
Honor's (1)
21:22
hope (4)
12:17;15:14;
24:12,25
hopeful (1)
17:21
hopefully (3)
7:24;15:17;24:9
hoping (2)
11:11;17:16
hours (2)
7:24;24:22
huge (1)
11:23
hundred (1)
11:4

**I**

idea (1)
17:9
ideally (2)
11:13;12:4
imagine (1)
14:16
impaired (2)
16:16;22:15
important (3)
19:2;20:2,12
imposed (1)
10:8
include (3)
10:5;11:20;20:9
included (1)
22:4
includes (3)
10:15,15,17
incorporating (1)
22:21
incurred (1)

10:6
information (2)
8:23;13:11
ink (1)
23:2
instead (1)
18:3
intend (2)
8:13,23
interest (1)
22:24
interesting (1)
9:18
into (5)
10:13;11:2;14:20;
15:1;23:4
invalidated (1)
21:8
ISAAC (1)
5:15
issues (2)
18:14,16

**J**

JAMES (1)
4:15
JOHN (1)
4:24
JONATHAN (1)
6:12
Judge (3)
7:13;9:15;19:25
JUSTICE (1)
6:2

**K**

keep (1)
21:20
kind (4)
19:19,21,21;21:9
KNEE (1)
6:12
KRAMER (3)
4:2;24:4,7
Kris (4)
7:11;9:7,10;19:1
KRISTOPHER (1)
5:16

**L**

Lane (1)
5:12
language (1)
23:23
large (5)
8:20;11:4;12:22;
17:2;22:13
largely (3)
13:25;17:10;22:6
last (1)

7:17
late (1)
23:13
later (1)
14:7
LAVAN (2)
5:10;9:11
least (4)
9:1,2;10:2;18:19
left (1)
14:16
less (1)
13:4
level (2)
11:19,20
LEVIN (3)
4:2;24:4,7
lien (11)
13:24;15:1,2,3;
16:12;19:11;20:10;
22:5,5,14,16
lienholders (1)
16:1
liens (3)
13:20;16:1;20:16
life (2)
21:7,8
light (1)
9:17
limited (1)
11:8
lines (1)
11:11
links (1)
8:7
little (1)
17:13
LLC (1)
4:11
LLP (5)
4:2,10,18;5:2,10
longer (1)
11:13
look (3)
9:1,15;23:13
looked (1)
21:25
looking (2)
21:22;23:6
lost (2)
8:10;12:12
lot (6)
11:6;12:20;14:17,
19;18:8,9
luxury (1)
10:24,25

**M**

Madison (1)
4:12
Maiden (1)
5:12

**majority (1)**
23:22
**making (3)**
13:19;18:1;24:19
**managed (1)**
14:22
**Management (3)**
4:3,11,19
**MANNAL (6)**
4:7;24:3,3,6,7;
25:4
**many (3)**
10:3;15:6;17:5
**MARTIN (1)**
5:2
**MARVIN (1)**
5:2
**material (1)**
10:20
**may (5)**
11:17;15:11,11;
22:19;24:4
**Meagher (1)**
7:14
**measure (1)**
11:5
**mechanic (1)**
21:3
**mechanics (1)**
14:15
**mediation (1)**
11:25
**mediator's (1)**
11:25
**Mellon (1)**
5:3
**message (1)**
12:16
**mid (1)**
23:13
**might (1)**
20:8
**million (1)**
20:9
**minimal (1)**
12:10
**minimize (1)**
18:2
**minimum (1)**
12:9
**minute (1)**
7:17
**modifies (1)**
11:17
**moment (1)**
10:2
**money (6)**
9:3,5;13:5,8;17:1;
20:16
**more (4)**
13:11;14:14,20;
22:18
**most (2)**

24:2,9
**motion (4)**
15:18;17:6,21;
23:3
**move (4)**
12:7,10,18;16:24
**moves (1)**
18:11
**much (4)**
11:13;22:17;
23:10;24:19
**multi-party (1)**
12:22

**N**

**NAFTALIS (1)**
4:2
**necessary (1)**
12:7
**need (2)**
11:19;21:10
**needed (1)**
24:24
**negotiated (1)**
10:12
**neither (1)**
15:22
**New (9)**
4:5,13,21;5:5,13;
6:5;8:21;22:4,4
**news (2)**
7:19;23:1
**newspapers (1)**
12:17
**next (1)**
23:11
**nonsecured (1)**
13:25
**note (1)**
22:11
**notice (5)**
13:7,8;16:21;18:2,
3
**number (1)**
14:8
**NY (6)**
4:5,13,21;5:5,13;
6:5

**O**

**object (2)**
17:7;22:25
**objected (1)**
18:13
**objections (2)**
23:17,22
**obviously (7)**
8:12;10:21;12:19;
15:13;16:20;17:23;
18:10
**occurs (1)**

22:20
**off (3)**
11:11;14:6;24:13
**officers (2)**
10:16;15:11
**Official (2)**
5:11;9:11
**omnibus (1)**
23:11
**One (7)**
8:2;16:25;18:13,
14;21:10;22:7,20
**one's (1)**
9:21
**only (5)**
7:20;8:21;13:3;
18:15;19:8
**operating (1)**
14:17
**operations (1)**
12:13
**oppose (2)**
20:25;21:6
**options (1)**
9:22
**order (15)**
7:16;8:1;11:14,15;
12:5,6;15:17;17:12,
12,19;18:12;19:22;
20:3;21:2;24:12
**ordering (1)**
17:20
**orders (1)**
17:14
**original (1)**
22:2
**ourselves (1)**
16:24
**out (6)**
7:20;8:5;14:18;
15:14;21:21,24
**outside (1)**
10:9
**over (2)**
15:16;24:21
**overall (2)**
14:14;18:18
**owed (1)**
23:19

**P**

**page (1)**
9:2
**paid (1)**
14:24
**part (5)**
8:20;11:14;17:19;
19:8;20:8
**parties (6)**
12:9,11;15:11;
17:18;18:20;24:13
**parties' (1)**

10:4
**party (1)**
20:24
**PAUL (1)**
4:18
**pave (1)**
8:3
**pay (1)**
13:16
**PBGC (2)**
22:7,11
**Peace (1)**
7:19
**people (4)**
11:6;18:3;22:24;
23:4
**percent (2)**
11:4;14:2
**perfect (1)**
7:12
**perfected (1)**
16:2
**periods (1)**
10:5
**permission (1)**
15:6
**personal (1)**
24:24
**perspective (5)**
9:16;10:14;12:8;
13:1;19:5
**perspective's (1)**
11:25
**petition (1)**
8:18
**phase (2)**
8:25;9:1
**pick (1)**
9:7
**piece (1)**
21:11
**pile (1)**
20:2
**PITTA (1)**
5:7
**place (2)**
11:7,12
**placed (1)**
10:15
**plan (44)**
7:23;8:6,10,12,14,
17,18,19,21,22,24;
9:25;10:23,23;
11:19;12:8;13:2;
15:19,24;16:10,15,
17,19,23;18:10,20,
22,24;19:3,20,24;
20:25;21:1,6,6,6,14,
14,15;22:2,10,22;
23:7,14
**pleased (1)**
24:13
**pm (2)**

7:22;25:7
**point (3)**
11:3;12:13;14:23
**policy (1)**
14:1
**pool (3)**
14:21;15:4;22:8
**portion (1)**
10:17
**possible (3)**
7:24;12:3;23:14
**potential (1)**
15:12
**pre- (1)**
8:17
**pre-approval (1)**
18:21
**prepared (1)**
20:11
**PRESENT (2)**
6:10;7:25
**presentation (1)**
20:11
**presented (1)**
11:14
**pretty (1)**
12:19
**price (1)**
14:14
**primary (1)**
9:3
**prior (1)**
18:3
**priority (3)**
13:17;14:9,24
**problem (1)**
11:9
**procedures (1)**
7:16
**proceed (1)**
7:5
**proceedings (1)**
25:7
**proceeds (2)**
8:11;22:12
**process (7)**
13:2,6;16:10;17:2,
20;18:15;23:3
**professional (1)**
12:2
**professionals (3)**
10:3;14:10,21
**projected (1)**
14:24
**prompt (1)**
7:15
**promptly (1)**
8:15
**proper (2)**
9:17;16:20
**proposal (1)**
20:18
**propose (1)**

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew                                    August 3, 2020

8:16
**proposed (2)**
7:21;18:1
**provide (1)**
8:23
**provision (1)**
19:22
**provisions (1)**
10:23
**pulled (1)**
19:23
**purchase (5)**
8:1,2,8;11:17,18
**purchased (1)**
21:4
**purchases (1)**
19:15,15
**purchasing (2)**
9:23;20:21
**pursuant (1)**
17:19
**pursue (4)**
14:4;15:6,20;17:5
**pursuit (1)**
14:5
**push (1)**
12:20
**put (2)**
11:6;18:20
**putting (1)**
14:20

**Q**

**quickly (1)**
12:3
**QUINN (1)**
4:10
**quite (3)**
10:19;17:2;23:2

**R**

**raised (1)**
18:14
**raising (1)**
18:16
**reached (1)**
16:2
**reaction (1)**
8:16
**readers (1)**
12:16
**ready (1)**
7:5
**really (2)**
14:13,14
**reason (1)**
11:16
**reasons (2)**
23:5;24:24
**receive (2)**
15:13;21:2

**recent (1)**
24:9
**recognize (1)**
19:25
**recognizes (1)**
9:21
**record (1)**
24:6
**recovery (1)**
13:14
**reflected (1)**
24:11
**refund (2)**
14:3;22:13
**refunds (1)**
10:18
**regard (1)**
18:15
**regarding (3)**
13:13;15:10;19:17
**reject (4)**
8:19;16:19,21;
22:9
**relative (1)**
20:13
**relatively (1)**
22:15
**release (7)**
15:13;19:16,20;
20:4;21:3,7,7
**released (1)**
19:10
**releases (2)**
10:22,22
**remember (1)**
19:14
**replace (1)**
22:5
**report (1)**
24:1
**represent (1)**
10:4
**request (1)**
9:15
**resolution (1)**
24:14
**resolve (1)**
15:5
**resolved (2)**
23:16,22
**resolving (1)**
24:2
**respect (12)**
7:17,20,22;8:6,14,
20,22;15:7,10,17;
18:14;19:18
**rest (3)**
10:18;11:22;20:5
**restructuring (2)**
11:2;20:24
**result (2)**
11:8;16:7
**return (1)**

14:7
**revised (1)**
7:25
**RIFKIND (1)**
4:18
**right (14)**
10:24;13:23;
14:25;15:9;17:7;
18:4;19:3,7;20:14;
22:25;23:16;24:1,
15;25:2
**risk (1)**
10:10
**road (1)**
12:12
**rocky (1)**
12:12
**ROSENBERG (1)**
4:23
**route (1)**
17:24
**routine (1)**
18:12
**RSA (2)**
11:13,23
**RSA-light (1)**
11:23

**S**

**sale (29)**
7:21,25;8:10,11;
9:24,25;11:14,15;
12:5,10;16:6,7;
17:11,12,19;18:12,
15;19:4,14,22;20:3;
21:2,12;22:3,16,17;
23:8,9,17
**sales (1)**
20:9
**same (1)**
8:20
**SASSON (1)**
5:15
**satisfied (1)**
18:17
**satisfy (1)**
14:9
**save (4)**
9:3;13:5,8;17:1
**saying (1)**
13:19
**schedule (1)**
10:1
**SEAN (1)**
6:11
**second (7)**
13:20,23;15:1;
16:12;20:15;22:5,14
**seeking (1)**
15:6
**seems (1)**
10:2

**self- (1)**
10:7
**send (1)**
12:16
**sense (1)**
10:8
**separate (1)**
22:6
**September (2)**
23:10,13
**set (2)**
7:21;13:18
**settle (2)**
15:14,22
**settled (3)**
14:4;22:23;23:5
**settlement (18)**
8:4;9:14,18,21;
11:4,16;12:22;
13:23;15:21;16:3;
17:14,16,18;19:8,19;
21:13;22:21,25
**settling (2)**
17:4,10
**seventy-seven-and-a-half (1)**
14:2
**share (4)**
13:20,21,24;15:4
**shifting (1)**
7:17
**short (1)**
24:12
**shorten (1)**
13:3
**shuffle (1)**
8:10
**side (2)**
12:13,21
**sign (2)**
17:16;24:12
**signature (1)**
11:11
**significant (1)**
10:17
**simple (1)**
21:21
**simplified (1)**
22:18
**single (1)**
11:21
**sixty (1)**
23:20
**Skadden (1)**
7:13
**skip (1)**
9:1
**Slate (1)**
7:13
**slightly (1)**
8:12
**smoothness (1)**
12:14
**snapback (3)**

10:22;19:19;20:22
**so- (1)**
17:19
**solicit (1)**
16:17
**solicitation (6)**
9:2,16;13:6,9;
16:23;17:2
**solicited (3)**
8:17,19;18:25
**solved (1)**
14:7
**solvency (2)**
10:3;11:5
**solvent (2)**
8:3;9:4
**sometime (1)**
23:13
**somewhere (1)**
22:22
**soon (2)**
7:24;23:14
**sort (5)**
7:18;8:7,16,24;
21:21
**sought (2)**
20:16;21:25
**sounds (1)**
13:19
**speak (3)**
8:17;9:20;25:2
**specifics (1)**
13:12
**spilled (1)**
23:2
**split (1)**
17:14
**stabilize (1)**
12:18
**standalone (1)**
17:22
**start (2)**
7:9,11
**starts (2)**
11:9;14:5
**statement (3)**
8:25;16:25;21:16
**States (1)**
6:3
**status (1)**
7:18
**still (6)**
16:20;22:6,25;
23:17,23,25
**stip (4)**
11:14,16;12:6;
17:17
**stipulation (5)**
8:7;11:12;15:21;
17:18;18:1
**STN (2)**
15:18;23:2
**stock (1)**

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 3, 2020

22:11
straightforward (1)
  22:15
Street (1)
  6:4
stretch (2)
  14:10,12
stretched (3)
  14:20,21,21
stretching (2)
  11:6;14:11
STROOCK (4)
  5:10,10;9:10,10
structure (2)
  21:1;22:4
stuff (1)
  11:9
subject (3)
  11:21;20:5,22
subsequently (1)
  19:16
substance (1)
  23:24
suggested (1)
  21:23
SULLIVAN (1)
  4:10
sum (1)
  23:24
supplement (2)
  21:21;22:10
supplemental (1)
  8:23
support (15)
  9:16,24,25;10:23;
  11:2;18:24;19:3,4,
  10,20;20:24,25,25;
  21:5,6
Sure (3)
  9:9;12:2;24:11
surprise (1)
  18:4
system (1)
  14:19

**T**

talk (1)
  17:9
tax (4)
  10:17;14:3,6;
  22:13
TECCE (1)
  4:15
TELEPHONICALLY (1)
  6:10
terms (25)
  8:4;9:14;11:5,17,
  19;12:24;13:7,8,11,
  12;14:11,11,12,17;
  16:10,16;17:14;
  18:20;19:3;20:2,5,9;
  21:11,13;23:7

Texas (1)
  23:18
Thanks (2)
  9:9;25:2
that'll (1)
  13:17
thereafter (1)
  23:14
There'll (2)
  22:7,13
thinking (2)
  16:11;20:8
third (4)
  13:20,24;15:1;
  20:16
THOMAS (1)
  5:7
thoughts (1)
  9:8
thousand (1)
  23:20
three (1)
  23:19
thrown (1)
  20:1
tight (1)
  9:4
times (2)
  12:19;16:23
timing (1)
  23:6
tirelessly (1)
  9:19
today (3)
  11:11;24:16,20
together (2)
  10:19;11:10
tomorrow (14)
  7:21;11:14;12:5;
  17:12,19;18:21;
  19:9;20:11,18;
  21:12;23:9,25;
  24:24;25:2
top (1)
  20:10
topic (1)
  23:3
tough (1)
  12:22
track (1)
  8:12
traditional (1)
  20:24
transaction (4)
  7:21;8:11,11;
  22:16
transfer (1)
  15:19
treatment (1)
  11:21
troubled (1)
  12:19
troubling (1)

25:1
true (1)
  11:4
trust (4)
  10:13;14:21;15:1,
  16
Trustee (1)
  6:3
try (2)
  16:24;23:7
trying (2)
  12:24;17:22
turn (1)
  24:8
twenty-four (1)
  24:22
two (5)
  8:1,2;16:3;17:14,
  15
type (2)
  11:1,12
types (1)
  12:14

**U**

under (10)
  8:14;9:5;13:23;
  14:1;15:20;18:10,
  12;19:22;20:5;21:2
unencumbered (2)
  20:9,13
United (1)
  6:3
unlimited (1)
  10:25
unnecessary (1)
  9:6
Unsecured (12)
  5:11;8:5,9,18;
  10:12;13:18,24;
  16:18;17:2;18:16,
  17;22:8
up (7)
  9:7,19;10:1;14:1,
  6;16:4;21:9
update (2)
  7:18;9:7
upfront (1)
  14:3
URQUHART (1)
  4:10
used (2)
  12:21;22:11
using (1)
  11:25

**V**

valley (1)
  7:20
valuable (1)
  10:14

Van (5)
  7:9,13;9:9;18:6;
  20:7
Varick (1)
  6:4
various (1)
  13:13
version (1)
  24:9
view (1)
  20:12
vote (2)
  16:14;22:14
voter (1)
  8:21
votes (1)
  16:17
voting (2)
  21:25;22:24

**W**

wants (5)
  17:24;18:11,19,
  22;20:3
waste (1)
  9:5
way (12)
  8:3;10:24;11:24;
  12:17;13:2;14:7;
  15:14;16:11;19:14,
  18,22;20:23
ways (1)
  11:6
WEBER (1)
  4:24
week (1)
  23:9
weeks (1)
  23:12
WEISS (1)
  4:18
WHARTON (1)
  4:18
What's (4)
  9:18;21:21;23:5,
  25
Whereupon (1)
  25:7
whistles (1)
  11:23
winds (1)
  9:19
wished (1)
  17:6
within (1)
  10:9
without (1)
  15:23
work (3)
  10:9;11:1,8
worked (4)
  8:5;9:19;10:1;

11:10
working (2)
  10:18;12:1
works (2)
  19:14,21
worried (1)
  17:13
worries (1)
  24:25
worthwhile (1)
  7:19
wrapped (1)
  16:4

**Y**

Yep (1)
  20:21
York (6)
  4:5,13,21;5:5,13;
  6:5

**1**

10010 (1)
  4:13
10014 (1)
  6:5
10019 (1)
  4:21
10036 (1)
  4:5
10038 (1)
  5:13
10271 (1)
  5:5
11 (2)
  7:23;8:6
1177 (1)
  4:4
120 (1)
  5:4
1285 (1)
  4:20
180 (1)
  5:12
1L (1)
  19:17

**2**

2:28 (1)
  25:7
201 (1)
  6:4
26th (1)
  23:11
2L (1)
  19:17

**3**

3 (1)

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 3, 2020

7:22
**3L (1)**
  19:17

**5**

**52 (1)**
  4:12

**9**

**9019 (2)**
  12:4;17:21