1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5

6    In the Matter of:

7    THE MCCLATCHY COMPANY, et al.,        Main Case No.

8              Debtors.                     20-10418-mew

9

10   - - - - - - - - - - - - - - - - - - - -x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, New York

15

16                  August 4, 2020

17                  3:00 PM

18

19

20

21   B E F O R E:

22   HON. MICHAEL E. WILES

23   U.S. BANKRUPTCY JUDGE

24

25

1

2   Motion authorizing abandonment of equity interests in Quad

3   County Publishing

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

```
 1
 2  A P P E A R A N C E S:  (TELEPHONICALLY)
 3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 4       Attorneys for Debtors
 5       300 South Grand Avenue
 6       Los Angeles, CA 90071
 7
 8  BY:   VAN C. DURRER, II, ESQ.
 9
10
11  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12       Attorneys for Debtors
13       525 University Avenue
14       Palo Alto, CA 94301
15
16  BY:   JENNIFER MADDEN, ESQ.
17
18
19
20
21
22
23
24
25
```

```
 1
 2   TOGUT, SEGAL & SEGAL LLP
 3         Attorneys for Debtors
 4         One Penn Plaza
 5         Suite 3335
 6         New York, NY 10119
 7
 8   BY:   ALBERT TOGUT, ESQ.
 9         KYLE J. ORTIZ, ESQ.
10
11
12   UNITED STATES DEPARTMENT OF JUSTICE
13         Office of the United States Trustee
14         201 Varick Street
15         Suite 1006
16         New York, NY 10014
17
18   BY:   BENJAMIN J. HIGGINS, ESQ.
19
20
21
22
23
24
25
```

1

2  STROOCK & STROOCK & LAVAN LLP

3         Attorneys for Official Creditors' Committee

4         180 Maiden Lane

5         New York, NY 10038

6

7  BY:   EREZ E. GILAD, ESQ.

8         ISAAC S. SASSON, ESQ.

9         KRISTOPHER M. HANSEN, ESQ.

10         DANIEL A. FLIMAN, ESQ.

11

12

13  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

14         Attorneys for Chatham Asset Management

15         1285 Avenue of the Americas

16         New York, NY 10019

17

18  BY:   ANDREW N. ROSENBERG, ESQ.

19         JOHN WEBER, ESQ.

20         WILLIAM A. CLAREMAN, ESQ.

21

22

23

24

25

1

2  QUINN EMANUEL URQUHART & SULLIVAN, LLP

3        Attorneys for Chatham Asset Management

4        51 Madison Avenue

5        22nd Floor

6        New York, NY 10010

7

8  BY:   JAMES C. TECCE, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for Brigade Capital Management

13        1177 Avenue of the Americas

14        New York, NY 10036

15

16  BY:   DOUGLAS MANNAL, ESQ.

17        JOSEPH A. SHIFER, ESQ.

18

19

20  PENSION BENEFIT GUARANTY CORPORATION

21        1200 K Street NW

22        Washington, DC 20005

23

24  BY:   KARTAR S. KHALSA, ESQ.

25

```
 1
 2   EMMET, MARVIN & MARTIN LLP
 3          Attorneys for The Bank of New York
 4          Mellon Trust Company, N.A.
 5          120 Broadway
 6          32nd Floor
 7          New York, NY 10271
 8
 9   BY:   THOMAS A. PITTA, ESQ.
10
11
12   WHITE AND WILLIAMS LLP
13          Attorneys for OWS CF V SPV, LLC
14          1850 Market Street
15          Suite 1800
16          Philadelphia, PA 19103
17
18   BY:   AMY VULPIO, ESQ.
19
20
21
22
23
24
25
```

```
 1
 2   ANSELL GRIMM & AARON PC
 3         Attorneys for Harris County Lewisville ISD, et al.
 4         365 Rifle Camp Road
 5         Woodland Park, NJ 07424
 6
 7   BY:   JOSHUA S. BAUCHNER, ESQ.
 8
 9
10   DUANE MORRIS LLP
11         Attorneys for Chubb
12         222 Delaware Avenue
13         Suite 1600
14         Wilmington, DE 19801
15
16   BY:   MICHAEL R. LASTOWSKI, ESQ.
17
18
19   DOSHI LEGAL GROUP, P.C.
20         Attorneys for Oracle America, Inc.
21         1979 Marcus Avenue
22         Suite 210E
23         Lake Success, NY 11042
24
25   BY:   AMISH R. DOSHI, ESQ.
```

1

2   CONNOLLY GALLAGHER LLP

3          Attorneys for Cigna Health and Life Insurance Co.

4          1201 North Market Street

5          20th Floor

6          Wilmington, DE 19801

7

8   BY:   JEFFREY C. WISLER, ESQ.

9

10

11   CHOATE HALL & STEWART LLP

12          Attorneys for Encina Business Credit LLC

13          Two International Place

14          Boston, MA 02110

15

16   BY:   KEVIN J. SIMARD, ESQ.

17

18

19   SPENCER FANE LLP

20          Attorneys for Simplifi

21          2200 Ross Avenue

22          Suite 4800 West

23          Dallas, TX 75201

24

25   BY:   ERIC M. VAN HORN, ESQ.

 1

 2   LINEBARGER GOGGAN BLAIR & SAMPSON, LLP

 3          Attorneys for Local Texas Tax Authorities

 4          2777 North Stemmons Freeway

 5          Suite 100

 6          Dallas, TX 75207

 7

 8   BY:   ELIZABETH WELLER, ESQ.

 9

10

11   ALSO PRESENT:   (TELEPHONICALLY)

12          SEAN HARDING, FTI Consulting

13          JONATHAN KNEE, Evercore

14

15

16

17

18

19

20

21

22

23

24

25

THE MCCLATCHY COMPANY, ET AL.                               11

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon, everybody.

3              IN UNISON:  Good afternoon, Your Honor.

4              THE COURT:  All right.  Forgive me if this gets a

5    little difficult.  I am without electricity here in Westchester

6    County, where the storm came roaring through.  I managed to

7    print some of the documents before the battery power in my

8    computer went out, but I only had a chance to read them

9    hastily, and I'm on a combination of battery-powered and

10   backup-powered devices here, so I don't even know how long

11   they'll last.

12             MR. DURRER:  Well, this is Van Durrer, Your Honor.  We

13   will endeavor to be efficient.  That sounds like quite a

14   dilemma.  I know we're not the only thing you're working on

15   these days.

16             THE COURT:  Okay.

17             MR. DURRER:  So without further ado, Your Honor, given

18   your circumstances, I'll just launch right into it.  Van

19   Durrer, Skadden Arps, on behalf the McClatchy debtors.  There's

20   a three-item agenda that is, just for the record, docket -- I

21   just lost it -- docket 732.  The three items, Your Honor, just

22   briefly, are the committee's standing motion, and then a modest

23   abandonment motion is number 2, and then the sale motion is 3.

24             With your permission, I'll skip over 1, because it's

25   tied up in the sale relief.  So going right to agenda item

1   number 2, there were no objections filed to this motion.  It's

2   a motion for Quad County -- for the debtors to abandon its

3   interest in Quad County Publishing, Inc.  This is an Illinois

4   entity.  It has no business.  It has no assets.  But it does

5   continue to generate franchise fees.  So we're seeking to

6   abandon that so that we can cut that off as an administrative

7   expense.

8           As I mentioned, there was no objection to this docket

9   number 589.  Does Your Honor have any questions about that?

10          THE COURT:  I have a question.  The motion says that

11  you want to abandon the equity and to dissolve the company

12  under applicable law, but isn't this a debtor in these cases?

13          MR. DURRER:  It is a debtor, Your Honor.  And we did

14  get permission -- well, consent from the lender groups,

15  including the DIP lender, to pursue this relief.

16          THE COURT:  So you can't dissolve it under state law

17  unless you dismiss the bankruptcy case.  Is that what you want

18  to do?

19          MR. DURRER:  We thought abandonment got us

20  sufficiently there, Your Honor, to abandon the equity interest.

21  But --

22          THE COURT:  Well, that abandons -- that abandons the

23  equity interest from the point of view of the other debtors

24  that own it, but this company itself is a debtor in the case --

25  in the consolidated cases.  So --

THE MCCLATCHY COMPANY, ET AL.                    13

1          MR. DURRER:  Yes, Your Honor, that is --

2          THE COURT:  -- isn't -- even if its ownership is

3  abandoned, it's still there.

4          MR. DURRER:  Yeah, understood, Your Honor.  I think

5  our view was that we would wrap that up in connection with the

6  plan, that element of it.  But if Your Honor is prepared to

7  dismiss that case today, obviously, we'd be happy to have that

8  relief as well.

9          THE COURT:  Well, I don't mind the other debtors

10  abandoning their equity in it.  But just let me know what it is

11  you want to do.  It's a party to a case.  If you want to

12  dismiss it, let me know.  If you want to wrap it up in the

13  plan, let me know.

14          MR. DURRER:  Yeah, I think it's efficient enough, Your

15  Honor, just to wrap it up in the plan.

16          THE COURT:  Okay, all right.  That was my only

17  question.

18          MR. DURRER:  Okay, thank you, Your Honor.

19          And then that takes us to item number 3, Your Honor,

20  which is the sale.  We've given you a lot of the details

21  yesterday.  There were a handful of objections.  Basically the

22  purchase price, just for the record, is the first lien debt,

23  which is approximately 263 million dollars, plus an additional

24  almost 50 million dollars of cash consideration.

25          As we discussed yesterday, one of the committee's

THE MCCLATCHY COMPANY, ET AL.                    14

1  chief concerns with respect to the sale was that there was a

2  variety of unencumbered assets that were being purchased in

3  connection with the credit bid.  Ultimately we reached a

4  peaceful settlement.  But just to walk to through those details

5  briefly without burdening your battery power too much, the

6  unencumbered assets fell into a few categories.

7       There was really no dispute that there was a handful

8  of pieces of real estate, about a half a dozen that were

9  unencumbered.  The value of those is in the range of twelve or

10  thirteen million dollars.

11       There were causes of action.  And those causes of

12  action, under the proposed sale, are left behind with the

13  estate, and most notably, the causes of action involving

14  current and former officers and directors.

15       There were some accounts, namely like landlord

16  security deposits, that the cash itself is not encumbered but

17  the right to receive the cash back at the successful proper

18  termination of the lease would still be a general and tangible

19  that would be subject to the lenders' lien.

20       There were some copyrights for very old articles that,

21  in the debtors' view, had no material value.  And then lastly,

22  there's the tax refund, which depends upon the company's not-

23  as-yet-filed, of course, 2020 tax return.

24       The lenders' view is that the tax attributes that form

25  the basis for that refund are general intangibles.  There's

THE MCCLATCHY COMPANY, ET AL.                    15

1  case law to that effect.  I think the committee's theory was

2  that because the CARES Act which allows those tax attributes to

3  be carried back to prior years for relief on past paid taxes

4  were generated post-petition -- the CARES Act was passed after

5  the case was filed -- that 552 would cut off the continuation

6  of the lenders' rights in those tax attributes.

7          I think that the lenders' view is that any proceeds of

8  that tax refund would be proceeds of preexisting tax

9  attributes.

10         But under the settlement, just to get to the punch-

11 line, seventy-seven-and-a-half percent of whatever is received

12 would go to general unsecured creditors, and a small portion

13 would stay with the buyer.

14         So on balance, Your Honor, that's why we believe that

15 paying fifty million dollars for those things is more than

16 sufficient, particularly when we did have up to four bidders

17 going into the final round of bidding, ultimately only two

18 submitted qualified bids.  We submitted a declaration by

19 Jonathan Knee and Sean Harding, the CRO, with respect to those

20 details, and those are -- we would ask Your Honor to consider

21 them part of the record.

22         I'm happy, then, to -- unless Your Honor has

23 questions, I'm happy to go into the handful of objections.

24 There are actually only two objections that are truly live.  I

25 think one is also not live.  So I think we're just down to one

THE MCCLATCHY COMPANY, ET AL.                                16

1  objection.

2          THE COURT:  Okay.  As to the -- the declarations, so

3  we have an evidentiary basis, which ones are you offering into

4  evidence?

5          MR. DURRER:  The declaration of Jonathan Knee of

6  Evercore.  Evercore ran the sale process for the debtors, Your

7  Honor.  And then the declaration of Sean Harding, our CRO.

8          THE COURT:  And those are on the docket where?  Just

9  so we're clear what we're putting into evidence.

10          MR. DURRER:  Of course, yes.  I just want to find the

11  docket numbers for you.  The declaration of Jonathan Knee is

12  docket number 694, and the declaration of Sean Harding is

13  docket number 695.

14          THE COURT:  Okay.  Are there any objections to the

15  admission of those declarations into evidence?

16          Okay, they're admitted.

17     (Declaration of Mr. Knee was hereby received into evidence

18  as Debtors' Exhibit, as of this date.)

19     (Declaration of Mr. Harding was hereby received into

20  evidence as Debtors' Exhibit, as of this date.)

21          MR. DURRER:  Thank you, Your Honor.

22          With respect to the objections, the two -- all of the

23  objections except for two have been resolved with language in

24  the sale order.  Most of those -- most of that language, Your

25  Honor, is in the nature of reservation of rights and/or

THE MCCLATCHY COMPANY, ET AL.                    17

1  resolving cure disputes.

2          The two that remain are docket number 557, which is

3  Microsoft, and then docket number 710, which was filed on

4  behalf of a handful of counties in Texas asserting tax claims.

5          With respect to the Microsoft objection, Your Honor,

6  the objection merely highlighted that there were some post-

7  petition amounts outstanding.  The relationship we have with

8  Microsoft is bilateral.  We get services from Microsoft, but

9  they also have access to our digital platform and our content.

10 So there's back-and-forth all the time.

11         We have since verified that the amounts that Microsoft

12 had identified as outstanding have been paid, and we've

13 communicated that information to counsel.  I'm not sure if

14 counsel is actually appearing today, because we haven't heard

15 back definitively, but we did send them Fed reference numbers.

16         THE COURT:  Okay.  Is Microsoft's counsel on the

17 phone?

18         Okay.  Well, I don't have confirmation that Microsoft

19 agrees with that, so how do you want to handle that?

20         MR. DURRER:  Well, the form of order overrules

21 objections to the extent that they're not prosecuted at the

22 hearing.  And as I said, we have paid those amounts.  We still

23 have to cure if we're going to assume that contract.  I think

24 there still are pre-petition amounts.  And obviously we don't

25 yet have your permission to clear those.

1        So I don't -- I don't think there's anything you need
2  to do beyond the sale order that you already have in front of
3  you.
4        THE COURT:  When did you give Microsoft the
5  information about the payments?
6        MR. DURRER:  I believe it was yesterday or late last
7  week, Your Honor.
8        THE COURT:  Okay.  And they know that we're going
9  forward here?
10        MR. DURRER:  Yes.  Candidly, Your Honor, they've been
11  not as responsive as we would have liked -- their counsel.  But
12  we interpreted that, perhaps, as that they were satisfied.
13        THE COURT:  Okay.  Or that they're not paying
14  attention.  Either way, they have a responsibility to be here
15  if they want to pursue an objection.
16        MR. DURRER:  Yes, Your Honor.
17        THE COURT:  Okay.
18        MR. DURRER:  We agree.
19        THE COURT:  All right.  What's the other one?
20        MR. DURRER:  The other one -- the Texas Taxing
21  Authorities, this is basically an objection asserted on the
22  basis of Texas tax law that gives a priority claim or -- I'm
23  sorry -- a secured claim for real estate taxes.
24        The amounts have moved around.  We're talking about
25  between 30- and 50,000 dollars across a handful of properties.

THE MCCLATCHY COMPANY, ET AL.                    19

1   We received language from the Texas Taxing Authorities that

2   spoke to free and clear -- the transaction being free and clear

3   of their liens but the liens attaching to the proceeds to the

4   same priority and extent that they existed prior to the

5   transaction, which we were completely fine with.

6         The additional language that separated us was they

7   also wanted a segregate account.  And that's something, Your

8   Honor, we typically resist, because in a case of this size and

9   complexity, if everybody wanted their pet escrow account, it

10  would really create an administrative burden, particularly when

11  claims haven't been definitively allowed.

12        And in this instance, as I've said, as we've been in

13  discussions, the amounts have moved around.  So if this happens

14  a hundred times, you would have potentially more escrows than

15  you had liens.  And so we're just trying to treat everybody

16  basically the same way.

17        We are accounting for the money, to be clear.  We're

18  also not asking for permission to use it.  It's going to just

19  sit where it's sitting until we have a plan of reorganization

20  confirmed.

21        Oh, obviously the Texas Taxing Authority should speak

22  for themselves, so Your Honor may want to hear from them.

23        THE COURT:  Okay, are they on the line?

24        MS. WELLER:  Your Honor, this is Elizabeth Weller on

25  behalf of the Texas Tax Authorities.  A few things.

1          When Mr. Durrer talks about the amounts moving around,

2     the primary amount that moved is because although this states

3     that it's a sale of substantially all assets of the debtor, we

4     became aware that one parcel of real property was not part of

5     this sale, but part of another sale.  So we'll probably have

6     the same issue when that comes up.  But so we took those

7     amounts out.

8          According to the terms of the asset purchase

9     agreement, the purchaser is purchasing the property only

10    subject to the tax liens and assuming the liability for its pro

11    rata portion, which with a closing on or about September 1, is

12    twenty-five percent of the taxes.  The debtor is retaining the

13    responsibility to pay the remainder.

14         Pursuant to Section 363(c)(4), absent consent from the

15    creditors, it says the debtors "shall segregate an account for

16    any cash collateral" in their possession.

17         These amounts are not moving around substantially.

18    It's primarily -- we have -- and the information dealing with

19    these accounts has been solely in the purview of the debtors.

20    I didn't have access to the property tax returns until

21    recently, which led us to remove a few smaller accounts that

22    were not going to be assessed this year.  The debtor knew those

23    accounts were not on the roll for this year.

24         But also this is not strictly real property.  It looks

25    like with that one real property in Arlington, Texas being part

THE MCCLATCHY COMPANY, ET AL.                                    21

1   of a separate sale, most of this is for business personal

2   property taxes.

3           And we're not comfortable with our cash collateral

4   being commingled in the general operating accounts.  We've had

5   numer -- we've had cases where that happens.  And although

6   everybody expects there to be enough to go around and get to a

7   plan, when we get to that stage, the money's not there, it

8   converts to a 7, and we have no way to track our cash

9   collateral.  That's why we asked for these segregated accounts.

10  It does not have to be a "escrow" account, just a way to track

11  it.

12          THE COURT:  All right.  Mr. Durrer, what about that

13  Section 363(c) language?

14          MR. DURRER:  Yeah, the language, I think, Your Honor,

15  doesn't apply, because again, Section 363(c) is all about using

16  cash collateral.  We're not asking -- we're not asking for

17  permission under 363(c) to spend Ms. Weller's client's money on

18  stuff where we'd have to provide her adequate protection.

19  We're stuck in 363(f), which says that her liens attach to the

20  proceeds of the sale.  So I don't think it applies, Your Honor.

21          THE COURT:  363(c)(2) talks about using cash

22  collateral, but the provision she cited is 363(c)(4), which

23  says, except as provided in paragraph (2), the trustee shall

24  segregate and account for any cash collateral in the trustee's

25  possession, custody, or control.

1          MR. DURRER:  Agreed, Your Honor.  My meaning was that

2     within 363(c), that's the section that deals with the

3     permission that the debtor can have to use cash collateral.

4     We're not seeking to use this cash collateral.  We're seeking

5     to sell other assets to which Ms. Weller's client's liens

6     attach.  And (f) is pretty clear that those liens would attach

7     to the proceeds.

8          We're not -- for example, we're not asking for

9     permission to spend her cash on professional fees, on the

10    electric bill, on rent.  It's just going to sit there pending

11    confirmation of a plan.

12         MS. WELLER:  Which is essentially --

13         THE COURT:  Actually -- yeah, but actually, Mr.

14    Durrer, the 363(c)(4) doesn't say that you segregate cash

15    collateral that you're going to use.  It says generally that

16    you can't use cash collateral unless I permit it.  And then it

17    says that except as allowed in paragraph (2) -- which means

18    except to the extent I let you use it -- you shall segregate an

19    account for any cash collateral -- any cash collateral.

20         So I think --

21         MR. DURRER:  Well --

22         THE COURT:  How hard is it --

23         MR. DURRER:  -- I'm not going to --

24         THE COURT:  -- how hard is it to set up an account for

25    this?

THE McCLATCHY COMPANY, ET AL.                    23

1        MR. DURRER:  Look, it's an administrative burden.

2   This one -- I can't argue, that it would be hard to do this

3   once.  I think my concern is that we might be doing it many

4   times, if -- depending on Your Honor's ruling.

5        But we're obviously going to account for it.  There's

6   no burden there, and we would do that in the ordinary course

7   anyway.

8        Right, because I think we never even get to (c).

9   That's my only point, Your Honor, because we're not asking for

10  permission to use it.

11       THE COURT:  All right.  Does anybody else wish to be

12  heard on this?

13       Listen, why don't you just open an account and put

14  that -- put the amount of money in it, and they have a lien on

15  that account, subject to resolution of their claim.  Okay?

16       MR. DURRER:  Okay, Your Honor.

17       THE COURT:  Thanks.

18       MS. WELLER:  Thank you, Your Honor.

19       THE COURT:  And the other objections, Cigna, Oracle,

20  Seagis, OWS, Ad2Pro, Chubb -- I saw the resolution of Chubb.

21  Aetna was withdrawn.  What's the status of all of those,

22  they're all resolved?

23       MR. DURRER:  Yes.  The Seagis objection, docket number

24  540, was resolved and withdrawn at docket number 726.

25  Microsoft we already talked about.  Cigna you just mentioned.

1  There's, in the revised sale order at paragraph 47, there's a
2  reservation of rights.

3          For Oracle and at least one other objection, we filed
4  a revised cure notice.  That cure notice for Oracle was docket
5  number 714.  That resolved the Oracle objection.  Dallas
6  Morning News --

7          THE COURT:  They also objected to assumption and
8  assignment.  I take it, they're withdrawing that part of their
9  objection?

10         MR. DURRER:  Yes, Your Honor.  And then there are --
11 there are two of these, Your Honor, Travelers and the landlord
12 of the Sacramento space that the debtors have.  Those are
13 resolved in language that you don't have yet, but they are both
14 in the nature of reservation of rights.  For example, Travelers
15 wanted to ensure that if the buyer was taking any part of the
16 Travelers insurance program, they were taking the whole; there
17 was no cherry-picking going on.  And there's no issue there.

18         And then we do intend to enter into an amended lease
19 with respect to the Sacramento location, and that reservation
20 of rights language merely says that the assumption won't occur,
21 except pursuant to that amended lease.  And that language has
22 been negotiated with the credit-bidding party as well.

23         THE COURT:  Okay.  Very good.

24         Are there any other objections or objectors who wish
25 to be heard?

THE MCCLATCHY COMPANY, ET AL.                    25

1          MR. HANSEN:  No, Your Honor.  It's Kris Hansen with

2    Stroock & Stroock & Lavan, on behalf of the official committee.

3    The committee supports the sale, Your Honor.  Obviously we

4    don't have an objection on file.

5          We were prepared to file one, as Mr. Durrer noted, but

6    we worked with the parties to arrive at a global consensus.

7    And so part of that consensus is that the committee supports

8    the sale.  But I wanted to make sure that we registered that

9    support.

10          THE COURT:  Very good.  Okay.

11          MR. DURRER:  Yeah, the settlement stipulation, Your

12    Honor, is attached to the form of sale order that we sent you.

13    It has the terms.  But basically, it's not much more than what

14    we talked about yesterday.  It's a splitting of the tax refund

15    heavily in the unsecured creditors' favor; the causes of action

16    with respect to the officers and directors would also go to the

17    unsecured creditors, to the extent that we don't resolve them

18    sooner.

19          The one element of that that ties back to docket -- or

20    I'm sorry -- agenda item number 1, is that we propose to

21    adjourn the standing motion to August 26th.  Ideally, we'll

22    ultimately adjourn it to a confirmation hearing, but for now, I

23    think it's sufficient to adjourn it to the August 26th omnibus

24    hearing, when we hopefully will get a plan on file in advance

25    of that date and ask Your Honor for relief with respect to

1  scheduling and confirmation on that.

2            THE COURT:  Okay.  Let me ask you just to clarify for

3  me -- because I have some -- I have the asset purchase

4  agreement; I have the framework agreement.  It refers to other

5  agreements that I don't think I have or maybe they're elsewhere

6  in the docket, such as an assignment agreement.  And I just

7  want to make sure I understand the mechanics of how the first

8  lien notes' obligations are being bid here and what's being

9  bid.

10           I take it that there was an assignment of the right to

11  credit bid to Chatham in some document that I don't think is on

12  file.  Am I right about that?

13           MR. DURRER:  That's right, Your Honor.  I think it

14  was, in part, the framework agreement, but there was also an

15  instruction that was given, by the parties, to the indenture

16  trustee for the first lien notes, confirming that --

17           THE COURT:  Can you --

18           MR. DURRER:  -- and we have -- sorry, Your Honor.

19           THE COURT:  And the amount that was credit bid, is

20  that everything that was owed, or just the principal?  Because

21  I also see references to paying accrued interest on the first

22  lien notes.

23           MR. DURRER:  Yeah, I believe it was the entirety of

24  the obligation, but the cash -- part of the cash proceeds in

25  the amount of approximately fourteen million dollars, are being

1   used to retire the first lien interest, so there's a bit of a

2   round-trip, or if you want to call it left-pocket-right-pocket.

3          But if we had had another bid, Your Honor, that

4   flirted with that fourteen million dollars, we would have

5   perhaps had an issue for Your Honor to resolve, but the backup

6   bid, which is also in the materials that were filed, Your

7   Honor, was in our view, approximately 100 million dollars less.

8   So we're not anywhere near needing to address those issues.

9          THE COURT:  Again, mechanically, what is it that

10   extinguishes the debtors' obligations with respect to the first

11   lien notes?  Are they being waived under the sale order?  Are

12   they being assumed --

13          MR. DURRER:  The ---

14          THE COURT:  -- by the -- go ahead.

15          MR. DURRER:  The interest -- yeah, the interest is

16   being paid, and then the principal amount is being replaced

17   with a new obligation that the first lien lenders are signing

18   up for.  So yeah, in the debtors' view, the first lien debt is

19   being satisfied in full.

20          THE COURT:  Okay.  And but does the sale order -- I

21   mean, if it's being bid, then it's -- then it's not outstanding

22   anymore, right?  At least as to the amount of credit bid.  Does

23   the sale order say that, somewhere?

24          MR. DURRER:  I believe it does, Your Honor.  If it

25   does not, we'll be happy to add that.  But yes, that is -- that

1    is the intent.  The debtors have no further obligation on the
2    first lien.

3           THE COURT:  All right.  And I saw in the revisions, a
4    provision for the payment of the indenture trustee fees and
5    expenses and what about make-whole rights; are they being
6    explicitly waived?

7           MR. DURRER:  Paul Weiss or Kramer Levin may want to
8    address that.  They're certainly not being paid, if there are
9    any.  I don't know if there are any applicable on this
10   transaction.

11          MR. ROSENBERG:  Your Honor, Andrew Rosenberg; Paul,
12   Weiss, Rifkind, Wharton & Garrison, for Chatham.  Hopefully my
13   phone will hold out.  I too am in Westchester and experiencing
14   all sorts of problems.

15          There was a -- I believe there was a make-whole
16   provision -- there is a make-whole provision in the first lien,
17   and I don't -- the language, I believe, was closer to the so-
18   called American Airlines language.  But in any event, all the
19   obligations under the first lien are ultimately being
20   extinguished through principal, make-whole, and interest, part
21   of the interest being extinguished through the round-tripping
22   of some of the cash.

23          But whatever obligations there are:  make-whole,
24   principal, first lien, all gone -- or principal, interest,
25   make-whole, are all being extinguished as part of the credit

1  bid.

2          THE COURT:  Okay.  So if you could either add that or

3  point me to where the sale order already says that, I would

4  appreciate it, okay?

5          MR. DURRER:  We will do that, Your Honor.  We owe you

6  the additional reservation of rights language for Travelers and

7  the landlord in California, anyway.  So we will either point it

8  out or add it when we submit that.

9          THE COURT:  The documents ask me to approve the

10  framework agreement, as well.  Why am I doing that?  It seems

11  to be just among the buyers.

12          MR. ROSENBERG:  Your Honor, Andrew Rosenberg again.

13  We figured you would ask that.  Right now, the way it's

14  structured, our asset purchase agreement and credit bid, some

15  of the -- the way the bid is ultimately structured, some of the

16  bidders are taking equity, some of the other bidders are taking

17  new debt.

18          This framework agreement sets out the framework for

19  how that's being done.  And some of the -- some of the parties

20  who are taking back the debt required as a condition precedent

21  that the sale order approve the framework agreement, since it

22  was an integral part of the transaction, because it determined

23  who was getting what under the bid.  That was the reason for

24  it, that certain of the parties asked for it, because of the

25  nature of the bid, that it was ultimately divvying up the

THE MCCLATCHY COMPANY, ET AL.                                30

1    assets between equity holders and people receiving new debt.

2            THE COURT:  I'm not sure my approval means anything.

3    I have no -- in my opinion --

4            MR. HANSEN:  Your Honor, it's Kris Hansen on behalf of

5    the -- with Stroock, on behalf of the committee.  If I might

6    interject?

7            So it's -- the complication that we have is that we

8    have a sale today, and obviously we have some -- we have

9    consideration coming into the estate, and we have certain

10   assets of the estate that were subject to and are subject to

11   the asset purchase agreement that are being either left behind

12   or transferred in part, from a benefit perspective, to an

13   unsecured creditor trust, for the benefit of creditors, which

14   we'll all put in a plan and we'll have approved of you -- have

15   in front of you and hopefully have approved in the future.

16           The problem is, is that there are certain assets that

17   get locked in place today as part of the sale process, and we

18   need those assets carved out.

19           We also are not confirming the plan today, but we're

20   trying to set forth a framework that everybody has agreed to

21   live by.  And unfortunately --

22           MR. ROSENBERG:  Kris?  Kris, I think you may be

23   confusing your agreements.  This is the -- not the

24   settlement -- this is the framework agreement amongst the

25   purchaser participants.

1          MR. HANSEN:  I'm sorry, Andy.  I thought the judge was

2     asking about the settlement agreement framework.

3          THE COURT:  No, I'm asking about the agreement that's

4     called "framework agreement", that's among Brigade and the

5     trustee and Chatham.

6          MR. HANSEN:  All right, my apologies, Your Honor.

7          MR. ROSENBERG:  This is what happens when, of all

8     things, we have multiple framework agreements.

9          So Your Honor, that is the explanation.  I would say

10    it is somewhat of a -- and I think Mr. Mannal is on for

11    Brigade, who may want to speak to this also.  But it is

12    somewhat of a -- has a bit of a comfort order in it -- nature

13    to it, but the reason for it was that it is an integrated

14    transaction with a lot of moving pieces, and ultimately

15    creditors of the estate getting different slices of the assets

16    through debtor equity.

17         And the people who are taking back debt instruments in

18    particular wanted the additional comfort, for whatever value it

19    may have, of the Court approving how we're -- how the ultimate

20    structure of the transaction is being done.

21         MR. MANNAL:  Your Honor, this is Doug Mannal from

22    Kramer Levin on behalf of Brigade.  Hopefully, you can hear me.

23    Hopefully my phone holds out.

24         As Mr. Van Durrer said at the outset, the purchase

25    price was a combination of credit bid, debt, and cash.  And

 1  there was a framework agreement that essentially, between the

 2  parties, divided and allocated certain new debt to certain of

 3  the first lien holders and certain subordinated debt to other

 4  first lien holders and equity to others.

 5          And we thought it important to have that framework

 6  agreement filed with the Court and approved by the Court.  And

 7  to the extent that some party challenges that the Court

 8  approval doesn't mean anything, we would feel much better if we

 9  had this Court having reviewed that framework agreement and

10  approved it.

11          THE COURT:  Well, if it's part of the APA, I suppose I

12  approve it.  But it doesn't seem to describe adjustment of the

13  debtors' obligations.  It seems to describe the capital

14  structure of the new entity, and it seems to talk about the

15  terms under which the new entity has acquired the right to

16  credit bid, none of which, ordinarily, would be any of my

17  business, I don't think.

18          But I guess that's more a curiosity.  I don't know

19  that there's any harm to my saying I approve it.  I just don't

20  know what, if any, consequence it has for me to say that.

21          MR. DURRER:  Well, Your Honor, from -- this is Van

22  Durrer.  From the debtors' perspective, there's a transparency

23  element which I think Mr. Mannal touched on.  But there's also

24  sort of an enforceability.  Right?

25          If God forbid, we were forced to seek specific

1  performance of the sale transaction, which no one anticipates,

2  but I think it is helpful, because I think the indenture

3  trustee would say, wait a second, I didn't buy -- I didn't buy

4  a newspaper company.  And Brigade might say, well, I didn't buy

5  a newspaper company.

6        So it does provide the transparency and the link in

7  the chain, so that we understand exactly who should be the

8  obligor in the event that we had to enforce something.

9        THE COURT:  And then there are terms in the sale

10 agreement that specify what obligations the cash proceeds are

11 going to be used to pay.  I certainly don't usually see those.

12 Why are those there?

13       MR. ROSENBERG:  Those are there, Your Honor, as

14 part -- an important element of the global settlement was to --

15 was the pathway to administrative solvency.  Sometimes you have

16 a credit bid and it's just sorry, guys, we're paying with debt

17 and there's nothing left.

18       We were very successful, and I thank all the

19 parties -- and I would be remiss if I didn't also thank Judge

20 Carey, our mediator -- for getting us to an administratively

21 solvent case.  But it was very important to all the parties

22 that there would be complete transparency and thoughtfulness

23 about what obligations are being paid.  And obviously the buyer

24 has a view on what obligations it believes it is paying with

25 respect to the cash that it's providing the estate.

1           So that's -- I agree, it's a little out of the norm,
2    but it was very important to achieving the global peace.
3           I don't know, Kris, if you want to speak to that as
4    well?
5           MR. HANSEN:  No, I concur with your perspective, Van.
6           THE COURT:  There's nothing -- I only got to read it
7    quickly, but please confirm -- there's nothing in it that
8    purports to change the absolute priorities or to give some
9    particular obligation a right of payment that might be -- that
10   it might not ordinarily have in relation to other obligations?
11          MR. DURRER:  Correct, Your Honor.  By and large, the
12   obligations are all administrative priority or post-petition
13   obligations.  There are a couple of exceptions which form the
14   basis for the settlement that Mr. Hansen was describing
15   earlier.
16          But Mr. Hansen and his constituency understand that
17   none of those items are going to be moving around until
18   confirmation of a plan.  But certain funds will be set aside
19   for that purpose that ultimately won't find its way to a
20   general unsecured creditor trust until we have a plan
21   confirmed.
22          THE COURT:  All right.  So nothing that I'm being
23   asked to do here would interfere with ordinary priorities in a
24   way that would raise a Jevic issue, is my primary concern.
25          MR. DURRER:  That's correct, Your Honor.

THE MCCLATCHY COMPANY, ET AL.                    35

1          THE COURT:  Mr. Hansen, do you agree with that?

2          MR. HANSEN:  Yes, Your Honor, I do.

3          THE COURT:  Okay.  All right.  I think I understand

4   the settlement term sheet.  On the sale order, there are a

5   number of questions I have and comments.  And any of you --

6   probably all of you, at this point, have had sale transactions

7   that you've presented to me, so these comments will be not a

8   surprise to you, I think.

9          On the various provisions about Section 363(n) -- not

10  M but N, I don't mind saying that there's no evidence or

11  indication in the record I have in front of me of any

12  collusion, but as I understand it, the whole point of 363(n) is

13  to permit, after the fact, invalidation of a transaction, if

14  after the fact, it's discovered that there was collusion that

15  people weren't aware of at the time.

16         So I'm often given sale orders that ask me to find

17  that there is no claim under 363(n), there is no violation of

18  363(n).  I'm happy to say that so far as I know there's no

19  violation of 363(n), but I think it would be inconsistent with

20  what 363(n) is meant to do, to essentially to say I am ruling

21  for all time that there's no such thing as a 363(n) violation.

22         And on the various provisions -- and they're in here a

23  number of times -- about free and clear of liabilities, free

24  and clear of successor liability; as I've explained before, I

25  don't agree to enter all these provisions that essentially

1    purport to give a declaratory judgment as to exactly what that

2    means with a long laundry list of what particular kinds of

3    obligations are within the scope of 363(f).

4           There have been some cases that have explored some

5    limits to 363(f), and I don't purport to describe exactly what

6    the full scope is.  What I always say is that it is free and

7    clear of liabilities, including successor liabilities, to the

8    fullest extent permitted by Section 363(f).

9           And --

10           MR. DURRER:  I think --

11           THE COURT:  Yeah, go ahead.

12           MR. DURRER:  Thank you, Your Honor.  Van Durrer.  I

13    think it would be -- obviously Mr. Rosenberg can speak for

14    himself, but I know for a fact that it would be important to

15    the buyer to have a clear statement that they're not buying

16    into any of our pension plans.

17           And just by way of information, we are informed that

18    the PBGC will likely execute a termination of the plan on its

19    own, so the distressed termination motion that we have before

20    you will likely become moot, and so that you won't need to

21    address that.

22           But I believe that was the concern that I know the

23    buyers would have.  Again, Mr. Rosenberg might want to speak

24    for himself.

25           THE COURT:  Is the PBGC on the phone?

THE MCCLATCHY COMPANY, ET AL.                              37

1          MR. KHALSA:  Yes, Your Honor.  PBGC is here.  Sorry, I

2   had to get off mute.  This is Kartar Khalsa, for the PBGC.

3          THE COURT:  So I think what Mr. Durrer just said is

4   that they would like to make clear that under 363(f), the sale

5   is free and clear of the pension obligations.  Do you have any

6   dispute with that?

7          MR. KHALSA:  We do not dispute that.

8          THE COURT:  Okay.  Then go ahead and list that one,

9   because that one, I think, has pretty clearly been identified.

10  We have the party on the phone, and there's no objection to the

11  inclusion.  Okay?

12         MR. DURRER:  Thank you, Your Honor.

13         THE COURT:  There's a finding in the proposed order

14  that the global settlement itself is fair, reasonable, and

15  meets the standards under Rule 9019.  That's for me to decide

16  at the confirmation hearing, isn't it, not today?

17         MR. DURRER:  I don't know if Mr. Hansen wants to speak

18  to that, but I -- it was -- I know it was important to the

19  committee to have -- to have some relief with respect to the

20  settlement today, because obviously most of the assets are

21  going to be going away at a closing to occur in approximately a

22  month.

23         But we certainly haven't filed formally for relief

24  under 9019.  I think the finding that it is reasonable and is a

25  great accomplishment in a case, I think, is perfectly fair.  So

THE MCCLATCHY COMPANY, ET AL.                    38

1  that may be self-evident from the record.

2          THE COURT:  Yeah, my concern is I don't want to say in

3  the context of a sale hearing what the terms of a plan already

4  are or are confirmed to be.  If they're being presented in a

5  plan, they should be approved then.

6          I don't mind approving and binding everybody to their

7  commitments that they've stated to pursue a plan with those

8  terms and the reasonableness of their commitment to pursue a

9  plan under those terms.  I just don't want it to be worded to

10  suggest that I'm already approving the terms themselves, which

11  I think are set up only to be approved when a plan is

12  confirmed.

13          MR. HANSEN:  Yes, Your Honor --

14          MR. DURRER:  Yeah, I --

15          MR. HANSEN:  -- it's Kris Hansen with Stroock, on

16  behalf the committee, again.

17          I guess the struggle that we're having is that some of

18  the terms are to be included in a plan which you'll approve

19  when we get to confirmation of that plan, and some of the terms

20  are actually a component of the sale order.  And then some of

21  the terms kind of govern the in-between, if you will.

22          And we're all -- everyone here is a professional, and

23  we're all proceeding in good faith, but from a legal

24  perspective, we, on the committee's side, needed some approval

25  of this prior to the time that the assets move and to preserve,

1   effectively, all of the elements of the settlement which then

2   help us ensure that we don't have disputes over these issues as

3   they get packaged into a plan, and that we lock in the buyer,

4   and we lock in Brigade, we lock in Chatham, we lock in

5   ourselves and the debtors, with respect to all of the other

6   provisions of it.

7          And from an approval perspective, I guess we were

8   struggling a little bit with the rule that would enable you to

9   approve it outside of 9019, since it is a settlement.  And

10   so --

11          THE COURT:  But why don't you --

12          MR. HANSEN:  -- we had --

13          THE COURT:  -- why don't you -- why don't you do this?

14   Why don't you just say that the agreement is approved, provided

15   that to the extent that the agreement contemplates the pursuit

16   of a plan and support of a plan, the terms of the -- the

17   provisions that describe the terms of the plan are subject to

18   the confirmation of the plan, and the propriety of those terms

19   will be decided at confirmation?

20          MR. DURRER:  I heard Your Honor say that you were

21   willing to keep the parties to their bargain with respect to

22   the in-between time.  So I think from the debtors' perspective,

23   I think that gets us there.

24          Kris, is that -- does that work for you?

25          MR. HANSEN:  It does, Your Honor.  I appreciate your

1   flexibility on that front.

2            THE COURT:  Okay.  My only -- I wasn't trying to make

3   the entire -- put the entire thing back in the air.  And I

4   appreciate your response.  I just also didn't want to pre-

5   approve things that I'm really only supposed to be considering

6   at a confirmation hearing.

7            MR. HANSEN:  Yeah, exactly.  Again, Your Honor, it's

8   Kris Hansen with Stroock, on behalf of the committee.  I think

9   our concern is obviously there are some assets that move with

10  the sale that we retain a continuing interest in, from both an

11  estate perspective, but ultimately a creditor trust

12  perspective.

13           And so those portions of the transfer, if you will,

14  are effectively like being modified.  Rather than try to go

15  back in and modify the entirety of the APA, we're modifying it

16  as a result of the --

17           THE COURT:  I understand, and I did not mean to defer

18  the approval of those.

19           MR. HANSEN:  Yes, understood, Your Honor.

20           THE COURT:  Okay.  All right, well, you get the

21  concept, I think.  You can, I'm sure, come up with some

22  language that will address it.

23           I see in the order there's a provision that says that

24  after sale, the assets will be subject to the liens of the new

25  facilities.  Why am I ruling on that?

1          MR. ROSENBERG:  Andrew Rosenberg, again, from Paul

2  Weiss, for Chatham.

3          I think the answer is the same answer as before, that

4  the -- to the extent it was an integrated transaction, and some

5  of the people are taking back debt -- again, I would say it's

6  probably somewhat more of a comfort order, since I don't -- I

7  think the -- we're going to go through the process anyway, with

8  the loan agreement, obviously, of making sure the --

9          THE COURT:  Everybody who's --

10          MR. ROSENBERG:  -- the UCC filing a mortgage --

11          THE COURT:  -- everybody who's affected by that is

12  fine with me saying it, though, I take it?  Chatham, the

13  indenture trustee, Brigade, they all want to include this

14  provision?

15          MR. ROSENBERG:  Chatham does.

16          THE COURT:  Okay.  All right.  It seems like an odd

17  thing for me to be ordering, but it's sort of like approving a

18  stipulation, I guess.

19          MR. MANNAL:  And I apologize, Your Honor.  My phone

20  cut out.  Could you then repeat the specific provision you're

21  focused on?

22          THE COURT:  It's paragraph 9 of the proposed sale

23  order, which has me ordering that the assets will be subject of

24  the liens of the new facilities after the transfer.

25          MR. MANNAL:  That's correct, Your Honor.  Brigade is

THE MCCLATCHY COMPANY, ET AL.                                    42

1    supportive of that provision, Your Honor.

2            THE COURT:  All right.  Well, I take it, that's

3    basically by agreement of the parties.  Why don't you just add

4    that "by agreement of the parties", then I can so order it

5    pursuant to that agreement.  It seems like a funny thing for me

6    to be otherwise directing.

7            The paragraph 11, where it says that people are barred

8    from pursuing claims against the assets, I think you need to

9    look at your language, because for example, taxing authorities,

10   like the Texas Taxing Authorities, they're going to have tax

11   claims -- property tax claims against assets that are being

12   transferred and that will be attributable, perhaps, to time

13   periods after the date of the closing.  But I think the way

14   you've worded at paragraph 11, it essentially would say that

15   nobody can pursue the claims against the assets, period.

16           So I just think you need to tinker with your language.

17   I think what you're intending to do is to bar claims based on

18   events pre-closing, but I don't think it says that.

19           MR. ROSENBERG:  Andrew Rosenberg, Your Honor.  That

20   was the intent.  We'll take a look at it.  As nice as it would

21   be to never have to pay taxes on any of the assets ever again,

22   that was not our intent.

23           THE COURT:  Right.  And now, it's possible I read that

24   in the darkness here in my little home office, my flashlight, a

25   little too hastily, but I think that's -- take a look at it and

THE MCCLATCHY COMPANY, ET AL.                    43

1  see if that needs fixing.

2          Then there's also a paragraph that says that no other

3  liabilities will accrue on the assigned contracts between now

4  and the closing.  When is the closing likely to be?

5          MR. ROSENBERG:  The end of -- end of -- sometime late

6  August, is the anticipated date.

7          THE COURT:  Well, there have to be some contracts,

8  right, that are -- I mean, unless your cure amounts forecasted

9  all the way through the end of August -- but there have to be

10  some contracts on which something's going to accrue between now

11  and then; isn't there?

12          MR. ROSENBERG:  We will --

13          THE COURT:  Paragraph 13 has me saying no.

14          MR. ROSENBERG:  I will -- we'll take a look at that,

15  Your Honor.  I just lost my computer screen with this on it,

16  but we'll take a look at the language.

17          THE COURT:  Okay.

18          MR. ROSENBERG:  But obviously Your Honor is correct.

19  There would have to be -- unless it was all included in the

20  cure obligations, then obviously they would -- the contracts

21  are ongoing, so there would have to be some liabilities that

22  we're potentially accruing.

23          THE COURT:  Okay.  And the various escrows that you're

24  asking me to approve, what are those and why are they being set

25  up?

THE MCCLATCHY COMPANY, ET AL.                            44

1          MR. DURRER:  Those are being set up, Your Honor, to

2    ensure the bargain that the buyer has sought that certain of

3    its funds are going to be earmarked for certain purposes.

4          THE COURT:  Okay.  But I retain full control over

5    those escrowed funds and the final allocation of administrative

6    expense claims, et cetera, right?

7          MR. DURRER:  Yes, Your Honor.

8          THE COURT:  Okay.  There appears to be an exculpation

9    provision in paragraph 34, the kind that I usually see in a

10   plan.  What's my authority to do that in a sale order?

11         MR. DURRER:  I think it's a recognition, Your Honor,

12   that the process has been undertaken in good faith and you do

13   have the ability to cut off collateral attacks on the sale.

14   It's not -- again, it's not essential for the debtors.  That's

15   the justification.

16         I don't know how the buyer and others feel about it.

17         MR. ROSENBERG:  Your Honor, it's Andrew Rosenberg,

18   again.  I viewed the provision -- it is somewhat like a plan

19   exculpation, but I think it was an exculpation only with

20   actions taken during the course of the cases to effectuate the

21   sale and the agreements necessary to implement the sale.

22         So I consider it a little bit of a -- almost a tack-on

23   to our ancillary to Section 363(m), and that we're just getting

24   it -- essentially the actions we took through a somewhat

25   occasionally contentious process to effectuate the sale, that

1  we're not going to hear anything -- that anything we did was

2  not proper.

3          THE COURT:  Let me take a look at it again.  No, it

4  actually is much broader than that.  It's just like a plan

5  exculpation.  It says you're not liable to anybody for anything

6  you've ever done in connection with the operation of their

7  businesses during the cases, the investigation of these

8  transactions.  So it does go a little broader than that.

9          MR. ROSENBERG:  We can limit it, if that -- if that

10  would be acceptable to the Court.

11          THE COURT:  All right.  And it's subject to the terms

12  of Section 363(m).  I don't expect --

13          MR. ROSENBERG:  Correct, we --

14          THE COURT:  I don't expect --

15          MR. ROSENBERG:  -- we're not looking to undo the

16  earlier part of this ruling.

17          THE COURT:  Right, right.

18          All right, very good.  Some of those changes I would

19  normally just tell you to send me a Word copy and I would make

20  them myself, but I don't know when I'm going to have a computer

21  again.

22          MR. DURRER:  Understood, Your Honor.  We're happy to

23  take the pen and help you out.  We appreciate your

24  circumstances, for sure.

25          THE COURT:  Okay.  And then send it to us in Word

THE MCCLATCHY COMPANY, ET AL.                    46

1  format with a red-line, and if we have other little edits here

2  and there, we'll add them and send them back to you.

3            MR. DURRER:  Thank you, Your Honor.

4            THE COURT:  Subject to those changes and

5  clarifications, I will approve the sale.

6            MR. DURRER:  Thank you very much, Your Honor.

7            THE COURT:  Okay.

8            IN UNISON:  Thank you, Your Honor.

9            THE COURT:  All right.  And I don't know if he's

10  listening or not, but I appreciate Judge Carey's help in

11  assisting you to reach a resolution here.

12            MR. DURRER:  We will make sure he gets the message.

13            THE COURT:  Okay, and tell him I hope he's doing well.

14            Very good.  Is there anything else for today?

15            MR. DURRER:  Nothing more for today, Your Honor.  Good

16  luck with the storm.

17            THE COURT:  Thanks.  I can deal with the lack of power

18  as long as a tree doesn't land on my roof.

19            All right, we are adjourned.  Thank you very much.

20            IN UNISON:  Thank you, Your Honor.

21       (Whereupon these proceedings were concluded at 3:53 PM)

22

23

24

25

```
 1
 2                            I N D E X
 3                          E X H I B I T S
 4   DEBTORS'        DESCRIPTION            MARKED   ADMITTED
 5   --             Declaration of Mr. Knee          16
 6   --             Declaration of Mr.               16
 7                  Harding
 8
 9   RULINGS:                                PAGE   LINE
10   Motion authorizing abandonment of       13     16
11   equity interest in Quad County
12   Publishing is granted.
13   Subject to changes and clarifications   46      4
14   on the record, the sale is approved.
15
16
17
18
19
20
21
22
23
24
25
```

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   Penina Wolicki (CET-569)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  August 5, 2020

18

19

20

21

22

23

24

25

## A

**AARON (1)**
8:2
**abandon (4)**
12:2,6,11,20
**abandoned (1)**
13:3
**abandoning (1)**
13:10
**abandonment (2)**
11:23;12:19
**abandons (2)**
12:22,22
**ability (1)**
44:13
**absent (1)**
20:14
**absolute (1)**
34:8
**acceptable (1)**
45:10
**access (2)**
17:9;20:20
**accomplishment (1)**
37:25
**According (1)**
20:8
**account (10)**
19:7,9;20:15;
21:10,24;22:19,24;
23:5,13,15
**accounting (1)**
19:17
**accounts (6)**
14:15;20:19,21,
23:21:4,9
**accrue (2)**
43:3,10
**accrued (1)**
26:21
**accruing (1)**
43:22
**achieving (1)**
34:2
**acquired (1)**
32:15
**across (1)**
18:25
**Act (2)**
15:2,4
**action (4)**
14:11,12,13;25:15
**actions (2)**
44:20,24
**actually (6)**
15:24;17:14;
22:13,13;38:20;45:4
**Ad2Pro (1)**
23:20
**add (5)**
27:25;29:2,8;42:3;

**46:2**
**additional (4)**
13:23;19:6;29:6;
31:18
**address (4)**
27:8;28:8;36:21;
40:22
**adequate (1)**
21:18
**adjourn (3)**
25:21,22,23
**adjourned (1)**
46:19
**adjustment (1)**
32:12
**administrative (6)**
12:6;19:10;23:1;
33:15;34:12;44:5
**administratively (1)**
33:20
**admission (1)**
16:15
**admitted (1)**
16:16
**ado (1)**
11:17
**advance (1)**
25:24
**Aetna (1)**
23:21
**affected (1)**
41:11
**afternoon (2)**
11:2,3
**again (13)**
21:15;27:9;29:12;
36:23;38:16;40:7;
41:1,5;42:21;44:14,
18;45:3,21
**against (3)**
42:8,11,15
**agenda (3)**
11:20,25;25:20
**agree (1)**
18:18;34:1;35:1,
25
**Agreed (2)**
22:1;30:20
**agreement (24)**
20:9;26:4,4,6,14;
29:10,14,18,21;
30:11,24;31:2,3,4;
32:1,6,9;33:10;
39:14,15;41:8;42:3,
4,5
**agreements (4)**
26:5;30:23;31:8;
44:21
**agrees (1)**
17:19
**ahead (3)**
27:14;36:11;37:8
**air (1)**

**40:3**
**Airlines (1)**
28:18
**al (1)**
8:3
**ALBERT (1)**
4:8
**allocated (1)**
32:2
**allocation (1)**
44:5
**allowed (2)**
19:11;22:17
**allows (1)**
15:2
**almost (2)**
13:24;44:22
**although (2)**
20:2;21:5
**always (1)**
36:6
**amended (2)**
24:18,21
**America (1)**
8:20
**American (1)**
28:18
**Americas (2)**
5:15;6:13
**AMISH (1)**
8:25
**among (2)**
29:11;31:4
**amongst (1)**
30:24
**amount (6)**
20:2;23:14;26:19,
25;27:16,22
**amounts (10)**
17:7,11,22,24;
18:24;19:13;20:1,7,
17;43:8
**AMY (1)**
7:18
**ancillary (1)**
44:23
**and/or (1)**
16:25
**ANDREW (6)**
5:18;28:11;29:12;
41:1;42:19;44:17
**Andy (1)**
31:1
**ANSELL (1)**
8:2
**anticipated (1)**
43:6
**anticipates (1)**
33:1
**anymore (1)**
27:22
**APA (2)**
32:11;40:15

**apologies (1)**
31:6
**apologize (1)**
41:19
**appearing (1)**
17:14
**appears (1)**
44:8
**applicable (2)**
12:12;28:9
**applies (1)**
21:20
**apply (1)**
21:15
**appreciate (5)**
29:4;39:25;40:4;
45:23;46:10
**approval (5)**
30:2;32:8;38:24;
39:7;40:18
**approve (9)**
29:9,21;32:12,19;
38:18;39:9;40:5;
43:24;46:5
**approved (7)**
30:14,15;32:6,10;
38:5,11;39:14
**approving (4)**
31:19;38:6,10;
41:17
**approximately (4)**
13:23;26:25;27:7;
37:21
**argue (1)**
23:2
**Arlington (1)**
20:25
**around (6)**
18:24;19:13;20:1,
17;21:6;34:17
**Arps (1)**
11:19
**arrive (1)**
25:6
**articles (1)**
14:20
**aside (1)**
34:18
**asserted (1)**
18:21
**asserting (1)**
17:4
**assessed (1)**
20:22
**Asset (6)**
5:14;6:3;20:8;
26:3;29:14;30:11
**assets (19)**
12:4;14:2,6;20:3;
22:5;30:1,10,16,18;
31:15;37:20;38:25;
40:9,24;41:23;42:8,
11,15,21

**assigned (1)**
43:3
**assignment (3)**
24:8;26:6,10
**assisting (1)**
46:11
**assume (1)**
17:23
**assumed (1)**
27:12
**assuming (1)**
20:10
**assumption (2)**
24:7,20
**as-yet-filed (1)**
14:23
**attach (3)**
21:19;22:6,6
**attached (1)**
25:12
**attaching (1)**
19:3
**attacks (1)**
44:13
**attention (1)**
18:14
**Attorneys (14)**
4:3;5:3,14;6:3,12;
7:3,13;8:3,11,20;9:3,
12,20;10:3
**attributable (1)**
42:12
**attributes (4)**
14:24;15:2,6,9
**August (4)**
25:21,23;43:6,9
**Authorities (6)**
10:3;18:21;19:1,
25;42:9,10
**Authority (2)**
19:21;44:10
**Avenue (6)**
5:15;6:4,13;8:12,
21;9:21
**aware (2)**
20:4;35:15
**away (1)**
37:21

## B

**back (10)**
14:17;15:3;17:15;
25:19;29:20;31:17;
40:3,15;41:5;46:2
**back-and-forth (1)**
17:10
**backup (1)**
27:5
**backup-powered (1)**
11:10
**balance (1)**
15:14

**Bank (1)**
7:3
**bankruptcy (1)**
12:17
**bar (1)**
42:17
**bargain (2)**
39:21;44:2
**barred (1)**
42:7
**based (1)**
42:17
**Basically (5)**
13:21;18:21;
19:16;25:13;42:3
**basis (4)**
14:25;16:3;18:22;
34:14
**battery (2)**
11:7;14:5
**battery-powered (1)**
11:9
**BAUCHNER (1)**
8:7
**became (1)**
20:4
**become (1)**
36:20
**behalf (9)**
11:19;17:4;19:25;
25:2;30:4,5;31:22;
38:16;40:8
**behind (2)**
14:12;30:11
**believes (1)**
33:24
**BENEFIT (3)**
6:20;30:12,13
**BENJAMIN (1)**
4:18
**better (1)**
32:8
**beyond (1)**
18:2
**bid (17)**
14:3;26:8,9,11,19;
27:3,6,21,22;29:1,
14,15,23,25;31:25;
32:16;33:16
**bidders (3)**
15:16;29:16,16
**bidding (1)**
15:17
**bids (1)**
15:18
**bilateral (1)**
17:8
**bill (1)**
22:10
**binding (1)**
38:6
**bit (4)**
27:1;31:12;39:8;

44:22
**BLAIR (1)**
10:2
**Boston (1)**
9:14
**both (2)**
24:13;40:10
**briefly (2)**
11:22;14:5
**Brigade (8)**
6:12;31:4,11,22;
33:4;39:4;41:13,25
**broader (2)**
45:4,8
**Broadway (1)**
7:5
**burden (3)**
19:10;23:1,6
**burdening (1)**
14:5
**Business (4)**
9:12;12:4;21:1;
32:17
**businesses (1)**
45:7
**buy (3)**
33:3,3,4
**buyer (7)**
15:13;24:15;
33:23;36:15;39:3;
44:2,16
**buyers (2)**
29:11;36:23
**buying (1)**
36:15

**C**

**California (1)**
29:7
**call (1)**
27:2
**called (2)**
28:18;31:4
**came (1)**
11:6
**Camp (1)**
8:4
**can (10)**
12:6;22:3;26:17;
31:22;36:13;40:21;
42:4,15;45:9;46:17
**Candidly (1)**
18:10
**Capital (2)**
6:12;32:13
**CARES (2)**
15:2,4
**Carey (1)**
33:20
**Carey's (1)**
46:10
**carried (1)**

15:3
**carved (1)**
30:18
**case (9)**
12:17,24;13:7,11;
15:1,5;19:8;33:21;
37:25
**cases (6)**
12:12,25;21:5;
36:4;44:20;45:7
**cash (22)**
13:24;14:16,17;
20:16;21:3,8,16,21,
24;22:3,4,9,14,16,19,
19;26:24,24;28:22;
31:25;33:10,25
**categories (1)**
14:6
**causes (4)**
14:11,11,13;25:15
**certain (9)**
29:24;30:9,16;
32:2,2,3;34:18;44:2,
3
**certainly (3)**
28:8;33:11;37:23
**cetera (1)**
44:6
**CF (1)**
7:13
**chain (1)**
33:7
**challenges (1)**
32:7
**chance (1)**
11:8
**change (1)**
34:8
**changes (2)**
45:18;46:4
**Chatham (9)**
5:14;6:3;26:11;
28:12;31:5;39:4;
41:2,12,15
**cherry-picking (1)**
24:17
**chief (1)**
14:1
**CHOATE (1)**
9:11
**Chubb (3)**
8:11;23:20,20
**Cigna (3)**
9:3;23:19,25
**circumstances (2)**
11:18;45:24
**cited (1)**
21:22
**claim (4)**
18:22,23;23:15;
35:17
**claims (8)**
17:4;19:11;42:8,

11,11,15,17;44:6
**CLAREMAN (1)**
5:20
**clarifications (1)**
46:5
**clarify (1)**
26:2
**clear (12)**
16:9;17:25;19:2,2,
17;22:6;35:23,24;
36:7,15;37:4,5
**clearly (1)**
37:9
**client's (2)**
21:17;22:5
**closer (1)**
28:17
**closing (5)**
20:11;37:21;
42:13;43:4,4
**Co (1)**
9:3
**collateral (13)**
20:16;21:3,9,16,
22,24;22:3,4,15,16,
19,19;44:13
**collusion (2)**
35:12,14
**combination (2)**
11:9;31:25
**comfort (3)**
31:12,18;41:6
**comfortable (1)**
21:3
**coming (1)**
30:9
**comments (2)**
35:5,7
**commingled (1)**
21:4
**commitment (1)**
38:8
**commitments (1)**
38:7
**Committee (8)**
5:3;25:2,3,7;30:5;
37:19;38:16;40:8
**committee's (4)**
11:22;13:25;15:1;
38:24
**communicated (1)**
17:13
**Company (5)**
7:4;12:11,24;33:4,
5
**company's (1)**
14:22
**complete (1)**
33:22
**completely (1)**
19:5
**complexity (1)**
19:9

**complication (1)**
30:7
**component (1)**
38:20
**computer (3)**
11:8;43:15;45:20
**concept (1)**
40:21
**concern (5)**
23:3;34:24;36:22;
38:2;40:9
**concerns (1)**
14:1
**concluded (1)**
46:21
**concur (1)**
34:5
**condition (1)**
29:20
**confirm (1)**
34:7
**confirmation (10)**
17:18;22:11;
25:22;26:1;34:18;
37:16;38:19;39:18,
19;40:6
**confirmed (4)**
19:20;34:21;38:4,
12
**confirming (2)**
26:16;30:19
**confusing (1)**
30:23
**connection (3)**
13:5;14:3;45:6
**CONNOLLY (1)**
9:2
**consensus (2)**
25:6,7
**consent (2)**
12:14;20:14
**consequence (1)**
32:20
**consider (2)**
15:20;44:22
**consideration (2)**
13:24;30:9
**considering (1)**
40:5
**consolidated (1)**
12:25
**constituency (1)**
34:16
**Consulting (1)**
10:12
**contemplates (1)**
39:15
**content (1)**
17:9
**contentious (1)**
44:25
**context (1)**
38:3

**continuation (1)**
15:5
**continue (1)**
12:5
**continuing (1)**
40:10
**contract (1)**
17:23
**contracts (4)**
43:3,7,10,20
**control (2)**
21:25;44:4
**converts (1)**
21:8
**copy (1)**
45:19
**copyrights (1)**
14:20
**CORPORATION (1)**
6:20
**counsel (4)**
17:13,14,16;18:11
**counties (1)**
17:4
**County (4)**
8:3;11:6;12:2,3
**couple (1)**
34:13
**course (4)**
14:23;16:10;23:6;
44:20
**COURT (86)**
11:2,4,16;12:10,
16,22;13:2,9,16;
16:2,8,14;17:16;
18:4,8,13,17,19;
19:23;21:12,21;
22:13,22,24;23:11,
17,19;24:7,23;25:10;
26:2,17,19;27:9,14,
20;28:3;29:2,9;30:2;
31:3,19;32:6,6,7,9,
11;33:9;34:6,22;
35:1,3;36:11,25;
37:3,8,13;38:2;
39:11,13;40:2,17,20;
41:9,11,16,22;42:2,
23;43:7,13,17,23;
44:4,8;45:3,10,11,
14,17,25;46:4,7,9,13,
17
**create (1)**
19:10
**Credit (10)**
9:12;14:3;26:11,
19;27:22;28:25;
29:14;31:25;32:16;
33:16
**credit-bidding (1)**
24:22
**creditor (3)**
30:13;34:20;40:11
**creditors (5)**

15:12;20:15;
25:17;30:13;31:15
**Creditors' (2)**
5:3;25:15
**CRO (2)**
15:19;16:7
**cure (6)**
17:1,23;24:4,4;
43:8,20
**curiosity (1)**
32:18
**current (1)**
14:14
**custody (1)**
21:25
**cut (4)**
12:6;15:5;41:20;
44:13

**D**

**Dallas (3)**
9:23;10:6;24:5
**DANIEL (1)**
5:10
**darkness (1)**
42:24
**date (5)**
16:18,20;25:25;
42:13;43:6
**days (1)**
11:15
**DC (1)**
6:22
**DE (2)**
8:14;9:6
**deal (1)**
46:17
**dealing (1)**
20:18
**deals (1)**
22:2
**debt (11)**
13:22;27:18;
29:17,20;30:1;31:17,
25;32:2,3;33:16;
41:5
**debtor (8)**
12:12,13,24;20:3,
12,22;22:3;31:16
**Debtors (12)**
4:3;11:19;12:2,23;
13:9;16:6;20:15,19;
24:12;28:1;39:5;
44:14
**debtors' (8)**
14:21;16:18,20;
27:10,18;32:13,22;
39:22
**decide (1)**
37:15
**decided (1)**
39:19

**declaration (7)**
15:18;16:5,7,11,
12,17,19
**declarations (2)**
16:2,15
**declaratory (1)**
36:1
**defer (1)**
40:17
**definitively (2)**
17:15;19:11
**Delaware (1)**
8:12
**DEPARTMENT (1)**
4:12
**depending (1)**
23:4
**depends (1)**
14:22
**deposits (1)**
14:16
**describe (4)**
32:12,13;36:5;
39:17
**describing (1)**
34:14
**details (3)**
13:20;14:4;15:20
**determined (1)**
29:22
**devices (1)**
11:10
**different (1)**
31:15
**difficult (1)**
11:5
**digital (1)**
17:9
**dilemma (1)**
11:14
**DIP (1)**
12:15
**directing (1)**
42:6
**directors (2)**
14:14;25:16
**discovered (1)**
35:14
**discussed (1)**
13:25
**discussions (1)**
19:13
**dismiss (3)**
12:17;13:7,12
**dispute (3)**
14:7;37:6,7
**disputes (2)**
17:1;39:2
**dissolve (2)**
12:11,16
**distressed (1)**
36:19
**divided (1)**

32:2
**divvying (1)**
29:25
**docket (14)**
11:20,21;12:8;
16:8,11,12,13;17:2,
3;23:23,24;24:4;
25:19;26:6
**document (1)**
26:11
**documents (2)**
11:7;29:9
**dollars (8)**
13:23,24;14:10;
15:15;18:25;26:25;
27:4,7
**done (3)**
29:19;31:20;45:6
**DOSHI (2)**
8:19,25
**Doug (1)**
31:21
**DOUGLAS (1)**
6:16
**down (1)**
15:25
**dozen (1)**
14:8
**DUANE (1)**
8:10
**during (2)**
44:20;45:7
**DURRER (61)**
11:12,12,17,19;
12:13,19;13:1,4,14,
18;16:5,10,21;17:20;
18:6,10,16,18,20;
20:1;21:12,14;22:1,
14,21,23;23:1,16,23;
24:10;25:5,11;26:13,
18,23;27:13,15,24;
28:7;29:5;31:24;
32:21,22;34:11,25;
36:10,12,12;37:3,12,
17;38:14;39:20;
44:1,7,11;45:22;
46:3,6,12,15

**E**

**earlier (2)**
34:15;45:16
**earmarked (1)**
44:3
**edits (1)**
46:1
**effect (1)**
15:1
**effectively (2)**
39:1;40:14
**effectuate (2)**
44:20,25
**efficient (2)**

11:13;13:14
**Either (4)**
18:14;29:2,7;
30:11
**electric (1)**
22:10
**electricity (1)**
11:5
**element (3)**
13:6;25:19;32:23;
33:14
**elements (1)**
39:1
**ELIZABETH (2)**
10:8;19:24
**else (2)**
23:11;46:14
**elsewhere (1)**
26:5
**EMANUEL (1)**
6:2
**EMMET (1)**
7:2
**enable (1)**
39:8
**Encina (1)**
9:12
**encumbered (1)**
14:16
**end (3)**
43:5,5,9
**endeavor (1)**
11:13
**enforce (1)**
33:8
**enforceability (1)**
32:24
**enough (2)**
13:14;21:6
**ensure (3)**
24:15;39:2;44:2
**enter (2)**
24:18;35:25
**entire (2)**
40:3,3
**entirety (2)**
26:23;40:15
**entity (3)**
12:4;32:14,15
**equity (8)**
12:11,20,23;
13:10;29:16;30:1;
31:16;32:4
**EREZ (1)**
5:7
**ERIC (1)**
9:25
**escrow (2)**
19:9;21:10
**escrowed (1)**
44:5
**escrows (2)**
19:14;43:23

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 4, 2020

**ESQ (23)**
4:8,9,18;5:7,8,9,
10,18,19,20;6:8,16,
17,24;7:9,18;8:7,16,
25;9:8,16,25;10:8
**essential (1)**
44:14
**essentially (6)**
22:12;32:1;35:20,
25;42:14;44:24
**estate (8)**
14:8,13;18:23;
30:9,10;31:15;
33:25;40:11
**et (2)**
8:3;44:6
**even (3)**
11:10;13:2;23:8
**event (2)**
28:18;33:8
**events (1)**
42:18
**Evercore (3)**
10:13;16:6,6
**everybody (8)**
11:2;19:9,15;21:6;
30:20;38:6;41:9,11
**everyone (1)**
38:22
**evidence (6)**
16:4,9,15,17,20;
35:10
**evidentiary (1)**
16:3
**exactly (4)**
33:7;36:1,5;40:7
**example (3)**
22:8;24:14;42:9
**except (5)**
16:23;21:23;
22:17,18;24:21
**exceptions (1)**
34:13
**exculpation (4)**
44:8,19,19;45:5
**execute (1)**
36:18
**Exhibit (2)**
16:18,20
**existed (1)**
19:4
**expect (2)**
45:12,14
**expects (1)**
21:6
**expense (2)**
12:7;44:6
**expenses (1)**
28:5
**experiencing (1)**
28:13
**explained (1)**
35:24

**explanation (1)**
31:9
**explicitly (1)**
28:6
**explored (1)**
36:4
**extent (8)**
17:21;19:4;22:18;
25:17;32:7;36:8;
39:15;41:4
**extinguished (3)**
28:20,21,25
**extinguishes (1)**
27:10

**F**

**facilities (2)**
40:25;41:24
**fact (3)**
35:13,14;36:14
**fair (2)**
37:14,25
**faith (2)**
38:23;44:12
**FANE (1)**
9:19
**far (1)**
35:18
**favor (1)**
25:15
**Fed (1)**
17:15
**feel (2)**
32:8;44:16
**fees (3)**
12:5;22:9;28:4
**fell (1)**
14:6
**few (3)**
14:6;19:25;20:21
**fifty (1)**
15:15
**figured (1)**
29:13
**file (4)**
25:4,5,24;26:12
**filed (7)**
12:1;15:5;17:3;
24:3;27:6;32:6;
37:23
**filing (1)**
41:10
**final (2)**
15:17;44:5
**find (3)**
16:10;34:19;35:16
**finding (2)**
37:13,24
**fine (2)**
19:5;41:12
**first (14)**
13:22;26:7,16,21;

27:1,10,17,18;28:2,
16,19,24;32:3,4
**fixing (1)**
43:1
**flashlight (1)**
42:24
**flexibility (1)**
40:1
**FLIMAN (1)**
5:10
**flirted (1)**
27:4
**Floor (3)**
6:5;7:6;9:5
**focused (1)**
41:21
**forbid (1)**
32:25
**forced (1)**
32:25
**forecasted (1)**
43:8
**Forgive (1)**
11:4
**form (4)**
14:24;17:20;
25:12;34:13
**formally (1)**
37:23
**format (1)**
46:1
**former (1)**
14:14
**forth (1)**
30:20
**forward (1)**
18:9
**four (1)**
15:16
**fourteen (2)**
26:25;27:4
**framework (14)**
26:4,14;29:10,18,
18,21;30:20,24;31:2,
4,8;32:1,5,9
**franchise (1)**
12:5
**FRANKEL (1)**
6:11
**free (6)**
19:2,2;35:23,23;
36:6;37:5
**Freeway (1)**
10:4
**front (4)**
18:2;30:15;35:11;
40:1
**FTI (1)**
10:12
**full (3)**
27:19;36:6;44:4
**fullest (1)**
36:8

**funds (3)**
34:18;44:3,5
**funny (1)**
42:5
**further (2)**
11:17;28:1
**future (1)**
30:15

**G**

**GALLAGHER (1)**
9:2
**GARRISON (2)**
5:13;28:12
**general (5)**
14:18,25;15:12;
21:4;34:20
**generally (1)**
22:15
**generate (1)**
12:5
**generated (1)**
15:4
**gets (3)**
11:4;39:23;46:12
**GILAD (1)**
5:7
**given (4)**
11:17;13:20;
26:15;35:16
**gives (1)**
18:22
**global (4)**
25:6;33:14;34:2;
37:14
**God (1)**
32:25
**GOGGAN (1)**
10:2
**Good (9)**
11:2,3;24:23;
25:10;38:23;44:12;
45:18;46:14,15
**govern (1)**
38:21
**great (1)**
37:25
**GRIMM (1)**
8:2
**GROUP (1)**
8:19
**groups (1)**
12:14
**GUARANTY (1)**
6:20
**guess (4)**
32:18;38:17;39:7;
41:18
**guys (1)**
33:16

**H**

**half (1)**
14:8
**HALL (1)**
9:11
**handful (5)**
13:21;14:7;15:23;
17:4;18:25
**handle (1)**
17:19
**HANSEN (21)**
5:9;25:1,1;30:4,4;
31:1,6;34:5,14,16;
35:1,2;37:17;38:13,
15,15;39:12,25;40:7,
8,19
**happens (3)**
19:13;21:5;31:7
**happy (6)**
13:7;15:22,23;
27:25;35:18;45:22
**hard (3)**
22:22,24;23:2
**HARDING (5)**
10:12;15:19;16:7,
12,19
**harm (1)**
32:19
**Harris (1)**
8:3
**hastily (2)**
11:9;42:25
**Health (1)**
9:3
**hear (3)**
19:22;31:22;45:1
**heard (4)**
17:14;23:12;
24:25;39:20
**hearing (6)**
17:22;25:22,24;
37:16;38:3;40:6
**heavily (1)**
25:15
**help (3)**
39:2;45:23;46:10
**helpful (1)**
33:2
**hereby (1)**
16:17,19
**HIGGINS (1)**
4:18
**highlighted (1)**
17:6
**himself (2)**
36:14,24
**hold (1)**
28:13
**holders (3)**
30:1;32:3,4
**holds (1)**

31:23
**home (1)**
42:24
**Honor (80)**
11:3,12,17,21;
12:9,13,20;13:1,4,6,
15,18,19;15:14,20,
22;16:7,21,25;17:5;
18:7,10,16;19:8,22,
24;21:14,20;22:1;
23:9,16,18;24:10,11;
25:1,3,12,25;26:13,
18;27:3,5,7,24;
28:11;29:5,12;30:4;
31:6,9,21;32:21;
33:13;34:11,25;
35:2;36:12;37:1,12;
38:13;39:20,25;40:7,
19;41:19,25;42:1,19;
43:15,18;44:1,7,11,
17;45:22;46:3,6,8,
15,20
**Honor's (1)**
23:4
**hope (1)**
46:13
**hopefully (5)**
25:24;28:12;
30:15;31:22,23
**HORN (1)**
9:25
**hundred (1)**
19:14

**I**

**Ideally (1)**
25:21
**identified (2)**
17:12;37:9
**Illinois (1)**
12:3
**implement (1)**
44:21
**important (6)**
32:5;33:14,21;
34:2;36:14;37:18
**in-between (2)**
38:21;39:22
**Inc (2)**
8:20;12:3
**include (1)**
41:13
**included (2)**
38:18;43:19
**including (2)**
12:15;36:7
**inclusion (1)**
37:11
**inconsistent (1)**
35:19
**indenture (4)**
26:15;28:4;33:2;

41:13
**indication (1)**
35:11
**information (4)**
17:13;18:5;20:18;
36:17
**informed (1)**
36:17
**instance (1)**
19:12
**instruction (1)**
26:15
**instruments (1)**
31:17
**Insurance (2)**
9:3;24:16
**intangibles (1)**
14:25
**integral (1)**
29:22
**integrated (2)**
31:13;41:4
**intend (1)**
24:18
**intending (1)**
42:17
**intent (3)**
28:1;42:20,22
**interest (11)**
12:3,20,23;26:21;
27:1,15,15;28:20,21,
24;40:10
**interfere (1)**
34:23
**interject (1)**
30:6
**International (1)**
9:13
**interpreted (1)**
18:12
**into (13)**
11:18;14:6;15:17,
23;16:3,9,15,17,19;
24:18;30:9;36:16;
39:3
**invalidation (1)**
35:13
**investigation (1)**
45:7
**involving (1)**
14:13
**ISAAC (1)**
5:8
**ISD (1)**
8:3
**issue (4)**
20:6;24:17;27:5;
34:24
**issues (2)**
27:8;39:2
**item (3)**
11:25;13:19;25:20
**items (2)**

11:21;34:17

**J**

**JAMES (1)**
6:8
**JEFFREY (1)**
9:8
**Jevic (1)**
34:24
**JOHN (1)**
5:19
**JONATHAN (3)**
10:13;15:19;16:5,
11
**JOSEPH (1)**
6:17
**JOSHUA (1)**
8:7
**judge (3)**
31:1;33:19;46:10
**judgment (1)**
36:1
**JUSTICE (1)**
4:12
**justification (1)**
44:15

**K**

**KARTAR (2)**
6:24;37:2
**keep (1)**
39:21
**KEVIN (1)**
9:16
**KHALSA (4)**
6:24;37:1,2,7
**kind (2)**
38:21;44:9
**kinds (1)**
36:2
**KNEE (5)**
10:13;15:19;16:5,
11,17
**knew (1)**
20:22
**KRAMER (3)**
6:11;28:7;31:22
**Kris (8)**
25:1;30:4,22,22;
34:3;38:15;39:24;
40:8
**KRISTOPHER (1)**
5:9
**KYLE (1)**
4:9

**L**

**lack (1)**
46:17
**Lake (1)**

8:23
**land (1)**
46:18
**landlord (3)**
14:15;24:11;29:7
**Lane (1)**
5:4
**language (16)**
16:23,24;19:1,6;
21:13,14;24:13,20,
21;28:17,18;29:6;
40:22;42:9,16;43:16
**large (1)**
34:11
**last (2)**
11:11;18:6
**lastly (1)**
14:21
**LASTOWSKI (1)**
8:16
**late (2)**
18:6;43:5
**launch (1)**
11:18
**laundry (1)**
36:2
**LAVAN (2)**
5:2;25:2
**law (4)**
12:12,16;15:1;
18:22
**lease (3)**
14:18;24:18,21
**least (2)**
24:3;27:22
**led (1)**
20:21
**left (3)**
14:12;30:11;33:17
**left-pocket-right-pocket (1)**
27:2
**LEGAL (2)**
8:19;38:23
**lender (2)**
12:14,15
**lenders (1)**
27:17
**lenders' (4)**
14:19,24;15:6,7
**less (1)**
27:7
**LEVIN (3)**
6:11;28:7;31:22
**Lewisville (1)**
8:3
**liabilities (5)**
35:23;36:7,7,7;43:3,
21
**liability (2)**
20:10;35:24
**liable (1)**
45:5
**lien (16)**

13:22;14:19;
23:14;26:8,16,22;
27:1,11,17,18;28:2,
16,19,24;32:3,4
**liens (9)**
19:3,3,15;20:10;
21:19;22:5,6;40:24;
41:24
**Life (1)**
9:3
**liked (1)**
18:11
**likely (3)**
36:18,20;43:4
**limit (1)**
45:9
**limits (1)**
36:5
**line (2)**
15:11;19:23
**LINEBARGER (1)**
10:2
**link (1)**
33:6
**list (2)**
36:2;37:8
**Listen (1)**
23:13
**listening (1)**
46:10
**little (8)**
11:5;34:1;39:8;
42:24,25;44:22;
45:8;46:1
**live (3)**
15:24,25;30:21
**LLC (2)**
7:13;9:12
**LLP (12)**
4:2;5:2,13;6:2,11;
7:2,12;8:10;9:2,11,
19;10:2
**loan (1)**
41:8
**Local (1)**
10:3
**location (1)**
24:19
**lock (4)**
39:3,4,4,4
**locked (1)**
30:17
**long (3)**
11:10;36:2;46:18
**Look (7)**
23:1;42:9,20,25;
43:14,16;45:3
**looking (1)**
45:15
**looks (1)**
20:24
**lost (2)**
11:21;43:15

**lot (2)**
    13:20;31:14
**luck (1)**
    46:16

## M

**MA (1)**
    9:14
**Madison (1)**
    6:4
**Maiden (1)**
    5:4
**make-whole (6)**
    28:5,15,16,20,23,
    25
**making (1)**
    41:8
**managed (1)**
    11:6
**Management (3)**
    5:14;6:3,12
**MANNAL (7)**
    6:16;31:10,21,21;
    32:23;41:19,25
**many (1)**
    23:3
**Marcus (1)**
    8:21
**Market (2)**
    7:14;9:4
**MARTIN (1)**
    7:2
**MARVIN (1)**
    7:2
**material (1)**
    14:21
**materials (1)**
    27:6
**may (6)**
    19:22;28:7;30:22;
    31:11,19;38:1
**maybe (1)**
    26:5
**McClatchy (1)**
    11:19
**mean (4)**
    27:21;32:8;40:17;
    43:8
**meaning (1)**
    22:1
**means (3)**
    22:17;30:2;36:2
**meant (1)**
    35:20
**mechanically (1)**
    27:9
**mechanics (1)**
    26:7
**mediator (1)**
    33:20
**meets (1)**
    37:15

**Mellon (1)**
    7:4
**mentioned (1)**
    12:8;23:25
**merely (2)**
    17:6;24:20
**message (1)**
    46:12
**MICHAEL (1)**
    8:16
**Microsoft (8)**
    17:3,5,8,8,11,18;
    18:4;23:25
**Microsoft's (1)**
    17:16
**might (6)**
    23:3;30:5;33:4;
    34:9,10;36:23
**million (7)**
    13:23,24;14:10;
    15:15;26:25;27:4,7
**mind (3)**
    13:9;35:10;38:6
**modest (1)**
    11:22
**modified (1)**
    40:14
**modify (1)**
    40:15
**modifying (1)**
    40:15
**money (3)**
    19:17;21:17;23:14
**money's (1)**
    21:7
**month (1)**
    37:22
**moot (1)**
    36:20
**more (6)**
    15:15;19:14;
    25:13;32:18;41:6;
    46:15
**Morning (1)**
    24:6
**MORRIS (1)**
    8:10
**mortgage (1)**
    41:10
**most (5)**
    14:13;16:24,24;
    21:1;37:20
**motion (8)**
    11:22,23,23;12:1,
    2,10;25:21;36:19
**move (2)**
    38:25;40:9
**moved (3)**
    18:24;19:13;20:2
**moving (4)**
    20:1,17;31:14;
    34:17
**much (6)**

    14:5;25:13;32:8;
    45:4;46:6,19
**multiple (1)**
    31:8
**mute (1)**
    37:2
**myself (1)**
    45:20

## N

**NA (1)**
    7:4
**NAFTALIS (1)**
    6:11
**namely (1)**
    14:15
**nature (4)**
    16:25;24:14;
    29:25;31:12
**near (1)**
    27:8
**necessary (1)**
    44:21
**need (5)**
    18:1;30:18;36:20;
    42:8,16
**needed (1)**
    38:24
**needing (1)**
    27:8
**needs (1)**
    43:1
**negotiated (1)**
    24:22
**New (16)**
    4:6,16;5:5,16;6:6,
    14;7:3,7;27:17;
    29:17;30:1;32:2,14,
    15;40:24;41:24
**News (1)**
    24:6
**newspaper (2)**
    33:4,5
**nice (1)**
    42:20
**NJ (1)**
    8:5
**nobody (1)**
    42:15
**none (2)**
    32:16;34:17
**norm (1)**
    34:1
**normally (1)**
    45:19
**North (2)**
    9:4;10:4
**not- (1)**
    14:22
**notably (1)**
    14:13
**noted (1)**

    25:5
**notes (3)**
    26:16,22;27:11
**notes' (1)**
    26:8
**notice (2)**
    24:4,4
**number (14)**
    11:23;12:1,9;
    13:19;16:12,13;17:2,
    3;23:23,24;24:5;
    25:20;35:5,23
**numbers (2)**
    16:11;17:15
**numer (1)**
    21:5
**NW (1)**
    6:21
**NY (8)**
    4:6,16;5:5,16;6:6,
    14;7:7;8:23

## O

**objected (1)**
    24:7
**objection (12)**
    12:8;16:1;17:5,6;
    18:15,21;23:23;24:3,
    5,9;25:4;37:10
**objections (10)**
    12:1,13:21;15:23,
    24;16:14,22,23;
    17:21;23:19;24:24
**objectors (1)**
    24:24
**obligation (4)**
    26:24;27:17;28:1;
    34:9
**obligations (14)**
    26:8;27:10;28:19,
    23;32:13;33:10,23,
    24;34:10,12,13;36:3;
    37:5;43:20
**obligor (1)**
    33:8
**obviously (13)**
    13:7;17:24;19:21;
    23:5;25:3;30:8;
    33:23;36:13;37:20;
    40:9;41:8;43:18,20
**occasionally (1)**
    44:25
**occur (2)**
    24:20;37:21
**odd (1)**
    41:16
**off (4)**
    12:6;15:5;37:2;
    44:13
**offering (1)**
    16:3
**Office (2)**

    4:13;42:24
**officers (2)**
    14:14;25:16
**Official (2)**
    5:3;25:2
**often (1)**
    35:16
**old (1)**
    14:20
**omnibus (1)**
    25:23
**once (1)**
    23:3
**One (15)**
    4:4;13:25;15:25,
    25;18:19,20;20:4,25;
    23:2;24:3;25:5,19;
    33:1;37:8,9
**ones (1)**
    16:3
**ongoing (1)**
    43:21
**only (12)**
    11:8,14;13:16;
    15:17,24;20:9;23:9;
    34:6;38:11;40:2,5;
    44:19
**open (1)**
    23:13
**operating (1)**
    21:4
**operation (1)**
    45:6
**opinion (1)**
    30:3
**Oracle (5)**
    8:20;23:19;24:3,4,
    5
**order (19)**
    16:24;17:20;18:2;
    24:1;25:12;27:11,20,
    23;29:3,21;31:12;
    35:4;37:13;38:20;
    40:23;41:6,23;42:4;
    44:10
**ordering (2)**
    41:17,23
**orders (1)**
    35:16
**ordinarily (2)**
    32:16;34:10
**ordinary (2)**
    23:6;34:23
**ORTIZ (1)**
    4:9
**others (2)**
    32:4;44:16
**otherwise (1)**
    42:6
**ourselves (1)**
    39:5
**out (10)**
    11:8;20:7;28:13;

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 4, 2020

29:8,18;30:18;
31:23;34:1;41:20;
45:23
**outset (1)**
31:24
**outside (1)**
39:9
**outstanding (3)**
17:7,12;27:21
**over (3)**
11:24;39:2;44:4
**overrules (1)**
17:20
**owe (1)**
29:5
**owed (1)**
26:20
**own (2)**
12:24;36:19
**ownership (1)**
13:2
**OWS (2)**
7:13;23:20

**P**

**PA (1)**
7:16
**packaged (1)**
39:3
**paid (6)**
15:3;17:12,22;
27:16;28:8;33:23
**paragraph (9)**
21:23;22:17;24:1;
41:22;42:7,14;43:2,
13;44:9
**parcel (1)**
20:4
**Park (1)**
8:5
**part (17)**
15:21;20:4,5,25;
24:8,15;25:7;26:14,
24;28:20,25;29:22;
30:12,17;32:11;
33:14;45:16
**participants (1)**
30:25
**particular (3)**
31:18;34:9;36:2
**particularly (2)**
15:16;19:10
**parties (10)**
25:6;26:15;29:19,
24;32:2;33:19,21;
39:21;42:3,4
**party (4)**
13:11;24:22;32:7;
37:10
**passed (1)**
15:4
**past (1)**

15:3
**pathway (1)**
33:15
**PAUL (4)**
5:13;28:7,11;41:1
**pay (3)**
20:13;33:11;42:21
**paying (5)**
15:15;18:13;
26:21;33:16,24
**payment (2)**
28:4;34:9
**payments (1)**
18:5
**PBGC (4)**
36:18,25;37:1,2
**PC (2)**
8:2,19
**peace (1)**
34:2
**peaceful (1)**
14:4
**pen (1)**
45:23
**pending (1)**
22:10
**Penn (1)**
4:4
**PENSION (3)**
6:20;36:16;37:5
**people (5)**
30:1;31:17;35:15;
41:5;42:7
**percent (2)**
15:11;20:12
**perfectly (1)**
37:25
**performance (1)**
33:1
**perhaps (3)**
18:12;27:5;42:12
**period (1)**
42:15
**periods (1)**
42:13
**permission (8)**
11:24;12:14;
17:25;19:18;21:17;
22:3,9;23:10
**permit (2)**
22:16;35:13
**permitted (1)**
36:8
**personal (1)**
21:1
**perspective (8)**
30:12;32:22;34:5;
38:24;39:7,22;40:11,
12
**pet (1)**
19:9
**petition (1)**
17:7

**Philadelphia (1)**
7:16
**phone (6)**
17:17;28:13;
31:23;36:25;37:10;
41:19
**pieces (2)**
14:8;31:14
**PITTA (1)**
7:9
**Place (2)**
9:13;30:17
**plan (27)**
13:6,13,15;19:19;
21:7;22:11;25:24;
30:14,19;34:18,20;
36:18;38:3,5,7,9,11,
18,19;39:3,16,16,17,
18;44:10,18;45:4
**plans (1)**
36:16
**platform (1)**
17:9
**Plaza (1)**
4:4
**please (1)**
34:7
**plus (1)**
13:23
**PM (1)**
46:21
**point (6)**
12:23;23:9;29:3,7;
35:6,12
**portion (2)**
15:12;20:11
**portions (1)**
40:13
**possession (2)**
20:16;21:25
**possible (1)**
42:23
**post- (1)**
17:6
**post-petition (2)**
15:4;34:12
**potentially (2)**
19:14;43:22
**power (3)**
11:7;14:5;46:17
**pre- (1)**
40:4
**precedent (1)**
29:20
**pre-closing (1)**
42:18
**preexisting (1)**
15:8
**prepared (2)**
13:6;25:5
**pre-petition (1)**
17:24
**PRESENT (1)**

10:11
**presented (2)**
35:7;38:4
**preserve (1)**
38:25
**pretty (2)**
22:6;37:9
**price (2)**
13:22;31:25
**primarily (1)**
20:18
**primary (2)**
20:2;34:24
**principal (5)**
26:20;27:16;
28:20,24,24
**print (1)**
11:7
**prior (3)**
15:3;19:4;38:25
**priorities (2)**
34:8,23
**priority (3)**
18:22;19:4;34:12
**pro (1)**
20:10
**probably (3)**
20:5;35:6;41:6
**problem (1)**
30:16
**problems (1)**
28:14
**proceeding (2)**
38:23
**proceedings (1)**
46:21
**proceeds (7)**
15:7,8;19:3;21:20;
22:7;26:24;33:10
**process (5)**
16:6;30:17;41:7;
44:12,25
**professional (2)**
22:9;38:22
**program (1)**
24:16
**proper (2)**
14:17;45:2
**properties (1)**
18:25
**property (7)**
20:4,9,20,24,25;
21:2;42:11
**propose (1)**
25:20
**proposed (3)**
14:12;37:13;41:22
**propriety (1)**
39:18
**prosecuted (1)**
17:21
**protection (1)**
21:18

**provide (2)**
21:18;33:6
**provided (2)**
21:23;39:14
**providing (1)**
33:25
**provision (10)**
21:22;28:4,16,16;
40:23;41:14,20;
42:1;44:9,18
**provisions (5)**
35:9,22,25;39:6,17
**Publishing (1)**
12:3
**punch- (1)**
15:10
**purchase (6)**
13:22;20:8;26:3;
29:14;30:11;31:24
**purchased (1)**
14:2
**purchaser (2)**
20:9;30:25
**purchasing (1)**
20:9
**purport (2)**
36:1,5
**purports (1)**
34:8
**purpose (1)**
34:19
**purposes (1)**
44:3
**Pursuant (3)**
20:14;24:21;42:5
**pursue (5)**
12:15;18:15;38:7,
8;42:15
**pursuing (1)**
42:8
**pursuit (1)**
39:15
**purview (1)**
20:19
**put (4)**
23:13,14;30:14;
40:3
**putting (1)**
16:9

**Q**

**Quad (2)**
12:2,3
**qualified (1)**
15:18
**quickly (1)**
34:7
**QUINN (1)**
6:2
**quite (1)**
11:13

20-10418-mew    Doc 738    Filed 08/05/20    Entered 08/05/20 10:36:12    Main Document
THE MCCLATCHY COMPANY    Pg 56 of 58
Main Case No. 20-10418-mew

August 4, 2020

## R

**raise (1)**
34:24
**ran (1)**
16:6
**range (1)**
14:9
**rata (1)**
20:11
**Rather (1)**
40:14
**reach (1)**
46:11
**reached (1)**
14:3
**read (3)**
11:8;34:6;42:23
**real (5)**
14:8;18:23;20:4,
24,25
**really (3)**
14:7;19:10;40:5
**reason (2)**
29:23;31:13
**reasonable (2)**
37:14,24
**reasonableness (1)**
38:8
**receive (1)**
14:17
**received (4)**
15:11;16:17,19;
19:1
**receiving (1)**
30:1
**recently (1)**
20:21
**recognition (1)**
44:11
**record (5)**
11:20;13:22;
15:21;35:11;38:1
**red-line (1)**
46:1
**reference (1)**
17:15
**references (1)**
26:21
**refers (1)**
26:4
**refund (4)**
14:22,25;15:8;
25:14
**registered (1)**
25:8
**relation (1)**
34:10
**relationship (1)**
17:7
**relief (7)**
11:25;12:15;13:8;

15:3;25:25;37:19,23
**remain (1)**
17:2
**remainder (1)**
20:13
**remiss (1)**
33:19
**remove (1)**
20:21
**rent (1)**
22:10
**reorganization (1)**
19:19
**repeat (1)**
41:20
**replaced (1)**
27:16
**required (1)**
29:20
**reservation (5)**
16:25;24:2,14,19;
29:6
**resist (1)**
19:8
**resolution (3)**
23:15,20;46:11
**resolve (2)**
25:17;27:5
**resolved (5)**
16:23;23:22,24;
24:5,13
**resolving (1)**
17:1
**respect (12)**
14:1;15:19;16:22;
17:5;24:19;25:16,
25;27:10;33:25;
37:19;39:5,21
**response (1)**
40:4
**responsibility (2)**
18:14;20:13
**responsive (1)**
18:11
**result (1)**
40:16
**retain (2)**
40:10;44:4
**retaining (1)**
20:12
**retire (1)**
27:1
**return (1)**
14:23
**returns (1)**
20:20
**reviewed (1)**
32:9
**revised (2)**
24:1,4
**revisions (1)**
28:3
**RIFKIND (2)**

5:13;28:12
**Rifle (1)**
8:4
**right (33)**
11:4,18,25;13:16;
14:17;18:19;21:12;
23:8,11;26:10,12,13;
27:22;28:3;29:13;
31:6;32:15,24;34:9,
22;35:3;40:20;
41:16;42:2,23;43:8;
44:6;45:11,17,17,18;
46:9,19
**rights (7)**
15:6;16:25;24:2,
14,20;28:5;29:6
**Road (1)**
8:4
**roaring (1)**
11:6
**roll (1)**
20:23
**roof (1)**
46:18
**ROSENBERG (25)**
5:18;28:11,11;
29:12,12;30:22;
31:7;33:13;36:13,
23;41:1,1,10,15;
42:19,19;43:5,12,14,
18;44:17,17;45:9,13,
15
**Ross (1)**
9:21
**round (1)**
15:17
**round-trip (1)**
27:2
**round-tripping (1)**
28:21
**Rule (2)**
37:15;39:8
**ruling (4)**
23:4;35:20;40:25;
45:16

## S

**Sacramento (2)**
24:12,19
**sale (41)**
11:23,25;13:20;
14:1,12;16:6,24;
18:2;20:3,5,5;21:1,
20;24:1;25:3,8,12;
27:11,20,23;29:3,21;
30:8,17;33:1,9;35:4,
6,16;37:4;38:3,20;
40:10,24;41:22;
44:10,13,21,21,25;
46:5
**same (4)**
19:4,16;20:6;41:3

**SAMPSON (1)**
10:2
**SASSON (1)**
5:8
**satisfied (2)**
18:12;27:19
**saw (2)**
23:20;28:3
**saying (4)**
32:19;35:10;
41:12;43:13
**scheduling (1)**
26:1
**scope (2)**
36:3,6
**screen (1)**
43:15
**Seagis (2)**
23:20,23
**SEAN (4)**
10:12;15:19;16:7,
12
**second (1)**
33:3
**Section (8)**
20:14;21:13,15;
22:2;35:9;36:8;
44:23;45:12
**secured (1)**
18:23
**security (1)**
14:16
**seek (1)**
32:25
**seeking (3)**
12:5;22:4,4
**seem (1)**
32:12
**seems (5)**
29:10;32:13,14;
41:16;42:5
**SEGAL (2)**
4:2,2
**segregate (5)**
19:7;20:15;21:24;
22:14,18
**segregated (1)**
21:9
**self-evident (1)**
38:1
**sell (1)**
22:5
**send (4)**
17:15;45:19,25;
46:2
**sent (1)**
25:12
**separate (1)**
21:1
**separated (1)**
19:6
**September (1)**
20:11

**services (1)**
17:8
**set (6)**
22:24;30:20;
34:18;38:11;43:24;
44:1
**sets (1)**
29:18
**settlement (12)**
14:4;15:10;25:11;
30:24;31:2;33:14;
34:14;35:4;37:14,
20;39:1,9
**seventy-seven-and-a-half (1)**
15:11
**shall (3)**
20:15;21:23;22:18
**sheet (1)**
35:4
**SHIFER (1)**
6:17
**side (1)**
38:24
**signing (1)**
27:17
**SIMARD (1)**
9:16
**Simplifi (1)**
9:20
**sit (2)**
19:19;22:10
**sitting (1)**
19:19
**size (1)**
19:8
**Skadden (1)**
11:19
**skip (1)**
11:24
**slices (1)**
31:15
**small (1)**
15:12
**smaller (1)**
20:21
**so- (1)**
28:17
**solely (1)**
20:19
**solvency (1)**
33:15
**solvent (1)**
33:21
**something's (1)**
43:10
**sometime (1)**
43:5
**Sometimes (1)**
33:15
**somewhat (5)**
31:10,12;41:6;
44:18,24
**somewhere (1)**

27:23

**sooner (1)**
25:18

**sorry (6)**
18:23;25:20;
26:18;31:1;33:16;
37:1

**sort (2)**
32:24;41:17

**sorts (1)**
28:14

**sought (1)**
44:2

**sounds (1)**
11:13

**space (1)**
24:12

**speak (8)**
19:21;31:11;34:3;
36:13,23;37:17

**specific (2)**
32:25;41:20

**specify (1)**
33:10

**SPENCER (1)**
9:19

**spend (2)**
21:17;22:9

**splitting (1)**
25:14

**spoke (1)**
19:2

**SPV (1)**
7:13

**stage (1)**
21:7

**standards (1)**
37:15

**standing (2)**
11:22;25:21

**state (1)**
12:16

**stated (1)**
38:7

**statement (1)**
36:15

**STATES (3)**
4:12,13;20:2

**status (1)**
23:21

**stay (1)**
15:13

**Stemmons (1)**
10:4

**STEWART (1)**
9:11

**still (4)**
13:3;14:18;17:22,
24

**stipulation (2)**
25:11;41:18

**storm (2)**
11:6;46:16

**Street (4)**
4:14;6:21;7:14;9:4

**strictly (1)**
20:24

**STROOCK (7)**
5:2,2;25:2,2;30:5;
38:15;40:8

**structure (2)**
31:20;32:14

**structured (2)**
29:14,15

**struggle (1)**
38:17

**struggling (1)**
39:8

**stuck (1)**
21:19

**stuff (1)**
21:18

**subject (10)**
14:19;20:10;
23:15;30:10,10;
39:17;40:24;41:23;
45:11;46:4

**submit (1)**
29:8

**submitted (2)**
15:18,18

**subordinated (1)**
32:3

**substantially (2)**
20:3,17

**Success (1)**
8:23

**successful (2)**
14:17;33:18

**successor (2)**
35:24;36:7

**sufficient (2)**
15:16;25:23

**sufficiently (1)**
12:20

**suggest (1)**
38:10

**Suite (7)**
4:5,15;7:15;8:13,
22;9:22;10:5

**SULLIVAN (1)**
6:2

**support (2)**
25:9;39:16

**supportive (1)**
42:1

**supports (2)**
25:3,7

**suppose (1)**
32:11

**supposed (1)**
40:5

**sure (8)**
17:13;25:8;26:7;
30:2;40:21;41:8;
45:24;46:12

**surprise (1)**
35:8

**T**

**tack-on (1)**
44:22

**talk (1)**
32:14

**talked (2)**
23:25;25:14

**talking (1)**
18:24

**talks (2)**
20:1;21:21

**tangible (1)**
14:18

**Tax (16)**
10:3;14:22,23,24;
15:2,6,8,8;17:4;
18:22;19:25;20:10,
20;25:14;42:10,11

**taxes (5)**
15:3;18:23;20:12;
21:2;42:21

**Taxing (5)**
18:20;19:1,21;
42:9,10

**TECCE (1)**
6:8

**TELEPHONICALLY (1)**
10:11

**term (1)**
35:4

**termination (3)**
14:18;36:18,19

**terms (15)**
20:8;25:13;32:15;
33:9;38:3,8,9,10,18,
19,21;39:16,17,18;
45:11

**Texas (9)**
10:3;17:4;18:20,
22;19:1,21,25;20:25;
42:10

**Thanks (2)**
23:17;46:17

**theory (1)**
15:1

**thirteen (1)**
14:10

**THOMAS (1)**
7:9

**though (1)**
41:12

**thought (3)**
12:19;31:1;32:5

**thoughtfulness (1)**
33:22

**three (1)**
11:21

**three-item (1)**
11:20

**tied (1)**
11:25

**ties (1)**
25:19

**times (3)**
19:14;23:4;35:23

**tinker (1)**
42:16

**today (9)**
13:7;17:14;30:8,
17,19;37:16,20;
46:14,15

**TOGUT (2)**
4:2,8

**took (2)**
20:6;44:24

**touched (1)**
32:23

**track (2)**
21:8,10

**transaction (9)**
19:2,5;28:10;
29:22;31:14,20;
33:1;35:13;41:4

**transactions (2)**
35:6;45:8

**transfer (2)**
40:13;41:24

**transferred (2)**
30:12;42:12

**transparency (3)**
32:22;33:6,22

**Travelers (4)**
24:11,14,16;29:6

**treat (1)**
19:15

**tree (1)**
46:18

**truly (1)**
15:24

**Trust (4)**
7:4;30:13;34:20;
40:11

**Trustee (7)**
4:13;21:23;26:16;
28:4;31:5;33:3;
41:13

**trustee's (1)**
21:24

**try (1)**
40:14

**trying (3)**
19:15;30:20;40:2

**twelve (1)**
14:9

**twenty-five (1)**
20:12

**Two (7)**
9:13;15:17,24;
16:22,23;17:2;24:11

**TX (2)**
9:23;10:6

**typically (1)**

19:8

**U**

**UCC (1)**
41:10

**ultimate (1)**
31:19

**Ultimately (9)**
14:3;15:17;25:22;
28:19;29:15,25;
31:14;34:19;40:11

**under (14)**
12:12,16;14:12;
15:10;21:17;27:11;
28:19;29:23;32:15;
35:17;37:4,15,24;
38:9

**understood (3)**
13:4;40:19;45:22

**undertaken (1)**
44:12

**undo (1)**
45:15

**unencumbered (3)**
14:2,6,9

**unfortunately (1)**
30:21

**UNISON (3)**
11:3;46:8,20

**UNITED (2)**
4:12,13

**unless (5)**
12:17;15:22;
22:16;43:8,19

**unsecured (5)**
15:12;25:15,17;
30:13;34:20

**up (13)**
11:25;13:5,12,15;
15:16;20:6;22:24;
27:18;29:25;38:11;
40:21;43:25;44:1

**upon (1)**
14:22

**URQUHART (1)**
6:2

**use (7)**
19:18;22:3,4,15,
16,18;23:10

**used (2)**
27:1;33:11

**using (2)**
21:15,21

**usually (2)**
33:11;44:9

**V**

**value (3)**
14:9,21;31:18

**VAN (7)**
9:25;11:12,18;

THE MCCLATCHY COMPANY
Main Case No. 20-10418-mew

August 4, 2020

31:24;32:21;34:5;
36:12
**Varick (1)**
4:14
**variety (1)**
14:2
**various (3)**
35:9,22;43:23
**verified (1)**
17:11
**view (8)**
12:23;13:5;14:21,
24;15:7;27:7,18;
33:24
**viewed (1)**
44:18
**violation (3)**
35:17,19,21
**VULPIO (1)**
7:18

**W**

**wait (1)**
33:3
**waived (2)**
27:11;28:6
**walk (1)**
14:4
**wants (1)**
37:17
**Washington (1)**
6:22
**way (11)**
18:14;19:16;21:8,
10;29:13,15;34:19,
24;36:17;42:13;43:9
**WEBER (1)**
5:19
**week (1)**
18:7
**WEISS (4)**
5:13;28:7,12;41:2
**WELLER (5)**
10:8;19:24,24;
22:12;23:18
**Weller's (2)**
21:17;22:5
**weren't (1)**
35:15
**West (1)**
9:22
**Westchester (2)**
11:5;28:13
**WHARTON (2)**
5:13;28:12
**What's (4)**
18:19;23:21;26:8;
44:10
**Whereupon (1)**
46:21
**WHITE (1)**
7:12

**whole (2)**
24:16;35:12
**who's (2)**
41:9,11
**WILLIAM (1)**
5:20
**WILLIAMS (1)**
7:12
**willing (1)**
39:21
**Wilmington (2)**
8:14;9:6
**wish (2)**
23:11;24:24
**WISLER (1)**
9:8
**withdrawing (1)**
24:8
**withdrawn (2)**
23:21,24
**within (2)**
22:2;36:3
**without (3)**
11:5,17;14:5
**Woodland (1)**
8:5
**Word (2)**
45:19,25
**worded (2)**
38:9;42:14
**work (1)**
39:24
**worked (1)**
25:6
**working (1)**
11:14
**wrap (3)**
13:5,12,15

**Y**

**year (2)**
20:22,23
**years (1)**
15:3
**yesterday (4)**
13:21,25;18:6;
25:14
**York (8)**
4:6,16;5:5,16;6:6,
14;7:3,7

**0**

**02110 (1)**
9:14
**07424 (1)**
8:5

**1**

**1 (3)**
11:24;20:11;25:20

**100 (2)**
10:5;27:7
**10010 (1)**
6:6
**10014 (1)**
4:16
**10019 (1)**
5:16
**10036 (1)**
6:14
**10038 (1)**
5:5
**1006 (1)**
4:15
**10119 (1)**
4:6
**10271 (1)**
7:7
**11 (2)**
42:7,14
**11042 (1)**
8:23
**1177 (1)**
6:13
**120 (1)**
7:5
**1200 (1)**
6:21
**1201 (1)**
9:4
**1285 (1)**
5:15
**13 (1)**
43:13
**1600 (1)**
8:13
**180 (1)**
5:4
**1800 (1)**
7:15
**1850 (1)**
7:14
**19103 (1)**
7:16
**1979 (1)**
8:21
**19801 (2)**
8:14;9:6

**2**

**2 (4)**
11:23;12:1;21:23;
22:17
**20005 (1)**
6:22
**201 (1)**
4:14
**2020 (1)**
14:23
**20th (1)**
9:5
**210E (1)**

**8:22**
**2200 (1)**
9:21
**222 (1)**
8:12
**22nd (1)**
6:5
**263 (1)**
13:23
**26th (2)**
25:21,23
**2777 (1)**
10:4

**3**

**3 (2)**
11:23;13:19
**3:53 (1)**
46:21
**30- (1)**
18:25
**32nd (1)**
7:6
**3335 (1)**
4:5
**34 (1)**
44:9
**363c (4)**
21:13,15,17;22:2
**363c2 (1)**
21:21
**363c4 (3)**
20:14;21:22;22:14
**363f (5)**
21:19;36:3,5,8;
37:4
**363m (2)**
44:23;45:12
**363n (7)**
35:9,12,17,18,19,
20,21
**365 (1)**
8:4

**4**

**47 (1)**
24:1
**4800 (1)**
9:22

**5**

**50 (1)**
13:24
**50,000 (1)**
18:25
**51 (1)**
6:4
**540 (1)**
23:24
**552 (1)**

**15:5**
**557 (1)**
17:2
**589 (1)**
12:9

**6**

**694 (1)**
16:12
**695 (1)**
16:13

**7**

**7 (1)**
21:8
**710 (1)**
17:3
**714 (1)**
24:5
**726 (1)**
23:24
**732 (1)**
11:21
**75201 (1)**
9:23
**75207 (1)**
10:6

**9**

**9 (1)**
41:22
**9019 (3)**
37:15,24;39:9