**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

*In re*                                                    :    **Chapter 11**

                                                       :

**JCK LEGACY COMPANY,** *et al.*,                          :    **Case No. 20-10418 (MEW)**

                                                       :

Debtors.[1]                                                :    **(Jointly Administered)**

                                                       :

---------------------------------------------------------- x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DISCLOSURE STATEMENT AND CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF DISTRIBUTION OF JCK LEGACY COMPANY AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

WHEREAS JCK Legacy Company (f/k/a The McClatchy Company) and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), have, among other things:

(a)    filed, on August 21, 2020, the solicitation versions of their (i) joint chapter 11 plan of distribution [Docket No. 780] (as amended from time to time and including all exhibits thereto, the "**Plan**"), and (ii) disclosure statement with respect thereto (the "**Disclosure Statement**") [Docket No. 781];[2]

(b)    caused (i) solicitation packages to be distributed to holders of Claims entitled to vote on the Plan on August 21, 2020, (ii) the Plan and Disclosure Statement to be served on the Master Service List on August 21, 2020, as evidenced by the Certificate of Service of Jennifer Westwood filed on August 25, 2020 [Docket No. 793], and (iii) the *Notice of (I) Combined Hearing to Consider Approval of the Disclosure Statement and Confirmation of the Plan Confirmation and (II) Objection Deadlines Relating Thereto* (the "**Combined Hearing Notice**") to be served on all parties in interest, as evidenced by the Certificate of Service of Jennifer Westwood filed on August 27, 2020 [Docket No. 795];

---

[1]    The last four digits of Debtor JCK Legacy Company's tax identification number are 0478. Due to the large number of debtor entities in these jointly administered chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/McClatchy. The location of the Debtors' service address for purposes of these chapter 11 cases is: 2100 Q Street, Sacramento, California 95816.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as **Exhibit 1** or the Disclosure Statement, as applicable.

(c)     filed, on September 16, 2020, a voting report from Andres. A. Estrada of Kurtzman Carson Consultants LLC [Docket No. 849] (the "**Voting Report**");

(d)     filed, on September 9, 2020, a plan supplement, which included the (a) Administrative Claim Request Form, (b) GUC Recovery Trust Agreement, and (c) Plan Administration Trust Agreement [Docket No. 827] (as each document may be amended, supplemented or otherwise modified from time to time, the "**Plan Supplement**");

(e)     filed, on September 9, 2020, a declaration from Sean M. Harding in support of Confirmation [Docket No. 828] (the "**Confirmation Declaration**");

(f)     filed, on September 21, 2020, a declaration from Sean M. Harding in support of the D&O Settlement [Docket No. 865] (together with the Confirmation Declaration, the "**Confirmation Declarations**"); and

(g)     filed on September 21, 2020, an amended version of the Plan and a revised proposed order [Docket No. 867] confirming the Debtors' Plan (the "**Confirmation Order**");

This Court having:

(h)     entered an order approving the Sale Transaction and the Committee Settlement [Docket No. 744] (the "**Sale Order**");

(i)     entered an order approving, among other things, the notice procedures and timeline, including the Combined Hearing Notice [Docket No. 782] (the "**Combined Hearing Order**");

(j)     reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Declarations, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation;

(k)     held the Confirmation Hearing on September 23, 2020;

(l)     heard the statements and arguments made by counsel in respect of Confirmation; and

(m)     considered all testimony, documents, filings, and other evidence admitted at Confirmation.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation has been due, adequate, and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing

establish good and sufficient cause for the relief granted herein; the Court hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## DEEMED MODIFICATIONS TO THE PROPOSED PLAN

### I.    Discharge Provisions.

1.    Earlier versions of the Plan contemplated a discharge of the Debtors. The releases that the Releasing Parties have provided consensually pursuant to section 10.4 of the Plan are enforceable. However, because the Debtors are liquidating, they will not be entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any other Holders of Claims or Interests. The Debtors have made an effort to remove both the discharge provisions from the Plan and any reference to language concerning the "full and final satisfaction, settlement, and release" of Claims that may have the effect of a discharge. Accordingly, out of an abundance of caution and for the sake of clarity:

(a)    Any remaining provisions of the Plan that state that the proposed payments are made in full and final satisfaction, settlement, and release and/or discharge of the underlying obligations shall not be applicable, and such underlying obligations shall be released only to the extent they have been released consensually by Releasing Parties pursuant to section 10.4 of the Plan and this Confirmation Order.

(b)    Nothing in the modifications described in subparagraph (a) above is intended to foreclose an argument that as a matter of non-bankruptcy law the payment, in full, of a claim or expense obligation constitutes a "satisfaction" of that claim or expense obligation.

(c)    In addition, and for the avoidance of doubt, notwithstanding the technical issue as to whether certain claims are fully settled, released, satisfied or discharged, all assets of the Debtors shall be applied to the payment of claims and expenses only in the manner and in the order set forth in the Plan, and creditors shall be enjoined from interfering with the distributions and payments contemplated by the Plan.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.**    **Findings and Conclusions.**

2.    All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(B)(2) and 1334).**

3.    The Court has jurisdiction over the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has the power to enter a Final Order under the U.S. Constitution determining that the Plan and the Plan Documents (as defined below) comply with the applicable provisions of the Bankruptcy Code and applicable law and should be confirmed and approved.  Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

**C.**    **Judicial Notice.**

4.    The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court of the Southern District of New York (the "**Clerk of the Court**") and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

4

D.      **Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

5.      The Plan, the Disclosure Statement, the Combined Hearing Order, the Ballots, the Combined Hearing Notice, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "**Solicitation Materials**") were transmitted and served in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), any other applicable rules, laws, and regulations.  Such transmittal and service were due, timely, adequate and sufficient based upon the circumstances of the Chapter 11 Cases, all parties in interest had the opportunity to appear and be heard at the Confirmation Hearing, and no other or further notice is necessary or shall be required.

E.      **Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

6.      Based on the record before the Court in the Chapter 11 Cases, all Persons who solicited votes on the Plan solicited such votes in good faith, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

F.      **Adequacy of Disclosure Statement.**

7.      The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy rules, laws, and regulations, and (ii) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the  Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is hereby approved in all respects.

G.    **Voting**.

8.    On September 16, 2020, the Debtors filed the Voting Report.  As evidenced thereby, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  As evidenced by the Voting Report, Class 3 (Second Lien Term Loan Claims) voted to accept the Plan.  Therefore, Class 3 has accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code.

H.    **Plan Supplement**.

9.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and no other or further notice is or shall be required.

I.    **Modifications to the Plan**.

10.    Pursuant to section 1127 of the Bankruptcy Code, all modifications to the Plan since the commencement of solicitation, including the modifications arising from  the agreement of the Debtors, the D&O Insurance carriers, and the Committee of the settlement and release of all estate claims against all current and former Ds&Os in exchange for a payment of $4,587,500 from the D&O Insurance carriers to the GUC Recovery Trust Escrow on or before the Effective Date, which amount shall subsequently be transferred to the GUC Recovery Trust on the Effective Date in accordance with Article 6.3 of the Plan, do not materially and adversely affect or change the treatment of any Claims or Interests.

11.    The Debtors disclosed in detail the post-solicitation modifications to the Plan to parties in interest and no party that previously voted on the Plan raised an objection or concern with respect to any such modifications.

12.     Pursuant to Bankruptcy Rule 3019, the Plan modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

13.     The Plan modifications are consistent with the Bankruptcy Code. The disclosure of the Plan modifications pursuant to the *Notice of Filing of Amended Plan of Distribution and Proposed Confirmation Order* [Docket No. 867] and on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

**J.      Burden of Proof.**

14.     The Debtors, as the proponents of the Plan, have met their burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

**K.      Bankruptcy Rule 3016.**

15.     The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**L.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

16.     The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

   (a)     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). As required by section 1123(a)(1), in addition to Administrative Claims, DIP Facility Claims, Deferred Amounts Claims, Professional Claims, Priority Tax Claims, and First Lien Notes Claims, which need not be classified, Article III of the Plan designates nine Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims

7

and Interests created under the Plan.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III of the Plan specifies that Classes 1 and 2 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article III of the Plan provides that Classes 3, 4, 5, 6, 7, 8 and 9 are Impaired under the Plan, and specifies the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides for the same treatment by the Debtors of each Claim or Interest in each respective Class except to the extent that a holder of a particular Claim or Interest has agreed to accept less favorable treatment.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  In compliance with section 1123(a)(5) of the Bankruptcy Code, Article VI of the Plan and the documents contained in the Plan Supplement provide adequate and proper means for implementation of the Plan.

(f)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  On the Effective Date, all Existing Parent Equity will be deemed automatically cancelled, released and extinguished.  One share of voting common stock or functional equivalent thereof of Wind-Down Debtor JCK Legacy Company will be issued on the Effective Date to the GUC Recovery Trust.

(g)    Designation of Managers and Officers (11 U.S.C. § 1123(a)(7)).  On the Effective Date, the Debtors will not have Ds&Os.  Debtors JCK Legacy Company and Herald Custom Publishing of Mexico, S. de R.L. de C.V. shall continue in existence after the Effective Date as the Wind-Down Debtors for the limited purposes specified in section 6.5 of the Plan.  The Plan is consistent with interests of creditors and equity security holders and with public policy with respect to manner of selection of Plan Administration Trustee, Wind-Down Officer, and GUC Recovery Trustee.  Accordingly, the Debtors have satisfied section 1129(a)(7) of the Bankruptcy Code.

(h)    Additional Plan Provisions (11 U.S.C. § 1123(b)).  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.  These provisions include, without limitation, the provisions governing (i) impairment and non-impairment of Classes of Claims and Interests (1123(b)(1)); (ii) the assumption and rejection of Executory Contracts and Unexpired Leases

(1123(b)(2)); (iii) the treatment of Claims and Interests (1123(b)(3)(A)); (iv) the retention of Claims (1123(b)(3)(B)); and (v) (1) distributions to Holders of Claims and Interests, (2) resolution of Disputed Claims and Interests, (3) allowance of certain Claims, (4) releases by the Debtors of certain parties, (5) releases by certain third parties, (6) exculpation of certain parties, (7) the injunction of certain Claims and causes of action in order to implement the release and exculpation provisions, and (8) the retention of this Court's jurisdiction (1123(b)(6)).

(i)    Non-Debtor Proposed Sales (11 U.S.C. § 1123(c)).  Section 1123(c) of the Bankruptcy Code governing non-Debtor proposed sales is inapplicable because the Debtors are not "individuals" as defined in the Bankruptcy Code.

(j)    Cure of Defaults (11 U.S.C. § 1123(d)).  The Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases, if any, in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

## M.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

17.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(a)    the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(b)    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Combined Hearing Order in transmitting the Solicitation Materials and related notices and in soliciting and tabulating the votes on the Plan.

## N.    Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3)).

18.    The Debtors have proposed the Plan (including the Plan Documents (as defined below) and all other documents necessary or appropriate to effectuate the Plan) in good faith

9

with the legitimate and honest purpose of maximizing the value of the Debtors' Estates, and not by any means forbidden by law.

19.    In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, including the retention of Mr. Harding to serve as the Chief Restructuring Officer of the Debtors, the retention of Togut in connection with the investigation of the Debtors' prepetition refinancing transactions, the negotiation and execution of the Sale Transaction, the Committee Settlement, the adequacy of the disclosures contained in the Disclosure Statement, the Debtors' efforts to ensure that all opportunities to participate in significant transactions during these Chapter 11 Cases were fair and inclusive, the Confirmation Declarations, and the record of the Confirmation Hearing.

20.    The Plan was the product of extensive negotiations conducted at arm's length among the Debtors, the Chatham Parties, the Brigade Parties, and the Committee.

21.    Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**O.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

22.    Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, including all Professional Claims and the professional fees and expenses of the Debtors, the Chatham Parties, the Brigade Parties, and the Committee (in each case, subject to the Professional Fee Caps), have been approved by, or, as applicable, are subject to the approval of, the Court as reasonable, including pursuant to the terms of the Stipulation

10

Regarding Mediated Sale and Plan Settlement.  Therefore, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

**P.    Board of Managers, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

23.    On the Effective Date, the Debtors will not have Ds&Os.  Debtors JCK Legacy Company and Herald Custom Publishing of Mexico, S. de R.L. de C.V. shall continue in existence after the Effective Date as the Wind-Down Debtors for the limited purposes specified in section 6.5 of the Plan.

24.    The Debtors have disclosed the identity, affiliations, and compensation of the proposed Plan Administration Trustee, Wind-Down Officer and the GUC Recovery Trustee in the Plan Supplement.

25.    The appointment of the Wind-Down Officer, Plan Administration Trustee, and GUC Recovery Trustee is consistent with the interests of the creditors and equity security holders and with public policy.

26.    Accordingly, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.

**Q.    No Rate Changes (11 U.S.C. § 1129(a)(6)).**

27.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**R.    Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7)).**

28.    As a result of the Sale Transaction, through which the Debtors have already sold substantially all of their assets, converting these Chapter 11 Cases to a chapter 7 liquidation would create additional costs, including a percentage fee based on disbursements and fees for professionals retained by the chapter 7 trustee.  It is reasonable to assume that such costs would

be higher and more burdensome for the Debtors' estates than the Plan (which does not have such incremental costs). In addition, absent the Committee Settlement (which is embodied in the Plan), Holders of General Unsecured Claims would receive substantially less than they stand to receive under the Plan. For these reasons, and based upon the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing, each holder of an Impaired Claim that is entitled to vote on the Plan either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Such evidence is both persuasive and credible and based upon reasonable and sound assumptions. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

**S.** **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

29. Classes 1 and 2 are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4, 5, 6, 7, 8 and 9 are Impaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively presumed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code. As reflected in the Voting Report, Class 3 is Impaired by the Plan and voted to accept the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code as to all Debtors.

**T.** **Treatment of Administrative Claims, Deferred Amounts Claims, Professional Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims, (11 U.S.C. § 1129(a)(9)).**

30. The treatment of Administrative Claims, Deferred Amounts Claims, Professional Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims pursuant to

Articles II and III of the Plan satisfy the requirements of, and comply in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U.      Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

31.      Class 3 is Impaired and, as set forth in the Voting Report, has accepted the Plan, determined without including any acceptance of the Plan by any "insiders."  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**V.      Feasibility (11 U.S.C. § 1129(a)(11)).**

32.      As evidenced by the Confirmation Declarations and the other evidence that was proffered or adduced at or prior to the Confirmation Hearing, the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down of the Debtors' Estates.  Such evidence (a) is persuasive and credible; (b) based on reasonable assumptions; and (c) has not been controverted by other evidence.

**W.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).**

33.      The Debtors have paid or, pursuant to the Plan, will pay by or on the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**X.      Benefit Plans (11 U.S.C. 1129(a)(13)).**

34.      Retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, were assumed liabilities of the Purchaser in the Sale Transaction.  Effective upon consummation of the Sale Transaction, the Debtors are no longer providing any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code.  Therefore, 1129(a)(13) of the Bankruptcy Code is satisfied.

**Y.**    **Non-Applicability of Certain Sections (Sections 1129(a)(14), (15), and (16)).**

35.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are moneyed, business, or commercial corporations or trusts.

**Z.**    **Only One Plan (11 U.S.C. § 1129(c)).**

36.    The Debtors are seeking to confirm only one Plan in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**AA.**    **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

37.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  The Plan, therefore, satisfies section 1129(d) of the Bankruptcy Code.

**BB.**    **Not Small Business Cases (11 U.S.C. § 1129(e)).**

38.    None of the Chapter 11 Cases are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**CC.**    **Satisfaction of Confirmation Requirements.**

39.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**DD.**    **Plan Documents.**

40.    The terms of the Plan, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the

"**Plan Documents**") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order.  Subject to the terms of the Plan, the Committee Settlement, and the Plan Supplement documents themselves, the rights of the Debtors, with the consent of the Consent Parties, to alter, amend, update or modify any of the Plan Supplement documents before the Effective Date are reserved.

## EE.    Binding and Enforceable.

41.    Notwithstanding any otherwise applicable non-bankruptcy law, the Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and, upon the occurrence of the Effective Date, shall be immediately effective, enforceable, and binding in accordance with their terms.

## FF.    Vesting of Assets.

42.    Except as otherwise explicitly provided in the Plan, on the Effective Date, (a) all of the Wind-Down Debtors' Rights shall vest in the Wind-Down Debtors free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests; (b) all of the Plan Administration Trust Assets shall vest in the Plan Administration Trust free and clear of all Claims, Liens, charges, encumbrances, rights and Interests; and (c) all of the GUC Recovery Trust Assets shall vest in the GUC Recovery Trust, which, as successor to the Debtors, solely for purposes of prosecuting the GUC Recovery Trust Causes of Action, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

## GG.    Executory Contracts and Unexpired Leases.

43.    The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases

pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan, and as set forth in the Plan Supplement.

44.     The Debtors have cured, or will cure on the Effective Date, each Executory Contract or Unexpired Lease assumed under the Plan.

**HH.    Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**

45.     The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the releases and exculpations set forth in Article X of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, the Court finds that (i) each Brigade Party has satisfied the Brigade Release Requirements, (ii) each Chatham Party has satisfied the Chatham Release Requirements, and (iii) the compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan are based on sound business judgment, consistent with the Bankruptcy Code and applicable law, are integral components of the Plan, and are hereby approved and authorized in their entirety.

**II.     Debtor Releases.**

46.     The releases of claims and causes of action by the Debtors described in section 10.3 of the Plan, including the releases of each of the Chatham Parties, the Brigade Parties, and the D&O Insurance carriers (the "**Debtor Releases**"), represent a valid exercise of the Debtors' business judgment, are fair and equitable, and constitute good faith compromises and settlements of the matters covered thereby.  The Debtors' or the Wind-Down Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various

16

constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.

47.    The Debtor Releases appropriately offer protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Cases, including, as applicable, providing the DIP Facility, entering into the Sale Transaction with the Debtors, negotiating in good faith the terms of the Committee Settlement, actively supporting the Plan and the Chapter 11 Cases, the payment of $4,587,500  to be made by the  D&O Insurance carriers to the GUC Recovery Trust Escrow, to be held in trust until transferred to the GUC Recovery Trust, and waiving rights and Claims against the Debtors under the Plan.

48.    The scope of the Debtor Releases is appropriately tailored to the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Releases to the Plan, the Debtor Releases are appropriate.

**JJ.**    **Third Party Releases.**

49.    The third party releases set forth in section 10.4 of the Plan and as modified in paragraph 91 of this Confirmation Order, including the releases of each of the Chatham Parties and the Brigade Parties (the "**Third Party Releases**") are: (a) consensual; (b) essential to the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the claims and causes of action released by the Third Party Releases; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates and their stakeholders, and important to the overall objectives of the Plan; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; (h) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to

17

the Third Party Releases against any of the Released Parties; and (i) consistent with sections 105,

524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

    50.    **[Reserved]**

    51.    **[Reserved]**

    52.    **[Reserved]**

    53.    **[Reserved]**

    54.    **[Reserved]**

**KK.**    **Exculpation.**

    55.    The exculpation provisions set forth in section 10.5 of the Plan were proposed in good faith and are essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated Parties from inappropriate litigation while excluding actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct.

**LL.**    **Injunction.**

    56.    The injunction provisions set forth herein and in section 10.6 of the Plan (a) are essential to the Plan; (b) are necessary to preserve and enforce the releases set forth in sections 10.3 and 10.4 of the Plan, the exculpation provisions in section 10.5 of the Plan, and the compromises and settlements implemented under the Plan; and (c) are appropriately tailored to achieve that purpose.

    57.    The injunction provisions set forth in section 10.6 of the Plan: (a) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors and other stakeholders; (d) are important to the overall objectives of the Plan; and (e)

are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the injunction provisions set forth in section 10.6 of the Plan.

**MM.    Issuance of New Parent Equity.**

58.    The issuance of the New Parent Equity is an essential element of the Plan, and is in the best interests of the Debtors, their Estates, and their creditors. The Wind-Down Debtors are authorized, without further approval of this Court or any other party, to issue the New Parent Equity in accordance with the Plan, and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

**NN.    Distributions Exempt from Registration under the Securities Act.**

59.    The issuance by the Wind-Down Debtors of the New Parent Equity pursuant to the Plan and section 1145 of the Bankruptcy Code is exempt from the registration requirements of the Securities Act and similar state statutes pursuant to section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D promulgated thereunder.

**OO.    Committee Settlement.**

60.    The terms of the Committee Settlement set forth in the Stipulation Regarding Mediated Sale and Plan Settlement and Article VI of the Plan are fair and reasonable, in the best interests of the Debtors, their Estates, and creditors, and within the range of reasonable results if the issues were litigated.

61.    As contemplated in the Committee Settlement, and detailed in Article 6.3 of the Plan, the Debtors and the Committee have both approved an agreement to settle and release all estate claims against all current and former Ds&Os in exchange for a payment of $4,587,500 from the D&O Insurance carriers to the GUC Recovery Trust Escrow, to be held in trust until

transferred to the GUC Recovery Trust.  Such payment will be made by the D&O Insurance

carriers on or before the Effective Date.

**PP.    Plan Conditions to Confirmation.**

62.    Each of the conditions to Confirmation set forth in section 11.1 of the Plan has

been satisfied or waived in accordance with the terms of the Plan.

**QQ.    Waiver of 14-Day Stay.**

63.    Sufficient cause has been shown to waive any stay to the immediate effectiveness

of this Confirmation Order.

**RR.    Retention of Jurisdiction.**

64.    Except as otherwise provided in any of the Plan Documents, the Court shall retain

jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11

Cases and the Plan, including, but not limited to, the matters set forth in Article XII of the Plan.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**1.    Confirmation.**

65.    The Plan, together with the other Plan Documents (as may be amended in

accordance with the terms therewith or the terms of the Plan), shall be, and hereby are,

confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan and the Plan

Documents are incorporated by reference into, and are an integral part of, the Plan and this

Confirmation Order and are authorized and approved, and the Debtors are authorized to

implement their provisions and consummate the Plan and the Plan Documents, including taking

all actions necessary, advisable, or appropriate to finalize the Plan Documents (with the consent

of the Consent Parties, as applicable) and to effectuate the Plan, the Committee Settlement, and

the Restructuring Transactions, without any further authorization except as may be expressly

required by the Plan or this Confirmation Order.  As set forth in the Plan, once finalized and

executed, the Plan Documents and all other documents contemplated by the Plan shall constitute legal, valid, binding and authorized rights and obligations of the respective parties thereto, enforceable in accordance with their terms.

**2.      Disclosure Statement Approved.**

66.      The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable nonbankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.

**3.      Objections Overruled.**

67.      Based upon the record of the Confirmation Hearing and the Chapter 11 Cases, any objections that have not been consensually resolved or withdrawn are overruled on the merits pursuant to this Confirmation Order.

**4.      Omission of Reference to Particular Plan Provisions.**

68.      The failure to specifically include any particular Plan Document or provision of the Plan or Plan Document in this Confirmation Order will not diminish the effectiveness of such document or Plan provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

**5.      Deemed Acceptance of the Plan as Modified.**

69.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are hereby deemed to accept the Plan, as modified.  No holder of a Claim shall be permitted to change its vote as a consequence of the Plan or Plan Supplement

21

modifications; provided that any such modification is consistent with the Committee Settlement and adheres to the Consent Parties' rights under the Plan. All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## 6.   **Plan Implementation.**

70.   All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan). The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Wind-Down Debtor, or any officer or manager thereof, to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to this Confirmation Order and other applicable law, the Debtors, the Wind-Down Debtors, the GUC Recovery Trust and the Plan Administration Trust are authorized and empowered, without action of their respective interest holders, trustees, or members or boards of managers to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

## 7.   **Committee Settlement.**

71.   The terms of the Committee Settlement set forth in the Stipulation Regarding Mediated Sale and Plan Settlement and Article VI of the Plan are hereby approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, and creditors. Each provision in the Committee Settlement is non-severable from each other and the remaining terms of the Plan. The compromises and settlements embodied in the Committee Settlement are within the range of

reasonable results if the issues were litigated and therefore falls above the lowest point in the range of reasonableness. The Debtors, the Wind-Down Debtors, the GUC Recovery Trust, the Plan Administration Trust, and the Purchaser, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, including each of the Plan Documents, and to take any and all actions reasonably necessary or appropriate to consummate the Committee Settlement and each of the compromises embodied therein.

72.    As contemplated in the Committee Settlement, the Debtors, the D&O Insurance carriers, and the Committee have agreed to settle and release all estate claims against the D&O Insurance carriers, the current and former directors, officers and managers of the Debtors, and the advisors and professionals of such directors, officers and managers who advised the same with respect to prepetition transactions (the "**Contingent Released Parties**") in exchange for a payment of $4,587,500 (the "**D&O Insurance Payment**") from the D&O Insurance carriers to the GUC Recovery Trust Escrow to be held in trust until transferred to the GUC Recovery Trust, and the D&O Insurance carriers have agreed to make the D&O Insurance Payment.

73.    Notwithstanding anything herein or in the Plan to the contrary, in the event that the D&O Insurance carriers are unable, despite the exercise of commercially reasonable efforts, to fund the D&O Insurance Payment to the GUC Recovery Trust Escrow on or prior to the date upon which all conditions to effectiveness of the Plan (but for the payment of the D&O Insurance Payment in accordance with section 11.1(d) of the Plan) have been satisfied or waived in accordance with its terms, then, notwithstanding anything contained in the Plan or this Order to the contrary, (a) the Contingent Released Parties shall not be Released Parties and shall not otherwise be deemed released under the Plan or this Order, (b) any and all claims or causes of

action of the Debtors or their Estates against the Contingent Released Parties shall survive the occurrence of the Effective Date and shall automatically be vested on the Effective Date in the GUC Recovery Trust, (c) upon receipt of payment in full in cash of the D&O Insurance Payment by the GUC Recovery Trust Escrow or the GUC Recovery Trust, then automatically and without need for further action or notice, the Contingent Released Parties shall be deemed Released Parties and shall be deemed released under all applicable provisions of the Plan that contemplate releasing same, and (d) Section 11.1(d) of the Plan shall be deemed modified to give effect to this paragraph.

74.    In pursuing the GUC Recovery Trust Causes of Action, the GUC Recovery Trust shall minimize discovery with respect to any Transferred Employees that have accepted employment from the Purchaser by seeking relevant information from other parties prior to seeking such information from any such Transferred Employees.

## 8.    **Binding Effect**.

75.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, the GUC Recovery Trust, the Plan Administration Trust, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their

terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**9.    Restructuring Transactions.**

76.    The Debtors, the Wind-Down Debtors, the GUC Recovery Trust, and the Plan Administration Trust, as applicable, are authorized to implement and consummate the Restructuring Transactions pursuant to the Plan, the Plan Documents, and this Confirmation Order and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder.  The Restructuring Transactions pursuant to the Plan and the Plan Documents are approved and authorized in all respects.  The Debtors, the Wind-Down Debtors, the GUC Recovery Trust, and the Plan Administration Trust, as applicable, are authorized and directed, without the need for any future corporate action, to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, or other documents created or executed in connection with the Plan, the Plan Documents, and the Restructuring Transactions, including, without limitation, the transactions set forth in the description of Restructuring Transactions.  In accordance with section 1142 of the Bankruptcy Code and applicable non-bankruptcy law, such actions may be taken without further action by stockholders, members, partners, or managers.

77.    Notwithstanding anything herein to the contrary, nothing in this Confirmation Order shall affect the Sale Order's approval of the Sale Transaction and the transfer of the Debtors' assets pursuant to the Asset Purchase Agreement free and clean of all claims, liens, interests and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

**10.    Cancellation of the Old McClatchy Securities, Agreements, and the Second Lien Term Loan.**

78.    On the Effective Date, except as otherwise specifically provided for in the Plan or pursuant to the Restructuring Transactions (a) the Old McClatchy Securities and the Second Lien Term Loan and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (including the First Lien Notes Indenture, the Third Lien Notes Indenture, the 2027 Debentures Indenture, and the 2029 Debentures Indenture), shall be deemed to be automatically cancelled without further action by any person and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, Indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old McClatchy Securities, and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, as the case may be, shall be deemed to be automatically released and cancelled without further action by any person, subject to the exceptions set forth in section 6.11 of the Plan.

79.    On or after the Effective Date, all duties and responsibilities of the 2027 Debentures Trustee under the 2027 Debentures Indenture, the 2029 Debentures Trustee under the 2029 Debentures Indenture, the First Lien Notes Agent under the First Lien Notes Indenture, the Second Lien Term Loan Agent under the Second Lien Term Loan Documents, and the Third Lien Notes Agent under the Third Lien Notes Indenture shall be discharged and deemed satisfied except to the extent required in order to effectuate the Plan.

80.    The Debtors and any securities intermediaries (including the First Lien Notes Trustee) are hereby authorized and directed to take any ministerial actions that may be necessary to consummate the transactions contemplated by the Plan, including the removal of any remaining First Lien Notes positions reflected on the records of the securities intermediaries

26

(including taking all such appropriate actions in respect of the book entry system to give effect to the foregoing) upon the earlier of (a) September 4, 2021 and (b) the date that all holders of First Lien Notes Claims have received the consideration to which they are entitled under the Sale Transaction.

## 11.    **Distributions.**

81.    All distributions pursuant to the Plan shall be made in accordance with Article IX of the Plan, and such methods of distribution are approved.  The Distribution Agent shall have no duty or obligation to make distributions to any holder of an Allowed Claim unless and until such holder executes and delivers, in a form acceptable to the Distribution Agent, any and all documents applicable to such distributions in accordance with Article IX of the Plan.

82.    Pursuant to section 9(d) of the Plan, the Wind-Down Debtors, the Plan Administration Trust, the GUC Recovery Trust, and the Distribution Agent, as applicable, shall use reasonable efforts to locate any Holder of an Allowed Claim whose distribution is returned as undeliverable.

## 12.    **Issuance of New Parent Equity.**

83.    Issuance of the New Parent Equity in accordance with the Plan is approved.  Each of the Debtors and the Wind-Down Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the New Parent Equity in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.  The New Parent Equity is hereby deemed issued to the GUC Recovery Trust as of the Effective Date regardless of the date on which the New Parent Equity is actually distributed.  All New Parent Equity issued by the Wind-Down Debtors to the

GUC Recovery Trust pursuant to the provisions of the Plan is hereby deemed to be duly authorized, validly issued, fully paid and nonassessable.

13.    **Treatment of Executory Contracts and Unexpired Leases.**

84.    The assumption and rejection of Executory Contracts and Unexpired Leases pursuant to Article VII of the Plan is hereby authorized.

85.    To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control", "assignment", or similar provision), then such provision shall be deemed modified or stricken such that the transactions contemplated by the Plan and the Plan Documents, including the Restructuring Transactions, shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto.

86.    Cure amounts for the assumed Executory Contracts or Unexpired Leases shall be such amounts as are set forth on the Assumption Schedule (as may be amended), or such other amounts as are agreed to between the Debtors or Wind-Down Debtors and the applicable counterparty, or as otherwise set forth in section 7.4 of the Plan.

14.    **Exemption from Transfer Taxes.**

87.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, transfers (whether from a Debtor to a Wind-Down Debtor, the Plan Administration Trust, the GUC Recovery Trust, or to any other Person, or from a Wind-Down Debtor, the Plan Administration Trust, or the GUC Recovery Trust to any person) of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any of the taxes listed in

section 6.18 of the Plan, and this Confirmation Order hereby directs and is deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment, as more fully set forth therein.

## 15.    **Tax Withholding.**

88.    In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Plan Administration Trust, the GUC Recovery Trust, and the Distribution Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, Wind-Down Debtors, the Plan Administration Trust, the GUC Recovery Trust, and the Distribution Agent, as applicable, are hereby authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

## 16.    **Compromise and Settlement of Claims Against Ds&Os.**

89.    **[Reserved]**

90.    Pursuant to the settlement of the Debtors' Causes of Action against their Ds&Os any rights to assert claims with respect to the D&O Insurance (as such settlement is embodied in the Notice of Implementation of D&O Settlement filed at Docket No. 856 and the Plan), the Committee's Standing Motion (a) shall be deemed automatically withdrawn upon payment in full in cash of the D&O Insurance Payment to the GUC Recoverty Trust Escrow or the GUC Recovery Trust (the "**D&O Release Date**"), and (b) shall be continue to be deemed adjourned between the Confirmation Hearing and the D&O Release Date, in each case without the need for

any future action by the Committee or any further objection from the Debtors or Wind-Down

Debtors, as applicable, or any action by the Bankruptcy Court.

**17.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

91.    The releases, injunctions, exculpations, and related provisions set forth in Article

X of the Plan (as clarified in this Order) are incorporated herein in their entirety, are hereby

approved and authorized in all respects, are so ordered, and shall be immediately effective on the

Effective Date without further notice to or order or action on the part of this Court or any other

party.  Notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement,

or the Confirmation Order, the PBGC and the CWA/ITU Negotiated Pension Plan do not release

and nothing in the Plan, the Disclosure Statement, or the Confirmation Order discharges or

exculpates any claim or cause of action relating to any liability under Title I or Title IV of

ERISA against any persons or entities other than the Debtors in these Chapter 11 Cases.  Further,

notwithstanding anything to the contrary contained in the Plan, the Debtors shall not be entitled

to any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

92.    Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions of the Plan will

be immediately effective on the Effective Date:

>    **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE 10.3 OR ARTICLE 10.4 OF THE PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE 10.5 OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE WIND-DOWN DEBTORS, THE PLAN ADMINISTRATION TRUST, THE GUC RECOVERY TRUST, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY**

**KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) EXCEPT AS PROVIDED IN ARTICLES 9.11 AND 9.12 HEREOF, ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE INJUNCTION DOES NOT ENJOIN ANY PARTY UNDER THE PLAN OR UNDER ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN FROM BRINGING AN ACTION TO ENFORCE THE TERMS OF THE PLAN OR SUCH DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENJOINED FROM INTERFERING WITH THE DISTRIBUTIONS CONTEMPLATED BY THE PLAN.**

18.    **GUC Recovery Trust Causes of Action.**

93.    In accordance and compliance with section 1123(b)(3)(A) of the Bankruptcy Code, the Plan properly retains certain claims of the Debtors, including without limitation the GUC Recovery Trust Causes of Action, and, in accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, Article VI of the Plan properly transfers and provides for enforcement of such claims, including without limitation the GUC Recovery Trust Causes of

Action, by the GUC Recovery Trust.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the GUC Recovery Trust shall be deemed to be a representative of the Estates for purposes of enforcement of the GUC Recovery Trust Causes of Action.   In connection therewith, the GUC Recovery Trust shall have all rights with respect to the GUC Recovery Trust Causes of Action, including, without limitation, full power, authority and standing to investigate, prosecute, compromise, or otherwise resolve the GUC Recovery Trust Causes of Action.  The GUC Recovery Trust shall be entitled to enjoy the benefits of section 108(a) of the Bankruptcy Code, and shall be deemed to be a trustee (as that term is used in section 108(a)) for purposes of prosecuting the GUC Recovery Trust Causes of Action.

94.     The GUC Recovery Trust shall be deemed to be a party to any confidentiality agreements to which the Committee is a party, including, without limitation, the confidentiality restrictions set forth in the Order Establishing Terms for Plan Mediation [ECF No. 107], as amended by that certain June 5, 2020 Stipulation Modifying the Use of Certain Mediation Material by and between the Committee and Chatham Asset Management LLC and the bylaws executed by the Debtors and the Committee.   Notwithstanding any such confidentiality agreements or restrictions, counsel for the Committee is hereby authorized, but not directed, to share any information provided or produced to the Committee, or any work product containing the same, with the GUC Recovery Trust.

**19.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

95.     In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) days after the Effective Date, the Plan Administration Trust shall cause a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached hereto as Exhibit 2 (the "**Notice of Confirmation and Effective Date**"), to be filed with the Bankruptcy Court and, as modified for publication, to be published on one occasion in the National and International

Editions of the New York Times.  Mailing and publication of the notices described in this paragraph in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

96.    The Notice of Confirmation and Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order and occurrence of the Effective Date to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

97.    Professionals or other Entities asserting a Professional Claim for services rendered before the Effective Date must file an application for final allowance of such Professional Claim no later than 45 days after the Effective Date.  The Plan Administration Trust shall pay Professional Claims in cash in the amount this Court allows, including the Holdback Amounts, promptly upon the allowance of such claims and otherwise in accordance with the Plan.

98.    Notwithstanding anything to the contrary herein, in accordance with the Plan and the Committee Settlement, the professional fees and expenses of the Debtors, the Chatham Parties, the Brigade Parties, and the Committee are hereby Allowed as Administrative Claims and, other than the Deferred Amounts Claims, shall be paid on the Effective Date subject to the Professional Fee Caps set forth in the Admin Liability Schedule.  For the avoidance of doubt, holders of Deferred Amounts Claims shall not be required to file and serve a request for payment of an Administrative Claim.

99.    Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims pursuant to the Plan, but do not file and serve such a

request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors or their property.

**20.    Inconsistency.**

100.    In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall control.  The provisions of the Plan and the Plan Supplement documents shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of a final Plan Supplement document, the provision of the final Plan Supplement document shall control.

**21.    Injunctions and Automatic Stay.**

101.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

**22.    Authorization to Consummate.**

102.    The Debtors are authorized to consummate the Plan, the Committee Settlement, and the Restructuring Transactions and finalize and implement the Plan Documents at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required

parties, as applicable) of the conditions precedent to consummation set forth in Article XI of the Plan.

**23.    Further Assurances.**

103.    The Debtors, the Wind-Down Debtors, the Plan Administration Trust, or the GUC Recovery Trust, as applicable, shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or this Confirmation Order.

**24.    Substantial Consummation.**

104.    On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

**25.    Severability.**

105.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified except in accordance with section 13.3 of the Plan; and (c) nonseverable and mutually dependent.

106.    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**26.    Conditions to Effective Date.**

107.    The Plan shall not become effective unless and until the conditions set forth in Article XI of the Plan have been satisfied or waived pursuant thereto.  Each of the conditions set forth in Article XI of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

27.    **Effect of Non-Occurrence of Effective Date.**

108.    If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

28.    **Waiver of 14-Day Stay.**

109.    Notwithstanding any Bankruptcy Rule or Local Bankruptcy Rule, this Confirmation Order is effective immediately and not subject to any stay.

29.    **Modification of Plan Supplement.**

110.    Subject to the terms of the Plan and this Confirmation Order, the Debtors are authorized, with the consent of the Consent Parties, to modify and amend the Plan Supplement through and including the Effective Date.

30.    **Post-Confirmation Modification of the Plan.**

111.    The Debtors, with the consent of the Consent Parties, and, to the extent a proposed amendment or modification would materially impact the Brigade Parties, with the consent (not to be unreasonably withheld or delayed) of the Brigade Parties, may amend or modify the Plan at any time without further order of this Court, but only in accordance with section 1127 of the Bankruptcy Code and section 13.3 of the Plan; *provided*, that any such modification must be consistent with the Consent Parties' rights under the Plan.

31.    **Dismissal of Certain Cases**

112.    The following Chapter 11 Cases (collectively, the "**Dismissed Cases**") shall be automatically dismissed effective on the Effective Date:

(a)   Tribune Newsprint Company, individually captioned No. 20-10467;

(b)   Newsprint Ventures, Inc., individually captioned No. 20-10452;

(c)   Wingate Paper Company, individually captioned No. 20-10470; and

(d)   Quad County Publishing, Inc., individually captioned No. 20-10458 (MEW).

113.   Notwithstanding section 349 of the Bankruptcy Code, this Confirmation Order and all prior orders of this Court shall survive dismissal of the Dismissed Cases.

## 32.   **Reservations Of Rights**

114.   Notwithstanding anything in the Plan or this Confirmation Order to the contrary:

(a)   the Mississippi Department of Revenue's (the "**MDOR**") setoff rights under section 553 of the Bankruptcy Code and recoupment rights are preserved;

(b)   the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for any Administrative Claims for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code. The Debtors or the Plan Administrator, as applicable, shall timely submit returns and remit payment, including penalties and interest, for all taxes due or coming,  as required under applicable Mississippi state law,  and, should the Debtors, or Plan Administrator, or Plan Administrator, as applicable, fail to so timely file and pay, MDOR may proceed with Mississippi state law remedies for collection of any amounts due and/or seek such relief as may be available from the Court;

(c)   to the extent the MDOR's Priority Tax Claims, if any, are not paid in full in cash on the Effective Date, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required section 1129(a)(9)(C) of the Bankruptcy Code, along with non-bankruptcy interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code and Mississippi state law, as applicable;

(d)   the statutorily mandated treatment of MDOR's Allowed Priority Tax Claims and/or any liabilities to MDOR described in section 503(b)(1)(B) and (C) of the Bankruptcy Code shall not be considered a settlement or compromise;

(e)   the MDOR may amend any timely filed Proof of Claim against any Debtor to the extent permitted under applicable law after the Effective Date or the Bar Date, whichever is later, with respect to (a) a pending audit or (b) an audit that may be performed, with respect to any post-petition tax return, and (c) following the filing of a tax return; *provided* that the Debtors' rights to object to allowance of any

Claim filed by MDOR or any amendment of any Claim filed by MDOR on any grounds under applicable law are expressly reserved; and

(f)   in the event of a default in payment of Priority Tax Claims of the MDOR, the MDOR shall send written notice of default to the Debtors or Plan Administrator, as applicable, to the address in MDOR's records.  If such default is not cured within 10 business days after such notice of default is mailed, the MDOR may (a) enforce the entire amount of its claim; (b) proceed with Mississippi state law remedies for collection of any amounts due and/or (c) seek such relief as may be available from the Court.

115.    Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "**Texas Comptroller**"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553; (2) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Comptroller, the interest rate shall as determined by 11 U.S.C. § 511; and (3) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims in advance of the Administrative Claims Bar Date pursuant to 11 U.S.C. § 503(b)(1)(D).

116.    Notwithstanding anything to the contrary in the Disclosure Statement, the Plan (including, without limitation, Article 7.1 of the Plan), the Plan Supplement, Committee Settlement, Stipulation Regarding Mediated Sale and Plan Settlement, the Confirmation Order, and any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening) and as a supplement to Article 7.5 of the Plan:

(a)   nothing alters or modifies the terms and conditions of any of the Chubb Insurance Contracts or the coverage provided thereby except that:

(i)   on and after the Effective Date, the Chubb Insurance Contracts (except to the extent assigned to the Purchaser pursuant to the Sale Transaction) shall vest in the Plan Administration Trust; provided,

however that the Plan Administration Trust shall not be an insured under the Chubb Insurance Contracts;

(ii)  to the extent the Chubb Companies are released pursuant to and in accordance with Article 10.3 of the Plan, nothing in this paragraph alters or modifies such release;

(iii)  to the extent that the Chubb Companies believe a Claim has become liquidated and due and owing (regardless of whether such Claims arise before or after the Effective Date and notwithstanding any release provisions in the Plan or Confirmation Order) to any of them under the Chubb Insurance Contracts, the Plan Administration Trust and the GUC Recovery Trust, as applicable, and the Chubb Companies each reserve their rights with respect to whether such Claim shall be treated as an Administrative Claim or a General Unsecured Claim in accordance with the Confirmation Order and the Plan and Disclosure Statement, and should the Plan Administration Trustee or the GUC Recovery Trustee, as applicable, and the Chubb Companies not agree upon such treatment, the dispute shall be submitted to the Bankruptcy Court for determination thereon; provided, however, that the Plan Administration Trustee and/or the GUC Recovery Trustee, as applicable, agree to provide the Chubb Companies' counsel of record in the Chapter 11 Cases with sixty (60) days' notice of any intention to make a distribution, other than on account of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date and/or Professional Claims, and/or close the Chapter 11 Cases, and the Chubb Companies shall advise counsel to the Plan Administration Trust and counsel to the GUC Recovery Trust, as applicable, within thirty (30) days thereof of any amounts that are or are estimated to become due and owing in the future pursuant to the Chubb Insurance Contracts;

(b)  Article 8.7 of the Plan and any Administrative Claim Bar Date shall not apply to the Chubb Companies; and

(c)  the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X of the Plan, if and to the extent applicable, shall be deemed modified without further order of the Bankruptcy Court, solely to permit: (1) claimants with valid workers' compensation claims or with valid direct action claims against a Chubb Company under applicable non-bankruptcy law to proceed with their claims and recover on account of such claims from the proceeds under any applicable Chubb Insurance Contracts subject to and in accordance with the terms and conditions of the Chubb Insurance Contracts; (2) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court,

39

(A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Chubb Company under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (3) subject to the terms of the Chubb Insurance Contracts and/or applicable non-bankruptcy law, the Chubb Companies to (A) cancel any of the Chubb Insurance Contracts, provided, however, that the Chubb Companies cannot use the filing of the Chapter 11 Cases as the basis to cancel or terminate any of the Chubb Insurance Contracts, and (B) take other actions relating to the Chubb Insurance Contracts (including effectuating a setoff).

For purposes of this paragraph 116, (a) "Chubb Companies" means ACE American Insurance Company, Federal Insurance Company and each of their U.S.-based affiliates and (b) "Chubb Insurance Contracts" means all insurance policies (including, without limitation, any D&O Insurance and other director and officer liability insurance policies) issued at any time to any of the Debtors (or their predecessors) by the Chubb Companies and all of the agreements, documents and instruments related thereto.

117.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, (a) nothing in the Plan or this Confirmation Order impairs (i) the rights of Beth Desmond ("**Desmond**") with respect to that certain Undertaking to Stay Execution posted in favor of Desmond in connection with the lawsuit filed on November 29, 2012, captioned *Beth Desmond v. The News and Observer Publishing Company, McClatchy Newspapers, Inc., Mandy Locke, et. al.*, Wake County Superior Court File No. 12 CVS 16656 (together with all appeals, rehearings, remands, and any other proceedings resulting therefrom or related thereto, the "**Desmond Lawsuit**") by Westchester Fire Insurance Company on February 6, 2017 in the amount of $8,109,539.41 (the "**Desmond Appeal Bond**") or any insurance policy applicable to the Desmond Lawsuit and (ii) Desmond's rights to prosecute the Desmond Lawsuit, and (b) the Desmond Appeal Bond is not property of any of the Debtors' estates.

33.    **Local Bankruptcy Rules 3021-1(b) and 3022-1**.

118.    Pursuant to Local Bankruptcy Rule 3021-1(b), the time-table for achieving substantial consummation of the Plan and entry of a final decree closing the Chapter 11 Cases is as follows:

- Substantial Consummation of the Plan.  The Debtors anticipate that the Effective Date and substantial consummation of the Plan will occur in September 2020, or as soon as reasonably practicable thereafter.

- Distributions.  The Distribution Agent anticipates completing the distributions required under the Plan on or as soon as reasonably practicable after the Effective Date consistent with the provisions of Article IX of the Plan.

- Resolution of Claims.  The Plan Administration Trustee or, upon the creation of the GUC Recovery Trust, the GUC Recovery Trustee, on behalf of the GUC Recovery Trust and solely with respect to General Unsecured Claims, as applicable, shall resolve Disputed Claims against the Debtors' Estates consistent with the provisions of Article VIII of the Plan.

- Avoidance Actions.  Pursuant to section 6.17 of the Plan, as of the Effective Date, the Debtors, on behalf of themselves and their estates shall abandon any and all Avoidance Actions (except to the extent otherwise reserved in the Plan, Plan Supplement or used defensively by the Debtors or the Plan Administration Trust), and the Debtors and the Plan Administration Trust, and any of their successors or assigns and any Entity acting on behalf of the Debtors or the Plan Administration Trust, shall be deemed to have waived the right to pursue any and all Avoidance Actions.

- Post-Confirmation Status Reports.  The Plan Administration Trust, on behalf of the Debtors and the Wind-Down Debtors, shall file and serve on the United States Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Cases are converted, dismissed, or closed by entry of the Final Decree. Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters.

- Motion for Final Decree.  Consistent with Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1, within fourteen (14) days following the full administration of the Debtors' Estates, the Wind-Down Debtors shall file, on notice to the United States Trustee, an application and a proposed order for a final decree.

41

**34.**     **Retention of Jurisdiction.**

119.    Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Court shall, to the fullest extent legally permissible, retain exclusive jurisdiction over the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases, including all matters listed in Article XII of the Plan, as well as for the purposes set forth in section 1142 of the Bankruptcy Code.  To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible.

**35.**     **Final Order.**

120.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

Dated: New York, New York
          September 25, 2020

                                   **s/Michael E. Wiles**
                                   Honorable Michael E. Wiles
                                   UNITED STATES BANKRUPTCY JUDGE