UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
JCK LEGACY COMPANY, *et al.*,                   :        Case No. 20-10418 (MEW)
                                                :
                        Debtors.                :        (Jointly Administered)
------------------------------------------------------------x

## DECISION DISALLOWING PROOF OF CLAIM
## NUMBER 2725 FILED BY ALBERTO COLT-SARMIENTO

A P P E A R A N C E S:

PILLSBURGY WINTHROP SHAW PITTMAN LLP
New York, New York
*Attorneys for GUC Recovery Trustee*
  By:  Leo T. Crowley
       Patrick E. Fitzmaurice
       Kwame O. Akuffo

ALBERTO COLT-SARMIENTO
*Appearing pro se*
Shelton, Washington

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

   William A. Brandt, Jr. is the trustee (the "**Trustee**") of the JCK Legacy GUC Recovery Trust that was created under the confirmed plan of reorganization in these cases. The Trustee has objected to the proof of claim number 2725, filed by Alberto Colt-Sarmiento on July 19, 2020, on the grounds that Mr. Colt-Sarmiento's tort claims lack merit. Mr. Colt-Sarmiento has opposed the objection and has asked this Court to grant him a further extension of time to respond to the Trustee's objection because he is incarcerated and has not had adequate access to a computer or the law library to prepare a response.

   The record before the Court clearly establishes the following chronology of events:

1

1. In 2018, Mr. Colt-Sarmiento was convicted in Washington of second-degree murder and related charges stemming from the shooting death of 18-year-old Elijah Crawford. Mr. Colt-Sarmiento was sentenced to nearly 61 years in prison and is currently incarcerated at the Washington Corrections Center in Shelton, Washington.

2. In March 2018, the Tacoma News Tribune (the "**Tribune**"), a newspaper operated by Tacoma News, Inc. (which was one of the Debtors in these cases), published an article regarding Mr. Colt-Sarmiento's sentencing (the "**Article**"). The Article referred to the conviction of Mr. Colt-Sarmiento and asserted the following:

> He [Mr. Colt-Sarmiento] exchanged text messages with his co-defendants the day of the murder that read, "KILLKILLKILL" and "well smoke em," court records show.

Mr. Colt-Sarmiento argues that this text is false because: (a) one of Mr. Colt-Sarmiento's co-defendants, not Mr. Colt-Sarmiento, sent the text messages; (b) the text messages were not sent on the day of the murder; (c) the text messages were not relevant to the crimes he was charged with; and (d) the phrase "KILLKILLKILL" is a lyric from a co-defendant's favorite rap song. Mr. Colt-Sarmiento contends that, as a result of the alleged misstatements, he has suffered ridicule while incarcerated, and that family members have refused to assist him financially in his appeals process.

3. The Debtors filed their bankruptcy petitions on February 13, 2020. The petitions were filed less than two years after the publication of the Article and therefore prior to the time when the applicable statutes of limitation in Washington otherwise might have expired.

4. On April 3, 2020, after the bankruptcy filings, Mr. Colt-Sarmiento filed a lawsuit in the Superior Court of Pierce County, Washington against the Tribune (Case no. 20-2-05809-8), alleging the newspaper had defamed him in the Article. That case was dismissed in August 2020. The Court is not aware of the circumstances under which the dismissal occurred. Mr. Colt-

2

Sarmiento has indicated that he intends to pursue his claims, notwithstanding the dismissal of the lawsuit.

5.  On June 30, 2020, the Court of Appeals of Washington, Division 2, affirmed Mr. Colt-Sarmiento's conviction.

5.  On August 7, 2020, Mr. Colt-Sarmiento's original proof of claim, which was dated July 19, 2020, and submitted by mail, was filed on the docket. On July 23, 2021, the Trustee objected to Mr. Colt-Sarmiento's claim on the grounds that his claim was filed after the bar date. On March 3, 2022, this Court entered a decision which, among other things, excused the late filing of the claim and deemed that Mr. Colt-Sarmiento had timely filed a general unsecured claim [ECF No. 1415]. The claims agent then assigned Proof of Claim No. 2725 to Mr. Colt-Sarmiento's claim (the "**Bankruptcy Claim**").

6.  On March 22, 2022, the Trustee filed an objection on the merits to Mr. Colt-Sarmiento's Bankruptcy Claim (the "**Trustee's Claim Objection**") [ECF No. 1436]. The Trustee argued that Mr. Colt-Sarmiento's tort claims – for defamation, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence – are deficient as a matter of law and therefore, that the Bankruptcy Claim should be disallowed and expunged. A hearing on the Trustee's Claim Objection was set for May 11, 2022, with responses due by May 4, 2022.

7.  On May 3, 2022, the Court received a letter from Mr. Colt-Sarmiento requesting that the May 11 hearing be cancelled and that he be granted an extension of two months to respond to the Trustee's Claim Objection [ECF No. 1456]. Mr. Colt-Sarmiento referred to a lack of access to resources for legal research, issues sending out mail, and his many ongoing legal matters as reasons for his request. On May 12, 2022, the Court received another letter from Mr. Colt-

Sarmiento reiterating these impediments and objecting to the Trustee's Claim Objection on unspecified grounds [ECF No. 1460].

8.  With the Trustee's consent the Court granted Mr. Colt-Sarmiento's request for an extension. The May 11 hearing was cancelled on May 10, 2022, and on May 13, 2022, the Trustee's Claim Objection was rescheduled for a hearing on July 20, 2022, with responses due by July 13, 2022 [*see* ECF No. 1457 and 1463].

9.  On July 15, 2022, the Trustee received a letter from Mr. Colt-Sarmiento, dated June 8, 2022, requesting another extension of the response deadline [ECF No. 1491]. On the same day, the Trustee filed a response to Mr. Colt-Sarmiento's letter requesting that this Court deny any further extension and issue a ruling on the Trustee's Claim Objection [ECF No. 1494].

10. This Court held a hearing on the Trustee's Claim Objection on July 20, 2022. Counsel to the Trustee participated in the hearing, but Mr. Colt-Sarmiento did not appear. The Trustee's Claim Objection was then taken under advisement.

## The Request for a Further Extension of Time

The Trustee contends that Mr. Colt-Sarmiento's tort claims are legally deficient under Washington law. I have considered, and I am sympathetic with, Mr. Colt-Sarmiento's contentions that his incarceration has limited his ability to do legal research and to respond to the Trustee's contentions. For that reason we have carefully reviewed the applicable law regarding Mr. Colt-Sarmiento's claims, and we have attempted to identify and to consider arguments that might support his claims and/or that might warrant further proceedings. However, it appears for the reasons set forth below that there is merit to the Trustee's legal objections and therefore that the claims should be disallowed without further proceedings.

**The Merits of the Objection**

Section 502(b)(1) of the Bankruptcy Code provides that a claim will be disallowed if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). In practice, "applicable law" most often refers to state law. *In re Genco Shipping & Trading Ltd.*, 550 B.R. 676, 680 (S.D.N.Y. 2015); *see also In re LATAM Airlines Grp. S.A.*, No. 20-11254-JLG, 2022 Bankr. LEXIS 1178, at *23 (Bankr. S.D.N.Y. Apr. 29, 2022) (quoting *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006)) ("Whether a claim is allowable 'generally is determined by applicable nonbankruptcy law.'"); *In re* Hess, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S. Ct. 237, 91 L. Ed. 162 (1946)) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."). In this case, Mr. Colt-Sarmiento has not alleged that any federal statute is applicable. Washington state law governs Mr. Colt-Sarmiento's claims, as he is a resident of Washington and the actions complained of (the publication of a news article) took place in Washington.

A.   **Defamation**

A defamation plaintiff must show four essential elements under Washington law: falsity, an unprivileged communication, fault, and damages. *Mark v. Seattle Times*, 96 Wash. 2d 473, 486, 635 P.2d 1081 (Wash. 1981). It appears that the Bankruptcy Claim does not allege "falsity" in the sense required under Washington law.

Mr. Colt-Sarmiento contends that the Article falsely asserts that Mr. Colt-Sarmiento sent the "KILLKILLKILL" and "well smoke em" messages, whereas they were in fact sent by a co-

5

defendant. In this regard, however, the Article does not actually state that Mr. Colt-Sarmiento was the author of the messages. Instead, the Article asserts that Mr. Colt-Sarmiento "exchanged text messages with his co-defendants" in which these statements were made. There is no dispute that Mr. Colt-Sarmiento exchanged text messages with his co-defendants and there is no dispute that the relevant language appeared in those text messages.

Mr. Colt-Sarmiento believes that readers could presume, from the statement that Mr. Colt-Sarmiento "exchanged" messages that contained the relevant language, that Mr. Colt-Sarmiento himself (and not a co-defendant) was the author of the relevant words. However, that is not enough to prove that a "false" statement was made under Washington law. Certainly it is true that the Article might have been clearer if it had stated that Mr. Colt-Sarmiento had "received" such messages. However, Mr. Colt-Sarmiento was in fact involved in the "exchange" of the relevant text messages and in that regard the text of the Article is not literally false. *See Lee v. Columbian, Inc.*, 64 Wash. App. 534, 538, 826 P.2d 217 (Wash. Ct. App. 1991) ("The defamatory character of the language must be apparent from the words themselves."). Washington courts are "bound to invest words with their natural and obvious meaning, and may not extend language by innuendo or by the conclusions of the pleader." *Id.* (quoting *Sims v. KIRO, Inc.,* 20 Wash. App. 229, 234, 580 P.2d 642 (Wash. Ct. App. 1978), *review denied*, 91 Wash. 2d 1007 (Wash. 1978), *cert. denied*, 441 U.S. 945, 60 L. Ed. 2d 1047, 99 S. Ct. 2164 (1979)); *see also Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wash. App. 34, 45, 108 P.3d 787 (Wash. Ct. App. 2005) (truth is an absolute defense to a defamation claim). Accordingly, even if language in a publication is ambiguous,

resolution of the ambiguity in favor of a "disparaging connotation" is not justified. *Id.* (quoting *Exner v. AMA*, 12 Wash. App. 215, 219, 529 P.2d 863, 75 A.L.R.3d 603 (Wash. Ct. App. 1974)).

Mr. Colt-Sarmiento also claims that the statement that the quoted text messages were sent on the day of the murder is false because the text messages were not sent on that day. However, even if it is untrue that the subject text messages were sent on the same day as the murder, "a defamation defendant need not prove the literal truth of every claimed defamatory statement. A defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting', is true." *Mark*, 96 Wash. 2d 473, at 494 (internal citations omitted). "Where a report contains a mixture of true and false statements, a false statement … affects the 'sting' of a report only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Herron v. King Broad. Co.*, 112 Wash. 2d 762, 776 P.2d 98 (Wash. 1989) (citing *Mark*, 96 Wash. 2d 473, at 496); *see, e.g., Sisley v. Seattle Pub. Sch.*, 180 Wash. App. 83, 321 P.3d 276 (Wash. Ct. App. 2014). In this case, the "sting" of the Article is the report that Mr. Colt-Sarmiento was convicted of second-degree murder and that he and his co-defendants exchanged text messages in which the offending terms appeared. The "sting" attaches to the language used and their relationship to the crime that was charged, not to the precise date on which the messages were exchanged. Accordingly, "[t]he inaccuracy, if any, does not alter the 'sting' of the Article as a whole and does not have a materially different effect on a … reader than that which the literal truth would produce." *Mark*, 96 Wash. 2d 473, at 496 (citing *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1112-13 (6th Cir. 1978)); *see also Schmalenberg v. Tacoma News*, 87 Wash. App. 579, 943 P.2d 350 (Wash. Ct. App. 1997) (holding that although a reasonable person could find that the story in question was false in minor respects,

no reasonable person could find that falsities of such a minor sort were a factual cause of damage that would not have occurred anyway due to the gist of the story being true).

In addition, "[i]t is not the law … that every misstatement of fact, however insignificant, is actionable as defamation." *Mark*, 96 Wash. 2d 473, at 493 (quoting *Time, Inc. v. Firestone*, 424 U.S. 448, 457, 47 L. Ed. 2d 154, 96 S. Ct. 958 (1976)). Washington law "requires not only that there be fault on the part of the defamation defendant, but that the substance of the statement makes substantial danger to reputation apparent." *Id.* (internal citations omitted). The exact date on which the relevant text messages were sent is not itself something that makes substantial danger to reputation apparent.

Mr. Colt-Sarmiento also argues that the text messages quoted in the Article were irrelevant to the crimes he was charged with. He may well believe that is the case. However, the text messages were introduced at trial and (as stated in the Article) they were part of the court record. Mr. Colt-Sarmiento has the right to disagree, but the prosecution thought the evidence relevant to the crime and the trial court apparently thought the messages were sufficiently relevant to admit the texts into evidence. In that context, the Tribune's statements that the text messages were part of the court record were accurate and protected. *See Lee*, 64 Wash. App. 534, at 538.

Finally, Mr. Colt-Sarmiento argues that the phrase "KILLKILLKILL" is a lyric from a co-defendant's favorite rap song and that this fact was shown in the court record but not mentioned in the Article. However, the Tribune did not have the duty to report every fact that Mr. Colt-Sarmiento would have liked to have included in the Article. The omission of the alleged connection between the relevant phrase and the lyrics of a rap song does not make the statement in the Article false. *Mohr v. Grant*, 153 Wash. 2d 812, 823, 108 P.3d 768 (Wash. 2005); *see also Green v. CBS Inc.*, 286 F.3d 281 (5th Cir. 2002) (rejecting claim by a defamation plaintiff that a

8

news report was misleading because it did not include all potentially relevant information about the plaintiff).

As a matter of Washington state law, therefore, Mr. Colt-Sarmiento cannot state a valid claim for defamation.

### B. False Light Invasion of Privacy

Alternatively, Mr. Colt-Sarmiento asserts a claim for false light invasion of privacy. While a defamation action "is primarily concerned with compensating the injured party for damage to reputation," false light "is primarily concerned with compensating for injured feelings or mental suffering" on the part of the plaintiff. *Eastwood v. Cascade Broad. Co.*, 106 Wash. 2d 466, 471, 722 P.2d 1295 (Wash. 1986). A claim for invasion of privacy by false light arises when someone publishes statements that place another person in a false light if (1) the false light would be highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in. *Id.*, at 470-71.

"Although defamation and invasion of privacy by false light are distinct causes of action, they both 'rest on the disclosure of *false or misleading information*.'" *Kivlin v. City of Bellevue*, No. C20-0790 RSM, 2021 LEXIS 217071 (W.D. Wash. Nov. 4, 2021) (quoting *Seaquist v. Caldier*, 8 Wash. App. 2d 556, 564, 438 P.3d 606 (Wash. Ct. App. 2019), *review denied*, 193 Wash. 2d 1041, 449 P.3d 657 (Wash. 2019)). As noted above, Mr. Colt-Sarmiento is unable to show that the statements in the Article were "false" for purposes of a defamation claim. He similarly cannot show falsity for purposes of a "false light" claim. *See, e.g., Seaquist*, 8 Wash. App. 2d 556.

9

### C. Intentional Infliction of Emotional Distress

Mr. Colt-Sarmiento has also asserted claims for intentional infliction of emotional distress. Washington law requires that a plaintiff claiming intentional infliction of emotional distress show: (1) intentional or reckless infliction of emotional distress, (2) by outrageous or extreme conduct of the defendant, (3) resulting in severe emotional distress to the plaintiff. *Kloepfel v. Bokor,* 149 Wash. 2d 192, 195, 66 P.3d 630 (Wash. 2003); *Grimsby v. Samson*, 85 Wash. 2d 52, 59-60, 530 P.2d 291 (Wash. 1975). Negligence is not enough to support a claim for intentional infliction of emotional distress; instead, a defendant must have acted intentionally or recklessly, and the defendant's conduct must have been "so outrageous in character, and so extreme in danger, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby*, at 59 (internal citations omitted). The cause of action cannot be based on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Accordingly, it is not enough for Mr. Colt-Sarmiento to allege that statements in the Article were erroneous. Instead, he must allege facts sufficient to support an inference that misstatements were intentionally (not negligently) made, and that the defendant's conduct was beyond all possible bounds of decency.

Reporting on a criminal proceeding, as the Tribune did through the Article, is not the kind of "outrageous" conduct that supports a claim for intentional infliction of emotional distress. Similarly, inaccuracies in reporting are not themselves the sort of "outrageous" conduct that supports a claim. At most, Mr. Colt-Sarmiento alleges that the Tribune was not sufficiently careful in its reporting, not that it acted intentionally and outrageously. Mr. Colt-Sarmiento cannot prevail

10

on a claim for intentional infliction of emotional distress because the publication of the Article does not rise to the level of "outrageous or extreme" conduct necessary to support such a claim.

### D. Negligent Infliction of Emotional Distress

Under Washington law, "[t]he tort of negligent infliction of emotional distress is a limited, judicially created cause of action that allows a family member a recovery for 'foreseeable' intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident." *Colbert v. Moomba Sports, Inc.*, 163 Wash. 2d 43, 49, 176 P.3d 497 (Wash. 2008) (citing *Hegel v. McMahon*, 136 Wash. 2d 122, 125-26, 960 P.2d 424 (Wash. 1998); *Gain v. Carroll Mill Co.*, 114 Wash. 2d 254, 261, 787 P.2d 553 (Wash. 1990)). Mr. Colt-Sarmiento has made no claim that he witnessed a physically injured family member or loved one following a traumatic incident, and his complaints about the Article do not support a claim for negligent infliction of emotional distress.

### E. Negligence

Finally, Mr. Colt-Sarmiento asserts a claim for negligence on the grounds that the Tribune breached its duties to provide reasonable care in the investigation, preparation, and publication of publicly circulated materials, and to train and supervise its employees. The four basic elements required in an action for negligence are: (1) the existence of a duty, (2) breach of that duty, (3) a resulting injury, and (4) proximate cause. *Rangers Ins. Co. v. Pierce County*, 164 Wash. 2d 545, 554, 192 P.3d 886 (Wash. 2008) (internal citations omitted). However, Mr. Colt-Sarmiento cannot establish that the Tribune breached any duty that it owed to him when it published the Article. To the extent that he contends that the Tribune owed him a "duty" not to commit defamation or other torts, there was no breach of any such duty for the reasons stated above. Nor has the Court been able to identify any other duty that was allegedly owed and violated. As

11

discussed above, the statements Mr. Colt-Sarmiento has taken issue with are substantially true. They also are privileged. *See Mark v. King Broad. Co.*, 618 P.2d 512, 515, 27 Wash. App. 344 (Wash. Ct. App. 1980), *aff'd sub nom.*, *Mark*, 96 Wash. 2d 473 (Wash. 1981), *cert. denied*, 457 U.S. 1124, 102 S. Ct. 2942, 73 L. Ed. 2d 1339 (1982). "The commission of crime, prosecutions resulting from it, and judicial proceedings arising form the prosecutions … are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report." *Id*., at 516. The contents of the record of Mr. Colt-Sarmiento's criminal trial are "qualifiedly privileged" and the Tribune was not liable in negligence for reporting them or for being allegedly incomplete in its descriptions of them. *See Id.*

## Conclusion

For the foregoing reasons, Mr. Colt-Sarmiento's request for further extension of the response deadline is denied, the Trustee's Claim Objection is sustained, and Mr. Colt-Sarmiento's Bankruptcy Claim is disallowed and expunged. A separate Order shall be entered to this effect.

Dated: New York, New York
      September 7, 2022

                                **s/Michael E. Wiles**
                                Hon. Michael E. Wiles
                                United States Bankruptcy Judge